**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MUNICIPALITY OF BAYAMON, *et al.*,<br><br>        *Plaintiffs,*<br><br>v.<br><br>EXXON MOBIL CORP., *et al.*,<br><br>        *Defendants.* | Case No. 3:22-cv-01550-SCC |

**OCCIDENTAL PETROLEUM'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 2

III. ARGUMENT ........................................................................................................................ 4

    A. Plaintiffs' Failure to Effect Service of the Summons and Complaint on Occidental Divests the Court of Jurisdiction. ......................................................... 4

    B. Plaintiffs' Allegations Fail to Establish the Court has Personal Jurisdiction over Occidental. ................................................................................................... 7

        1. Plaintiffs don't allege that Occidental is "at home" in Puerto Rico. ......... 8

        2. Plaintiffs don't allege that their claims against Occidental arise out of or relate to Occidental's contacts with Puerto Rico—because Plaintiffs don't allege Occidental established *any* contacts with Puerto Rico. ................................................................................................ 8

        3. Third parties' contacts cannot be imputed to Occidental ......................... 9

            a. *Alleged contacts of a subsidiary do not give rise to jurisdiction.* ........................................................................................ 9

            b. *Conclusory allegations of agency relationship do not permit jurisdiction.* ................................................................... 11

            c. *Alleged contacts of industry associations do not provide basis for jurisdiction.* ................................................................. 11

            d. *Insufficient RICO allegations should not be used as a bootstrap.* ............................................................................... 12

    C. Plaintiffs Have Not Alleged any Conduct By Occidental to State A Claim Against Occidental. ............................................................................................ 12

IV. CONCLUSION ................................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...........................................................................................................7

*Bank of Am., N.A. v. Knight*,
 725 F.3d 815 (7th Cir. 2013) .....................................................................................13, 14

*Bristol-Myers Squibb Co. v. Superior Court*,
 137 S. Ct. 1773 (2017).......................................................................................................7

*Carreras v. PMG Collins, LLC*,
 660 F.3d 549 (1st Cir. 2011)........................................................................................7, 11

*Clorox Co. P.R. v. Proctor & Gamble Com. Co.*,
 228 F.3d 24 (1st Cir. 2000)..........................................................................................3, 10

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014).....................................................................................................7, 10

*Destfino v. Reiswig*,
 630 F.3d 952 (9th Cir. 2011) ...........................................................................................13

*Diaz-Rivera v. Supermercados Econo Inc.*,
 18 F. Supp. 3d 130 (D.P.R. 2014).....................................................................................4

*Egan v. Tenet Health Care*,
 193 F.Supp.3d 73 (D. Mass. 2016) ...................................................................................6

*Escude Cruz v. Ortho Pharma. Corp.*,
 619 F.2d 902 (1st Cir. 1980)...........................................................................................10

*Figueroa Collazo v. Ferrovial Construccion PR, LLC*,
 20-cv-1612, 2021 WL 4482268 (D.P.R. Sept. 30, 2021) ...............................................14

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
 141 S. Ct. 1017 (2021).......................................................................................................9

*Henderson v. United States*,
 517 U.S. 654 (1996)..........................................................................................................4

*Jiang v. Tokyo II Steak House, Inc.*,
 616 F. Supp. 3d 167 (D. Mass. 2022) ...............................................................................4

*In re Lorazepam & Clorazepate Antitrust Litig.*,
 900 F. Supp. 2d 8 (D. D.C. 2012)...................................................................................8

*Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*,
 142 F.3d 26 (1st Cir. 1998)............................................................................................7

*Motus, LLC v. CarData Consultants, Inc.*,
 23 F.4th 115 (1st Cir. 2022).....................................................................................8, 10

*Mullane v. Central Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950).......................................................................................................4

*Peters Broadcast Eng'g, Inc. v. 24 Capital, LLC*,
 40 F.4th 432 (6th Cir. 2022) ........................................................................................11

*Quintero Community Ass'n Inc. v. F.D.I.C.*,
 792 F.3d 1002 (8th Cir. 2015) .....................................................................................13

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,
 524 F.3d 315 (1st Cir. 2008)..........................................................................................3

*Walden v. Fiore*,
 517 U.S. 277 (2014).....................................................................................................11

*Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*,
 No. 14-CV-12047-ADB, 2015 WL 4467064 (D. Mass. July 20, 2015)...................13

**Statutes**

Tex. Bus. Orgs. Code §§ 5.255, 5.201 ................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure 4 ...............................................................................4, 5, 6

Federal Rule of Civil Procedure 9(b)............................................................................13, 14

Federal Rule of Civil Procedure 12 ..................................................................................1, 4

Federal Rule of Evidence 201..............................................................................................8

Puerto Rico Rule of Civil Procedure 4.4 ..........................................................................5, 6

**TO THE HONORABLE COURT:**

**NOW COMES** Defendant, Occidental Petroleum Corporation ("Occidental"), through its undersigned counsel, and respectfully requests the Honorable Court dismiss Occidental from the case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2), (b)(5) and (b)(6).

**I.   INTRODUCTION**

Occidental moves the Court under Federal Rule of Civil Procedure 12(b)(2), (b)(5) and (b)(6) to dismiss Occidental from this case with prejudice. While Occidental joins in the separately filed Joint Motions to Dismiss, Occidental files this motion to raise arguments specific to it, all of which revolve around the same fundamental point: Occidental has nothing whatsoever to do with Plaintiffs' claims. Plaintiffs' Complaint is utterly devoid of factual allegations tying Occidental to the forum or to the facts. Indeed, Plaintiffs could not even be bothered to name (or serve) Occidental correctly.[1]

Plaintiffs' Complaint alleges no facts connecting Occidental to Puerto Rico. It does not allege that Occidental is present here, does any business here, or directs any activities here. Plaintiffs, therefore, have not pleaded a basis for the Court to exercise personal jurisdiction over Occidental, and Plaintiffs' post-filing attempt to serve Occidental confirms that Occidental is a stranger to this case. Unable to serve Occidental in Puerto Rico—because Occidental is not *in* Puerto Rico—Plaintiffs apparently contracted with a legal services company in Seattle, Washington, which hired a process server in Houston, Texas to serve Occidental there. But Occidental was never served. Plaintiffs' documentation of the server's attempt admits that the

---

[1] In their Complaint, Plaintiffs label Occidental as "Occidental Petroleum F.K.A. Anadarko Petroleum Corp." "Occidental Petroleum" is not Occidental's correct name, and as explained later in this memorandum, although "Anadarko was acquired by Occidental" in 2019 (Compl. ¶ 141), the Complaint does not allege facts showing that Occidental is the continuation of Anadarko and thus "formerly known as" Anadarko (and it is not).

1

server simply dropped off the summons and Complaint in the mailroom in Occidental's building—a further indication that including Occidental in this case is an afterthought.

The Complaint's remaining allegations suggest a reason why Plaintiffs put so little thought and effort into serving Occidental and establishing this Court's jurisdiction over Occidental. The allegations do not remotely allege how or why Occidental may be liable to Plaintiffs. Plaintiffs' substantive allegations do not mention Occidental by name. Plaintiffs do not allege a single instance of Occidental engaging in any purported misconduct. Instead, the supposed misconduct Plaintiffs allege all relates to industry associations and other defendants.

In a patent effort to mount an industry-wide challenge, Plaintiffs have tried to sweep Occidental up into a suit where it does not belong. Though the Court should dismiss the claims against all defendants for the reasons given in the joint motions, the Court should, at a minimum, dismiss all claims against Occidental.

## II.   BACKGROUND

Of the 837 paragraphs in Plaintiffs' Complaint, exactly 4 mention Occidental by (an incorrect) name—and all of them are located in Section IV of the Complaint, where Plaintiffs simply describe the parties to the lawsuit. *See* Compl. ¶¶ 52, 138, 141, 146. As to Occidental, Plaintiffs allege:

> 138. Occidental Petroleum F.K.A. Anadarko Petroleum Corp. (Anadarko) is an American Petroleum and natural gas exploration company headquartered in The Woodlands, Texas. Anadarko is ranked 257th on the Fortune 500 and is registered with the SEC and is traded as APC.
>
> 141. In 2019, Anadarko was acquired by Occidental Petroleum. Occidental Petroleum is responsible for 0.38% of all global industrial GHG emissions from 1965–2017.
>
> 146. Considering Anadarko's responsibility, coupled with its parent carbon major Occidental, Anadarko and its parent are responsible for 0.8% of all global industrial GHG emissions from 1965–2017, totaling the sum of approximately 10,584 metric

tons of GHGs in both direct emissions from their industry and end use of their products.

In addition to these three allegations, a table in Paragraph 52 alleges that Occidental is "directly responsible" for 0.8% "of all global industrial GHG emissions from 1965–2017."

According to the Complaint and the sources it cites, all of which may be accepted as true solely for purposes of resolving this motion, *see Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008), Occidental stands apart from other defendants in this case in two material ways.

First, Occidental is a Texas-based corporation engaged primarily in the business of exploring and producing oil and gas—known in the industry as "upstream" activities to distinguish them from "midstream" activities (*e.g.*, refining) and "downstream" activities (*e.g.*, retailing). *See* Compl. ¶ 142 n.128. Occidental engages in limited midstream activities, namely the transportation and storage of hydrocarbons and other commodities. *Id.* The Complaint does not allege that Occidental engages in refining operations, that Occidental operates a nationwide pipeline network, or that Occidental runs any downstream retail operations selling fuel directly to consumers.[2]

Second, the Complaint does not allege that Occidental has (or ever had) operations in Puerto Rico. Nor does the Complaint allege that Occidental has (or ever had) dealings with

---

[2]   The Complaint *asserts* that Anadarko (not Occidental) has "downstream" operations and "markets and sells consumer products" (Compl. ¶¶ 142, 144), yet the Complaint provides no factual allegations to back those assertions up. Instead, the Complaint cites two reports for each assertion, and neither report supports either assertion: the Business Wire report (n. 128) does not describe Anadarko's operations at all, let alone state that Anadarko has downstream operations; and the Fortune report (n. 130) describes Anadarko's "marketing" activities as selling oil and gas (not consumer products) to third parties in the midstream market (not to consumers). Because those reports are incorporated into the Complaint and because the reports refute Plaintiffs' assertions, the Court cannot credit those assertions as true and must disregard them. *See Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (when "a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

companies or customers based in Puerto Rico.  There is, quite simply, nothing in the Complaint that connects Occidental's out-of-state, upstream activities with Puerto Rico.

III.   **ARGUMENT**

   A.   **Plaintiffs' Failure to Effect Service of the Summons and Complaint on Occidental Divests the Court of Jurisdiction.**

Serving a summons and complaint properly ensures that a defendant receives sufficient notice of a complaint filed against it and has the opportunity to respond.  *Henderson v. United States*, 517 U.S. 654, 672 (1996) ("[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections").  A plaintiff's failure to serve properly does not merely violate Rule 4 of the Federal Rules of Civil Procedure; it also violates the Due Process Clause of the U.S. Constitution and divests the court of jurisdiction.  A court cannot exercise jurisdiction over a defendant that did not receive the notice and process our Constitution requires.  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *Diaz-Rivera v. Supermercados Econo Inc.*, 18 F. Supp. 3d 130, 133 (D.P.R. 2014) ("A court may not exercise personal jurisdiction over a defendant named in a complaint without service of process on the defendant").  Thus, failure to comply with Rule 4(h) constitutes insufficient service of process subject to dismissal under Federal Rule of Civil Procedure 12(b)(5).  *See, e.g., Jiang v. Tokyo II Steak House, Inc.*, 616 F. Supp. 3d 167, 173–75 (D. Mass. 2022) (explaining plaintiff bears burden of establishing proper service and dismissing corporate defendant due to insufficient service of process where process was not served on authorized agents).

Under Rule 4(h), service on a corporation is proper if it: (1) follows the law of the state where the district court is located (Puerto Rico) or where service is attempted (Texas), or (2) the summons and complaint are delivered, in person, to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]"  In this situation, all three methods are basically the same.  Puerto Rico mirrors the federal rule and permits service upon a corporation by delivering a copy of the summons and complaint "to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  P.R. R. of Civ. P. 4.4(e).  In Texas, service upon a corporation can be accomplished by serving the president, vice president, or registered agent for the corporation.  *See* Tex. Bus. Orgs. Code §§ 5.255, 5.201.

Plaintiffs' "Proof of Service" (attached as Exhibit A)—the record of their attempt to serve Occidental—shows that Plaintiffs did not comply with Rule 4(h).  Occidental does not have a registered agent in Puerto Rico, so Plaintiffs could not serve the summons and complaint on Occidental in Puerto Rico.  On February 13, 2023, a process server purportedly went to Occidental's Houston, Texas headquarters.  But instead of serving the summons and complaint on one of Occidental's authorized agents, the process server "left" them (in a box addressed to someone else) with an unidentified individual named "Office Services."[3]

The Proof of Service states that Office Services "is designated by law to accept service of process on behalf of" Occidental.  That is patently false.  No law designates the mailroom in Occidental's building as Occidental's agent for service of process, nor would a reasonably prudent

---

[3]  Occidental's investigation has revealed that the summons and complaint were delivered to its mailroom in a box addressed to "The UPS Store, 11152 Westheimer Rd, Houston, TX 77042" with a return address of "ABC Legal Services, 633 Yesler Way, Seattle, WA 98104-9678."  A photograph of the box is attached as Exhibit B.

person believe as much. Office Services is not Occidental's "president," "vice president" or registered agent. *See* Tex. Bus. Orgs. Code §§ 5.255, 5.201. Nor do the individuals in Office Services serve as officers, general or managing agents, or agents otherwise authorized to accept service of process on behalf of Occidental. *See* P.R. R. of Civ. P. 4.4(e). Indeed, as the "Proof of Service" acknowledges, when the process server "delivered the documents to Office Services" the individual to whom the documents were delivered "refuse[d] service by refusing to take [the] documents." Ex. A.

The statement in the Proof of Service that "Office Services who [sic] indicated they were the person authorized to accept with identity confirmed by subject stating their name" is boilerplate nonsense and contradicted by the Proof of Service itself. "Office Services" is not a "person," let alone a person whose identity can be confirmed by "stating their name." If any person in Office Services had identified himself or herself by name, that name presumably would have been written on the Proof of Service, as it was for other Defendants and as is required to ensure that service is not fabricated. The acknowledgement that the individual in Office Services to whom the process server attempted to hand the documents "refuse[d] service by refusing to take documents" belies any claim that the same individual had—just moments before—acknowledged that he or she was authorized to accept service of the documents.

Simply leaving a summons and complaint (in a box addressed to someone else) with a person found on a corporation's premises does not effect service on the corporation. The summons and complaint must be delivered to an individual designated by the corporation to accept service or to a person with authority to bind the corporation in important legal matters, such as a president, vice president, or managing agent. *See* Fed. R. Civ. P. 4(h); *see also Egan v. Tenet Health Care*, 193 F.Supp.3d 73, 79 (D. Mass. 2016) (explaining methods by which a corporation can be served).

Plaintiffs' process server did not deliver the summons and complaint to Occidental's designated agent or an individual with authority to bind the corporation in important legal matters. Occidental was not served in accordance with law; Occidental did not receive the notice and process it is due under our Constitution, and so the Court lacks jurisdiction to proceed against it.

> **B.     Plaintiffs' Allegations Fail to Establish the Court has Personal Jurisdiction over Occidental.**

Because "the reach of Puerto Rico's long-arm statute is coextensive with the reach of the Due Process Clause," the question whether the Court has personal jurisdiction over Occidental is whether it would be constitutional for the Court to exercise personal jurisdiction over Occidental. *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011). A corporation is subject to general or all-purpose personal jurisdiction, and may be sued on any claim, in the forum where it is "at home." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014); *see Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). An out-of-state corporation, one that is not at home in the forum state, is subject to specific or case-linked personal jurisdiction if a plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Id.* (quotations omitted).

Plaintiffs bear the burden of establishing personal jurisdiction. *Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). At the pleading stage, Plaintiffs' burden is to allege facts (not conclusory allegations) that would, if true, prove personal jurisdiction exists. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs here have not carried their burden. In a single everything-but-the-kitchen-sink paragraph, Plaintiffs offer conclusory allegations of personal jurisdiction over Occidental and the other Defendants (Compl. ¶ 13), but the Complaint contains no factual allegations to support any theory of personal jurisdiction over Occidental.

1. Plaintiffs don't allege that Occidental is "at home" in Puerto Rico.

General jurisdiction exists only in forums where a corporate defendant has "continuous and systematic" contacts, rendering the corporation essentially "at home" there. *Daimler*, 571 U.S. at 137–39. A corporation is typically "at home" in two forums—its "place of incorporation and its principal place of business." *Id.* at 137–38 & n.19. Occidental is a Delaware corporation[4] with its principal place of business in Texas (Compl. ¶ 138). Plaintiffs therefore have not alleged that Occidental is at home in Puerto Rico.

2. Plaintiffs don't allege that their claims against Occidental arise out of or relate to Occidental's contacts with Puerto Rico—because Plaintiffs don't allege Occidental established *any* contacts with Puerto Rico.

A court can exercise specific personal jurisdiction over a foreign corporation when (1) the plaintiff's claims "directly arise from or relate to the defendant's activities in the forum," (2) the defendant's contacts with the forum "represent a purposeful availment of the privilege of conducting activities in that state," and (3) "the exercise of specific jurisdiction in the forum [is] reasonable under the circumstances." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 122 (1st Cir. 2022) (internal quotations omitted). Here, the Complaint is devoid of *any* allegations that Occidental purposefully directed *any* activities towards Puerto Rico. There are no allegations that Occidental maintains offices in Puerto Rico, conducts operations here, or even sells products into the Puerto Rico market. Instead, Plaintiffs allege only that Occidental (and Anadarko) are "responsible" for a minuscule fraction "of all global GHG emissions from 1965–2017":

---

[4] Ex. C (Excerpt from Occidental's Form 10-K for the fiscal year ended December 31, 2022 showing its Delaware incorporation). Although Plaintiffs failed to allege Occidental's place of incorporation, the court can take judicial notice of this information. Fed. R. Evid. 201(b) (court may take judicial notice of a fact "that is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 900 F. Supp. 2d 8, 18 (D. D.C. 2012) (taking judicial notice of public records establishing state of incorporation and citing other cases doing the same).

8

> 141. In 2019, Anadarko was acquired by Occidental Petroleum. Occidental Petroleum is responsible for 0.38% of all global industrial GHG emissions from 1965–2017.
>
> 146. Considering Anadarko's responsibility, coupled with its parent carbon major Occidental, Anadarko and its parent are responsible for 0.8% of all global industrial GHG emissions from 1965–2017, totaling the sum of approximately 10,584 metric tons of GHGs in both direct emissions from their industry and end use of their products.

Compl. ¶¶ 141, 146.  Neither allegation has anything to do with Puerto Rico—on the contrary, both allegations are explicitly "global"—so neither allegation is enough to establish that Occidental has "minimum contacts" with Puerto Rico.  *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) ("contacts must be the defendant's own choice and not random, isolated, or fortuitous." (citation omitted)).  And, since Plaintiffs do not allege that Occidental has *any* contacts with Puerto Rico, it follows logically that Plaintiffs' claims cannot "arise out of or relate to" Occidental's (nonexistent) contacts with Puerto Rico.  Occidental is therefore not subject to specific personal jurisdiction in this case.

        3.    <u>Third parties' contacts cannot be imputed to Occidental</u>.

            a.    *Alleged contacts of a subsidiary do not give rise to jurisdiction*.

In light of Plaintiffs' decision to name Occidental as "Occidental Petroleum *F.K.A. Anadarko Petroleum Corp*," Compl. ¶ 138 (emphasis added), Plaintiffs might contend (1) that allegations pertaining to Anadarko should be imputed to Occidental and (2) that Occidental is subject to jurisdiction here to the same extent that Anadarko would be.  That contention fails for two reasons: the Complaint affords no factual basis to impute Anadarko's contacts to Occidental, and the Complaint does not allege facts showing that Anadarko is subject to jurisdiction in Puerto Rico.

The only allegation in the Complaint about the relationship between Occidental and Anadarko is that Occidental acquired Anadarko in 2019.  Compl. ¶ 141.  That single allegation

9

does not suffice to impute Anadarko's contacts to Occidental. There are no allegations that Occidental assumed Anadarko's liabilities, nor allegations that Occidental exercises such a high degree of control over Anadarko to render them alter egos. On its face, the Complaint alleges merely that Anadarko is Occidental's subsidiary, and "[t]he mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary." *Escude Cruz v. Ortho Pharma. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980). The Complaint is devoid of any allegations that might overcome the "presumption of corporate separateness." *Escude Cruz*, 619 F.2d at 905 (explaining Puerto Rico law requires "strong and robust evidence" "showing the parent to have that degree of control over the subsidiary as to render the latter a mere shell for the former").

Not that the Complaint establishes personal jurisdiction over Anadarko. Anadarko is incorporated in Delaware and headquartered in Texas, which rules out general personal jurisdiction over Anadarko. *See Daimler*, 571 U.S. at 139 n.19, 122. While Plaintiffs allege that they are customers of Anadarko, *see* Compl. ¶ 144, they explicitly link that allegation to their assertion that Anadarko "markets and sells *consumer* products," *id.* (emphasis added). The source Plaintiffs cite for that assertion, however, says nothing about *consumer* products: it refutes Plaintiffs' allegation that they are Anadarko's customers and "trumps" Plaintiffs' contrary allegation. *Clorox Co.*, 228 F.3d at 32. What is more, Plaintiffs do not allege which "consumer products" they purportedly bought from Anadarko and, more importantly, do not allege that their claims arise out of or relate to their own purchases of these unidentified consumer products. *See Motus, LLC*, 23 F.4th at 122 (plaintiffs' claims must "directly arise from or relate to the defendant's activities in the forum").

        b.     *Conclusory allegations of agency relationship do not permit jurisdiction.*

The Complaint contains a conclusory allegation that "each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator, and/or joint venturer of each of the remaining Defendants herein[.]" Compl. ¶ 185. Though a *bona fide* agency relationship can sometimes give rise to personal jurisdiction over the principal, there must be factual allegations that an agency relationship actually existed, *i.e.*, facts alleged to show that each Defendant manifested its assent for the others to act on its behalf and be subject to its control. *See Carreras v. PMG Collins*, 660 F.3d 549, 556 (1st Cir. 2011). Once again, the Complaint has no allegations showing that Occidental was either principal or agent vis-à-vis any other Defendant. Plaintiffs' conclusory allegation of agency does not suffice to allege jurisdictionally significant contacts.

        c.     *Alleged contacts of industry associations do not provide basis for jurisdiction.*

Throughout the Complaint, Plaintiffs allege that industry and trade associations informed the Defendants of a link between fossil fuels and climate change and that those associations concealed risks from the public. *See, e.g.,* Compl. ¶ 184. Plaintiffs do not allege, however, that Occidental was a member of these associations or that it was a participant in any of their actions at any point, let alone during times relevant to this litigation. And even if Occidental were alleged to be a member, membership in an industry association is insufficient to establish personal jurisdiction over Occidental—only *Occidental's* own contacts with Puerto Rico are relevant. *See Walden v. Fiore*, 517 U.S. 277, 284 (2014) (explaining personal jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State." (emphasis in original)). Accordingly, Plaintiffs' allegations regarding industry groups do not establish personal jurisdiction over Occidental.

d.      *Insufficient RICO allegations should not be used as a bootstrap.*

Though RICO claims can, in certain circumstances, permit courts to exercise jurisdiction over out-of-state defendants, *Peters Broadcast Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 440 (6th Cir. 2022), Plaintiffs' RICO claims do not warrant exercising personal jurisdiction over Occidental.  As the Joint Motion to Dismiss argues, Plaintiffs' RICO claims are deficient as a matter of law.  In addition, Plaintiffs do not allege that Occidental participated in the purported RICO enterprise.  Under these circumstances, the Court should not permit the Plaintiffs to use RICO as a bootstrap to bring in defendants over which the Court lacks jurisdiction.

**C.      Plaintiffs Have Not Alleged any Conduct By Occidental to State A Claim Against Occidental.**

Plaintiffs' allegations about Occidental are so deficient, they not only fail to establish personal jurisdiction; they also fail to state a claim.  Plaintiffs assert fourteen causes of action against Occidental (and the other Defendants):

- common law consumer fraud (Count I),

- conspiracy to commit common law consumer fraud and deceptive business practices (Count II),

- Rule 7 of Puerto Rico Rules against misleading practices and advertisements (Count III),

- violations of RICO 18 U.S.C. § 1962 (a)–(d) (Counts IV–VII),

- violation of 15 U.S.C. § 1 et seq. (Count VIII),

- public nuisance (Count IX),

- strict liability failure to warn (Count X),

- strict liability design defect (Count XI),

- negligent design defect (Count XII),

- private nuisance (Count XIII), and

- unjust enrichment (Count XIV).

Compl. ¶¶ 634–836.

Yet, zero paragraphs in the Complaint allege that Occidental was involved in, or even aware of, the conduct giving rise to those fourteen claims. The Complaint fails to mention Occidental in relation to any claims. Recall that all four paragraphs that mention Occidental are in Section IV (regarding the parties named in the lawsuit); Occidental is not mentioned in any substantive allegation. *See* Compl. ¶¶ 52, 138, 141, 146. There are, in other words, no Occidental-specific allegations underlying Plaintiffs' causes of action—no allegations that Occidental engaged in fraud or deceptive practices, that it produced or disseminated any misinformation or misrepresentations, or that it participated in any purported enterprise or conspiracy. Likewise, no factual allegations support Plaintiffs' theories of strict liability, negligence, and unjust enrichment—there are, for example, no allegations that Occidental marketed or sold fossil-fuel products to consumers.

In lieu of Occidental-specific allegations, Plaintiffs' allegations lump Occidental in with other defendants, referring collectively to things done by "Defendants." Collective or group pleading is problematic because it does not put a defendant on notice of what it is being asked to defend. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed"). "While 'group pleading' is not prohibited *per se*," a complaint still "must allege a plausible claim against each defendant." *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, No. 14-CV-12047-ADB, 2015 WL 4467064, at *10 (D. Mass. July 20, 2015). In other words, group pleading cannot be the only basis for claims against

13

a defendant. Yet here, it is the only basis for the claims against Occidental; every substantive allegation against Occidental is group pleading.

Group pleading is especially improper where, as here, Plaintiffs allege claims of fraud, which are subject to Rule 9(b)'s heightened pleading standard. *See Quintero Community Ass'n Inc. v. F.D.I.C.*, 792 F.3d 1002, 1010 (8th Cir. 2015) (explaining the plaintiffs' "shotgun-style allegations of wrongdoing by all the Director Defendants 'generally, in a group pleading fashion… do[es] not satisfy Rule 9(b)'") (internal citation omitted); *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (Rule 9(b) "does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant."). This Court has dismissed similarly vague and unspecific claims premised entirely on grouped allegations. *See, e.g.*, *Figueroa Collazo v. Ferrovial Construccion PR, LLC*, 20-cv-1612, 2021 WL 4482268, at *9 (D.P.R. Sept. 30, 2021). Plaintiffs' conspiracy allegations do not justify group pleading because "it remains essential to show that a particular defendant joined the conspiracy and knew of its scope." *Knight*, 725 F.3d at 818.

Here, Plaintiffs do not use the group terms "Defendants" or "Oil Defendants" sparingly. Almost every material allegation in the Complaint refers to Defendants collectively. Given the total absence of factual allegations specific to Occidental, it is evident that Plaintiffs resorted to group pleading because they have no claims against Occidental. The effect of Plaintiffs' approach is to sweep Occidental into a case where Occidental does not belong.

## IV.  CONCLUSION

For the foregoing reasons, the Court should dismiss Occidental from this suit with prejudice.

Date: October 13, 2023

By: *s/ David Indiano*
David Indiano
USDC-PR Bar No. 200601
Jeffrey M. Williams
USDC-PR Bar No. 202104
INDIANO & WILLIAMS, P.S.C.
207 del Parque Street; 3rd Floor
San Juan, P.R. 00912

Duke K. McCall, III (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave, NW
Washington D.C., 20004

*Attorneys for Defendant OCCIDENTAL PETROLEUM CORPORATION*