**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MUNICIPALITY OF BAYAMON, et al.,

               *Plaintiffs*,

      v.

EXXON MOBIL CORP., et al.,

               *Defendants*.

Case No. 3:22-cv-01550-SCC

ORAL ARGUMENT REQUESTED

---

**SHELL PLC'S MOTION TO DISMISS THE COMPLAINT**

---

Carlos A. Valldejuly (USDC No. 209505)
José J. Colón García (USDC No. 308010)
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Avenue, Suite 800
San Juan, Puerto Rico 00918-1813
(787) 764-8181
carlos.valldejuly@oneillborges.com
jose.colon@oneillborges.com

David C. Frederick (*pro hac vice*)
James M. Webster, III (*pro hac vice*)
Minsuk Han (*pro hac vice*)
Daniel S. Severson (*pro hac vice*)
Grace W. Knofczynski (*pro hac vice*)
Vetan Kapoor (*pro hac vice*)
**KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@kellogghansen.com
jwebster@kellogghansen.com
mhan@kellogghansen.com
dseverson@kellogghansen.com
gknofczynski@kellogghansen.com
vkapoor@kellogghansen.com

*Counsel for Defendant Shell plc (f/k/a Royal Dutch Shell plc)*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

I.     INTRODUCTION ..........................................................................1

II.    BACKGROUND ............................................................................2

III.   LEGAL STANDARD ......................................................................3

IV.    ARGUMENT ................................................................................4

       A.    Plaintiffs' Complaint Fails Because They Do Not Plead With
             Particularity That Shell Made Any Deceptive Statements Or
             Omissions......................................................................................4

             1.    Plaintiffs fail to allege that Shell made any false or
                   misleading statements ................................................5

             2.    Plaintiffs fail to allege that Shell committed fraud by
                   omission .....................................................................8

             3.    The statements of other Defendants and industry
                   organizations cannot be attributed to Shell................11

       B.    Plaintiffs' RICO Claims Fail Because They Do Not Plead That
             Shell Committed Any Predicate Acts Or Entered Any Conspiracy .....13

CONCLUSION....................................................................................15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

CASES

*A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77 (1st Cir. 2013) ..................................4

*Ahmed v. Rosenblatt*, 118 F.3d 886 (1st Cir. 1997) ...........................................14

*Asbestos Sch. Litig.*, *In re*, 46 F.3d 1284 (3d Cir. 1994)......................................12

*Board of Trs. of Leland Stanford Junior Univ. v. Sullivan*, 773 F. Supp. 472
    (D.D.C. 1991) ...........................................................................13

*City of Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017 (N.D. Cal. 2018), *vacated
    & remanded*, 960 F.3d 570 (9th Cir.), *op. am. & superseded on denial
    of reh'g*, 969 F.3d 895 (9th Cir. 2020)...........................................9

*Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*,
    57 F.3d 56 (1st Cir. 1995) ..........................................................14

*Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271 (1st Cir. 2003) ...................11

*El Día, Inc. v. Puerto Rico Dep't of Consumer Affs.*, 413 F.3d 110 (1st Cir. 2005) ......................8

*Feinstein v. RTC*, 942 F.2d 34 (1st Cir. 1991)...................................................4

*Fin. Oversight & Mgmt. Bd. for Puerto Rico, In re*, 578 F. Supp. 3d 267
    (D.P.R. 2021), *aff'd*, 54 F.4th 42 (1st Cir. 2022) ...........................................5, 6

*Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27 (1st Cir. 2020)............................1, 4

*García-Catalán v. United States*, 734 F.3d 100 (1st Cir. 2013) ............................. 3-4

*Guevara v. Dorsey Lab'y, Div. of Sandoz, Inc.*, 845 F.2d 364 (1st Cir. 1988)............................10

*Janus v. AFSCME*, 138 S. Ct. 2448 (2018) ...........................................13

*Jones v. Secord*, 684 F.3d 1 (1st Cir. 2012)...................................................10

*Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020) .........................................9

*Liberty Leather Corp. v. Callum*, 653 F.2d 694 (1st Cir. 1981) .....................................7

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ...........................................9

*Mun. Stormwater Pond, In re*, 429 F. Supp. 3d 647 (D. Minn. 2019),
    *appeals dismissed*, 73 F.4th 975 (8th Cir. 2023) ...........................................12

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8
(1st Cir. 2009) ...............................................................................................................4

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) .................................................13

*Nat'l Review, Inc. v. Mann*, 140 S. Ct. 344 (2019) .........................................................13

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ...................................................13

*Norte Car Corp. v. FirstBank Corp.*, 25 F. Supp. 2d 9 (D.P.R. 1998) .........................4-5

*Payton v. Abbott Labs*, 512 F. Supp. 1031 (D. Mass. 1981)..........................................11

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239 (6th Cir. 2012) ............8

*Salinas v. United States*, 522 U.S. 52 (1997).................................................................14

*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012).................4

*Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58
(1st Cir. 1992) ...............................................................................................................7

*Suna v. Bailey Corp.*, 107 F.3d 64 (1st Cir. 1997)......................................................5, 7

*Taylor v. Airco, Inc.*, 503 F. Supp. 2d 432 (D. Mass. 2007), *aff'd sub nom.*
*Taylor v. Am. Chemistry Council*, 576 F.3d 16 (1st Cir. 2009) .........................11

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315 (1st Cir. 2008) ...........6

*U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40 (1st Cir. 2009) ...........................5

*United States v. Rodríguez-Torres*, 939 F.3d 16 (1st Cir. 2019) .................................14

*United States v. Sawyer*, 85 F.3d 713 (1st Cir. 1996) ...................................................14

*United States v. Velazquez-Fontanez*, 6 F.4th 205 (1st Cir. 2021), *cert. denied*,
142 S. Ct. 500 (2021) & 1164 (2022) ........................................................................4

CONSTITUTION, STATUTES, REGULATIONS, AND RULES

U.S. Const. amend. I ...........................................................................................11, 13, 14

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* .....1, 4, 13, 14, 15

      18 U.S.C. § 1962(a) ...........................................................................................14

      18 U.S.C. § 1962(b) ...........................................................................................14

      18 U.S.C. § 1962(c) ...........................................................................................14

      18 U.S.C. § 1962(d) ...........................................................................................14

18 U.S.C. § 1341 ...............................................................................................................14

18 U.S.C. § 1343 ...............................................................................................................14

Puerto Rico Regulations Against Misleading Practices and Advertisement,
      P.R. Dep't of Consumer Affs., Regul. 8599 (May 29, 2015) ...............................8

Fed. R. Civ. P.:

      Rule 9(b) ...............................................................................1, 4, 5, 7, 8, 13, 14

      Rule 10(c) ..............................................................................................................6

      Rule 12(b)(6)....................................................................................................1, 3


OTHER MATERIALS

"Greenhouse Effect:  Shell Anticipates A Sea Change," N.Y. Times, Dec. 20, 1989 ...................9

Under Federal Rule 12(b)(6), Shell plc moves to dismiss the Complaint with prejudice.[1]

## I.    INTRODUCTION

This Court should dismiss the Complaint for the reasons set forth in Defendants' Joint Motion To Dismiss. Shell plc ("Shell")[2] here identifies two more defects requiring dismissal.

*First*, Plaintiffs do not allege any facts supporting their sensational claim that Shell participated in a decades-long "campaign of deception" to defraud Puerto Rico's consumers. Compl. ¶ 6. Because Plaintiffs' claims sound in fraud, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *See Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 49 (1st Cir. 2020) (Rule 9(b) applies "not only to claims of fraud simpliciter but also to related claims as long as the central allegations of those claims 'effectively charge fraud'") (citation omitted). The claims against Shell do not meet this standard. Despite alleging a decades-long "worldwide strategy" to deceive consumers through "intentional misrepresentations," Compl. ¶¶ 2, 3, the Complaint fails to identify a single false or misleading statement that Plaintiffs claim Shell made. Nor do Plaintiffs plead any actionable omission by Shell. Plaintiffs do not allege that Shell had any unique notice or knowledge about climate risks relative to the scientific community, the government, or the public, or a legal duty to disclose any such risks. Additionally, alleged conduct or statements by industry groups and nonparties cannot be attributed to Shell.

*Second*, Plaintiffs' federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against Shell lack merit because Plaintiffs fail to allege that Shell committed any predicate racketeering acts or agreed to enter a conspiracy.

---

[1] Shell plc is party to motions to dismiss for lack of personal jurisdiction and failure to state a claim filed jointly with other Defendants and does not consent to personal jurisdiction.

[2] The Complaint erroneously conflates the activities of Shell plc with those of separately organized predecessors, subsidiaries, affiliates, and other nonparties. Shell plc expressly reserves the right to challenge this error in the future.

The Court should dismiss Plaintiffs' claims against Shell for these additional reasons.

## II.    BACKGROUND

The Complaint contends that, as a result of "misrepresentations" by Defendants, the municipalities of Puerto Rico and their citizens bought and used fossil fuels, which caused global climate change, which caused "the devastating destruction from the 2017 Atlantic Hurricane Season and the ongoing economic losses since 2017."  Compl. ¶ 3; *see id.* ¶¶ 46-48.  Plaintiffs allege that Defendants learned of the climate risks of burning fossil fuels "[d]ecades ago" and then "embarked on a corporate worldwide strategy to hide that information from the Plaintiffs." *Id.* ¶ 2.  Defendants allegedly "hid the dangers" of fossil fuels, "affirmatively misrepresented" the risks of using them, and "obstructed" Plaintiffs from "switching to alternative energy sources."  *Id*. ¶ 65.  According to Plaintiffs, had this alleged conduct not occurred, "Plaintiffs would, more likely than not, have avoided the severe storms of 2017 and the aftermath."  *Id.*

Despite alleging a decades-long public campaign of deception, neither the Complaint nor Plaintiffs' RICO Statement identifies any specific false or misleading statement made by Shell. Nor do Plaintiffs allege that Shell had any special knowledge of climate risks.

The Complaint contains few Shell-specific allegations.  There are some general statements about Shell's corporate structure.  *See id.* ¶¶ 52, 79, 83-94, 180.  The remaining allegations, none of which is alleged to be false or misleading, fall into two categories:

> Knowledge of climate risks.  Plaintiffs allege that Shell prepared:  (1) a "confidential internal report" in 1988 that "acknowledged global warming's anthropogenic nature," *id*. ¶¶ 346-347; (2) a 1994 report that "recognized the [United Nations Intergovernmental Panel on Climate Change ("IPCC")'s] conclusions" about climate change "as the mainstream view" and "warned of the potentially dramatic economic effects of 'ill-advised policy measures' relating to climate change," *id*. ¶ 388 (emphasis omitted); and (3) an "internal" scenario in 1998 predicting lawsuits if governments and energy companies ignored the views of scientists, *id*. ¶ 6.  Plaintiffs do not allege that Shell made any false or misleading statements in these three documents.

Plaintiffs allege that, in 1967, "with assistance from" other energy companies, Shell "gathered ocean data concerning its oil platforms" to study "wave, wind, barometric pressure, storms, sea level, and current changes and trends." *Id*. ¶ 306. The resulting report "was necessary to develop and calibrate environmental forecasting theories to protect the industry's platforms" and "guided their marketing strategies for the next five decades." *Id*. Plaintiffs do not allege that Shell made any misleading statements or undertook any marketing strategies in connection with this report.

Plaintiffs allege that a 1972 industry report "connect[ing] the rise in atmospheric $CO_2$ concentrations to the use of fossil fuels" "was disseminated" to Shell. *Id*. ¶ 309. Plaintiffs do not allege that the report contained any misleading statements.

Plaintiffs allege that Shell "patented a process to remove acidic gases, including $CO_2$, from gaseous mixtures" in 1973, *id*. ¶ 619(c), and that it "obtained a patent" for "drilling in previously unreachable Arctic areas" in 1984, *id*. ¶ 311. They also allege that a Shell subsidiary "factored rising sea levels" into plans for an offshore natural gas platform. *Id*. ¶ 312. Plaintiffs allege no misleading conduct or statements relating to these patents.

<u>Lobbying and trade associations</u>. Although the Complaint states that Plaintiffs "do not seek damages, or any relief based on any activity by Defendants that could be considered petitioning federal, state, or local governments," *id*. ¶ 10, Plaintiffs nevertheless allege that energy companies including Shell have spent "nearly $1 billion in lobbying funds and narrative capture" since December 2015, *id*. ¶ 584 (emphasis omitted), and that these companies spent a total of $135 million a year on "climate lobbying," *id*. ¶ 586. Plaintiffs further allege that Shell has been a member of various industry associations that allegedly engage in lobbying and advocacy. *See id*. ¶ 184 (alleging membership in the American Petroleum Institute ("API"), the Western States Petroleum Association, the American Fuel and Petrochemical Manufacturers, and the Global Climate Coalition ("GCC")); Pls.' RICO Statement ¶ 3(b). Plaintiffs accuse some associations of wrongdoing, but do not allege any specific wrongful conduct by Shell. The Complaint alleges that Shell "formally withdrew" from the GCC in 1997. Compl. ¶ 436.

Plaintiffs allege that Fred N. Singer "was paid as a consultant by" energy companies including Shell (without any details about that consulting), *id*. ¶¶ 489, 683, but Plaintiffs do not allege that Shell had any involvement in his climate-related work.

Based on these allegations, Plaintiffs seek to impose liability on Shell for "all of the ensuing impacts" allegedly suffered by Puerto Rico municipalities and citizens due to the 2017 hurricanes in the Atlantic Ocean. *Id.* ¶ 10.

## III.    LEGAL STANDARD

Courts in the First Circuit use a two-step analysis when evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See García-Catalán v. United States*, 734 F.3d

100, 103 (1st Cir. 2013).  First, courts must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).  Second, courts "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  *Id*. Plausible "means something more than merely possible."  *Id*.  Plaintiffs cannot avoid dismissal by "attempt[ing] to camouflage conclusory statements as allegations of fact."  *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013).

## IV.    ARGUMENT

### A.    Plaintiffs' Complaint Fails Because They Do Not Plead With Particularity That Shell Made Any Deceptive Statements Or Omissions

All of Plaintiffs' claims sound in fraud because they are based on an allegedly fraudulent scheme to deceive the public regarding the climate risks of combusting fossil fuels.  *See* Compl. ¶¶ 648-730 (alleging common-law consumer fraud, conspiracy to commit consumer fraud, and violations of Puerto Rico's regulations against misleading practices and advertisements); *id.* ¶¶ 731-766 (alleging RICO claims predicated on mail and wire fraud); *id.* ¶¶ 767-774 (alleging antitrust claim based in part on "fraudulent[ ] conceal[ment]"); *id.* ¶¶ 775-837 (same, for nuisance, strict liability, negligence, and unjust-enrichment claims).  Rule 9(b)'s heightened pleading requirement applies to these claims.  *See Foisie*, 967 F.3d at 49; *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (Rule 9(b) applies to state-law fraud claims asserted in federal court); *Feinstein v. RTC*, 942 F.2d 34, 42 (1st Cir. 1991) (Rule 9(b) applies to RICO claims that assert predicate acts of mail and wire fraud), *abrogated on other grounds by United States v. Velazquez-Fontanez*, 6 F.4th 205 (1st Cir. 2021), *cert. denied*, 142 S. Ct. 500 (2021) & 1164 (2022); *Norte Car Corp. v. FirstBank Corp.*, 25 F.

Supp. 2d 9, 15 (D.P.R. 1998) (dismissing antitrust claims based on alleged fraud "for failure to comply with Rules 8 and 9(b)").

Rule 9(b) requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This standard means that a complaint must specify the time, place, and content of an alleged false representation." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009) (internal quotation marks omitted). Rule 9(b) does not "allow plaintiffs to base claims of fraud on speculation and conclusory allegations," and instead "require[s] plaintiffs to allege facts that give rise to a strong inference of fraudulent intent." *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) (internal quotation marks omitted). Additionally, "[w]here there are multiple defendants, the specific role of each must be alleged." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 578 F. Supp. 3d 267, 285 (D.P.R. 2021) ("*FOMB*"), *aff'd*, 54 F.4th 42 (1st Cir. 2022).

### 1. Plaintiffs fail to allege that Shell made any false or misleading statements

Plaintiffs' claims fail because the Complaint does not identify a single false or misleading representation made by Shell. Instead, Plaintiffs rely on generalized claims of deception and allegations not attributable specifically to Shell. For example, Plaintiffs allege generally that Defendants "continued to collude by investing billions into a fraudulent marketing scheme to convince consumers that their fossil-fuel-based products did not—and would not—alter the climate, knowing full well the consequences of their combined carbon pollution on Puerto Rico." Compl. ¶ 6. But the Complaint fails to identify a single example of fraudulent or misleading marketing by Shell. Indeed, the Complaint does not include any alleged statements by Shell about the effects of Shell's fossil-fuel products on the climate at all.

The Complaint therefore fails to meet the requirement that it must allege each Defendant's "specific role" in any fraud.  *FOMB*, 578 F. Supp. 3d at 285.  Plaintiffs' claims against Shell should be dismissed on this ground alone.

The few Shell-specific statements in the Complaint further show Plaintiffs' failure to plead any deception or misrepresentation.  Shell has, according to Plaintiffs, "acknowledged global warming's anthropogenic nature" and "mention[ed] the need to consider policy changes" to address climate risks.  Compl. ¶¶ 346-347.  These statements allege no deception.  In fact, they are allegations to the contrary—that Shell has not been misleading and has long publicly acknowledged the issues related to climate change.

Plaintiffs reference, for example, a 1994 Shell report titled "The Enhanced Greenhouse Effect," which they allege "warned of the potentially dramatic economic effects of 'ill-advised policy measures' " relating to climate change, and "emphasized scientific uncertainty."  *Id.* ¶ 388 (emphases omitted).  But Plaintiffs do not allege that Shell publicly released the report or ever intended it to be made available for public consumption.  Plainly, an internal report cannot serve as the basis of a public-deception claim.  But even if the report were public, the Complaint does not claim that there are any false or misleading statements in the document.  Indeed, the claim that Shell allegedly "emphasized" scientific uncertainty is belied by the text of the very document from which Plaintiffs quote:[3]

- "[T]here is *complete agreement*" that "[h]uman activities have contributed to the increase in atmospheric greenhouse gas concentrations."  Compl. Ex. 30 at 2-3 (emphasis added);

---

[3] Because Plaintiffs appended the alleged Shell reports as exhibits to the Complaint, the Court may evaluate the reports in their entirety rather than relying on Plaintiffs' selective quotation.  *See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("Exhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6).") (quoting Fed. R. Civ. P. 10(c)).  Plaintiffs cannot rely on selective quotation from the alleged reports to manufacture plausible claims.

- The IPCC "represents the most coherent, authoritative and influential expression of scientific views on Climate Change." *Id*. at 2;
- It can be stated "with confidence" that "[h]uman activities have contributed to an increase in atmospheric greenhouse gas concentrations which must have some effect on the radiation balance which ultimately determines global climate." *Id*. at 13;
- "The overall objective is to promote an objective debate on the policy issues concerning possible climate change based on an understanding of the science." *Id*. at 14.

Far from emphasizing uncertainty about climate change, these statements acknowledge a connection between human activity and climate change and reflect a careful synthesis of the various scientific viewpoints of the time.

Similarly, the Complaint alleges that Shell predicted that a "series of violent storms" would affect the United States, that the storms would "spark a class-action consumer fraud suit" against energy companies, and that Plaintiffs bring this suit to "validate that prediction." Compl. ¶ 6. But this allegation fails to allege any deception or misrepresentation by Shell.

Indeed, this allegation, as well as Shell's alleged statements about the potential economic effects of policy measures, cannot be actionable as fraud. *See Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 65 (1st Cir. 1992) (claim of fraud was "fatally defective" because "[t]he alleged misrepresentations consisted only of opinions as to future events" and "[t]here were no circumstances indicating that plaintiff could justifiably rely on these opinions as 'facts'"); *Liberty Leather Corp. v. Callum*, 653 F.2d 694, 698 (1st Cir. 1981) (predictions are generally not actionable as fraud "because their truth cannot literally be known at the time they are made and because reliance upon such predictions is generally dismissed as unreasonable").

In short, Plaintiffs fail to allege any misleading or deceptive statements made by Shell. That violates Rule 9(b), which requires alleging specific statements that were "presented to the public" and "were false or misleading at the time they were made," and that a defendant "knew they were false or misleading." *Suna*, 107 F.3d at 69. For this reason, Plaintiffs' claims against Shell must be dismissed.

Plaintiffs' third cause of action—alleging violations of Puerto Rico's consumer-protection rules—should be dismissed for an additional and independent reason: the Complaint does not allege any deceptive or misleading advertising statements made by Shell in the consumer marketplace. The Puerto Rico Regulations Against Misleading Practices and Advertisement protect consumers from misleading advertisement of goods and services. *See El Día, Inc. v. Puerto Rico Dep't of Consumer Affs.*, 413 F.3d 110, 111-12 (1st Cir. 2005). Plaintiffs' general allegations that Shell "advertises, markets, and sells its products, including consumer products, in Puerto Rico," Compl. ¶ 88, or that "ocean data" "guided . . . marketing strategies for the next five decades," *id.* ¶ 306, do not identify any advertisement by Shell, let alone any false or misleading public statements about fossil-fuel products sold to consumers.

### 2.    Plaintiffs fail to allege that Shell committed fraud by omission

Plaintiffs likewise fail to allege that Shell committed fraud by omission or concealment. Rule 9(b) applies to omissions, and federal courts require a plaintiff to plead: "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the defendant] obtained as a consequence of the alleged fraud." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012).

Plaintiffs fail to allege that Shell omitted or concealed any information. Plaintiffs allege that a Shell working group "issued a confidential internal report" in 1988 that "acknowledged global warming's anthropogenic nature," warned about possible climate risks, and advised considering policy changes and further research. Compl. ¶¶ 346-347. But Plaintiffs do not allege that the report contained any information that the public or scientific community lacked. Nor could they: the report, appended to Plaintiffs' Complaint as Exhibit 24, presents "the latest (1986) state of knowledge" about the greenhouse effect as reflected in scientific research and

public sources.  Compl. Ex. 24 at 6.  For example, an appendix to the report features a 1984 publication by the American Chemical Society, which in turn describes two government studies published in 1983.  The first, a "report prepared by a committee under the auspices of the National Research Council (NRC)," "subscribes to the view that uncertainties in our knowledge of the greenhouse effect are so great that we should take no action now except to study the problem more intensively."  *Id.* at 61.  The second study was an "EPA report" that "conclude[d] that even though a significant warming is likely if we continue on our present path, there is no feasible way to change this path enough to avert the warming by more than a few years."  *Id.* These and the nearly 70 external sources the report cites show that the alleged "confidential internal" document merely summarized the existing state of scientific knowledge.[4]

Likewise, Plaintiffs do not—and cannot—allege that Shell failed to disclose any patents. Patents are a matter of public record, as the Complaint acknowledges.  *See* Compl. ¶ 311 & n.308.  Nor do Plaintiffs plead that the alleged design changes to the "Troll A platform" were done in secret.  Indeed, the Complaint cites a 1989 *New York Times* article announcing a redesign of the platform and the reason for that redesign.  *See id.* ¶ 312 & n.309; "Greenhouse Effect:  Shell Anticipates A Sea Change," N.Y. Times, Dec. 20, 1989 ("Whether global warming will raise the level of the world's oceans is still being debated, but engineers who build natural-

---

[4] Indeed, Plaintiffs do not allege that Shell had any special knowledge that the public or scientific community lacked because they cannot.  *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 507 (2007) (explaining that "the U.S. Weather Bureau began monitoring atmospheric carbon dioxide levels" in 1959 and that, by "the late 1970's, the Federal Government began devoting serious attention to the possibility that carbon dioxide emissions associated with human activity could provoke climate change"); *Juliana v. United States*, 947 F.3d 1159, 1166 (9th Cir. 2020) ("[T]he federal government has long understood the risks of fossil fuel use and increasing carbon dioxide emissions."); *id.* at 1164 ("the federal government has long promoted fossil fuel use despite knowing that it can cause catastrophic climate change"); *City of Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017, 1019 (N.D. Cal. 2018) ("The science dates back 120 years."), *vacated & remanded*, 960 F.3d 570 (9th Cir.), *op. am. & superseded on denial of reh'g*, 969 F.3d 895 (9th Cir. 2020).

gas production platforms at Shell Oil do not want to take chances. . . .  [T]he engineers are

designing a huge platform that anticipates rising water in the North Sea.").

Plaintiffs' claims also fail because Shell had no cognizable legal duty to disclose

information about climate risks.  Under Puerto Rico law, a manufacturer's duty to warn is

limited to informing the product user of the product's "dangerous character insofar as [the

manufacturer] is aware of it," but only if the manufacturer "has no reason to expect that those for

whose use the [product] is supplied will discover its condition and realize the danger involved."

*Guevara v. Dorsey Lab'y, Div. of Sandoz, Inc.*, 845 F.2d 364, 367 (1st Cir. 1988).  But Plaintiffs

do not allege that Shell violated a duty to warn users of fossil-fuel products about any direct

dangers associated with using those products.  Instead, Plaintiffs seek to impose a duty to warn

*the entire world* of potential harms from the cumulative effect of billions of individuals'

decisions over a century.  *See*, *e.g.*, Compl. ¶ 355 (alleging that "consumers, the public, and

regulators" should have been warned).  No such duty to warn the world of indirect risks exists

under Puerto Rico law, and this Court should not be the first to create a duty that Puerto Rico's

courts (or any others) have not recognized.  *See Jones v. Secord*, 684 F.3d 1, 11 (1st Cir. 2012)

(plaintiff "who made a deliberate choice to sue in federal court rather than in a New Hampshire

state court" was "not in a position to ask [the federal court] to blaze a new trail that the New

Hampshire courts have not invited").

Additionally, as the sources the Complaint cites clearly show, including the 1994 Shell

report discussed above, the climate risks of using fossil fuels have been generally known and

publicly discussed for decades.  *See*, *e.g.*, Compl. ¶ 305 n.295 (an American Institute of Physics

website discussing "The Discovery of Global Warming" states:  "In the early 1970s, the rise of

environmentalism raised public doubts about the benefits of any human activity for the planet.

Curiosity about climate change turned into anxious concern.  A few degrees of warming no longer

sounded benign, and as scientists looked into possible impacts they noticed alarming possibilities of rising sea levels and possible damage to agriculture.").  And under well-established law, there is no duty to warn when a purported risk is generally known or common knowledge.  *See Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 275 (1st Cir. 2003) ("[A] manufacturer cannot be held liable under either strict liability or negligence for failure to warn of a danger commonly known to the public. . . .  [A] manufacturer need not warn of a hazard if the average consumer ordinarily has knowledge of the dangers of the product.") (last alteration in original).

### 3.    The statements of other Defendants and industry organizations cannot be attributed to Shell

Allegations that Shell acted through industry associations or other Defendants and nonparties do not change the preceding analysis.  *See* Compl. ¶¶ 184, 445, 489.  To begin with, the Complaint describes lobbying and advocacy activity to encourage governments to take particular policy positions relating to the energy transition.  *See*, *e.g.*, *id.* ¶¶ 584, 586 (alleging that Defendants including Shell spent monies on lobbying related to energy policies); *id.* ¶ 365 (alleging that industry associations sought to "prevent[] U.S. adoption of the Kyoto Protocol").  These activities constitute core political speech protected by the First Amendment, and Plaintiffs have expressly disclaimed any challenge as to them.  *See id.* ¶ 10.

Regardless, conduct by industry associations and other Defendants cannot be attributed to Shell.  Courts regularly decline to impose liability where the plaintiff's sole contention is that a defendant belonged to an industry association, contributed to it, or attended meetings.  *See Taylor v. Airco, Inc.*, 503 F. Supp. 2d 432, 446-47 (D. Mass. 2007) (granting summary judgment because "Plaintiffs can do no more than offer evidence that individual Defendants sent representatives to meetings"), *aff'd sub nom. Taylor v. Am. Chemistry Council*, 576 F.3d 16 (1st Cir. 2009); *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1038 (D. Mass. 1981) ("There is nothing

11

inherently wrong with membership in an industry-wide trade association[ ] [or] with participating in scientific conferences . . . .  Indeed, these practices are probably common to most industries.").  In *In re Asbestos School Litigation*, for example, the plaintiffs argued that the defendant had joined a civil conspiracy of asbestos manufacturers to, among other things, "disseminate[ ] misleading information about the danger of asbestos," by becoming an "associate member" of an industry association.  46 F.3d 1284, 1287 (3d Cir. 1994).  The Third Circuit (with then-Judge Alito writing) disagreed and granted a writ of mandamus requiring the district court to enter summary judgment for the defendant.  *Id*. at 1288-90.  The district court's decision was "far outside the bounds of established First Amendment law" because "[j]oining organizations that participate in public debate, making contributions to them, and attending their meetings are activities that enjoy substantial First Amendment protection."  *Id.* at 1289, 1294.

Applying these standards, the alleged conduct of entities other than Shell cannot be attributed to Shell.  The Complaint does not specify what role (if any) Shell played in any actions by API, GCC, or other nonparties.  Plaintiffs do not allege that Shell participated in the dissemination of any allegedly false or misleading statement by any person, industry association, or otherwise.  Instead, the Complaint alleges (¶ 184) generally that Shell was a member of various organizations.  But because "[a] member of a trade group . . . does not necessarily endorse everything done by that organization or its members," *Asbestos*, 46 F.3d at 1290, mere membership or participation in these groups is not enough to state a claim against Shell as a matter of law, *see In re Mun. Stormwater Pond*, 429 F. Supp. 3d 647, 655 (D. Minn. 2019) (dismissing complaint because "a trade association is not a 'walking conspiracy' of its members"), *appeals dismissed*, 73 F.4th 975 (8th Cir. 2023).

The Complaint does allege Shell and certain other Defendants paid Fred Singer "as a consultant," but alleges no details about the nature of the consulting services rendered.

Compl. ¶¶ 489, 683. Merely alleging that a defendant paid someone to serve as a consultant, without any allegations that it authorized or intended any unlawful conduct by the consultant, is not actionable. Holding otherwise would impose liability on Shell "by reason of association alone," which is prohibited. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982). Additionally, Rule 9(b) requires more: Plaintiffs fail to allege any specifics about when Singer was allegedly paid, what work he produced as a consultant, any deceptive statements contained within that work, that Shell endorsed or otherwise disseminated any misleading statements by Singer, or how the public relied on and was misled as a result of his alleged work.

Moreover, it is "settled" law "that the First Amendment protects scientific expression and debate just as it protects political and artistic expression." *Board of Trs. of Leland Stanford Junior Univ. v. Sullivan*, 773 F. Supp. 472, 474 (D.D.C. 1991). Even if Singer's career could create liability for Shell by reason of association alone, which it cannot, imposing liability on Shell for alleged statements relating to climate change would violate Shell's First Amendment rights. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964) (First Amendment's protection "does not turn upon the truth, popularity, or social utility of the ideas and beliefs which are offered"); *Janus v. AFSCME*, 138 S. Ct. 2448, 2476 (2018) ("climate change" is "undoubtedly [a] matter[ ] of profound value and concern to the public"); *Nat'l Review, Inc. v. Mann*, 140 S. Ct. 344, 348 (2019) ("[c]limate change has staked a place at the very center of this Nation's public discourse," and First Amendment's "core purpose" "is to ensure that all opinions on such issues have a chance to be heard") (Alito, J., dissenting from denial of certiorari).

### B. Plaintiffs' RICO Claims Fail Because They Do Not Plead That Shell Committed Any Predicate Acts Or Entered Any Conspiracy

The Court also should dismiss Plaintiffs' RICO claims because Plaintiffs fail to allege any predicate racketeering acts by Shell or that Shell agreed to conspire with anyone. To state a

claim under 18 U.S.C. § 1962(a), (b), or (c), Plaintiffs must allege that Shell engaged in "a pattern of racketeering activity."  Additionally, to plead a violation of § 1962(a) and (b), Plaintiffs must allege that they were harmed by (a) "use or investment of income derived from a pattern of racketeering activity," and (b) "acquisition or maintenance of control of an enterprise through a pattern of racketeering activity."  *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91-92 (1st Cir. 1995).

Plaintiffs fail to allege that Shell committed even a single racketeering act, much less "a pattern of racketeering activity."  Plaintiffs purport to allege two types of predicate acts by Defendants generally:  (1) mail fraud under 18 U.S.C. § 1341; and (2) wire fraud under 18 U.S.C. § 1343.  Pls.' RICO Statement ¶ 8(b), (d).  These offenses require alleging a specific false or misleading statement, *see Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997) (holding that Rule 9(b) applies to "RICO pleadings of mail and wire fraud"), made as part of a scheme to obtain money or property, *see* 18 U.S.C. §§ 1341, 1343.  But Plaintiffs do not allege that Shell made any specific false or misleading statement, or even made "use of the mails or interstate wire communications in furtherance of [a] scheme" to defraud, as is required by the mail and wire fraud statutes.  *United States v. Sawyer*, 85 F.3d 713, 723 (1st Cir. 1996).  By the same token, Plaintiffs do not allege any facts suggesting that Shell obtained any income from—or control of an enterprise through—a pattern of racketeering activity.  Having failed to allege these threshold requirements, Plaintiffs do not state a claim under RICO's substantive provisions.

Nor have Plaintiffs stated a claim under RICO's conspiracy provision, 18 U.S.C. § 1962(d). Plaintiffs must plead "that the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators 'to further [the] endeavor which, if completed, would satisfy all the elements of a substantive [RICO] offense.'"  *United States v. Rodríguez-Torres*, 939 F.3d 16, 23-24 (1st Cir. 2019) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)) (brackets in original).

The Complaint has not plausibly alleged any agreement between Shell and others to violate RICO. Plaintiffs' list of "predicate acts and material misrepresentations" with respect to the GCC enterprise does not include any specific alleged conduct by Shell. Compl. ¶ 733. Nor does the Complaint include allegations as to whether (if at all) Shell indirectly: "caused the publication of a series of newspaper articles" undermining science; partook in "an action plan to defeat the Kyoto agreement and greenhouse gas regulation";[5] or "funded and supported various groups to perpetuate [a] pattern of deception." *Id.*[6]

The sum total of factual allegations in the Complaint connecting Shell to GCC is threadbare and implicates none of these above-listed actions, let alone an intentional agreement to commit or advance racketeering acts. Rather, Plaintiffs have alleged that "Shell Oil" was an "early" member of the GCC and then "formally withdrew," Compl. ¶¶ 184(g), 436, and that Shell warned that lawsuits could result if the U.S. government and companies neglected the views of scientists, Pls.' RICO Statement ¶¶ 18-19. The Complaint does not allege that Shell agreed to pursue unlawful activity. And, again, liability cannot hinge only on membership in industry associations. *See supra* Part IV.A.3. Plaintiffs do not allege that Shell committed any cognizable predicate acts or entered any conspiracy, so their RICO claims must be dismissed.

## CONCLUSION

The Court should dismiss Plaintiffs' entire Complaint against Shell with prejudice.

---

[5] Plaintiffs' attempt (Compl. ¶ 445) to associate Shell with the action plan solely based on Shell's membership in API improperly attempts to attribute API's alleged conduct to Shell, in violation of pleading principles and the First Amendment. *See supra* Part IV.A.3.

[6] Plaintiffs allege that "many" companies, including Shell and several Defendants, "reorganized" the GCC in 1992. Compl. ¶ 367. But the document this allegation cites says nothing about Shell participating; it does not reference a "reorganiz[ation]" at all. *Id.* ¶ 367 & n.358. In any event, that is not a predicate racketeering act, and it falls far short of plausibly alleging that Shell "conducted and participated for decades in the conduct" of an illegal enterprise's affairs. *Id.* ¶ 733. On the contrary, Plaintiffs allege Shell "withdrew." *Id.* ¶ 436.

Dated:  October 13, 2023                    Respectfully submitted,

                                    By:    */s/ Carlos A. Valldejuly*

                                    Carlos A. Valldejuly (USDC No. 209505)
                                    José J. Colón García (USDC No. 308010)
                                    **O'NEILL & BORGES LLC**
                                    250 Muñoz Rivera Avenue, Suite 800
                                    San Juan, Puerto Rico 00918-1813
                                    (787) 764-8181
                                    carlos.valldejuly@oneillborges.com
                                    jose.colon@oneillborges.com

                                    David C. Frederick (*pro hac vice*)
                                    James M. Webster, III (*pro hac vice*)
                                    Minsuk Han (*pro hac vice*)
                                    Daniel S. Severson (*pro hac vice*)
                                    Grace W. Knofczynski (*pro hac vice*)
                                    Vetan Kapoor (*pro hac vice*)
                                    **KELLOGG, HANSEN, TODD, FIGEL
                                       & FREDERICK, P.L.L.C.**
                                    1615 M Street, N.W., Suite 400
                                    Washington, D.C. 20036
                                    (202) 326-7900
                                    dfrederick@kellogghansen.com
                                    jwebster@kellogghansen.com
                                    mhan@kellogghansen.com
                                    gknofczynski@kellogghansen.com
                                    dseverson@kellogghansen.com
                                    vkapoor@kellogghansen.com

                                    *Counsel for Defendant*
                                    *Shell plc (f/k/a Royal Dutch Shell plc)*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on October 13, 2023, the document above was electronically filed with the Clerk of Court using the CM/ECF system, which automatically sent notification to all parties of record.

*/s/ Carlos A. Valldejuly*
Carlos A. Valldejuly

O'NEILL & BORGES LLC

*Counsel for Defendant*
*Shell plc (f/k/a Royal Dutch Shell plc)*