UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE MUNICIPALITIES OF BAYAMÓN, CAGUAS, LOÍZA, LARES, BARRANQUITAS, COMERÍO, CAYEY, LAS MARÍAS, TRUJILLO ALTO, VEGA BAJA, AÑASCO, CIDRA, AGUADILLA, AIBONITO, MOROVIS, and MOCA on behalf of themselves and others similarly situated, known as the MUNICIPALITIES OF PUERTO RICO,<br><br>Plaintiffs,<br><br>v.<br><br>EXXON MOBIL CORP, SHELL PLC F.K.A. ROYAL DUTCH SHELL PLC, CHEVRON CORP, BP PLC, CONOCOPHILLIPS, MOTIVA ENTERPRISES LLC, OCCIDENTAL PETROLEUM F.K.A. ANADARKO PETROLEUM CORP, BHP, RIO TINTO PLC, XYZ CORPORATIONS 1-100, and JOHN AND JANE DOES 1-100,<br><br>Defendants. | Civil Case No. 3:22-cv-01550<br><br>Re:<br>Consumer Fraud; Deceptive Business Practices; Racketeer and Corrupt Organizations Act, 18 U.S.C. § 1962; Sherman Act, 15 U.S.C. § 1 et seq.; Public Nuisance; Strict Liability – Failure to Warn; Strict Liability – Design Defect; Negligent Design Defect; Private Nuisance; Unjust Enrichment |

**DEFENDANT CHEVRON CORPORATION'S BRIEF IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 3

    I.      The Complaint Improperly Attempts to Hold Chevron Liable for First Amendment-Protected Alleged Speech and Membership in Advocacy Groups, Not for Any Chevron-Specific Speech or Act ........................................... 3

          A.      Despite Its Length, the Complaint Rarely Mentions Chevron, Targeting It Instead in a Derivative Capacity ............................................. 3

          B.      The First Amendment Precludes the Complaint's Attempt to Hold Chevron Liable Under a Theory of "Group-Pleading" or Derivative Responsibility ....................................................................................................... 4

    II.     The Complaint Against Chevron Is Too Bereft of Allegations to Survive Under Any Standard, Let Alone the Applicable Rule 9(b) Heightened-Pleading Standard ................................................................................................... 8

CONCLUSION ............................................................................................................................... 11

# TABLE OF AUTHORITIES
**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
 600 U.S. 570 (2023) ........................................................................................................... 5, 6

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
 486 U.S. 492 (1988) ............................................................................................................... 7

*American Electric Power Co., Inc. v. Connecticut*,
 564 U.S. 410 (2011) ............................................................................................................... 7

*Amphastar Pharms. Inc. v. Momenta Pharms., Inc.*,
 850 F.3d 52 (1st Cir. 2017) .................................................................................................... 7

*In re Asbestos School Litig.*,
 46 F.3d 1284 (3d Cir. 1994) ................................................................................................ 10

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................................... 8, 9

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................................... 8

*Brown v. Hartlage*,
 456 U.S. 45 (1982) ................................................................................................................. 6

*Caro-Bonet v. Lotus Mgmt.*,
 LLC, 195 F. Supp. 3d 428 (D.P.R. 2016) ............................................................................ 9

*Citizens Against Rent Control Coalition for Fair Housing v. Berkeley*,
 454 U.S. 290 (1981) ............................................................................................................... 5

*Citizens United v. Fed. Election Comm'n*,
 558 U.S. 310 (2010) ........................................................................................................... 2, 5

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
 140 S. Ct. 1009 (2020) ........................................................................................................... 9

*Cordero-Hernandez v. Hernandez Ballesteros*,
 449 F.3d 240 (1st Cir. 2006) ................................................................................................. 9

*Dejonge v. Oregon*,
 299 U.S. 353 (1937) ............................................................................................................... 6

*Democratic Nat'l Comm. v. Russian Fed'n*,
 392 F. Supp. 3d 410 (S.D.N.Y. 2019) ................................................................................ 10

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

*Foisie v. Worcester Polytechnic Inst.*,
   967 F.3d 27 (1st Cir. 2020) ................................................................................................8

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ...........................................................................................................6

*Gonzalez-Camacho v. Banco Popular de P.R.*,
   318 F. Supp. 3d 461 (D.P.R. 2018) ....................................................................................8

*InterGen N.V. v. Grina*,
   344 F.3d 134 (1st Cir. 2003) ..............................................................................................9

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
   138 S. Ct. 2448 (2018) .......................................................................................................1

*Libertad v. Welch*,
   53 F.3d 428 (1st Cir. 1995) ................................................................................................5

*N.A.A.C.P. v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) ............................................................................................2, 3, 5, 6

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
   138 S. Ct. 2361 (2018) ...................................................................................................6, 7

*Ocasio-Hernandez v. Fortuno-Burset*,
   640 F.3d 1 (1st Cir. 2011) ..................................................................................................8

*Santopietro v. Howell*,
   857 F.3d 980 (9th Cir. 2017) .............................................................................................5

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ...........................................................................................................5

*Town of Mamakating, v. Lamm*,
   2015 WL 5311265 (S.D.N.Y. Sept. 11, 2015) .................................................................10

*United Mine Workers v. Pennington*,
   381 U.S. 657 (1965) ...........................................................................................................7

*United States v. Alvarez*,
   567 U.S. 709 (2012) ...........................................................................................................6

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

### Rules

Fed. R. Civ. P. 9(b) ................................................................................................................2

## INTRODUCTION

Defendants' joint Rule 12(b)(6) motion to dismiss amply demonstrates that the Complaint fails to state a claim against any Defendant. The present brief confirms in more specific detail why the Complain fails to state a claim as against Defendant Chevron Corporation ("Chevron") in particular—which Plaintiffs concede has had no presence or operations in Puerto Rico since 2012.[1]

The Complaint attempts to hold Chevron liable for lawful political advocacy and petitioning activities, and thus runs headlong into the First Amendment. But because Plaintiffs cannot identify any actionable speech or conduct by Chevron itself, Plaintiffs improperly seek to pin liability on Chevron for the alleged speech of others. This, in turn, is based almost exclusively on Chevron's purported membership in trade associations or other groups of which Chevron is alleged to have been a member—groups that themselves engaged in plainly protected, lawful speech and conduct. Plaintiffs' claims against Chevron, therefore, are doubly improper, foundering on the First Amendment both as a matter of substantive content and impermissible derivative liability.

The Complaint alleges that Chevron's liability arises from asserted membership in trade and advocacy groups engaged with the political issues of climate change and transboundary pollution. But "climate change" is a "matter[] of profound value and concern to the public," *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2476 (2018) (internal quotation marks omitted), and Chevron, like the other Defendants, has a right to speak publicly about these issues, both individually and collectively with others, without threat of governmental

---

[1] As noted in the Joint Brief, on March 29, 2023, to facilitate and streamline the briefing on the anticipated motions to dismiss, Plaintiffs and Defendants filed a *Joint Motion For Extension of Time to Answer or Otherwise Respond to the Complaint and to Establish Briefing Schedule and Other Procedural Terms Concerning Motion to Dismiss* (ECF Doc. No. 25, the "Joint Motion"). The Joint Motion requested an Order setting a briefing schedule for the motions to dismiss and related papers (including 15-page individual Defendant briefs if particular Defendants so elected) and granting other procedural stipulations, including page limitations on the motions, oppositions and replies and the period of time that Plaintiffs or Defendants would have to file the corresponding papers. *Id.* ¶ 3b-c. By Order entered on March 30, 2023, the Court granted the Joint Motion. *See* ECF Doc. No. 31. Chevron files this separate brief pursuant to the Joint Motion and the March 30 Order.

interference.  *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010).  Group liability for speech is strictly circumscribed, for "[t]he First Amendment [ ] restricts the ability of the State to impose liability on an individual solely because of his association with another." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 918–19 (1982).  But that is exactly what the Complaint attempts to do insofar as Chevron is concerned: hold Chevron liable for disfavored alleged speech and for alleged membership in groups that themselves engaged in protected speech and petitioning activity.  This attempt to silence businesses that Plaintiffs view as their political adversaries on public issues is a direct attack on the First Amendment.  It cannot succeed.

As for the substance of Plaintiffs' claims against Chevron, the Complaint relies on boilerplate and conclusory allegations of a purported "conspiracy" to reduce regulation of fossil fuels or increase their production as the basis for liability.  This is because Plaintiffs have nothing else— no alleged "facts" regarding Chevron's own speech or own acts that Plaintiffs could even potentially marshal to try to state a claim.  Indeed, what few Chevron-specific allegations the Complaint does include are so sparse, so bereft of content, and overwhelmingly so stale—sometimes decades-old—that they must be dismissed out of hand.  Under any standard, these allegations fail to state a claim, but they fall especially short of the requirement Rule 9(b) sets for allegations sounding in fraud, which must be "state[d] with particularity."  Fed. R. Civ. P. 9(b).

In sum, with no basis for even the remotest plausible inference that Chevron participated in *any* unlawful conduct under *any* standard, the Complaint should be dismissed.

## ARGUMENT

I. **The Complaint Improperly Attempts to Hold Chevron Liable for First Amendment-Protected Alleged Speech and Membership in Advocacy Groups, Not for Any Chevron-Specific Speech or Act**

The First Amendment places strict limits on the ability of plaintiffs, like the government actors here, to punish disfavored persons for their speech or their associations with others, especially where subjects of public interest are at issue. *See Claiborne Hardware*, 458 U.S. at 918–19. But this improper "group pleading" is exactly what Plaintiffs here attempt to do, and they come nowhere close to overcoming those substantial constitutional and pleading hurdles with respect to Chevron.

A. **Despite Its Length, the Complaint Rarely Mentions Chevron, Targeting It Instead in a Derivative Capacity**

The Complaint spans 247 pages (plus 32 more for the Racketeering Statement), but it contains only a handful of allegations specific to Chevron. And these few, threadbare allegations are so conclusory and superficial they cannot possibly suffice to establish the sweeping liability to which Plaintiffs purport to lay claim.

Plaintiffs allege that Chevron is a large energy company, Compl. ¶¶ 95-103, that has participated in trade groups and advocacy associations, such as the American Petroleum Institute ("API"), the Western States Petroleum Association, The American Fuel and Petrochemical Manufacturers, the Information Council for the Environment, the Global Climate Coalition ("GCC"); and the API's Global Climate Science Communications Team (GCST). *Id.* ¶¶ 184, 367, 444-45; Racketeering Statement ¶¶ 3(b), 9. Chevron allegedly spent money "on climate lobbying," Compl. ¶ 586, and paid consultants who engaged in political lobbying, *id.* ¶ 683. The Complaint also alleges that Chevron provided "assistance" to Shell in 1967 to gather some ocean data, *id.* ¶ 306, and obtained patents for arctic drilling, *id.* ¶¶ 310-11.

The Complaint also suggests that Chevron was somehow engaged in a scheme to undermine the scientific consensus and sow doubt about climate science. In other words, the Complaint accuses Chevron of sharing its views about climate change in the public square. And here, the allegations are exceedingly vague as to Chevron and entirely derivative of others' speech and actions. The Complaint asserts that "Chevron" (among others) "promoted climate change denial," Compl. ¶ 417 n.399, because it was, allegedly, a member of the GCST that advocated to the public about climate change and climate science, *id.* ¶ 445, as well as the "Information Counsel for the Environment," *id.* ¶ 185; *see also* Racketeering Statement ¶2(c). It further accuses Chevron of allocating funds for lobbyists to effect "narrative capture," Compl. ¶ 584, while "purport[ing] to accept" climate science, "*id.* ¶ 607.

This alleged departure from purported scientific consensus—to the extent the Complaint suggests Chevron had any role to play in the alleged "conspiracy" at all—forms the basis for Plaintiffs' attempt to impose massive liability against this select group of Defendants for a scientific, public policy, and political problem in which every consumer and every government in the world—*including Plaintiffs*—plays a part. Yet, Chevron itself is not alleged to have made any specific statement as part of this "conspiracy."

## B. The First Amendment Precludes the Complaint's Attempt to Hold Chevron Liable Under a Theory of "Group-Pleading" or Derivative Responsibility

By seeking to punish Chevron (and the other Defendants) for attempting to influence government action through lawful means and to advocate to the public about energy regulation and production and climate change, the Complaint violates the First Amendment's bar against liability for this protected speech and petitioning activity.

Plaintiffs' conclusory allegations of a "conspiracy" to mislead the consumers of Puerto Rico are unavailing, because federal statutes prohibiting *unlawful* conspiracies to commit specifically

4

enumerated wrongful *acts* are no invitation to punish groups for their *lawful* political *speech* and advocacy—simply because the government dislikes the message. *See Libertad v. Welch*, 53 F.3d 428, 443 (1st Cir. 1995) (observing that RICO liability "for mere membership in an association, particularly when that association is ideological, may conflict with the First Amendment"), *overruled on other grounds as recognized by United States v. Velazquez-Fontanez*, 6 F.4th 206, 213 n.2 (1st Cir. 2021); *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023) ("[T]he First Amendment protects acts of expressive association."). These allegations cannot survive the scrutiny of the First Amendment or its offshoot, the *Noerr-Pennington* doctrine.

Chevron, like other speakers in the United States, has a First Amendment right to discuss issues of public import in the public square, even in ways that the municipal governments here might disagree with. *Citizens United*, 558 U.S. at 340; *Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (stating that First Amendment does not permit restrictions on protected speech "simply because it is upsetting"). And the Supreme Court has been equally clear that First Amendment-protected speech and petitioning rights extend to membership in groups, as "'the practice of persons sharing common views banding together to achieve a common end is deeply embedded in the American political process.'" *Claiborne Hardware*, 458 U.S. at 907 (quoting *Citizens Against Rent Control Coalition for Fair Housing v. Berkeley*, 454 U.S. 290, 294 (1981)). As such, in a case alleging liability for membership in a group, the plaintiff bears a heavy burden "of demonstrating that [unprotected conduct] rather than protected conduct" caused the alleged harm. *Id*. Plaintiffs here may not escape this requirement simply by alleging that "Defendants" are supposedly responsible for a group's conduct. *See Santopietro v. Howell*, 857 F.3d 980, 990 (9th Cir. 2017). Even if Plaintiffs could theoretically show that *some* Defendants or members of any of the associations engaged in unlawful conduct (an assumption which itself has no legal or factual support), it is well established

that "[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *Claiborne*, 458 U.S. at 908 (citing *Dejonge v. Oregon*, 299 U.S. 353 (1937)). To survive under Rule 12(b)(6), Plaintiffs would need to demonstrate that the Complaint adequately alleges liability for *Chevron's own* unprotected speech or acts, but Plaintiffs cannot do so.

Plaintiffs presume that speech on matters of public concern can be punished when it allegedly is contrary to "the scientific consensus." But "the First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply misguided." *303 Creative LLC v. Elenis*, 600 U.S. at 586 (quotations omitted). Plaintiffs misunderstand both the fundamental principles governing our free society, as well as the First Amendment's truth-seeking function, which rejects suppressing alleged "error" in favor of creating space to challenge it with counter-speech. The mere fact that speech is unpopular or allegedly contrary to a scientific or professional "consensus"—however defined—does not make it punishable or a proper basis for tort liability. "Professionals might have a host of good-faith disagreements, both with each other and with the government, on many topics in their respective fields." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2374–75 (2018). "[U]nder the regime of [the First] Amendment 'we depend for ... correction not on the conscience of judges and juries but on the competition of other ideas.'" *Brown v. Hartlage*, 456 U.S. 45, 61 (1982) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974)); *see also United States v. Alvarez*, 567 U.S. 709, 752 (2012) (Alito, J., dissenting) ("Even where there is a wide scholarly consensus concerning a particular matter, the truth is served by allowing that consensus to be challenged without fear of reprisal."). "[T]he best test of truth is the power of the thought to get itself accepted in the competition of the market, and the people lose when the government is the one

deciding which ideas should prevail." *Nat'l Inst. of Fam. & Life Advocs.*, 138 S. Ct. at 2375 (internal quotation marks and citation omitted). The subject of climate change is no exception. In fact, as Justice Ginsburg observed in the Supreme Court's seminal case on climate change, *American Electric Power Co., Inc. v. Connecticut*, conflicting views on practical tradeoffs are the essential building blocks of sound regulatory policy, not inconvenient expressions to be punished: "The appropriate amount of regulation in any particular greenhouse gas producing sector cannot be prescribed in a vacuum: As with other questions of national or international policy, *informed assessment of competing interests is required*. Along with the environmental benefit potentially achievable, *our Nation's energy needs and the possibility of economic disruption must weigh in the balance*." 564 U.S. 410, 427 (2011) (emphasis added).

For the same reasons, the *Noerr-Pennington* doctrine plainly forbids holding Chevron liable for alleged participation in groups based on the groups' political advocacy. As discussed in the Joint Motion To Dismiss, liability cannot arise from "petitioning" the government for policy change, including "indirect petitioning" such as "a publicity campaign directed at the general public" that is "part of an effort to influence legislative or executive action." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499, 503 (1988); *see also United Mine Workers v. Pennington*, 381 U.S. 657, 669–70 (1965) (no liability for "a concerted effort to influence public officials"); *Amphastar Pharms. Inc. v. Momenta Pharms., Inc.*, 850 F.3d 52, 56 (1st Cir. 2017) (*Noerr-Pennington* "provides that a Sherman Act violation cannot be 'predicated upon mere attempts to influence the passage or enforcement of laws.'"). The allegations against Chevron and the supposed "enterprise" seek to impose liability for protected petitioning activity, including supporting "lobbying" on climate-related legislation, joining advocacy groups, engaging with political consultants to achieve political objectives, and advocating policy goals to the public. Compl. ¶¶ 184,

321, 367, 586, 683.  *Noerr-Pennington* prohibits liability based on allegations like these.

## II. The Complaint Against Chevron Is Too Bereft of Allegations to Survive Under Any Standard, Let Alone the Applicable Rule 9(b) Heightened-Pleading Standard

Aside from Plaintiffs' improper attempt to hold Chevron liable for the speech and acts of others, such as trade associations, the Complaint contains no even arguably colorable theory by which to hold Chevron liable.  Plaintiffs' allegations are governed by the heightened pleading standard of Federal Rule of Civil Procedure 9(b) because they "effectively charge fraud." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 49 (1st Cir. 2020) (citation omitted).  But under any standard, the Complaint plainly does not "contain enough factual material to 'raise a right to relief above the speculative level'" arising from any alleged activity of Chevron.  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Indeed, the allegations suggest nothing more than rank speculation and outdated, time-barred assertions about various entities, many of which Plaintiffs even admit are not the same corporate entity as Chevron Corporation, the sole Chevron entity joined in this action.

As discussed above, the allegations against Chevron to support its participation in a supposed "conspiracy" amount to nothing more than a barren, conclusory list of non-actionable statements that fail to state any plausible claim for relief.  At *most*, the Complaint makes the wholly uncontroversial assertions that Chevron has transnational operations, Compl. ¶¶ 95-103, and participates in trade groups, *id*. ¶¶ 184, 367, 444-45, some of which are alleged to have or have had certain goals for public persuasion and policy change, *id*. ¶ 683.

Beyond this short and meager list, no paragraph of the Complaint suggests that Chevron engaged in conduct satisfying the "basic elements of" *any* "cause of action." *Gonzalez-Camacho v. Banco Popular de P.R.*, 318 F. Supp. 3d 461, 471 (D.P.R. 2018)).  Such "threadbare assertions"

fail to permit any inference that *Chevron* committed a racketeering, antitrust, or Puerto Rico law violation of any kind. *Iqbal*, 556 U.S. at 679. They certainly fail to meet Rule 9(b)'s particularity requirement to show "the time, place and content of the alleged [actions] perpetrating that fraud." *Caro-Bonet v. Lotus Mgmt.*, LLC, 195 F. Supp. 3d 428, 433 (D.P.R. 2016); *see also Cordero-Hernandez v. Hernandez Ballesteros*, 449 F.3d 240, 244 (1st Cir. 2006). It is Plaintiffs' burden to allege with specificity that Chevron committed particular conduct that meets the "legal elements" of their chosen causes of action. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The Complaint's allegations do not even come close.

Any remaining "threadbare assertions" against Chevron are so outdated and manifestly time bared that they are irrelevant and attempts to base liability upon them are frivolous. The Complaint suggests Chevron "assist[ed]" with the gathering of ocean data in 1967, Compl. ¶ 306, but fails to connect that assertion to any liability on Chevron's part. The Complaint also asserts Chevron was a member of a "Task Force" that Plaintiffs concede dissolved in 1983. *Id.* ¶ 321; *see also* Racketeering Statement ¶ 3(b). And it suggests that Chevron was a member of a group in the 1970's known as the "Seven Sisters," who supposedly controlled 85% of the world's petroleum, Comp. ¶ 67, but the very same allegation admits even this charge is not actually against Chevron, as it really lists a number of companies that once formed the "Seven Sisters," some of which it alleges are "now Chevron," Compl. ¶ 67 n.24. Thus, the Complaint's attempt to draw Chevron into an alleged conspiracy fails to make any connection between today's Chevron Corporation and the entities that once allegedly formed the "Seven Sisters"—setting aside that the allegations give rise to no liability to begin with, *see InterGen N.V. v. Grina*, 344 F.3d 134, 149–50 (1st Cir. 2003) (federal law "instruct[s] federal courts that the corporate form" yields only to "compelling policy objective[s]").

Plaintiffs further fail to allege a single fact showing how *Chevron* participated in the alleged RICO "enterprise," and Plaintiffs in fact concede that the purported "enterprise," the GCC—which represented a broad spectrum of U.S. industry, including agriculture, utilities, oil, gas, railroads, automobiles, chemicals, mining, minerals, and broad business groups—disbanded in 2002.  Racketeering Statement ¶¶ 2(b), 8(b); *see also Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 440 (S.D.N.Y. 2019) ("A plaintiff may not simply 'string' [ ] together . . . various defendants and label[ ] them an enterprise.") (quoting *Town of Mamakating, v. Lamm*, No. 15-cv-2865, 2015 WL 5311265, at *9 (S.D.N.Y. Sept. 11, 2015)).  And they fail to even allege that Chevron supported the statements or allegedly "unlawful" aims of these various trade associations and lobbying groups.  *See In re Asbestos School Litig.*, 46 F.3d 1284, 1290 (3d Cir. 1994) (Alito, J.) (recognizing that, generally, a "member of a trade group or other similar organization does not necessarily endorse everything done by that organization or its members").  Nothing remains to draw Chevron into any purported "conspiracy."  As explained in the Joint Motion to Dismiss, no conspiracy has been adequately alleged to exist:  At most, Defendants participated in *lawful* trade groups and advocacy associations that themselves engaged in First Amendment-protected conduct.  And no allegation—specific or general—about Chevron changes this fact, because, quite simply, Chevron is virtually absent from almost the entirety of the Complaint's corpus, and is instead lumped generically as among the non-specific "Defendants" supposedly responsible for all manner of undifferentiated speech and activities.

In their Opposition, Plaintiffs will be unable to demonstrate how the Complaint states a claim against Chevron based on anything Chevron itself is alleged to have said or done, much less with the particularity demanded by Rule 9(b).  Because the Complaint lacks any remotely plausible allegations against Chevron in particular, it should be dismissed as to Chevron.

## CONCLUSION

For these reasons, as well as for those stated in Defendants' Joint Motion to Dismiss, the Complaint should be dismissed with prejudice.

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date the foregoing joint motion was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys and participants of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 13th day of October, 2023

By: s/*Roberto C. Quiñones-Rivera*
Roberto C. Quiñones-Rivera
USDC-PR Bar No. 211512
Eduardo A. Zayas-Marxuach
USDC-PR Bar No. 216112
Myrgia M. Palacios-Cabrera
USDC-PR Bar No. 230807
MCCONNELL VALDÉS LLC
P.O. Box 364225
San Juan, PR 00936-4225
Telephone:  787-250-2631
Facsimile:  787-474-9201
E-mail: rcq@mcvpr.com
E-mail: ezm@mcvpr.com
E-mail: mpc@mcvpr.com

Theodore J. Boutrous, Jr. (*pro hac vice*)
William E. Thomson (*pro hac vice*)
Joshua D. Dick (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
E-mail: tboutrous@gibsondunn.com
E-mail: wthomson@gibsondunn.com
E-mail: jdick@gibsondunn.com

        Thomas G. Hungar (*pro hac vice*)
        GIBSON, DUNN & CRUTCHER LLP
        1050 Connecticut Avenue NW
        Washington, DC 20036
        Telephone: (202) 887-3784
        E-mail: thungar@gibsondunn.com

        Neal S. Manne (*pro hac vice* forthcoming)
        Erica Harris (*pro hac vice* forthcoming)
        SUSMAN GODFREY LLP
        1000 Louisiana, Suite 5100
        Houston, TX 77002
        Telephone:  713.651.9366
        Facsimile:  713.654.6666
        E-mail:  nmanne@susmangodfrey.com
        E-mail:  eharris@susmangodfrey.com

        *Attorneys for Defendant*
        *CHEVRON CORPORATION*