# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE MUNICIPALITIES OF BAYAMÓN, CAGUAS, LOÍZA, LARES, BARRANQUITAS, COMERÍO, CAYEY, LAS MARÍAS, TRUJILLO ALTO, VEGA BAJA, AÑASCO, CIDRA, AGUADILLA, AIBONITO, MOROVIS, MOCA, BARCELONETA, CAMUY, CATAÑO, SA-LINAS, ADJUNTAS, ARROYO, CULEBRA, DORADO, GUAYNABO, HORMIGUEROS, JUNCOS, LAJAS, MANATÍ, NAGUABO, NARANJITO, UTUADO, VILLALBA, COAMO, OROCOVIS, VIEQUES, and YABUCOA on behalf of themselves and others similarly situated, known as the MUNICIPALITIES OF PUERTO RICO, <br><br> Plaintiffs, <br><br> v. <br><br> EXXON MOBIL CORP., SHELL PLC F.K.A. ROYAL DUTCH SHELL PLC, CHEVRON CORP, BP PLC, CONOCOPHILLIPS, MO-TIVA ENTERPRISES, LLC, OCCIDENTAL PETROLEUM F.K.A. ANA-DARKO PETROLEUM CORP, BHP, RIO TINTO PLC, AMERICAN PETROLEUM IN-STITUTE, XYZ CORPORATIONS 1-100, and JOHN AND JANE DOES 1-100, <br><br> Defendants. | Civil Case No. 3:22-cv-01550-SCC-HRV <br><br> Re: <br> Consumer fraud; Deceptive Business Prac-tices; Racketeer and Corrupt Organizations Act, 18 U.S.C. § 1962; Clayton Act, 15 U.S.C. § 15 et seq.; Public Nuisance; Strict Liability – Failure to Warn; Strict Liability – Design Defect; Negligent Design Defect; Private Nuisance; Unjust Enrichment |

# DEFENDANTS' JOINT MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...............................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ....................................5

STATEMENT OF ALLEGED FACTS ..........................................................6

ARGUMENT .....................................................................................................7

    I.      Legal standard. ............................................................................8

    II.     Defendants are not Subject to General Jurisdiction in Puerto Rico. .......................9

    III.    Defendants are not Subject to Specific Jurisdiction in Puerto Rico. ......................9

          A.     Plaintiffs' Claims Do Not "Arise Out Of or Relate to" Defendants' Alleged Contacts With Puerto Rico. ...........................................10

          B.     Exercising Personal Jurisdiction Over Defendants Would Be Unreasonable and Conflict With Principles of Federalism.......................17

    IV.    RICO's Nationwide jurisdiction provision does not establish personal jurisdiction over Defendants. ................................21

CONCLUSION...................................................................................................22

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Am. Elec. Power Co., Inc. v. Connecticut*,
    564 U.S. 410 (2011) ................................................................................................3

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*,
    480 U.S. 102 (1987) .................................................................................18, 19, 20

*Bristol-Myers Squibb Co. v. Superior Court*,
    582 U.S. 255 (2017) ................................................................................3, 4, 8, 10, 18

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................................4, 18

*Cappello v. Rest. Depot, LLC*,
    2023 WL 2588110 (D.N.H. Mar. 21, 2023) ........................................................12

*Casio Computer Co. Ltd. v. Savo*,
    2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ...............................................9, 21, 22

*City of New York v. Chevron Corp.*,
    993 F.3d 81 (2d Cir. 2021) ...........................................................3, 13, 14, 20

*City of Oakland v. BP p.l.c.*,
    2018 WL 3609055 (N.D. Cal. July 27, 2018) .......................................................13

*City of Oakland v. BP p.l.c.*,
    325 F. Supp. 3d 1017 (N.D. Cal. 2018) ...........................................................3, 20

*City of Oakland v. BP p.l.c.*,
    960 F.3d 570 (9th Cir. 2020) .................................................................................3

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .......................................................................................2, 8, 9

*De La Rosa v. Philip Morrison Products, Inc.*,
    975 F. Supp. 161 (D.P.R. 1997) .............................................................................8

*Don't Look Media LLC v. Fly Victor Ltd.*,
    999 F.3d 1284 (11th Cir. 2021) .............................................................................22

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) .......................................2, 3, 8, 9, 10, 11, 12, 13, 14, 17, 18

*Glob. ePoint, Inc. v. GTECH Corp.*,
  58 F. Supp. 3d 178 (D.R.I. 2014) ........................................................5

*Hanson v. Denckla*,
  357 U.S. 235 (1958)........................................................................18

*Hepp v. Facebook*,
  14 F.4th 204 (3d Cir. 2021) ............................................................12

*InterGen N.V. v. Grina*,
  344 F.3d 134 (1st Cir. 2008)...........................................................5

*Kalika, LLC v. Bos. & Maine Corp.*,
  2019 WL 1276099 (D. Mass. Mar. 20, 2019)...................................21

*Laurel Gardens, LLC v. McKenna*,
  948 F. 3d 105 (3d Cir. 2020)..........................................................21

*LNS Enters, LLC v. Cont'l Motors, Inc.*,
  22 F.4th 852 (9th Cir. 2022) ..........................................................12

*Mallory v. Norfolk & Southern Railway Co.*,
  143 S. Ct. 2028 (2023).................................................................2, 9

*Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R.*,
  2015 WL 5719801 (D.P.R. Sept. 29, 2015), *report and recommendation
  adopted* (D.P.R. Mar. 31, 2016)..................................................9, 21

*Martins v. Bridgestone Am. Tire Ops., LLC*,
  266 A.3d 753 (R.I. 2022) ...............................................................12

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
  663 F. Supp. 2d 863 (N.D. Cal. 2009) ............................................14

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
  696 F.3d 849 (9th Cir. 2012) ..........................................................14

*Negrón-Torres v. Verizon Communications, Inc.*,
  478 F.3d 19 (1st Cir. 2007)..............................................................8

*Omni Video Games, Inc. v. Wing Co.*,
  754 F. Supp. 261 (D.R.I. 1991)......................................................22

*Phillips v. Prairie Eye Ctr.*,
  530 F.3d 22 (1st Cir. 2008)..............................................................2

*Raulie v. United States*,
  400 F.2d 487 (10th Cir. 1968) ..........................................................6

*Rush v. Savchuk*,
    444 U.S. 320 (1980)...................................................................................8, 9

*Sawtelle v. Farrell*,
    70 F.3d 1381 (1st Cir. 1995).....................................................................4, 8

*Stauffacher v. Bennett*,
    969 F.2d 455 (7th Cir. 1992) ........................................................................22

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp.*,
    960 F.2d 1080 (1st Cir. 1992).........................................................................9

*United States v. Swiss Am. Bank*,
    274 F.3d 610 (1st Cir. 2001) ..........................................................................9

*Vapotherm, Inc. v. Santiago*,
    38 F.4th 252 (1st Cir. 2022)..........................................................................12

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980).............................................................4, 10, 11, 18

## STATUTES

18 U.S.C. § 1965 ................................................................................4, 5, 9, 21, 22

## RULES

Fed. R. Civ. P. 4(k)(1)(A) .....................................................................................8

## OTHER AUTHORITIES

*City of Oakland v. BP p.l.c.*,
    No. 3:17-cv-06011-WHA (N.D. Cal. Oct. 24, 2022), ECF No. 354 ......................................13

The White House, *Statement by National Security Advisor Jake Sullivan on the
    Need for Reliable and Stable Global Energy Markets*, Aug. 11, 2021,
    https://bit.ly/3yXWVFO. ....................................................................................20

Defendants Exxon Mobil Corp., Shell plc (f/k/a Royal Dutch Shell plc), BP P.L.C., Chevron Corp., ConocoPhillips, Motiva Enterprises LLC, Occidental Petroleum Corporation,[1] BHP Group Limited, Rio Tinto plc, and American Petroleum Institute[2] (together, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(2), respectfully submit this Joint Opening Brief in Support of their Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Personal Jurisdiction (the "Motion").[3]

## INTRODUCTION

Plaintiffs, the municipalities of Bayamón, Caguas, Loíza, Lares, Barranquitas, Comerío, Cayey, Las Marías, Trujillo Alto, Vega Baja, Añasco, Cidra, Aguadilla, Aibonito, Morovis, Moca, Barceloneta, Camuy, Cataño, Salinas, Adjuntas, Arroyo, Culebra, Dorado, Guaynabo, Hormigueros, Juncos, Lajas, Manatí, Naguabo, Naranjito, Utuado, Villalba, Coamo, Orocovis, Vieques, and Yabucoa (together, "Plaintiffs"), seek to impose liability on Defendants for harms allegedly resulting from more than a century of energy consumption by third-party end-users around the world.  The Amended Complaint ("Am. Compl.") suffers from numerous defects, as set forth in Defendants' Joint Motion to Dismiss for Failure to State a Claim.  This Motion focuses on one

---

[1]   Occidental Petroleum Corporation is incorrectly named as "Occidental Petroleum F.K.A. Anadarko Petroleum Corp."

[2]   While eight of the Defendants are energy companies, Defendant Rio Tinto plc is a global mining company engaged in the exploration, extraction, and processing of mineral resources.  American Petroleum Institute is a national trade association that includes companies in the oil and natural gas industry.  As such, neither Rio Tinto nor American Petroleum Institute is involved in the production, marketing, or sale of fossil fuels.  For ease of reading, this brief sometimes refers to all defendants as "energy companies" or as producers of fossil fuel products.  These references should not be read as concessions that Rio Tinto or American Petroleum Institute are energy companies, nor that they are engaged in producing, promoting, or selling any fossil fuel products.  Rio Tinto and the American Petroleum Institute expressly reserve all rights in this regard.

[3]   On November 16, 2023, to facilitate and streamline the briefing on the anticipated motions to dismiss, Plaintiffs and Defendants filed a Joint Motion For Extension of Time to Answer or Otherwise Respond to the Complaint and to Establish Briefing Schedule and Other Procedural Terms Concerning Motion to Dismiss (ECF Doc. No. 209, the "Joint Motion").  The Joint Motion requested an Order setting a briefing schedule for the motions to dismiss and related papers and granting other procedural stipulations, including page limitations on the motions, oppositions and replies and the period of time that Plaintiffs or Defendants would have to file the corresponding papers.  *Id.* ¶ 7.  By Order entered on November 27, 2023, the Court granted the Joint Motion.  *See* ECF Doc. No. 211.  This Motion to Dismiss is filed pursuant to the Joint Motion and the November 27 Order.

defect in particular: the allegations, even if accepted as true, do not establish personal jurisdiction over these nonresident Defendants.

Plaintiffs do not allege "general" personal jurisdiction over any Defendant. None is incorporated or headquartered in Puerto Rico, and thus none is "at home" in this forum. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Nor has any Defendant consented to general personal jurisdiction in Puerto Rico. *See Mallory v. Norfolk & Southern Railway Co.*, 143 S. Ct. 2028 (2023). And because the Court also lacks "specific" personal jurisdiction over Defendants, as demonstrated below, the Court should dismiss the Amended Complaint with prejudice.

1.      **Based on Plaintiffs' own allegations—which Defendants accept as true for purposes of this Motion only—Plaintiffs' claims do not "arise out of or relate to" Defendants' alleged contacts with Puerto Rico, as specific personal jurisdiction requires.** Under the Supreme Court's recent decision in *Ford Motor*, to satisfy the "arising out of or related to" prong, a plaintiff must allege facts that, taken as true, would show that *use or malfunction of a defendant's product in the State injured the plaintiff* in the State. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1027 (2021) (emphasis added). Plaintiffs are required to establish "*more than just an attenuated connection* between [defendant's] contacts and [plaintiff's] claim." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008) (emphasis added) (internal quotation marks omitted). As the First Circuit has explained, "the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." *Id.* (cleaned up).

Plaintiffs' allegations fall far short of that mark. Plaintiffs do not allege that the use or malfunction of any Defendant's products in Puerto Rico (or any acts in Puerto Rico) themselves injured Plaintiffs in Puerto Rico. Plaintiffs instead seek to impose liability on Defendants for injuries allegedly resulting from the cumulative worldwide use of all oil, natural gas, coal, and

other sources of emissions—the vast majority of which have no connection to Defendants, much less to Puerto Rico. *See Ford Motor*, 141 S. Ct. at 1025. Plaintiffs allege that injuries sustained during the 2017 hurricane season were all due to "global warming," allegedly caused by "[a]nthropogenic (human caused) greenhouse gas pollution." Am. Compl. ¶ 220-21. But "[e]veryone has contributed to the problem of global warming"—there are billions of contributors to greenhouse gas emissions across the world, including Plaintiffs themselves. *See City of Oakland v. BP p.l.c.*, 325 F. Supp. 3d 1017, 1026 (N.D. Cal. 2018) ("*Oakland I*"), *vacated on other grounds*, 960 F.3d 570 (9th Cir. 2020). And because "greenhouse gases once emitted become well mixed in the atmosphere," emissions from a particular State or Commonwealth contribute no more to the effects of climate change in that jurisdiction than emissions from elsewhere. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 92 (2d Cir. 2021) (quoting *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 422 (2011)) (cleaned up). Since Plaintiffs' claims ultimately have nothing to do with how much oil, gas, or coal (if any) Defendants allegedly refined or sold in Puerto Rico, or how much marketing or advertising (if any) purportedly occurred in Puerto Rico, those claims do not arise out of or even relate to Defendants' alleged activities in Puerto Rico.

Plaintiffs' allegations of marketing activities in Puerto Rico (Am. Compl. ¶ 13) cannot save their claims from dismissal. Plaintiffs do not allege use of the marketed products in Puerto Rico injured them in Puerto Rico. Indeed, Plaintiffs' theory, if accepted, would dramatically expand the bounds of specific personal jurisdiction by subjecting defendants to jurisdiction in any State or territory in which their products were marketed or used, no matter how insignificant and attenuated the connection with the alleged claims. Such an unprecedented and unprincipled expansion of personal jurisdiction would violate Defendants' due process rights and has been squarely rejected by the U.S. Supreme Court and the First Circuit. *See Bristol-Myers Squibb Co. v. Superior Court*,

582 U.S. 255, 264 (2017); *see also Sawtelle v. Farrell*, 70 F.3d 1381, 1390 (1st Cir. 1995) (finding no personal jurisdiction where the plaintiff was injured by "numerous non-forum decisions reached by the defendants in Virginia and Florida, but not in" the forum State).

2.     **The exercise of specific personal jurisdiction over Defendants would be unreasonable under the Due Process Clause.**   Litigating this case in Puerto Rico would contravene "'the interstate judicial system's interest in obtaining the most efficient resolution of controversies'" because Plaintiffs' claims implicate *global* conduct and are not localized to Puerto Rico. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).   And it would threaten the "interest of the several States in furthering fundamental substantive social policies," *id.*, because, among other things, many States and the federal government promote the very energy production, policies, and advocacy that Plaintiffs seek to penalize through this lawsuit.   Moreover, it would impermissibly require nonresident Defendants to submit to the "coercive power" of an out-of-State tribunal with respect to conduct unconnected with the forum, leaving their conduct in other States, as well as national and even worldwide conduct, subject to conflicting state rules. *See Bristol-Myers Squibb*, 582 U.S. at 263.

3.     **Plaintiffs' attempt to sidestep these manifest deficiencies by relying on Section 1965 of the Racketeer Influenced & Corrupt Organizations ("RICO") Act fails.**   Section 1965 provides for the exercise of personal jurisdiction over nonresident defendants that are served in other federal districts based on their nationwide, as opposed to forum, contacts "when it is shown that the ends of justice require."   18 U.S.C. § 1965(b); *see* Am. Compl. ¶ 18.   Plaintiffs, however, can satisfy neither of the conditions for Section 1965's application. *First*, before considering Defendants' nationwide contacts, a Court must initially find that personal jurisdiction is

proper as to at least one Defendant based on that Defendant's forum contacts. No such finding can be made here, as the Amended Complaint fails to allege facts sufficient to establish personal jurisdiction in Puerto Rico over *any* Defendant. *Second*, Section 1965 can have no application at all where, as here, Plaintiffs have failed to state a valid claim under RICO. *See* Defs.' Joint Mot. to Dismiss Am. Compl. at 15.

Because the factual allegations in Plaintiffs' Amended Complaint provide no basis for exercising personal jurisdiction that would comport with the Due Process Clause, and because no amendment can remedy the inherent flaws in Plaintiffs' jurisdictional theory, the Court should dismiss all claims against Defendants with prejudice.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs initiated this case on November 22, 2022. Dkt 1. On October 13, 2023, Defendants filed joint motions to dismiss under Federal Rules of Civil Procedure 12(b)(2) (Dkt. 184) and 12(b)(6) (Dkt. 185). Defendants also filed a Joint Motion for Judicial Notice (Dkt. 187) and several Defendant-specific motions. *See* Dkts. 174, 186, 188-190, 193, & 195-199. Rather than attempt to oppose Defendants' motions, on November 3, 2023, Plaintiffs instead filed an Amended Complaint. *See* Dkt. 205; *see also* Dkt. 206 (Amended RICO Case Statement). Plaintiffs' alterations do not affect the sufficiency of the pleading for either merits or personal jurisdictional purposes. In fact, to the extent that Plaintiffs attempt to drop allegations that they now consider inconvenient, the Court should disregard the amendments altogether and treat the earlier allegations as binding party admissions. *See InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2008) (allegations in superseded complaint "may be party admissions, usable as such despite subsequent amendment of the complaint."); *see also Glob. ePoint, Inc. v. GTECH Corp.*, 58 F. Supp. 3d 178, 190 (D.R.I. 2014) (original pleading may "in the trial upon the facts, be exposed as evidence of the declaration

by the pleader, at an earlier date, of the factual reality") (quoting *Raulie v. United States*, 400 F.2d 487, 526 (10th Cir. 1968)).

Defendants now file this joint motion to dismiss for lack of personal jurisdiction. Contemporaneously with this brief, all Defendants are jointly moving to dismiss Plaintiffs' claims for failure to state a cause of action pursuant to Rule 12(b)(6).

## STATEMENT OF ALLEGED FACTS

Plaintiffs' claims irreducibly depend on the cumulative and worldwide use of fossil fuel products for more than a century. Without those worldwide emissions, the causation chain alleged in the Amended Complaint simply could not occur. Plaintiffs allege an attenuated (and implausible) causal chain between Defendants' allegedly tortious acts and Plaintiffs' purported injuries from storms that occurred in September 2017. In order to circumvent well-established case law, Plaintiffs focus on one alleged link in this chain—Defendants' alleged misrepresentations and deception. But this attempt to target Defendants' speech is a red-herring. Among the many other links in Plaintiffs' causal chain are the decisions of countless third parties around the world—including Plaintiffs themselves—to extract, refine, transport, market, offer for sale, purchase, and ultimately combust (*i.e.*, use) fossil fuel products.

As alleged in the Amended Complaint, the combustion of fossil fuel products, among numerous other natural and manmade sources, releases greenhouse gas emissions. Plaintiffs allege that these worldwide emissions—in addition to emissions originating from other sources, virtually all of which are also outside of Puerto Rico—increase the total amount of greenhouse gases in the Earth's atmosphere. Am. Compl. ¶¶ 213-27. And, according to Plaintiffs, that change in atmospheric composition causes the atmosphere to trap heat, which increases global temperature, which, in turn, increases the magnitude and acceleration of climate change, which increases the intensity

of storms, including those that hit Puerto Rico in 2017. *Id.* ¶ 8(i), 228-44. Plaintiffs contend that their injuries flowed from those storms. *Id.* ¶ 10.

Put simply, Plaintiffs repeatedly allege that their injuries are caused by "anthropogenic climate change." *See e.g.* Compl. ¶¶ 221-27. "[T]he dominant cause of global warming and sea level rise," to use Plaintiffs' words, "is far and away" "[a]nthropogenic . . . greenhouse gas pollution . . . primarily in the form of $CO_2$." *Id.* ¶ 221. These emissions result from billions of daily choices, over more than a century, by governments, companies, and individuals, about what activities to engage in, whether to use fossil fuels, what types of fuels to use, and how to use them. And although Plaintiffs allege that Defendants conducted business or promoted products in Puerto Rico (which Defendants accept as true solely for purposes of this Motion), Plaintiffs do not, and cannot, allege that any Defendant's activities in Puerto Rico had any appreciable effect on the storms that allegedly injured Plaintiffs in Puerto Rico. Rather, Plaintiffs allege that they suffered injuries from the cumulative production, promotion, and use of fossil fuel products occurring in virtually every State and territory in this Nation and *every* country in the world—among *many* other sources of greenhouse gases.

## ARGUMENT

Plaintiffs do not, and cannot, allege facts that support this Court's exercise of personal jurisdiction over Defendants for the claims asserted in the Amended Complaint. There is no general jurisdiction over Defendants because none is "at home" in Puerto Rico, and none has consented to general jurisdiction in Puerto Rico. Nor is there specific jurisdiction because (1) the Amended Complaint avers that Plaintiffs' alleged injuries arise out of and relate to *worldwide* conduct by countless actors, as opposed to Defendants' alleged contacts with Puerto Rico; and

(2) exercising jurisdiction would be unreasonable.  Because there is no general or specific jurisdiction over any of the Defendants, RICO's jurisdictional provision, even if it were otherwise to apply (which it does not), cannot allow for personal jurisdiction based on any alleged nationwide contacts.

## I.    <u>LEGAL STANDARD.</u>

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction . . . must . . . find sufficient contacts between the defendant and the forum to satisfy both the State's long-arm statute and the Fourteenth Amendment's Due Process clause." *Sawtelle*, 70 F.3d at 1387.  Puerto Rico's long-arm statute has been interpreted to reach the limits of personal jurisdiction allowed by the Constitution.  *See De La Rosa v. Philip Morrison Products, Inc.*, 975 F. Supp. 161, 165 (D.P.R. 1997); *see also* Fed. R. Civ. P. 4(k)(1)(A) (personal jurisdiction satisfied where served party is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located").  Thus, this Court may exercise jurisdiction over Defendants only if doing so comports with limits imposed by federal due process.  *See Daimler*, 571 U.S. at 125.  Plaintiffs bear the burden of establishing this Court's personal jurisdiction over Defendants.  *See Negrón-Torres v. Verizon Communications, Inc.*, 478 F.3d 19, 23 (1st Cir. 2007).  To carry their burden, Plaintiffs must allege facts sufficient to make out a *prima facie* case for personal jurisdiction over *each* Defendant with respect to *each* claim.  *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

In applying the Due Process Clause, courts have recognized two types of personal jurisdiction: general and specific.  *See Bristol-Myers Squibb*, 582 U.S. at 262.  General jurisdiction allows a court to adjudicate any claim against a defendant, regardless of the connection between the claim and the forum.  *Id.*  Specific jurisdiction applies "only as to a narrower class of claims" that "arise out of or relate to the defendant's contacts with the forum." *Ford Motor*, 141 S. Ct. at 1024-25

(internal quotation marks omitted).  Neither exists here.

Under Section 1965 of RICO, if a plaintiff states a valid RICO claim, a court may exercise "personal jurisdiction over an out-of-state defendant [based on nationwide contacts] so long as the Court has jurisdiction established by the minimum contacts of at least one defendant [with the forum State]." *Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R.*, 2015 WL 5719801, at *3 (D.P.R. Sept. 29, 2015), *report and recommendation adopted*, (D.P.R. Mar. 31, 2016); *see also Casio Computer Co. Ltd. v. Savo*, 2000 WL 1877516, at *26 (S.D.N.Y. Oct. 13, 2000).

## II.   DEFENDANTS ARE NOT SUBJECT TO GENERAL JURISDICTION IN PUERTO RICO.

Plaintiffs do not allege that Defendants are subject to general jurisdiction in Puerto Rico. Plaintiffs concede that none of the Defendants is incorporated or headquartered in Puerto Rico. Am. Compl. ¶¶ 90, 108, 120-21, 133, 147, 156, 165, 171, 180.  Thus, no Defendant is "at home" in Puerto Rico.  *Daimler*, 571 U.S. at 139 (citation omitted).  Further, no Defendant has consented to general jurisdiction in Puerto Rico.  *See Mallory*, 143 S. Ct. at 2044.  Therefore, the Court lacks general jurisdiction over Defendants in Puerto Rico.

## III.   DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION IN PUERTO RICO.

Plaintiffs may proceed against each Defendant in this forum only if they can establish specific jurisdiction over *each* Defendant independently, *see Rush*, 444 U.S. at 332, which they cannot do.  Specific jurisdiction exists only if:  (1) the defendant purposefully availed itself of the privilege of conducting activities in Puerto Rico; (2) the plaintiff's claims arise out of or relate to those activities; *and* (3) the exercise of personal jurisdiction would be constitutionally reasonable.  *See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088-89 (1st Cir. 1992); *see also United States v. Swiss Am. Bank*, 274 F.3d 610, 620-21 (1st Cir. 2001). These jurisdictional restrictions "are more than a guarantee of immunity from inconvenient or

distant litigation.  They are a consequence of territorial limitations on the power of the respective States [and Puerto Rico]," because a State's or Puerto Rico's exercise of sovereign power "implie[s] a limitation on the sovereignty" of other States (and territories) and even foreign nations. *Bristol-Myers Squibb*, 582 U.S. at 263 (alteration in original) (internal citation and quotation marks omitted).  Accordingly,

> [e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*Id.* at 263 (alteration in original) (quoting *World-Wide Volkswagen*, 444 U.S. at 294).

Plaintiffs do not allege a *prima facie* case of specific jurisdiction with respect to each Defendant, because (i) the claims asserted in the Amended Complaint do not arise from or relate to Defendants' alleged contacts with Puerto Rico and (ii) exercising personal jurisdiction would be unreasonable.

### A. Plaintiffs' Claims Do Not "Arise Out Of or Relate to" Defendants' Alleged Contacts With Puerto Rico.

Plaintiffs cannot establish specific jurisdiction over each Defendant because the Amended Complaint does not, and cannot, allege that Plaintiffs' claims "arise out of or relate to" each Defendant's purported forum contacts.  *Ford Motor*, 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb*, 582 U.S. at 262).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Bristol-Myers Squibb*, 582 U.S. at 264.  As the Supreme Court recently explained in *Ford Motor*, "the first half of th[e 'arises out of or relates to'] standard asks about causation," whereas the second half "contemplates that *some* relationships will support jurisdiction without a causal showing."  141 S. Ct. at 1026 (emphasis added).  The Court cautioned that this "does not mean anything goes," and in "the sphere

of specific jurisdiction, the phrase 'relate to' incorporates real limits." *Id.*

*Ford Motor* illustrates those "real limits."  There, two consumers sued Ford in Montana and Minnesota state courts, asserting product-liability claims stemming from allegedly defective automobiles that Ford initially manufactured and sold out-of-state but that were later used *and* caused injuries in the forum States.  The Supreme Court held that Ford's in-state sales and marketing activities were sufficiently related to the plaintiffs' claims for injuries caused by the in-state use and malfunction of the vehicles to satisfy the arising from or relating to prong.  In reaching its conclusions, the Court relied heavily on its prior decision in *World-Wide Volkswagen*, where the Court reasoned that, if a "manufacturer or distributor" makes "efforts . . . to serve, directly or indirectly, the market for its product" in certain States, "it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise *has there been the source of injury* to its owner or to others." *Id.* at 1027 (quoting 444 U.S. at 297) (emphasis added).  Thus, under *Ford Motor*, personal jurisdiction may exist where an out-of-state company "[1] serves a market for a product in the forum State and [2] the product *malfunctions there*" "[3] *caus[ing] injury in the State* to one of its residents." *Id.* at 1022, 1026-27 (emphases added); *see also id.* at 1031 (explaining jurisdiction was appropriate when plaintiffs "used the allegedly defective products in the forum States" and "suffered injuries when those products malfunctioned there").  In other words, although *Ford Motor* permitted the exercise of personal jurisdiction without requiring a strict but-for causal relationship between the defendant's in-state activities and the injury, it did so only where the alleged injury within the forum State resulted from use *and malfunction* of the defendant's product within the State.

The First Circuit recently applied *Ford Motor*'s limitation in *Vapotherm*.  The Court held that a New Hampshire plaintiff failed to establish specific jurisdiction in New Hampshire for its

tort claim against a former employee based in Georgia, who had solicited other employees away from the New Hampshire plaintiff. *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 260-61 (1st Cir. 2022). The plaintiff there had demonstrated only in-state *effects* (*i.e.*, harm to its business), but not that the *conduct giving rise to those injuries* occurred in the forum State. *See id.* The First Circuit explained that, under *Ford Motor*, "in-state injury alone is not sufficient under the Due Process Clause to prove relatedness for tort claims." *Id.* at 261. To the contrary, there must be a connection between the State and the underlying tortious conduct. *Id.* The defendant-employee's allegedly tortious solicitation of the New Hampshire plaintiff's other employees was not a sufficient affiliation with New Hampshire to establish specific jurisdiction because the solicitation did not arise from or relate to the defendant's *New Hampshire contacts*: "[T]he three employees are connected to [the defendant] through their contacts in Florida and Georgia where they all worked throughout the duration of their employment with [the plaintiff]." *Id.*

Indeed, courts have consistently recognized that *Ford Motor* conditions the exercise of specific personal jurisdiction on a plaintiff suffering an *in-state* injury from the *in-state* use and *malfunction* of a defendant's product. *See, e.g.*, *LNS Enters, LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 863 (9th Cir. 2022); *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021); *Cappello v. Rest. Depot, LLC*, 2023 WL 2588110, at *4 (D.N.H. Mar. 21, 2023); *Martins v. Bridgestone Am. Tire Ops., LLC*, 266 A.3d 753, 761 (R.I. 2022). In *Martins*, for example, the Rhode Island Supreme Court held that personal jurisdiction did not exist because the plaintiff's claims did not arise from the use and malfunction of the product in Rhode Island, even though the plaintiff alleged that the defendant-manufacturers had "extensive contacts with Rhode Island and their intent [was] to conduct business in Rhode Island." *Id.* at 759.

Applying these principles here, specific personal jurisdiction cannot be exercised over Defendants consistent with due process.  Here, neither the events giving rise to Plaintiffs' claims nor Plaintiffs' alleged injuries resulted from, or relate in any way to, the use of any of Defendants' products *in the forum*.  *See Ford Motor*, 141 S. Ct. at 1022.  Moreover, it would be insufficient under *Ford Motor* for Plaintiffs to allege that Defendants' products malfunctioned in Puerto Rico (which Plaintiffs do not),[4] and then sue Defendants for alleged injuries unrelated to that malfunction that allegedly result from worldwide accumulation of greenhouse gases.  Such an outcome would result in defendants being subject to jurisdiction in a State for any suit relating to a product marketed and sold in that State that at one time malfunctioned in the forum State, regardless of whether the alleged injuries stemmed from that malfunction.  This is not the standard that the Supreme Court envisioned in *Ford Motor*.

Plaintiffs' lawsuit is, at its core, "a suit over *global* greenhouse gas emissions" that seeks "damages caused by fossil fuel emissions no matter where in the world those emissions were released (or who released them)."  *City of New York*, 993 F.3d at 91; *see also City of Oakland v. BP p.l.c.*, 2018 WL 3609055, at *3 (N.D. Cal. July 27, 2018) (dismissing similar claims for lack of personal jurisdiction, and observing that climate-change claims necessarily "depend on a global complex of geophysical cause and effect involving all nations of the planet").[5]  Plaintiffs do not assert that Defendants' alleged activities in Puerto Rico were necessary or sufficient for Plaintiffs to have sustained injury in Puerto Rico.  Rather, they allege that their injuries are the product of all historical, *global* greenhouse gas emissions from the normal use—*i.e.*, *global* combustion—of

---

4   Indeed, Defendants' products did not malfunction at all, since, as is universally well-known, the release of carbon emissions is an inherent feature of these products when combusted by end-users.

5   Although the Court's decision in *City of Oakland* was later vacated, the court was clear that "in no way" should "vacatur be considered as changing this Court's view on the personal jurisdiction issue."  *City of Oakland v. BP p.l.c.*, No. 3:17-cv-06011-WHA (N.D. Cal. Oct. 24, 2022), ECF No. 354.

fossil fuels produced and sold by Defendants, as well as countless other sources. *See* Am. Compl. ¶¶ 214-22.

Plaintiffs are not only incapable of pleading a proper relationship between their alleged injuries and the in-state use and malfunction of Defendants' products, but they cannot plausibly plead *any* nexus. "[T]he undifferentiated nature of greenhouse gas emissions from all global sources and their worldwide accumulation over long periods of time" means "there is no realistic possibility of tracing any particular alleged effect of global warming to any particular emissions by any specific person, entity, [or] group at any particular point in time." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 880 (N.D. Cal. 2009), *aff'd*, 696 F.3d 849 (9th Cir. 2012); *see also City of New York*, 993 F.3d at 92. So "it is not plausible to state which emissions— emitted by whom and at what time in the last several centuries and at what place in the world— 'caused' Plaintiff['s] alleged global warming related injuries." *Kivalina*, 663 F. Supp. 2d at 881. At bottom, then, Plaintiffs do not and cannot plausibly allege that their claims have any relation to, much less are caused by, Defendants' alleged in-forum activity.

And even if Plaintiffs could allege that Defendants' products were used in and malfunc-tioned in Puerto Rico (which Plaintiffs cannot), their claims would be limited to injuries allegedly resulting from *that use and malfunction* of Defendants' products *in Puerto Rico. See, e.g.*, *Ford Motor*, 141 S. Ct. at 1026. But Plaintiffs' claims are not so limited. Instead, Plaintiffs' expansive claims seek damages for alleged injuries purportedly resulting from the combined effects of the combustion and accumulation of greenhouse gas emissions *worldwide*, by Defendants, Plaintiffs themselves, and countless other sources. Plaintiffs do not, and cannot, allege that the use and malfunction of any of Defendants' products *in Puerto Rico* caused the storms of September 2017 and the injuries Plaintiffs suffered from those storms. Indeed, it is indisputable that *total* energy

consumption in Puerto Rico, with a population of just over three million people, accounts for a *de minimis* percentage of energy consumption in the United States and around the world.  Greenhouse gas emissions resulting from the use of fossil fuel products Defendants may produce, sell, or promote in Puerto Rico (even assuming *arguendo* that such use was induced by Defendants' allegedly tortious marketing) make up, at most, a minuscule amount of the global greenhouse gas emissions that contribute to climate change, and, ultimately, Plaintiffs' alleged injury.

Unsurprisingly, then, Plaintiffs fill the Amended Complaint, like the original Complaint, with direct and indirect references to Defendants' alleged *global* production and sales, the alleged *global* state of carbon emissions, and the *global* climate change impacts that allegedly result. Plaintiffs' claims are not limited to the marketing, sale, and combustion of fossil-fuel products *in Puerto Rico*, much less *by Defendants* in Puerto Rico.  The Amended Complaint nowhere alleges a causal connection between the September 2017 hurricanes and *anyone's* consumption of fossil fuel products *in Puerto Rico*.  Nor does it allege any causal connection between the alleged injuries and what could at most represent a marginal increase in the fossil fuel products sold in Puerto Rico as a result of any allegedly misleading statements directed to Puerto Rico.  The Amended Complaint makes no allegations at all regarding the volume of fossil fuels used or sold in Puerto Rico.

Plaintiffs instead seek to impose liability on Defendants for the *global* production, marketing, sale, and combustion of their products, after being mixed worldwide with emissions for which they have no alleged involvement.  Plaintiffs also seek to attribute to Defendants all emissions of their alleged joint venture partners, many of which are state-owned entities around the world—but none of which is alleged to operate in Puerto Rico.  *See* Am. Compl. ¶¶ 75–76.  Plaintiffs allege that Defendants and "their joint-venture carbon majors" are together "directly responsible for at least 39.6% of all *global* industrial GHG emissions from 1965-2022."  *Id.* ¶ 75 (emphasis added);

*see also, e.g.*, *id.* ¶ 295 (alleging "$CO_2$ emissions that are attributable to fossil fuels that Defendants extracted from the earth and injected into the market are responsible for a substantial percentage of greenhouse gas pollution since 1965"),[6] ¶ 102 (alleging Defendants' products "are sold worldwide"), ¶ 345 (alleging Defendants acted "contrary to their own internal scientific conclusions, in order to ensure unabated emissions and the sale of their products to consumers worldwide and in Puerto Rico"), ¶ 615 ("the Defendant companies controlled a vast majority of worldwide energy production").[7]  In fact, Plaintiffs cite more than 100 times to nationwide and international emissions and $CO_2$ levels.  *Id.* ¶¶ 74 & n.20, 76 n.25, 80, 107, 114–19, 200, 129–32, 143–46, 154, 164, 170, 177–78, 185, 195–96, 204, 214–22, 245–46, 312, 319–38, 342–45, 344–45, 372, 380, 383, 587, 591, 594, 597–99, 601–05, 639–40, 649, 757, 800, 803, 811.  It is these "global" "collective emissions" from the "industrial" and "end use" of Defendants' products and those of non-party "joint-venture carbon majors" that purportedly "were a substantial factor in the increase in intensity of the 2017 Atlantic Hurricane Season."  *Id.* ¶ 591.

Similarly, Plaintiffs' attempt to base their claims on a so-called "campaign of climate change denial and obfuscation," Am. Compl. ¶ 2, rather than production, does not establish jurisdiction.  Regardless of how Plaintiffs characterize their claims, they allege their injuries are due to "global warming and sea level rise" caused by "anthropogenic (human-caused) greenhouse gas pollution," which they claim results "primar[il]y" from the "extraction, production and consumption of coal oil and natural gas."  *Id.* ¶ 221.  Nor do Plaintiffs limit their misrepresentation claims

---

[6]   The Court should consider the original Complaint's even more explicit assertions of the international character of Plaintiffs' claims, whereby this same paragraph previously asserted that "Defendants are responsible for a substantial portion of *the total worldwide greenhouse gases emitted* between 1965 to present date." (emphasis added).

[7]    The Amended Complaint improperly conflates Defendants' activities with the activities of their separately organized predecessors, subsidiaries, and affiliates, as well as alleged "joint venture" partners and end users.  Defendants reserve all rights to challenge Plaintiffs' improper attempt to hold them liable for the actions of others, which cannot form the basis for personal jurisdiction.

to in-forum conduct, instead challenging promotion "to the Municipalities and their citizens, *among others.*"  *Id*. ¶ 82 (emphasis added); *see also, e.g., id*. ¶ 79 (same); ¶ 88 (alleging Defendants "lull[ed] consumers, *like* those represented by the Plaintiffs, into a false sense of security") (emphasis added).  Thus, Plaintiffs' claims do not arise from or relate to Defendants' alleged conduct in Puerto Rico.

Because Plaintiffs do not and cannot allege that their injuries resulted from the use and malfunction of Defendants' fossil fuel products in Puerto Rico, their allegations that Defendants tortiously marketed or sold those products in Puerto Rico fail to satisfy the "arises out of or relates to" requirement as a matter of due process.  Put differently, if neither Defendants' alleged in-state conduct nor the alleged in-state use and malfunction of Defendants' products injured Plaintiffs, then personal jurisdiction is lacking irrespective of whether Defendants market, advertise, and sell their products in Puerto Rico.  Given the undifferentiated nature of climate change, there is no plausible nexus, causal or otherwise, between Plaintiffs' claims and Defendants' alleged conduct in Puerto Rico.  *World-Wide Volkswagen* and *Ford Motor* compel dismissal here.

### B.   Exercising Personal Jurisdiction Over Defendants Would Be Unreasonable and Conflict With Principles of Federalism.

Because Plaintiffs have not alleged, and cannot allege, facts that, if true, would show that their claims arise from or relate to each Defendant's alleged contacts with Puerto Rico, the Court need not reach the reasonableness inquiry.  Nonetheless, the unreasonableness of exercising jurisdiction here provides an additional, independent reason to dismiss the Amended Complaint.  *See, e.g., Ford Motor*, 141 S. Ct. at 1024.

In determining whether jurisdiction is reasonable under the Due Process Clause, courts consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the

plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292) (internal quotations omitted). The primary concern in assessing the reasonableness of personal jurisdiction is the burden of "submitting to the coercive power" of a court in light of the limits of interstate federalism on a court's ability to exercise jurisdiction. *Bristol-Myers Squibb*, 582 U.S. at 263. "[R]estrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). Indeed, the Supreme Court has admonished courts to consider the interests of the "several States," and emphasized that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*, 480 U.S. 102, 115 (1987) (internal quotation marks omitted).

These fundamental constitutional principles weigh decisively against the exercise of personal jurisdiction. *First*, exercising specific jurisdiction over these out-of-Puerto Rico Defendants for global climate-change-related claims would expand the jurisdiction of this Court well beyond the limits of due process, interfering with the power of each Defendant's home jurisdiction over its corporate citizens. It would also enable States to interfere with commercial conduct that occurred outside their own borders in violation of the limits of interstate federalism. *See Bristol-Myers Squibb*, 582 U.S. at 263. This is not a case where one State has a more "significant interest[]" in addressing climate change. *See Ford Motor*, 141 S. Ct. at 1030.

Plaintiffs' position would resurrect the loose approaches to personal jurisdiction that the

Supreme Court rejected in *Daimler* and *Bristol-Myers Squibb*, and would make companies subject to climate-change suits in every forum in the country based on the barest of activity within the forum, or perhaps even without any activity in the forum at all.  As the Supreme Court explained in *Asahi*, a products liability case involving the sale and distribution of tires to California by out-of-state defendants:

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case.  In every case, however, those interests, as well as the Federal interest in Government's foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.

480 U.S. at 115.  This problem is particularly pronounced with respect to foreign Defendants,[8] as well as Defendants' alleged joint venture partners, some of which are owned in part by foreign governments.  *See* Am. Compl. ¶¶ 75-76.  Under Plaintiffs' theory, *any* foreign company could be forced to appear before *any* court in the United States based on its alleged contribution to global climate change, so long as that company operates within that jurisdiction.  Well-settled principles of due process foreclose such a result.

*Second*, the assertion of jurisdiction here would offend the principles underlying the inter-state judicial system because Plaintiffs seek to use Puerto Rico tort law[9] to penalize and regulate Defendants' nationwide (indeed, worldwide) activities, including fossil fuel production, promotion, marketing, and sales—activities heavily regulated, and in many instances encouraged, by the federal government, all 50 States, and every other country in the world in which these companies operate.  As the Second Circuit observed in a similar lawsuit brought by the City of New York, "a

---

[8]   As Plaintiffs acknowledge, Defendants Shell plc, BP plc, and Rio Tinto plc are registered in England and Wales, Am. Compl. ¶¶ 108, 133, 180, and Defendant BHP Group Limited is headquartered in Australia, *id.* ¶ 171.

[9]   Because Plaintiffs do not suggest they are invoking the law of any State or territory other than Puerto Rico, Defendants assume Plaintiffs intend to invoke the law of Puerto Rico.

substantial damages award like the one requested by the City would effectively regulate the [energy companies'] behavior far beyond [the State]'s borders." *City of New York*, 993 F.3d at 92. The interests of the "interstate judicial system" are not served by requiring witnesses and counsel to litigate the same climate-change actions simultaneously under different legal rules, especially given the substantial risk of inconsistent decisions.

*Third*, the substantive social policies Plaintiffs seek to advance—chilling Defendants' speech on matters of public concern that Plaintiffs deem misleading, curbing energy production and the use of fossil fuels, or allocating the downstream costs of global climate change to the energy companies to bear directly—are not shared uniformly across all the various States and nations. "[A]s states will invariably differ in their assessment of the proper balance between these national and international objectives, there is a real risk that subjecting the [energy companies'] global operations to a welter of different states' laws could undermine important federal policy choices." *City of New York*, 993 F.3d at 93; *see also Oakland I*, 325 F. Supp. 3d at 1026 ("[P]laintiffs would have a single judge or jury in California impose an abatement fund as a result of such overseas behavior. Because this relief would effectively allow plaintiffs to govern conduct and control energy policy on foreign soil, we must exercise great caution."). In fact, in 2021, the Biden Administration announced that it was "engaging with relevant OPEC+ members" to encourage "*production increases*" of crude oil in hopes of lowering "high[] gasoline costs," because "reliable and stable energy supplies" were (and still are) essential to the "ongoing global recovery" from the pandemic.[10] Plaintiffs' claims here similarly implicate the interests of numerous other States and Nations, and thus this Court cannot reasonably exercise jurisdiction over Defendants. *See Asahi*, 480 U.S. at 115-16 (holding that the "international context" and "substantive interests

---

[10]   The White House, *Statement by National Security Advisor Jake Sullivan on the Need for Reliable and Stable Global Energy Markets*, Aug. 11, 2021, https://bit.ly/3yXWVFO.

of other nations," compared with "the slight interests of the plaintiff and the forum State," rendered the exercise of personal jurisdiction "unreasonable and unfair").

## IV.    RICO'S NATIONWIDE JURISDICTION PROVISION DOES NOT ESTABLISH PERSONAL JURISDICTION OVER DEFENDANTS.

Unable to establish specific personal jurisdiction over Defendants based on their alleged contacts in Puerto Rico, Plaintiffs invoke RICO's Section 1965.  Under Section 1965, which authorizes nationwide service of process, a court may exercise personal jurisdiction over nonresident defendants based on their nationwide, as opposed to forum, contacts.  *See* 18 U.S.C. § 1965.  But that provision applies *only if* "the Court has jurisdiction established by the minimum contacts [with the forum State] of at least one defendant," *Marrero-Rolón*, 2015 WL 5719801, at *3,[11] and *only if* a plaintiff first pleads viable RICO claims as to that defendant, *see Casio Computer Co.*, 2000 WL 1877516, at *26.  Plaintiffs do not satisfy these requirements.

*First*, as this Court has already held, Section 1965 "gives personal jurisdiction over an out-of-state defendant *so long as the Court has jurisdiction established by the minimum contacts of at least one other defendant*." *Marrero-Rolón*, 2015 WL 5719801, at *3 (emphasis added).  For the reasons described above, Plaintiffs have not established personal jurisdiction with respect to *any* Defendant based on its alleged minimum contacts with Puerto Rico.

Further, even assuming RICO's nationwide service-of-process provision authorized jurisdiction over Defendants incorporated or headquartered in the United States (it does not), it cannot authorize jurisdiction over Shell plc; BP p.l.c.; Rio Tinto plc; or BHP Group Limited, all of

---

[11]    As explained in *Peters Broadcast Engineering, Inc.*, the Second, Third, Sixth, Seventh, Ninth, Tenth, and D.C. Circuits take the approach outlined in *Marrero-Rolón*.  40 F.4th 432, 439 (6th Cir. 2022) (describing the circuit split and siding with the majority approach).  The First Circuit has not yet weighed in on the issue, although multiple district courts within the First Circuit have followed the majority approach.  *See, e.g.*, *Kalika, LLC v. Bos. & Maine Corp.*, 2019 WL 1276099, at *7 (D. Mass. Mar. 20, 2019).  And rightly so.  The majority approach "persuasively explain[s] the function of each subsection as part of a single coherent framework for RICO actions." *Laurel Gardens, LLC v. McKenna*, 948 F. 3d 105, 118 (3d Cir. 2020).

which—the Amended Complaint acknowledges—are incorporated and headquartered outside the United States.  Am. Compl. ¶¶ 108, 133, 171, 180.  Plaintiffs acknowledged that they had to serve these defendants internationally, *see* ECF No. 9 ¶ 6, and they did not serve any of the foreign defendants within the United States.  Because "RICO provides for nationwide service of process, not international service of process," *Omni Video Games, Inc. v. Wing Co.*, 754 F. Supp. 261, 263 (D.R.I. 1991), the Court cannot exercise personal jurisdiction over foreign defendants under Section 1965, *see Stauffacher v. Bennett*, 969 F.2d 455, 460-61 (7th Cir. 1992); *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1293 (11th Cir. 2021) ("Section 1965(d)'s authorization of service in any judicial district plainly does not authorize service outside the United States.").

*Second*, where, as here, the Amended Complaint purports to assert a RICO claim but that claim is inadequately pleaded, RICO's nationwide jurisdiction provision is inapplicable.  *See Casio Computer*, 2000 WL 1877516, at *26 (declining to apply § 1965(b) where a RICO claim suffered from "fatal" pleading deficiencies).  As Defendants explain at length in their Joint Motion to Dismiss for Failure to State a Claim, Plaintiffs' RICO claim is fundamentally flawed and should be dismissed for failure to state a claim against all Defendants.

Section 1965 thus cannot aid Plaintiffs in establishing personal jurisdiction over Defendants.  Personal jurisdiction is lacking.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against Defendants should be dismissed in their entirety, with prejudice, for lack of personal jurisdiction.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 30th day of January 2024.

**CERTIFICATE OF SERVICE**: I, Roberto C. Quiñones-Rivera, certify that, on the above date, I filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the system.

By: *Roberto C. Quiñones-Rivera*
Roberto C. Quiñones-Rivera
USDC-PR Bar No. 211512
Eduardo A. Zayas-Marxuach
USDC-PR Bar No. 216112
Myrgia M. Palacios-Cabrera
USDC-PR Bar No. 230807
MCCONNELL VALDÉS LLC
P.O. Box 364225
San Juan, PR 00936-4225
Telephone:  787-250-2631
Facsimile:  787-474-9201
Email:  rcq@mcvpr.com

Theodore J. Boutrous, Jr. (*pro hac vice*)
William E. Thomson (*pro hac vice*)
Joshua D. Dick (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
Email:  tboutrous@gibsondunn.com
Email:  wthomson@gibsondunn.com
Email:  jdick@gibsondunn.com

Thomas G. Hungar (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, D.C. 20036
Telephone:  (202) 887-3784
Email:  thungar@gibsondunn.com

Neal S. Manne (*pro hac vice* forthcoming)
Erica Harris (*pro hac vice* forthcoming)
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone:  713.651.9366
Facsimile:  713.654.6666
Email:  nmanne@susmangodfrey.com
Email:  eharris@susmangodfrey.com

*Attorneys for Defendant CHEVRON CORPORATION*

23

By: *s/ Néstor M. Méndez Gómez*
Néstor M. Méndez Gómez
USDC-PR Bar No. 118409
María D. Trelles Hernández
USDC-PR Bar No. 225106
PIETRANTONI MENDEZ & ALVAREZ LLC
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan, Puerto Rico 00918
Telephone:  (787) 274-1212
Facsimile:  (787) 274-1470
Email:  nmendez@pmalaw.com
Email:  mtrelles@pmalaw.com

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Yahonnes Cleary (*pro hac vice*)
Caitlin E. Grusauskas (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:  twells@paulweiss.com
Email:  dtoal@paulweiss.com
Email:  ycleary@paulweiss.com
Email:  cgrusauskas@paulweiss.com

*Attorneys for Defendant EXXON MOBIL
CORPORATION*


By: s/Kenneth C. Suria
Kenneth C. Suria
USDC-PR Bar No. 213302
ESTRELLA, LLC
P.O. Box 9023596
San Juan, Puerto Rico 00902-3596
Telephone:  (787) 977-5050
Facsimile:  (787) 977-5090
Email:  kcsuria@estrellallc.com

Tracie J. Renfroe (*pro hac vice*)
KING & SPALDING LLP

24

1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone:  (713) 751-3200
Facsimile:  (713) 751-3290
Email:  trenfroe@kslaw.com

Oliver Thoma (*pro hac vice*)
West, Webb, Allbritton & Gentry, P.C.
1515 Emerald Plaza • College Station, Texas 77845
Ph:  (979) 694-7000
Fax:  (979) 694-8000
Email:  oliver.thoma@westwebblaw.com

*Attorneys for Defendant MOTIVA ENTERPRISES LLC*


By: s/ David Indiano
David Indiano
USDC-PR Bar No. 200601
Jeffrey M. Williams
USDC-PR Bar No. 202104
INDIANO & WILLIAMS, P.S.C.
207 del Parque Street; 3rd Floor
San Juan, P.R. 00912

Duke K. McCall, III (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave, NW
Washington D.C., 20004

*Attorneys for Defendant OCCIDENTAL PETROLEUM
CORPORATION*

By: *s/Carlos A. Rodríguez Vidal*
Carlos A. Rodríguez Vidal
USDC-PR Bar No. 201213
GOLDMAN ANTONETTI & CORDOVA, LLC
American International Plaza
250 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Telephone:  (787) 759-4117
Facsimile:  (787) 767-9177
Email: crodriguez-vidal@gaclaw.com

Victor L. Hou *(pro hac vice)*
Boaz S. Morag *(pro hac vice)*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999
Email:  vhou@cgsh.com
Email:  bmorag@cgsh.com

*Attorneys for Defendant BHP GROUP LIMITED*

By: *s/ Roberto A. Cámara-Fuertes*
Roberto A. Cámara-Fuertes
USDC-PR Bar No. 219002
Jaime A. Torrens-Dávila
USDC-PR Bar No. 223810
Mónica Ramos Benítez
USDC-PR Bar No. 308405
FERRAIUOLI LLC
PO Box 195168
San Juan, Puerto Rico 00919
Telephone:  (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
Email:  jtorrens@ferraiuoli.com
Email:  mramos@ferraiuoli.com

Linda H. Martin (*pro hac vice*)
David Y. Livshiz (*pro hac vice*)
Noelle L. Williams (*pro hac vice*)
Jennifer E. King (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022

26

Telephone:  (212) 277-4000
Facsimile:  (212) 277-4001
Email:  linda.martin@freshfields.com
Email:  david.livshiz@freshfields.com
Email:  noelle.williams@freshfields.com
Email:  jennifer.king@freshfields.com

Jennifer Loeb (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US
LLP
700 13th Street, NW, 10th Floor
Washington, D.C. 20005
Telephone:  (202) 777-4500
Facsimile:  (202) 777-4555
Email:  jennifer.loeb@freshfields.com

*Attorneys for Defendant RIO TINTO PLC*


By: *s/ Eric Pérez-Ochoa*
Eric Pérez-Ochoa
USDC-PR Bar No. 206314
Luis A. Oliver Fraticelli
USDC-PR Bar No. 209204
ADSUAR MUNIZ GOYCO
SEDA & PÉREZ-OCHOA, P.S.C.
PO Box 70294
San Juan, Puerto Rico 00936-8294
Telephone:  (787) 756-9000
Facsimile:  (787) 756-9010
Email:  epo@amgprlaw.com
Email:  loliver@amgprlaw.com

*Attorneys for Defendant BP P.L.C.*

By:  *s/Carlos A. Valldejuly*
Carlos A. Valldejuly-Sastre
USDC No. 209505
José J. Colón García
USDC No. 308010
O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Ste. 800
San Juan, Puerto Rico 00918-1813
Telephone:  (787) 764-8181
Facsimile:  (787) 753-8944
Email:  carlos.valldejuly@oneillborges.com
Email:  jose.colon@oneillborges.com


David C. Frederick (*pro hac vice*)
James M. Webster, III (*pro hac vice*)
Minsuk Han (*pro hac vice*)
Daniel S. Severson (*pro hac vice*)
Grace W. Knofczynski (*pro hac vice*)
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999
Email:  dfrederick@kellogghansen.com
Email:  jwebster@kellogghansen.com
Email:  mhan@kellogghansen.com
Email:  dseverson@kellogghansen.com
Email:  gknofczynski@kellogghansen.com


*Attorneys for Defendant SHELL PLC*
*(f/k/a ROYAL DUTCH SHELL PLC)*


By:  *s/Ricardo F. Casellas Sánchez*
Ricardo F. Casellas Sánchez
USDC-PR No. 203114
Heriberto J. Burgos-Pérez
USDC-PR No. 204809
CASELLAS ALCOVER & BURGOS, P.S.C.
2 Tabonuco, Suite 400
San Patricio, PR 00968
Telephone:  (787) 756-1400
Facsimile:  (787) 756-1401
Email:  hburgos@cabprlaw.com
Email:  rcasellas@cabprlaw.com

Matthew T. Martens (*pro hac vice*)

28

Ericka Aiken (*pro hac vice pending*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
Email:  matthew.martens@wilmerhale.com
Email:  ericka.aiken@wilmerhale.com

Hallie B. Levin (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888
Email:  hallie.levin@wilmerhale.com

Robert Kingsley Smith (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000
Email:  robert.smith@wilmerhale.com

*Attorneys for Defendant ConocoPhillips*

By: s/ Ramón Dapena
Ramón Dapena (125005)
Morell Cartagena & Dapena
Ponce de León Ave. 273 Plaza 273, Suite 700
San Juan PR 00908
(t): 787-723-1233
(f): 787-723-8763
Ramon.dapena@mbcdlaw.com
Ivan.Ilado@mbcdlaw.com

Jeremiah J. Anderson (*Pro Hac Vice Forthcoming*)
MCGUIREWOODS LLP
845 Texas Avenue, 24th Floor
Houston, TX 77002-2906

29

(713) 571-9191

Brian D. Schmalzbach (*Pro Hac Vice Forthcoming*)
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
(804) 775-1000

*Attorneys for American Petroleum Institute*