IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MUNICIPALITY OF BAYAMON, et al.,<br><br>Plaintiffs,<br><br>-against-<br><br>EXXON MOBIL CORP., et al.,<br><br>Defendants. | Case No. 3:22-cv-01550-SCC-HRV |

### DEFENDANT BHP GROUP LIMITED'S MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

**TO THE HONORABLE COURT:**

Defendant BHP Group Limited ("BHP"), through the undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss the Amended Complaint as to BHP for failure to state a claim.

### INTRODUCTION

Plaintiffs' Amended Complaint fails to state a claim against BHP for all the reasons set out in Defendants' Joint Motion To Dismiss Amended Complaint pursuant to Rule 12(b)(6). BHP writes separately to highlight additional reasons to dismiss the fraud-based and Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against BHP specifically. Despite having had the benefit of three months to review BHP's arguments as to why the original Complaint was deficient, [ECF No. 197], and to amend their Complaint to attempt to correct those pleading deficiencies, Plaintiffs still fail to satisfy the heightened pleading standard required for fraud claims. Under Fed. R. Civ. P. 9(b), Plaintiffs are required to "state with particularity the circumstances constituting fraud." The Amended Complaint does not do so for at least two reasons.

*First*, the Amended Complaint does not identify false or misleading representations or omissions attributable to BHP that can support Plaintiffs' claims under Puerto Rican law sounding in fraud. The Amended Complaint attempts to cure the original Complaint's failure to allege ***even one*** statement made by BHP, but still falls well short, as any statements now alleged to have been made by BHP lack particularity, were not directed at Puerto Rico, are not alleged to have been heard, let alone relied upon, by any one in Puerto Rico, and all post-date the 2017 hurricane season—despite the fact that Plaintiffs' entire Amended Complaint is premised on the damage caused during the 2017 hurricane season, necessarily requiring Defendants' allegedly actionable conduct to have occurred before then.

*Second*, Plaintiffs' RICO claims against BHP lack merit because the Amended Complaint fails to allege that BHP conducted or participated in the conduct of a RICO enterprise or that BHP committed a single racketeering act, let alone that BHP joined a conspiracy to violate the RICO statute. Accordingly, the claims against BHP should be dismissed for failure to state a claim.

## FACTUAL BACKGROUND

BHP incorporates by reference the Factual Background section of BHP's Motion To Dismiss The Amended Complaint For Lack of Personal Jurisdiction. The Amended Complaint adds a handful of generalized allegations of purportedly fraudulent statements made by BHP. *See* Am. Compl. ¶¶ 556, 572–574. Specifically, the Amended Complaint points to generic statements—not marketing or advertising—that BHP made in press releases or on its globally-available website:

- October 5, 2021 publication by third party Australasian Centre for Corporate Responsibility (ACCR), *BHP Climate Transition Action Plan Analysis*, which Plaintiffs allege states that "BHP has committed to achieve net-zero emissions by 2050," *id*. ¶ 572;

2

- *Climate Change* page on BHP's website containing information current as of August 2023 (https://www.bhp.com/sustainability/climate-change), which Plaintiffs allege advertises that BHP "is pursuing strategies to lower [greenhouse gases] by 2030," *id*. ¶ 573; and

- June 2023 BHP article, *Pathways to decarbonization episode seven: the electric smelting furnace*, which Plaintiffs allege "markets to consumers that [BHP] is attempting decarbonization," *id*. ¶ 574.

Aside from these limited examples of statements made by BHP, all of which were made after the 2017 hurricane season, and none of which involve marketing or promoting fossil fuel products, the remainder of the Amended Complaint's allegations focus on statements attributed to all Defendants collectively or made by other entities, such as industry organizations.

## ARGUMENT

**I.      PLAINTIFFS' FRAUD AND RICO CLAIMS AGAINST BHP FAIL**

All of Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) for the reasons set forth in Defendants' Joint Motion To Dismiss Amended Complaint in which BHP joins. BHP writes separately to highlight that, as to it, Plaintiffs have not satisfied the heightened pleading standard required for fraud claims under Rule 9(b), requiring Plaintiffs to "state with particularity the circumstances constituting fraud," nor have Plaintiffs alleged that BHP committed any racketeering acts or agreed to enter a conspiracy. So as not to burden the Court or Plaintiffs with duplicative briefs, BHP incorporates by reference Section I and Section II(A) of the Memorandum Of Law In Support Of ExxonMobil's Motion To Dismiss For Failure To State A Claim, which sets forth the legal standards for asserting the claims alleged in the Amended Complaint of: common-law consumer fraud, conspiracy to commit consumer fraud, violations of Puerto Rico Rule 7 Against Misleading Practices and Advertisements, Am. Compl. ¶¶ 668–716; RICO claims

3

predicated on mail and wire fraud, *id.* ¶¶ 717–772; and antitrust, nuisance, strict liability, negligence, and unjust-enrichment claims based in part on fraudulent concealment, *id.* ¶¶ 773–838. Because all these claims sound in fraud, Rule 9(b)'s heightened standard applies to all of them.

### A. Plaintiffs Fail To Plead With Particularity That BHP Made Any False Or Misleading Representations Or Omissions

The Amended Complaint fails to allege facts sufficient to support Plaintiffs' fraud-based claims asserted against BHP, let alone with the requisite particularity required by Rule 9(b).

#### 1. Plaintiffs Fail To Allege Who Was Deceived By Any Statement Or Any Detrimental Reliance On Such Statements

Plaintiffs' original Complaint failed to identify a single false or misleading representation made specifically by BHP. Plaintiffs try to save their claims by adding to the Amended Complaint a limited number of generic statements or press releases made by BHP[1] on its globally-available website to the effect that BHP "used 'green' solutions," "committed to achieve net-zero emission by 2050," and aimed "to reduce its greenhouse gas emissions," *see* Am. Compl. ¶¶ 556, 572–574.[2] But Plaintiffs still do not allege *any* statements by BHP marketing or promoting any fossil fuel products, even though the crux of their claims, as set forth in the very first paragraph of the Amended Complaint, is that "Defendants' production, promotion, refining, marketing, and sale of

---

[1] Plaintiffs are not even consistent in alleging that BHP's statements were misleading. For example, Plaintiffs allege that "BHP markets to consumers that it is attempting decarbonization" as an example of BHP's false claims. Am. Compl. ¶ 574. Yet in the very next sentence, Plaintiffs admit that BHP disclosed that its "[a]chievement of this goal is uncertain, particularly given the challenges of a net zero pathway for our customers in steelmaking, and we cannot ensure the outcome alone." *Id.* And, despite holding these statements out as "misrepresentations," Plaintiffs do not allege (because they cannot) that BHP did not believe these statements at the time it made them.

[2] In any event, such statements are aspirational statements, akin to puffery, and cannot properly support a fraud claim. *See Trenwick Am. Litig. Tr. v. Ernst & Young, LLP*, 906 A.2d 168, 209 (Del. Ch. 2006), aff'd sub nom. *Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (dismissing fraud claim because "statements of expectation or opinion about the future of the company and the hoped for results of business strategies" are "the softest of information[]"); *see also Camilo v. Nieves*, 2012 WL 12995632, at *11 (D.P.R. Mar. 31, 2012) (explaining in securities context that "the alleged misrepresentation . . . must concern a 'fact'" rather than "an opinion, belief, [or] prediction"); *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 65 (1st Cir. 1992) (fraud claim "defective" where "alleged misrepresentations consisted only of opinions as to future events").

4

fossil fuel-based consumer products played [a "primary role"] in causing the losses, deaths and destruction of property resulting from the catastrophic storms of September 2017 and their aftermath." Am. Compl. ¶ 1.  For this critical omission alone, Plaintiffs' fraud-based claims must be dismissed.  *Suna v. Bailey Corp.*, 107 F. 3d 64, 69 (1st Cir. 1997).

Even if generic allegations of statements posted on BHP's website (and third party statements about purported BHP statements) about its commitment to reducing greenhouse gas emissions could support Plaintiffs' claims, Plaintiffs fail to plead these few statements with the particularity that Rule 9(b) requires.  Plaintiffs do not identify *anyone*, let alone anyone in Puerto Rico, who saw, read, heard, or was exposed to any of the statements allegedly made by BHP, thus mandating dismissal of Plaintiffs' claims against BHP for failure to plead them with the requisite particularity.  *See Alternative Sys. Concepts*, *Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30 (1st Cir. 2004) (explaining that Rule 9(b) requires plaintiff to allege "the who" of the allegedly false or fraudulent representation, and dismissing plaintiff's claims for failing to identify "to whom" the allegedly "misleading statements . . . were made"); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 578 F. Supp. 3d 267, 286 (D.P.R. 2021) (dismissing fraud claims under Rule 9(b) where plaintiff only vaguely alleged "that fraud occurred at unspecified meetings attended by unspecified individuals").

Nor do Plaintiffs allege with any specificity that anyone in Puerto Rico (let alone Plaintiffs themselves) purportedly relied on BHP's alleged misrepresentations prior to the 2017 hurricane season to purchase fossil fuel products rather than some other "energy source alternative." Am. Compl. ¶ 674.  *See Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 758 F. Supp. 64, 73 (D.P.R. 1991) (stating that "[d]etrimental reliance, by definition, is one of the necessary elements for *any* fraud claim.").  Instead, the Amended Complaint resorts to vague, conclusory statements such as, "BHP has also engaged in a ploy to mislead consumers," Am.

Compl. ¶ 572 and "BHP advertises on its website . . . ." *id.* ¶ 573.  Because the Amended Complaint is "wholly silent on the issue of [Plaintiffs'] actual reliance" on BHP's purportedly misleading statements, Plaintiffs' fraud claims must be dismissed under Rule 9(b).  *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013); *Juárez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 280 (1st Cir. 2013) (affirming dismissal of a claim of fraud under Rule 9(b) for failure to specifically plead facts showing detrimental reliance).  This deficiency is especially significant since Puerto Rico law claims necessarily apply only to conduct in Puerto Rico, and yet the Amended Complaint does not allege that any statement made by BHP was made in Puerto Rico or directed at Puerto Rico.  *See Rodriguez-Navarro* v. *Am. Airlines, Inc.*, 2016 WL 4179884, at *3 n.7 (D.P.R. Aug. 4, 2016) ("Puerto Rico law does not apply extraterritorially."); *Goya de P.R., Inc.* v. *Rowland Coffee,* 206 F. Supp. 2d 211, 215 n.4 (D.P.R. 2002) ("It is well settled that Puerto Rico's laws cannot be interpreted to have an extraterritorial effect.").

Indeed, Plaintiffs cannot plead detrimental reliance on the BHP statements quoted in the Amended Complaint because it is impossible for Plaintiffs to allege that their claimed damages from the 2017 hurricane season and its aftermath were caused by their detrimental reliance on statements made by BHP all of which were made years ***after*** the 2017 hurricane season, *see* Am. Compl. ¶ 572, n. 714 (citing a May 11, 2022 third-party report of statements purportedly made by BHP in 2020-2021); *id.* ¶ 573, n. 717 (citing information valid "at August 2023") & 718 (citing the May 2022 third party report); *id.* ¶ 574 n. 719 (citing what appears to be a June 2023 publication though the link provided by Plaintiffs is inoperative).  Accordingly, the BHP statements alleged in the Amended Complaint are legally insufficient to satisfy Plaintiffs' burden to plead claims sounding in fraud with particularity as required by Rule 9(b).

### 2. The Statements Of Other Defendants Or Industry Associations Cannot Be Attributed To BHP

Having failed to identify any false or misleading marketing statements by BHP, Plaintiffs seek to hold BHP responsible for statements either attributed to the "Defendants" collectively or made *by other entities* entirely. But such statements cannot support claims against BHP.

*First*, the Amended Complaint's references generally to fraudulent conduct committed by "Defendants" collectively, *see e.g.*, Am. Compl. ¶ 7 (stating that "Defendants proclaimed that climate change was not real . . . "), is impermissible group pleading and does not satisfy Rule 9(b), which requires Plaintiffs to distinguish what acts are attributable to which defendants. *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [Plaintiff's] complaint failed to satisfy [the] minimum standard [required]."); *Vázquez Lazo v. Emeterio Walker*, 2016 WL 8711710, at *2 n.5 (D.P.R. Sept. 30, 2016) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint must particularize each defendant's alleged participation in the fraud."); *Blue v. Doral Fin. Corp.*, 123 F. Supp. 3d 236, 271 (D.P.R. 2015) (explaining that Rule 9(b) is not satisfied where plaintiffs "group all of the Individual Defendants together generally without specifically referring to each one of them").

*Second*, statements by third party industry associations also cannot be imputed by BHP simply because it is a member of such association. Courts regularly decline to impose liability solely based on the fact that a defendant was a member of industry trade associations, contributed to them, or attended meetings. *See Taylor v. Airco, Inc.*, 503 F. Supp. 2d 432, 446–47 (D. Mass. 2007) (granting summary judgment where plaintiffs did "no more than offer evidence that individual Defendants sent representatives to meetings"), *aff'd sub nom. Taylor v. Am. Chemistry Council*, 576 F.3d 16 (1st Cir. 2009); *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1290 (3d Cir. 1994);

*see also In re Mun. Stormwater Pond*, 429 F. Supp. 3d 647, 655 (D. Minn. 2019) (dismissing complaint because "a trade association is not a 'walking conspiracy' of its members"), *appeals pending*, Nos. 21-3292 et al. (8th Cir.).  "There is nothing inherently wrong with membership in an industry-wide trade association [or] with participating in scientific conferences . . . .  Indeed, these practices are probably common to most industries."  *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1038 (D. Mass. 1981).

Under Rule 9(b), therefore, Plaintiffs must "specifically plead[]" "the connection between [BHP] and the allegedly fraudulent statement" they seek to impute to BHP, *Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004), and Plaintiffs simply do not do so.  The Amended Complaint does not allege any role played by BHP in the conduct of any of the industry associations of which BHP is alleged to be a member that would justify imputing the actions and statements of these third party entities to BHP.  The Amended Complaint does not even contain any well-pleaded allegations that BHP participated in the alleged dissemination of false or misleading statements by any industry association.[3]  Accordingly, statements allegedly made by industry organizations or entities other than BHP simply cannot be attributed to BHP.

### 3.  Plaintiffs Fail To Allege That BHP Committed Fraud By Omission

Plaintiffs similarly fail to plead any omission or concealment by BHP.  Rule 9(b) applies to omissions, and requires a plaintiff to plead: "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the defendant] obtained as a consequence of the alleged fraud."  *Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 256 (6th Cir. 2012).

---

[3]  To the extent the Amended Complaint attempts to plead any sort of action on behalf of BHP, it is vague, conclusory, and does not attribute any action to BHP specifically.  *See e.g.*, Am. Compl. ¶ 395 (alleging that "Defendants BP, Chevron, Shell, BHP, and Rio Tinto were all significantly involved in, and promoted, IETA's actions to undermine climate mitigation policies and actions").

8

Again, the BHP-specific paragraphs make no mention of any statement to any consumer in Puerto Rico, much less any statement in which a material fact or representation was omitted or concealed by BHP.  And in any event, BHP had no cognizable duty to the residents of Puerto Rico to disclose information about climate risks.

As the Amended Complaint acknowledges, BHP was only a 1/3 owner of the Cerrejón mines, Am. Compl. ¶ 172, and it was Cerrejón that in the past sold coal to consumers in Puerto Rico, not BHP.  *Id*. ¶ 174.  As an entity that did not sell coal to Puerto Rico, and had only a 1/3 interest in the entity that ultimately did sell coal, BHP could not have had any duty to consumers in Puerto Rico.  *See Guevara v. Dorsey Lab'ys. Div. of Sandoz, Inc.*, 845 F.2d 364, 366 (1st Cir. 1988) (applying Restatement (Second) Torts § 402A to explain the extent of a *seller*'s duty to warn).  Here, BHP was not the seller, and as such, the duty to warn did not rest with BHP.  But even if BHP's indirect interest in Cerrejón was sufficient to give it a duty to Puerto Rican consumers, Plaintiffs are essentially seeking to impose a duty to warn the entire world of the risks of climate change.  Am. Compl. ¶ 344 (alleging a duty to warn "consumers, the public, and regulators").  No such duty to warn exists, particularly here where the climate risks of using fossil fuel have been known by the public for decades.[4]  *See Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 275 (1st Cir. 2003) (cannot hold a manufacturer liable for failure to warn of a danger commonly known to the public).

### B. Plaintiffs Fail To Plead That BHP Committed Racketeering Acts Or Entered Into Any Conspiracy

The Court should also dismiss Plaintiffs' RICO claims against BHP.  As set forth in the Joint Motion to Dismiss, Plaintiffs have not pled any of the essential elements of their RICO

---

[4] The Amended Complaint confirms that the public knew the potential risks of climate change decades prior. *See, e.g.,* Am. Compl. ¶¶ 301–306, 314, 340.

9

claims. BHP writes separately to highlight three of these elements. *First*, Plaintiffs have not tied BHP to any RICO enterprise. *Second*, Plaintiffs do not allege that BHP committed a single racketeering act, let alone "a pattern of racketeering activity," as required under 18 U.S.C. § 1962(a), (b), or (c). And *third,* Plaintiffs' claim under 18 U.S.C. § 1962(d) must fail because the Amended Complaint does not adequately allege that BHP was part of any conspiracy.

Plaintiffs attempt to plead RICO predicate offenses against BHP of mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. Am. RICO Statement ¶¶ 8(b), (d). To start, Plaintiffs fail to allege facts supporting the inference that BHP "conducted" or "participated" in the conduct of a RICO enterprise. 18 U.S.C. § 1962(c). Plaintiffs' sole allegation in support of BHP's participation in a RICO enterprise is that BHP was a member of the Global Climate Coalition ("GCC"),[5] the U.S. National Mining Association ("NMA"), and the International Emissions Trading Association ("IETA"). Am. Compl. ¶¶ 211, 395; Am. RICO Statement ¶¶ 2(a), 3(b).[6] But conclusory allegations about mere membership in an alleged enterprise is not sufficient to show that BHP "conducted" or "participated" in the conduct of a RICO enterprise, as Plaintiffs must allege that BHP played "*some* part in directing the enterprise's affairs" and "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 177–85 (1993); *see also Friendly Hotel Boutique Corp. v. Me & A Cap., LLC,* 2012 WL 4062795, at *2 (D.P.R. Sept. 14, 2012) (quoting *Reves,* 507 U.S. at 177) (holding that "plaintiff[s] must plead sufficient facts to allow for a plausible inference that [BHP] somehow 'le[d], [ran], manag[ed], or direct[ed]'" an enterprise); *see also supra* Section I(A)(2). Plaintiffs' allegations that BHP is a member of the GCC, NMA, and IETA are thus insufficient to plead that BHP had any role in

---

[5] As the Amended Complaint itself acknowledges, the GCC was dissolved in 2001. Am. Compl. ¶ 211.
[6] Plaintiffs notably do not list BHP as one of the members of the American Petroleum Institute ("API"), Am. Compl. ¶ 205, although the purported "API Enterprise" is the basis for much of Plaintiffs' RICO claims. *See e.g.*, Am. Compl. ¶ 746.

leading, running, managing, or directing any enterprise. Neither is the allegation that BHP is a member of IETA's board, Am. Compl. ¶ 395, sufficient to show operation, control, or a causal nexus between such and the alleged racketeering activity. *See Whaley v. Auto Club Ins. Ass'n*, 1997 WL 720451, at *3 (6th Cir. Nov. 12, 1997) (holding that defendant's membership on an alleged enterprise's board of governors did not amount to operation or management of the enterprise). As such, the Amended Complaint has failed to plead any facts that BHP exercised the requisite control over any enterprise.

Plaintiffs have also not alleged any racketeering activity by BHP. The mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, respectively, require an allegation of a *specific* false or misleading statement as part of a scheme to obtain money or property. *See Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997) (holding that Rule 9(b) applies to "RICO pleadings of mail and wire fraud"). Plaintiffs do not allege that BHP made any specific false or misleading statements that satisfy Rule 9(b), nor that BHP made "use of the mails or interstate wire communications in furtherance of [a] scheme" to defraud. *United States v. Sawyer*, 85 F.3d 713, 723 (1st Cir. 1996). Plaintiffs similarly allege no facts suggesting that BHP obtained any income from a pattern of racketeering activity. The Amended Complaint therefore fails to state a claim under RICO's substantive provisions.

Finally, Plaintiffs' inability to allege that BHP committed racketeering predicate acts necessarily causes their RICO conspiracy claim under 18 U.S.C. § 1962(d) to fail as well. Plaintiffs have not pleaded that BHP "knowingly joined the conspiracy, agreeing with one or more coconspirators 'to further [the] endeavor which, if completed, would satisfy all the elements of a substantive [RICO] offense.'" *United States v. Rodríguez-Torres*, 939 F.3d 16, 23–24 (1st Cir. 2019) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). Although the Amended

Complaint makes conclusory statements regarding GCC, *see, e.g.*, Am. Compl. ¶ 764 (stating generally that defendants formulated, funded and supported the GCC enterprise) and IETA, *see e.g.*, Am. Compl. ¶ 579 (alleging defendants are aware that Carbon Markets do not work but "have used the IETA since 1999 to vie for them . . . ."), this does not attribute any specific alleged conduct to BHP—Plaintiffs plead no facts from which you can even infer that BHP specifically agreed to anything at all with the other defendants.[7] Given that the allegations connecting BHP to any industry association at most show an attenuated connection to such association and which implicates no purported racketeering, let alone an intentional agreement or conspiracy to commit racketeering acts, Plaintiffs' RICO claims must be dismissed.

## II.   CONCLUSION

For all the foregoing reasons and for the reasons stated in Defendants' Joint Motion to Dismiss Amended Complaint, Defendant BHP Group Limited respectfully requests that the Court dismiss the claims against BHP for failure to state a cause of action.

---

[7] For the same reason as their RICO Claims, Plaintiffs' Sherman Act antitrust claim also fails; namely, the Amended Complaint contains no alleged facts specific to BHP regarding an agreement by BHP to restrict competition in violation of the Act. *See, e.g.,* Am. Compl. ¶¶ 773–781; *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (affirming dismissal of complaint for failure to allege "any specification of any particular activities by any particular defendant").

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the case participants appearing in said system.

Dated: January 30, 2024
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Carlos A. Rodriguez-Vidal*
Carlos A. Rodriguez-Vidal
(USDC No. 201213)
(crodriguez-vidal@gaclaw.com)
GOLDMAN ANTONETTI &
CORDOVA, LLC
American International Plaza
250 Muñoz Rivera Avenue, Suite 1500
San Juan, Puerto Rico 00918
T: 787-759-4117
F: 787-767-9177

*/s/ Victor L. Hou*
Victor L. Hou (*pro hac vice*)
(vhou@cgsh.com)
Boaz S. Morag (*pro hac vice*)
(bmorag@cgsh.com)
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999

*Attorneys for Defendant
BHP Group Limited*