**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MUNICIPALITY OF BAYAMON, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 3:22-cv-01550-SCC-HRV |
| EXXON MOBIL CORP., *et al.*, | ORAL ARGUMENT REQUESTED |
| *Defendants*. | |

---

### SHELL PLC'S MOTION TO DISMISS THE AMENDED COMPLAINT

---

Carlos A. Valldejuly (USDC No. 209505)
José J. Colón García (USDC No. 308010)
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Avenue, Suite 800
San Juan, Puerto Rico 00918-1813
(787) 764-8181
carlos.valldejuly@oneillborges.com
jose.colon@oneillborges.com

David C. Frederick (*pro hac vice*)
James M. Webster, III (*pro hac vice*)
Minsuk Han (*pro hac vice*)
Daniel S. Severson (*pro hac vice*)
Grace W. Knofczynski (*pro hac vice*)
**KELLOGG, HANSEN, TODD, FIGEL
 & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@kellogghansen.com
jwebster@kellogghansen.com
mhan@kellogghansen.com
dseverson@kellogghansen.com
gknofczynski@kellogghansen.com

*Counsel for Defendant Shell plc (f/k/a Royal Dutch Shell plc)*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

I.      INTRODUCTION ................................................................................................................1

II.     BACKGROUND ..................................................................................................................2

III.    LEGAL STANDARD...........................................................................................................3

IV.     ARGUMENT .......................................................................................................................4

        A.      Plaintiffs' Complaint Fails Because They Do Not Plead With
                Particularity That Shell Made Any Deceptive Statement Or
                Omission ...................................................................................................................4

                1.      Plaintiffs fail to allege Shell made any false or misleading
                        statement .......................................................................................................5

                2.      Plaintiffs fail to allege Shell committed fraud by omission......................10

                3.      The statements of others cannot be attributed to Shell ..............................12

        B.      Plaintiffs' RICO Claims Fail Because They Do Not Plead That
                Shell Committed Any Predicate Acts Or Entered Any Conspiracy ......................14

CONCLUSION..............................................................................................................................15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

## CASES

*A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77 (1st Cir. 2013) ................................4

*Ahmed v. Rosenblatt*, 118 F.3d 886 (1st Cir. 1997)...............................................14

*Asbestos Sch. Litig.*, *In re*, 46 F.3d 1284 (3d Cir. 1994)........................................12, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................5

*Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12 (1st Cir. 1998)...............................10

*City of Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017 (N.D. Cal. 2018), *vacated*
    *& remanded*, 960 F.3d 570 (9th Cir.), *op. am. & superseded on denial*
    *of reh'g*, 969 F.3d 895 (9th Cir. 2020)................................................11

*Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*,
    57 F.3d 56 (1st Cir. 1995) ...........................................................14

*Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271 (1st Cir. 2003) ................12

*Delaware v. BP Am. Inc.*, 2024 WL 98888 (Del. Super. Ct. Jan. 9, 2024)............1, 4, 9

*El Día, Inc. v. Puerto Rico Dep't of Consumer Affs.*, 413 F.3d 110 (1st Cir. 2005) .......9

*Feinstein v. RTC*, 942 F.2d 34 (1st Cir. 1991)........................................................4

*Fin. Oversight & Mgmt. Bd. for Puerto Rico*, *In re*, 578 F. Supp. 3d 267
    (D.P.R. 2021), *aff'd*, 54 F.4th 42 (1st Cir. 2022) .................................5

*Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27 (1st Cir. 2020)...........................1, 4

*Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012 (1st Cir. 1988).....................................10

*García-Catalán v. United States*, 734 F.3d 100 (1st Cir. 2013) ..............................3-4

*Guevara v. Dorsey Lab'y, Div. of Sandoz, Inc.*, 845 F.2d 364 (1st Cir. 1988)...............11

*Janus v. AFSCME*, 138 S. Ct. 2448 (2018) ........................................................13

*Jones v. Secord*, 684 F.3d 1 (1st Cir. 2012)..........................................................11

*Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020) ....................................10, 11

*Liberty Leather Corp. v. Callum*, 653 F.2d 694 (1st Cir. 1981) .................................7

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ......................................................10

*Mun. Stormwater Pond, In re*, 429 F. Supp. 3d 647 (D. Minn. 2019),
   *appeals dismissed*, 73 F.4th 975 (8th Cir. 2023) .................................................13

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8
   (1st Cir. 2009) .................................................................................................4

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).................................13

*Norte Car Corp. v. FirstBank Corp.*, 25 F. Supp. 2d 9 (D.P.R. 1998) .............4

*Payton v. Abbott Labs*, 512 F. Supp. 1031 (D. Mass. 1981)...........................12

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239 (6th Cir. 2012) ..........10

*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012) ................4

*Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58
   (1st Cir. 1992) .................................................................................................7

*Suna v. Bailey Corp.*, 107 F.3d 64 (1st Cir. 1997)......................................5, 7

*Taylor v. Airco, Inc.*, 503 F. Supp. 2d 432 (D. Mass. 2007), *aff'd sub nom.*
   *Taylor v. Am. Chemistry Council*, 576 F.3d 16 (1st Cir. 2009)........................12

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315 (1st Cir. 2008) ...........7

*U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40 (1st Cir. 2009) .............5

*United States v. Rodríguez-Torres*, 939 F.3d 16 (1st Cir. 2019) ...................15

*United States v. Sawyer*, 85 F.3d 713 (1st Cir. 1996)...................................14

*United States v. Velazquez-Fontanez*, 6 F.4th 205 (1st Cir. 2021), *cert. denied*,
   142 S. Ct. 500 (2021) & 1164 (2022) ..............................................................4

*Young v. Lepone*, 305 F.3d 1 (1st Cir. 2002) ................................................10

## CONSTITUTION, STATUTES, REGULATIONS, AND RULES

U.S. Const. amend. I .................................................................................12, 13, 15

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ................1, 4, 14

   18 U.S.C. § 1962(a) ...................................................................................14

   18 U.S.C. § 1962(b) ...................................................................................14

18 U.S.C. § 1962(c) ...........................................................................................14

18 U.S.C. § 1962(d) ..........................................................................................14

18 U.S.C. § 1341 ................................................................................................14

18 U.S.C. § 1343 ................................................................................................14

Puerto Rico Regulations Against Misleading Practices and Advertisement,
   P.R. Dep't of Consumer Affs., Regul. 8599 (May 29, 2015) ............................9

Fed. R. Civ. P.:

Rule 8 .................................................................................................................5

Rule 9(b) ...............................................................................1, 4, 5, 7, 10, 13, 14

Rule 10(c)............................................................................................................7

Rule 12(b)(6)...................................................................................................1, 3

## OTHER MATERIALS

M. King Hubbert, *Energy Resources*, Nat'l Acad. of Sciences (1962),
   https://nap.nationalacademies.org/catalog/21066/energy-resources............................ 6, 11

Shell Internationale Petroleum Maatschappij B.V., *The Greenhouse Effect*, Report
   Series HSE 88-001 (May 1988) ......................................................................10

## I.    INTRODUCTION

This Court should dismiss the Amended Complaint ("AC" or "Complaint") for the reasons in the Joint Motion To Dismiss.[1]  Shell plc ("Shell")[2] here identifies two more defects.

***First***, Plaintiffs do not allege any facts supporting their sensational claim that Shell participated in a decades-long "campaign of deception" to defraud Puerto Rico's consumers. AC ¶ 6; *see also id.* ¶¶ 2, 3.  Because Plaintiffs' claims all sound in fraud, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies.  *See Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 49 (1st Cir. 2020) (Rule 9(b) applies "not only to claims of fraud simpliciter but also to related claims as long as the central allegations of those claims 'effectively charge fraud' ").  The claims against Shell fall short of that exacting standard.  The Complaint fails to identify a single deceptive statement or omission by Shell (or allege that Shell had any unique knowledge about alleged climate risks).  And others' alleged conduct cannot be attributed to Shell.  Indeed, a court recently dismissed similar claims against Shell for failure to specify any misrepresentations.  *See Delaware v. BP Am. Inc.*, 2024 WL 98888, at *17 (Del. Super. Ct. Jan. 9, 2024) (dismissing "[a]ll claims alleging misrepresentations, including 'greenwashing' ").

***Second***, Plaintiffs' federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against Shell lack merit because Plaintiffs fail to allege that Shell committed any predicate racketeering acts or agreed to enter a conspiracy.

Under Federal Rule of Civil Procedure 12(b)(6), the Court thus should dismiss all of Plaintiffs' claims against Shell with prejudice.

---

[1] Shell plc is party to motions to dismiss for lack of personal jurisdiction and failure to state a claim filed jointly with other Defendants and does not consent to personal jurisdiction.

[2] The Complaint conflates activities of Shell plc with those of separately organized predecessors, subsidiaries, affiliates, and other nonparties, an error Shell plc reserves the right to challenge.

## II.    BACKGROUND

The Complaint contends that, because of "misrepresentations" by Defendants, the municipalities of Puerto Rico and their citizens bought and used fossil fuels, which caused global climate change, which caused "the devastating destruction from the 2017 Atlantic Hurricane Season and the ongoing economic losses since 2017."  AC ¶ 3; *see id.* ¶¶ 69-71.  Plaintiffs allege that Defendants learned of the alleged climate risks of burning fossil fuels "[d]ecades ago" and then "embarked on a corporate worldwide strategy to hide that information from the Plaintiffs." *Id.* ¶ 2.  Defendants allegedly "hid the dangers" of fossil fuels, "affirmatively misrepresented" the risks of using them, and "obstructed" Plaintiffs from "switching to alternative energy sources."  *Id.* ¶ 88.  According to Plaintiffs, had this alleged conduct not occurred, "Plaintiffs would, more likely than not, have avoided the severe storms of 2017."  *Id.*

Despite claiming a decades-long public campaign of deception, neither the Complaint nor Plaintiffs' RICO Statement identifies any specific false or misleading statement made by Shell. Nor do Plaintiffs allege that Shell had any special knowledge of alleged climate risks.

Many of the Complaint's Shell-specific allegations concern its corporate structure.  *See id.* ¶¶ 102, 108-119, 203.  The remaining allegations fall into three categories:

> Knowledge of alleged climate risks.  Although Plaintiffs allege that certain Shell documents show it was aware of the potential dangers of climate change, they do not (and could not) allege Shell made any false or misleading statements in these documents. They claim that Shell prepared:  (1) a "confidential . . . report" in 1988, *id.* ¶ 379, that found "'reasonable scientific agreement that increased levels of greenhouse gases would cause global warming,'" *id.* ¶ 328; (2) a 1994 internal report that they (incorrectly) allege "rejects the position of the [United Nations Intergovernmental Panel on Climate Change ('IPCC')] as 'scientific consensus,'" *id.* ¶ 361 (quoting AC Ex. 4, at 2), even though that report specifically states that the IPCC "represents the most coherent, authoritative and influential expression of scientific views on Climate Change" and that there is "complete agreement" that human activity "contribute[s] to the increase in atmospheric greenhouse gas concentrations," AC Ex. 24, at 2-3; and (3) an "internal" scenario from 1998 theorizing the potential for lawsuits if governments and energy companies ignore climate change, *id.* ¶ 6.

Plaintiffs also note that, in 1962, "[t]he chief geologist at Shell, Marion King Hubbert, authored a report for the National Academy of Sciences" observing that "'[t]here is evidence that the greatly increasing use of fossil fuels . . . is seriously contaminating the earth's atmosphere with $CO_2$.'" *Id.* ¶ 302. Plaintiffs do not allege any false or misleading information in that report. Plaintiffs further allege that Shell obtained patents and redesigned assets, *id.* ¶¶ 335, 604(c), but do not allege any related deception.

Public communications. Plaintiffs claim that Shell's communications paint too rosy a picture of Shell as a company and its products. They claim that (1) in their view, Shell has "failed to live up to" its stated aspiration to "'play[] a major part in the move from oil and gas' and [to] 'plant[] the seeds of renewable energy,'" *id.* ¶ 538, because they believe it has failed to invest enough in "low-carbon projects," *id.*; (2) Shell has described a "net-zero strategy," but they believe Shell has no intent to become net zero, *id.* ¶¶ 559-562; and (3) the "Reimagining the Future of Transportation" video about potential uses of non-traditional fuels "suggests that Shell is working on climate issues," but not to Plaintiffs' satisfaction, *id.* ¶ 540. Plaintiffs separately point to Shell's fuel-related statements about the cleaning features and emissions of "V-Power Nitro Fuel" and undisclosed other products, *id.* ¶ 527(b). Plaintiffs do not allege any falsity in any of these statements and do not explain how a reasonable viewer could misinterpret them.

Lobbying and trade associations. Although the Complaint states that Plaintiffs "do not seek damages, nor any relief based on any activity by Defendants that could be considered petitioning federal, state, or local governments," *id.* ¶ 10, Plaintiffs allege that energy companies including Shell have spent "nearly **$1 billion** in lobbying funds and narrative capture" since December 2015, *id.* ¶ 516, and a total of **$135 million** a year on "climate lobbying," *id.* ¶ 518. Plaintiffs also allege that Shell has been a member of various industry associations that allegedly engage in lobbying and advocacy. *See id.* ¶¶ 205, 211, 395, 523 (alleging membership in the American Petroleum Institute ("API"), the Western States Petroleum Association, the American Fuel and Petrochemical Manufacturers, the Global Climate Coalition ("GCC"), the International Emissions Trading Association, and the National Ocean Industries Association). Plaintiffs accuse some associations of wrongdoing but do not allege any specific wrongful conduct by Shell. Likewise, Plaintiffs allege that S. Fred Singer "was paid as a consultant by" energy companies including Shell (without any details), *id.* ¶¶ 412, 669, but they do not specifically allege that Shell had any involvement in his climate-related work.

Based on these allegations alone, Plaintiffs seek to impose liability on Shell for the injuries allegedly suffered by Puerto Rico municipalities and citizens due to the 2017 hurricanes in the Atlantic Ocean and "all of the ensuing impacts." *Id.* ¶ 10.

## III.    LEGAL STANDARD

Courts in the First Circuit use a two-step analysis when evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See García-Catalán v. United States*, 734 F.3d

100, 103 (1st Cir. 2013).  First, they "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).  Second, they "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id*. Plausible "means something more than merely possible." *Id*.  Plaintiffs cannot avoid dismissal by "attempt[ing] to camouflage conclusory statements as allegations of fact." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013).

## IV.   ARGUMENT

### A.   Plaintiffs' Complaint Fails Because They Do Not Plead With Particularity That Shell Made Any Deceptive Statement Or Omission

All of Plaintiffs' claims sound in fraud because they all "seek[] damages for [the] ongoing *deceit* of the Defendants."  AC ¶ 6 (emphasis added); *see id.* ¶¶ 634-725 (alleging common-law consumer fraud, conspiracy to commit consumer fraud, and violations of Puerto Rico's consumer-protection laws); *id.* ¶¶ 726-763 (RICO claims predicated on mail and wire fraud); *id.* ¶¶ 764-771 (antitrust claim based in part on "fraudulent[] conceal[ment]"); *id.* ¶¶ 772-834 (same, for nuisance, strict-liability, negligence, and unjust-enrichment claims).  Rule 9(b)'s heightened pleading requirement therefore applies.  *See Foisie*, 967 F.3d at 49; *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (Rule 9(b) governs state-law fraud claims in federal court); *Feinstein v. RTC*, 942 F.2d 34, 42 (1st Cir. 1991) (RICO claims based on mail and wire fraud predicates), *abrogated on other grounds by United States v. Velazquez-Fontanez*, 6 F.4th 205 (1st Cir. 2021); *Norte Car Corp. v. FirstBank Corp.*, 25 F. Supp. 2d 9, 15 (D.P.R. 1998) (fraud-based antitrust claims); *cf. Delaware*, 2024 WL 98888, at *14 (state "Rule 9(b) applies to tort claims based on fraud").

Rule 9(b) requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This standard means that a complaint must specify the time, place, and content of an alleged false representation." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009). Rule 9(b) does not "allow plaintiffs to base claims of fraud on speculation and conclusory allegations," and instead "require[s] plaintiffs to allege facts that give rise to a strong inference of fraudulent intent." *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997). Additionally, "[w]here there are multiple defendants, the specific role of each must be alleged." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 578 F. Supp. 3d 267, 285 (D.P.R. 2021) ("*FOMB*"), *aff'd*, 54 F.4th 42 (1st Cir. 2022). Plaintiffs fail to satisfy even the ordinary plausibility pleading standard. *See* Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009). They fall well short of satisfying Rule 9(b).

### 1.    Plaintiffs fail to allege Shell made any false or misleading statement

Plaintiffs' claims fail because the Complaint does not identify a single false or misleading representation by Shell. Plaintiffs mainly rely on generalized claims of deception and allegations not attributable specifically to Shell. For example, they assert that Defendants collectively "invest[ed] certainly hundreds of millions, and probably billions, into a fraudulent marketing scheme to convince all consumers . . . that their fossil fuel-based products did not—and would not—alter the climate." AC ¶ 6 (footnotes omitted). Those non-specific statements cannot sustain their claims grounded in fraud. Instead, Plaintiffs must plead with particularity each Defendant's "specific role." *FOMB*, 578 F. Supp. 3d at 285. They have not done so here.

The few Shell-specific statements in the Complaint do not change matters. Plaintiffs cite certain *public* reports allegedly associated with Shell and indicating its awareness "that $CO_2$ buildup in the atmosphere 'could have profound effects on both the weather and on the ecological balances.'" AC ¶ 379. For example, they allege that "[t]he chief geologist at Shell, Marion King

Hubbert, authored a report for the National Academy of Sciences [NAS] in 1962" that found "'evidence that the greatly increasing use of fossil fuels . . . is seriously contaminating the earth's atmosphere.'" *Id.* ¶ 302.  Plaintiffs offer no basis for attributing the report (or Hubbert's knowledge) to Shell.  But even if such a basis existed, it would only hurt Plaintiffs' case.  As the link Plaintiffs provide (at ¶ 302 n.322) makes clear, that report was made available by the National Research Council, was archived in the Library of Congress, and (per its first page) was even "forwarded to President Kennedy."  M. King Hubbert, *Energy Resources*, Nat'l Acad. of Sciences (1962).  And if (as Plaintiffs suppose) the report was Shell's, it would be hard to imagine conduct more inconsistent with the goal of "deceiv[ing] . . . policymakers" about climate change, AC ¶ 346, than authoring a document highlighting risks to the earth's atmosphere from the increased use of fossil fuels and transmitting it to the President of the United States.

Plaintiffs also reference certain *internal* Shell materials.  For instance, they cite a 1994 Shell internal report titled "The Enhanced Greenhouse Effect" that Plaintiffs allege "rejects the position of the IPCC as 'scientific consensus,' suggesting instead that '[t]here is a range of views among IPCC scientists about the magnitude of the threat from global warming and its causes.'" *Id.* ¶ 361.  (Plaintiffs' original complaint alleged just the opposite—that the 1994 report "recognized the IPCC conclusions as the mainstream view," Dkt. 1, ¶ 388—which the report's text Plaintiffs incorporate confirms:  "The conclusions of the IPCC . . . can be regarded as the mainstream view," AC Ex. 24, at 2.)  Plainly, an internal report cannot serve as the basis of a public-deception claim.  But even if it could, Plaintiffs do not point to any false or misleading

6

statement in that document.  While the Complaint alleges (generally) that Shell emphasized

scientific uncertainty, that suggestion is belied by the text of the very document Plaintiffs cite[3]:

- "[T]here is *complete agreement*" that "[h]uman activities have contributed to the increase in atmospheric greenhouse gas concentrations."  *Id.* at 2-3 (emphasis added);
- The IPCC "represents the most coherent, authoritative and influential expression of scientific views on Climate Change."  *Id*. at 2; and
- It can be stated "with confidence" that "[h]uman activities have contributed to an increase in atmospheric greenhouse gas concentrations which must have some effect on the radiation balance which ultimately determines global climate."  *Id*. at 13.

Far from sowing doubt, these statements acknowledge a link between human activity and climate

change and reflect a careful synthesis of the then-prevailing scientific viewpoints.

Similarly, the Complaint alleges that Shell internally discussed that a "series of violent

storms" could affect the United States and "spark a class-action consumer fraud suit" against

energy companies.  AC ¶¶ 6, 403.  But this allegation fails to allege any deception by Shell.

Shell's own internal speculation about the possibility of future events cannot be actionable as

fraud.  *See Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 65 (1st Cir.

1992) (fraud claim was "fatally defective" because "[t]he alleged misrepresentations consisted only

of opinions as to future events"); *Liberty Leather Corp. v. Callum*, 653 F.2d 694, 698 (1st Cir.

1981) (predictions' "truth cannot literally be known at the time" and "reliance upon such

predictions is generally dismissed as unreasonable").  Once again, Plaintiffs do not allege any

falsity.  Nor does the Complaint remotely satisfy Rule 9(b), which requires alleging specific

statements that were "presented to the public" and "were false or misleading at the time they

were made," which a defendant "knew were false or misleading."  *Suna*, 107 F.3d at 69.

---

[3] Because Plaintiffs append the 1994 report as an exhibit to the Complaint, the Court may evaluate its entirety without relying on Plaintiffs' selective quotation.  *See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("Exhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6).") (quoting Fed. R. Civ. P. 10(c)).  Plaintiffs cannot cherry-pick quotes to manufacture implausible claims.

Plaintiffs also take issue with Shell public communications that describe some of Shell's low-carbon and carbon-reducing projects and related strategies.  For instance, Plaintiffs fault Shell for allegedly "fail[ing] to live up" to its stated goal of "'playing a major part in the move from oil and gas' and 'planting the seeds of renewable energy,'" AC ¶ 538, and they quote Shell's Chairman in 1999 as identifying a "'need to reassure people—publicly—of [Shell's] commitment to . . . balancing [its] own legitimate commercial interests with the wider need to protect and enhance the environment,'" *id.* ¶ 501.  But the Complaint alleges that Shell did invest annually in researching "low-carbon projects."  *Id.* ¶ 538.  Whether or not the company could have done *still more* (according to Plaintiffs' subjective report card), *id.* ¶ 561, is irrelevant.  The Complaint does not allege anything actually false or misleading about Shell's choice to describe its energy-transition-related projects and strategies.

Plaintiffs also take aim at various Shell statements concerning net-zero emissions.  For instance, they object to the *title* (not the content) of a 2016 report by Shell, "A Better Life with a Healthy Planet:  Pathways to Net-Zero Emissions."  *Id.* ¶ 560.  But they admit that in the report Shell makes clear that in 2016 it had "'no immediate plans to move to a net-zero emissions portfolio over [an] investment horizon of 10-20 years.'"  *Id.*  And as even the *title* suggests, it was not about Shell and instead highlighted pathways for society to reach net-zero emissions. And while Shell has adopted a 2050 net-zero target since then, *id.* ¶ 559 & n.686, Plaintiffs do not allege any misstatement concerning that target or how any misstatement could have changed consumer consumption of fossil fuels.  Indeed, Plaintiffs allege Shell has stated *publicly* that its "'operating plans and budgets do not reflect Shell's Net-Zero Emissions target,'" *id.*,[4] and that its "plan to reduce end-use (scope 3) emissions" to net-zero "relies on 'work[ing] with customers

---

[4] The disclaimer goes on to explain that is because 2050 is beyond the regular 10-year planning period.  *See* AC ¶ 559 n.686.

around the world to achieve their own lower-carbon goals by providing verified, high-quality offsets,'" *id.* ¶ 566.  By highlighting statements by Shell that accurately characterize the reality of Shell's net-zero goals, the Complaint is not merely deficient.  It is self-refuting.

Plaintiffs also balk at Shell's alleged statement that its "V-Power Nitro Fuel" is "'cleaner'" by comparison and that it "removes carbon deposit buildup in car engines." *Id.* ¶ 527(b).  But Shell makes only *comparative* statements, and Plaintiffs nowhere allege them to be false in any way.[5]  Similarly, Plaintiffs complain that Shell misled customers about its investments in a video "entitled, 'Reimagining the Future of Transportation,'" which, according to Plaintiffs, "suggests that Shell is working on climate issues by building ships that are powered by liquefied natural gas rather than oil, using hydrogen fuel cells, and flying airplanes using only biofuels." *Id.* ¶ 540.  But that cannot support a misrepresentation claim because, as Plaintiffs acknowledge, Shell *is* exploring "low-carbon projects." *Id.* ¶ 538.  And while Plaintiffs claim these projects account for "a minority of [Shell's] expenditure," *id.* ¶ 540, Plaintiffs do not allege Shell's statements misrepresent anything, let alone the level of investment.  In any event, a claim about insufficient investment in low-carbon products does not support Plaintiffs' argument, which is that Shell engaged in deception that led to increased consumption of traditional fossil fuels.  Plaintiffs' claims "alleging misrepresentations, including [so-called] 'greenwashing,'" therefore "must be dismissed." *Delaware*, 2024 WL 98888, at *17.

---

[5] Plaintiffs' third cause of action—alleging violations of Puerto Rico's consumer-protection rules—thus should be dismissed for the additional, independent reason that the Complaint does not allege any deceptive or misleading advertising statements by Shell in the consumer marketplace.  The Puerto Rico Regulations Against Misleading Practices and Advertisement protect consumers from misleading advertisement of goods and services.  *See El Día, Inc. v. Puerto Rico Dep't of Consumer Affs.*, 413 F.3d 110, 111-12 (1st Cir. 2005).  Plaintiffs have not plausibly pleaded any violation of the repealed regulations they cite, *see* Joint Mot. To Dismiss 55 n.23, or of the current version of those regulations.

## 2.   Plaintiffs fail to allege Shell committed fraud by omission

Plaintiffs likewise fail to allege that Shell committed fraud by omission or concealment. Under Rule 9(b), plaintiffs must plead: "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the defendant] obtained as a consequence of the alleged fraud." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012).

Plaintiffs have not made those showings here. They point to a "1988 confidential Shell report," AC ¶ 379, finding "'reasonable scientific agreement that increased levels of greenhouse gases would cause global warming,'" *id.* ¶ 328. But they do not allege that the report contained any information that the public or scientific community lacked. Nor could they: The report itself states that it represents "the latest (1986) state of knowledge" about the greenhouse effect and cites nearly 70 publicly available external sources.[6] That is unsurprising. The Complaint confirms that the public knew the potential risks of climate change decades prior. *See, e.g.*, *id.* ¶ 301.[7] Plaintiffs also discuss Shell patents that they claim respond to climate change. *See id.*

---

[6] Shell Internationale Petroleum Maatschappij B.V., *The Greenhouse Effect*, Report Series HSE 88-001, at 6 (May 1988). Plaintiffs attached the 1988 report as an exhibit to their original complaint, *see* Dkt. 1, Ex. 24, but not to their Amended Complaint. Nevertheless, the Amended Complaint "contain[s] extensive excerpts from, and references to," that 1988 report. *Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002); *see* AC ¶¶ 328, 336, 341, 379. This Court may therefore consider the document effectively merged into the pleadings. *See, e.g.*, *Young*, 305 F.3d at 11; *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988).

[7] Plaintiffs do not allege that Shell had any special knowledge that the public or scientific community lacked because they cannot. *See, e.g., Massachusetts v. EPA*, 549 U.S. 497, 507 (2007) (explaining that "the U.S. Weather Bureau began monitoring atmospheric carbon dioxide levels" in 1959 and that, by "the late 1970's, the Federal Government began devoting serious attention to the possibility that carbon dioxide emissions associated with human activity could provoke climate change"); *Juliana v. United States*, 947 F.3d 1159, 1166 (9th Cir. 2020) ("[T]he federal government has long understood the risks of fossil fuel use and increasing carbon dioxide

¶¶ 335, 604(c).  But those patents are a matter of public record, as the Complaint acknowledges.  *See id.* ¶ 335 & n.365.  Nor do Plaintiffs claim that the alleged design changes to the "Troll A platform" were done in secret.  Indeed, the Complaint cites a 1989 *The New York Times* article publicly discussing Shell's redesign of the platform *and* the reason for it.  *Id.* ¶ 335 & n.366.

Plaintiffs' claims fail for the additional reason that Shell has no cognizable legal duty to disclose information about alleged climate risks.  Under Puerto Rico law, a manufacturer's duty to warn is limited to informing the product user of the product's "dangerous character insofar as [the manufacturer] is aware of it," but only if the manufacturer "has no reason to expect that those for whose use the [product] is supplied will discover its condition and realize the danger involved."  *Guevara v. Dorsey Lab'y, Div. of Sandoz, Inc.*, 845 F.2d 364, 367 (1st Cir. 1988).  But Plaintiffs do not allege that Shell violated a duty to warn users of fossil-fuel products about any direct dangers associated with using those products.  Instead, Plaintiffs seek to impose a duty to warn *the entire world* of potential harms from the cumulative effect of billions of individuals' decisions over a century.  *See, e.g.*, AC ¶ 344 (alleging that "consumers, the public, and regulators" should have been warned).  No such duty to warn the world of indirect risks exists under Puerto Rico law, and this Court should not be the first to conjure one.  *See Jones v. Secord*, 684 F.3d 1, 11 (1st Cir. 2012) (plaintiff "who made a deliberate choice to sue in federal court" could not ask the federal court to "blaze a new trail that the [state] courts have not invited").  Additionally, as the sources the Complaint cites show, including the 1962 NAS report discussed above, the potential climate risks of fossil fuels have been publicly known and discussed for

---

emissions."); *id.* at 1164 ("the federal government has long promoted fossil fuel use despite knowing that it can cause catastrophic climate change"); *City of Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017, 1019 (N.D. Cal. 2018) ("The science dates back 120 years."), *vacated & remanded*, 960 F.3d 570 (9th Cir.), *op. am. & superseded on denial of reh'g*, 969 F.3d 895 (9th Cir. 2020).

decades.  There is no duty to warn when a purported risk is "commonly known to the public."
*Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 275 (1st Cir. 2003).

### 3.  The statements of others cannot be attributed to Shell

Allegations that Shell acted through industry associations or other Defendants and
nonparties do not change the preceding analysis.  *See* AC ¶¶ 205-208, 211, 412, 430.  To begin
with, the Complaint describes lobbying and advocacy activity by industry groups to encourage
governments to take policy positions relating to the energy transition.  *See, e.g., id.* ¶¶ 516, 518
(alleging that Defendants including Shell spent monies on lobbying related to energy policies);
*id.* ¶ 387 (alleging that industry associations sought to "oppos[e] the Kyoto Protocol").  These
activities constitute core political speech protected by the First Amendment, and Plaintiffs have
expressly disclaimed any challenge as to them.  *See id.* ¶ 10.

Regardless, alleged conduct by industry associations and other Defendants cannot be
attributed to Shell.  Courts regularly decline to impose liability where the plaintiff's sole
contention is that a defendant belonged to an industry association, contributed to it, or attended
meetings.  *See Taylor v. Airco, Inc.*, 503 F. Supp. 2d 432, 446-47 (D. Mass. 2007) (granting
summary judgment because "Plaintiffs can do no more than offer evidence that individual
Defendants sent representatives to meetings"); *see Payton v. Abbott Labs*, 512 F. Supp. 1031,
1038 (D. Mass. 1981) ("[t]here is nothing inherently wrong with membership in an industry-
wide trade association").  In *In re Asbestos School Litigation*, for example, the plaintiffs argued
that the defendant had joined a civil conspiracy of asbestos manufacturers to, among other
things, "disseminate[ ] misleading information about the danger of asbestos," by becoming an
"associate member" of an industry association.  46 F.3d 1284, 1287 (3d Cir. 1994).  The Third
Circuit (with then-Judge Alito writing) disagreed.  *Id.* at 1288-90.  "Joining organizations that

participate in public debate, making contributions to them, and attending their meetings are activities that enjoy substantial First Amendment protection." *Id.* at 1294.

Applying these standards, the alleged conduct of entities other than Shell cannot be attributed to Shell. The Complaint alleges (¶¶ 205-208, 211) generally that Shell was a member of various organizations. But it does not specify what role (if any) Shell played in any actions by API, GCC, IETA, or other nonparties. Because "[a] member of a trade group . . . does not necessarily endorse everything done by that organization or its members," *Asbestos*, 46 F.3d at 1290, mere membership or participation is not enough to state a claim against Shell as a matter of law, *see In re Mun. Stormwater Pond*, 429 F. Supp. 3d 647, 655 (D. Minn. 2019) (dismissing complaint because "a trade association is not a 'walking conspiracy' of its members").

Similarly, the Complaint alleges Shell and others paid S. Fred Singer "as a consultant," but it provides no details about the services rendered. AC ¶¶ 412, 669. Asserting that a defendant paid a consultant, without alleging it authorized or intended any unlawful conduct, is not actionable. Holding otherwise would impose liability "by reason of association alone," which is prohibited. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982). Additionally, Rule 9(b) requires Plaintiffs to allege specifics about when Singer was paid, what work he produced, any deceptive statements he authored, that Shell endorsed or otherwise disseminated any misleading statements by Singer, or how the public relied on and was misled by his alleged work. And even if Singer's work could create liability for Shell by reason of association alone (it cannot), imposing liability on Shell for alleged statements relating to climate change would violate Shell's First Amendment rights. *See Janus v. AFSCME*, 138 S. Ct. 2448, 2476 (2018) ("climate change" is "undoubtedly [a] matter[ ] of profound value and concern to the public").

**B.    Plaintiffs' RICO Claims Fail Because They Do Not Plead That Shell Committed Any Predicate Acts Or Entered Any Conspiracy**

The Court also should dismiss Plaintiffs' RICO claims because Plaintiffs fail to allege any predicate racketeering acts by Shell or that Shell agreed to conspire with anyone.  To state a claim under 18 U.S.C. § 1962(a), (b), or (c), Plaintiffs must allege that Shell engaged in "a pattern of racketeering activity."  Additionally, to plead a violation of § 1962(a) and (b), Plaintiffs must allege that they were harmed by (a) "use or investment of income derived from a pattern of racketeering activity," and (b) "acquisition or maintenance of control of an enterprise through a pattern of racketeering activity."  *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91-92 (1st Cir. 1995).

Plaintiffs allege a laundry list of activities, AC ¶ 725, but none of them is a racketeering activity.  Plaintiffs fail to allege that Shell committed even a single actual racketeering act, much less "a pattern of racketeering activity."  Plaintiffs purport to allege two types of predicate acts by Defendants generally:  (1) mail fraud under 18 U.S.C. § 1341; and (2) wire fraud under 18 U.S.C. § 1343. Pls.' Am. RICO Statement ¶ 8(b), (d).  These offenses require alleging a specific false or misleading statement, *see Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997) (Rule 9(b) applies to "RICO pleadings of mail and wire fraud"), made as part of a scheme to obtain money or property, *see* 18 U.S.C. §§ 1341, 1343.  But Plaintiffs do not allege that Shell made any specific false or misleading statement, or even made "use of the mails or interstate wire communications in furtherance of [a] scheme" to defraud.  *United States v. Sawyer*, 85 F.3d 713, 723 (1st Cir. 1996).  And Plaintiffs do not allege any facts suggesting that Shell obtained any income from—or control of an enterprise through—a pattern of racketeering activity.

Nor have Plaintiffs stated a claim under RICO's conspiracy provision, 18 U.S.C. § 1962(d). Plaintiffs must plead "that the defendant knowingly joined the conspiracy, agreeing with one or

more coconspirators 'to further [the] endeavor which, if completed, would satisfy all the elements of a substantive [RICO] offense.'" *United States v. Rodríguez-Torres*, 939 F.3d 16, 23-24 (1st Cir. 2019) (brackets in original). The Complaint has not plausibly alleged any such agreement by Shell. Plaintiffs' list of alleged "predicate acts and material misrepresentations" with respect to API and GCC—even if those allegations stated any claim—do not include any specific conduct by Shell. AC ¶ 728. Nowhere does the Complaint allege that Shell itself "caused the publication of a series of newspaper articles" undermining science; partook in "an action plan to defeat the Kyoto agreement and greenhouse gas regulation";[8] or "funded and supported various groups to perpetuate [a] pattern of deception." *Id.*[9]

The sum total of factual allegations against Shell are threadbare and implicate none of the above-listed actions, let alone an intentional agreement to advance racketeering acts. Plaintiffs allege Shell participated in some trade groups, Pls.' Am. RICO Statement ¶¶ 3, 10, and allege that Shell warned that lawsuits could result if the U.S. government and companies neglected the views of scientists, *id.* ¶¶ 18-19. They nowhere allege that Shell agreed to pursue unlawful activity. And, again, liability cannot hinge only on trade association membership. *See supra* Part IV.A.3. Plaintiffs do not allege that Shell engaged in any racketeering acts or conspiracy.

## CONCLUSION

The Court should dismiss the entire Amended Complaint against Shell with prejudice.

---

[8] Plaintiffs' attempt (AC ¶ 430) to associate Shell with the action plan solely based on Shell's membership in API improperly attempts to attribute API's alleged conduct to Shell, in violation of pleading principles and the First Amendment. *See supra* Part IV.A.3.

[9] Plaintiffs allege that "many" companies, including Shell and several Defendants, "'reorganized'" the GCC in 1992. AC ¶ 372. But the document this allegation cites says nothing about Shell participating; it does not reference a "reorganiz[ation]" at all. *Id.* ¶ 372 & n.401. In any event, that is not a predicate racketeering act, and it falls far short of plausibly alleging that Shell "conducted and participated for decades in the conduct" of an illegal enterprise's affairs. *Id.* ¶ 728. On the contrary, Plaintiffs allege Shell "left." *Id.* ¶ 402.

Dated:  January 30, 2024

Respectfully submitted,

By:  */s/ Carlos A. Valldejuly*

                    Carlos A. Valldejuly (USDC No. 209505)
                    José J. Colón García (USDC No. 308010)
                    **O'NEILL & BORGES LLC**
                    250 Muñoz Rivera Avenue, Suite 800
                    San Juan, Puerto Rico 00918-1813
                    (787) 764-8181
                    carlos.valldejuly@oneillborges.com
                    jose.colon@oneillborges.com

                    David C. Frederick (*pro hac vice*)
                    James M. Webster, III (*pro hac vice*)
                    Minsuk Han (*pro hac vice*)
                    Daniel S. Severson (*pro hac vice*)
                    Grace W. Knofczynski (*pro hac vice*)
                    **KELLOGG, HANSEN, TODD, FIGEL**
                      **& FREDERICK, P.L.L.C.**
                    1615 M Street, N.W., Suite 400
                    Washington, D.C. 20036
                    (202) 326-7900
                    dfrederick@kellogghansen.com
                    jwebster@kellogghansen.com
                    mhan@kellogghansen.com
                    gknofczynski@kellogghansen.com
                    dseverson@kellogghansen.com

                    *Counsel for Defendant*
                    *Shell plc (f/k/a Royal Dutch Shell plc)*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on January 30, 2024, the document above was electronically filed with the Clerk of Court using the CM/ECF system, which automatically sent notification to all parties of record.

*/s/ Carlos A. Valldejuly*
Carlos A. Valldejuly

O'NEILL & BORGES LLC

*Counsel for Defendant*
*Shell plc (f/k/a Royal Dutch Shell plc)*