IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MUNICIPALITY OF BAYAMON, et al.,<br><br>Plaintiffs,<br><br>-against-<br><br>EXXON MOBIL CORP., et al.,<br><br>Defendants. | Case No. 3:22-cv-01550-SCC-HRV |

**DEFENDANT BHP GROUP LIMITED'S MOTION TO DISMISS
THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

**TO THE HONORABLE COURT:**

Defendant BHP Group Limited ("BHP"), through the undersigned counsel, and pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, hereby moves to dismiss the Amended Complaint as to BHP for lack of personal jurisdiction.

**INTRODUCTION**

Despite having the benefit of seeing BHP's motion to dismiss the Complaint [ECF No. 196], which laid out the deficiencies in Plaintiffs' jurisdictional allegations against BHP, Plaintiffs still fail to allege a single contact between BHP and Puerto Rico sufficient to establish general or specific personal jurisdiction in Puerto Rico for Plaintiffs' Puerto Rico law claims. Plaintiffs have added no new allegations in the Amended Complaint that would support jurisdiction over BHP.

In their Amended Complaint, Plaintiffs continue to assert wide-ranging Puerto Rico and federal law claims, alleging that Defendants, including BHP, engaged in a campaign of misrepresentation to obscure the impact of the consumption of their carbon-based products on climate change, and that Plaintiffs and their residents relied on such misrepresentations in their

purchase of Defendants' carbon-based products, the consumption of which exacerbated climate change and resulted in the destructive hurricanes that struck the island in 2017.

BHP is not subject to either general or specific personal jurisdiction in Puerto Rico with respect to Plaintiffs' Puerto Rico law claims.  *First*, as Plaintiffs acknowledge, BHP is an Australian corporation with its principal place of business in Australia.  Am. Compl. ¶ 171.  BHP is therefore not "at home" in Puerto Rico.  Plaintiffs have added no allegations that would contradict this.  *Second*, BHP does not have the requisite "minimum contacts" with Puerto Rico; consequently, the exercise of jurisdiction would not comport with Puerto Rico's long-arm statute and constitutional due process.[1]  Plaintiffs do not allege BHP directed any marketing, let alone deceptive or fraudulent marketing, at Puerto Rico residents.  Though Plaintiffs have added a few so-called "greenwashing" allegations, none of those purportedly misleading statements were directed at Puerto Rico residents, and thus fail to establish jurisdiction over BHP.

Instead, as in the original Complaint, Plaintiffs' jurisdictional allegations over BHP continue to be solely based on coal imports into Puerto Rico from the Cerrejón mines in Colombia.  But, as set forth in BHP's motion to dismiss the Complaint and again below, these mines are not owned or operated by BHP, but rather by separate corporate entities of which BHP subsidiaries were only 1/3 shareholders; and Plaintiffs cannot overcome the presumption of corporate separateness between BHP's subsidiaries and these other entities such that it would be proper to impute these other entities' forum contacts, if any, to BHP.  Plaintiffs have not supplemented the allegations in the Amended Complaint to address any of these pleading deficiencies.

---

[1] This individual motion focuses on the Puerto Rico law claims (the First–Third and Ninth–Fourteenth Causes of Action).  As to the federal claims under the RICO and Sherman Act, (the Fourth–Eighth Causes of Action), BHP is not subject to personal jurisdiction with respect to those claims for the reasons set out in Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction at Section IV ("Joint Motion"), which BHP incorporates herein.

Further, jurisdiction is proper only when there are relevant forum contacts within the applicable limitations period, but here, the last coal imports from the Cerrejón mines to the coal plant in Guayama, Puerto Rico, occurred in 2009, 13 years before the Complaint was filed. Again, Plaintiffs do not add any allegations that contradict this fact. *Finally*, Plaintiffs' new allegations regarding BHP's purported connections with the U.S. generally (and not Puerto Rico specifically) are irrelevant to establishing jurisdiction with respect to Plaintiffs' Puerto Rico law claims.

Accordingly, the Puerto Rico law claims against BHP should be dismissed for lack of personal jurisdiction.

## FACTUAL BACKGROUND

Plaintiffs allege that Defendants "misrepresented the dangers of the carbon-based products which they marketed and sold despite their early awareness of the devastation they would cause Puerto Rico," and that Plaintiffs and their residents relied on Defendants' alleged misrepresentations and "believ[ed] that the purchase and use of Defendants' carbon-based products [was] safe and would not endanger the lives or livelihood of [their] residents . . . ." Am. Compl. ¶¶ 1–3. Plaintiffs further allege that Defendants' alleged misrepresentations "accelerated climate change" and "result[ed] in the devastating destruction from the 2017 Atlantic Hurricane Season and the ongoing economic losses since 2017." Am. Compl. ¶¶ 2–3.

Even with the benefit of knowing BHP's arguments as to personal jurisdiction, Plaintiffs' specific allegations about BHP continue to be limited—indeed, BHP is mentioned in only 25 of the more than 800 paragraphs in the Amended Complaint. *See* Am. Compl. ¶¶ 75, 140, 171–173, 175–179, 211, 364, 365, 372, 381, 395, 483, 555, 556, 572–574, 582, 583, 725.

Categorizing BHP as a "Coal Defendant," Plaintiffs allege that "BHP is a 1/3 owner in Carbones del Cerrejón Norte ('Cerrejón') coal mine, a large open-pit coal mine in Colombia," and

that coal imported from Cerrejón supplies a "coal-fired electricity generating plant at Guayama." Am. Compl. ¶¶ 76 n. 24, 172, 174. Plaintiffs further allege that BHP "is responsible for 1.58% of all global industrial emissions from 1965-2022," which represents the purported percentage contribution of not only BHP (0.71%) but also of two non-party entities who each owned 1/3 of the remaining 2/3 of Cerrejón, Anglo American and Glencore, whose alleged share of global industrial emissions from 1965–2022 are 0.47% and 0.40%, respectively. Am. Compl. ¶¶ 177–178.

Notably, though Plaintiffs added a small number of allegations relating to statements BHP made in press releases on its globally available website, *see* Am. Compl. ¶¶ 556, 572–574, Plaintiffs do not allege any specific misrepresentations made by BHP that were directed at Puerto Rico, any marketing or advertisements directed at Puerto Rico by BHP, or any sales of coal products by BHP to Puerto Rico. The Declaration of Robert Gareca ("Gareca Decl."), attached hereto as Exhibit A; Declaration of Charity E. Lee ("Lee Decl."), attached hereto as Exhibit B; and documents attached to the Gareca and Lee Declarations, submitted in support of this motion clarify the facts relating to Cerrejón and BHP's relationship to that business.

Although the Amended Complaint alleges that "BHP [Group Limited] is a 1/3 owner in Carbones del Cerrejón Norte ('Cerrejón') coal mine," Am. Complaint ¶ 172, it was actually indirect subsidiaries of BHP Group Plc[2] and BHP Group Limited who were 1/3 shareholders in three separate entities that operated the Cerrejón coal mines and marketed and sold Cerrejón coal.

---

[2] At the time the indirect BHP subsidiaries became a 1/3 shareholder in the Cerrejón Entities, BHP Group Limited and BHP Group Plc had a dual listed company arrangement by which the two listed companies operated as if they were a single economic enterprise while retaining their separate legal identities, tax residences, and stock exchange listings. This dual-listed structure was eliminated in January 2022, and all the BHP Group Limited and BHP Group Plc subsidiaries were organized under BHP Group Limited. Gareca Decl., Exs. 1, 2. For the purposes of this motion and convenience, the relevant subsidiaries are all referred to as subsidiaries of defendant BHP (the "BHP Subsidiaries," each a "BHP Subsidiary").

Gareca Decl. ¶¶ 9–10, Exs. 3–6. More specifically, the BHP Subsidiaries were 1/3 shareholders in each of three entities: two mining companies responsible for operating the coal mines, Carbones del Cerrejón Limited (CDC) and Cerrejón Zona Norte SA (CZN) (incorrectly identified in the Amended Complaint as "Carbones del Cerrejón Norte") (together the "Cerrejón Mining Companies"), and a trading company exclusively responsible for the sale and marketing of Cerrejón's coal, Coal Marketing Company Ltd (CMC) (together with CDC and CZN, the "Cerrejón Entities"). Gareca Decl., Exs. 3–8, 13. CDC, CZN, and CMC were separate corporate entities from their minority shareholders and from BHP itself.

The governance structure for each of the Cerrejón Entities was set forth in its respective Shareholders' Agreement. With respect to the Cerrejón Mining Companies, the relevant BHP Subsidiary, which is not a defendant in this case, was entitled to elect only one of three Shareholder Representatives on the Shareholders' Committee and to nominate only one of three Directors on the Board of Directors. Gareca Decl., Ex. 9, § 6.3. The BHP subsidiary-appointed Shareholder Representative and Director could cast a vote proportionate to BHP's 33.3% Participating Interest. Gareca Decl., Ex. 9, § 3.3. All decisions by the Shareholders' Committee required approval of more than 50% (and in certain circumstances, at least 75%) of the total Participating Interests, and all decisions by the Board required majority approval. Gareca Decl., Ex. 9, § 3.3.

The Cerrejón marketing company, CMC, had a similar governance structure. The relevant BHP Subsidiary was entitled to elect one of three Shareholder Representatives on CMC's Shareholders' Committee and to nominate two of six Directors of the Board. Gareca Decl., Ex. 10, §§ 3.2, 6.2, 6.3. As with the Cerrejón Mining Companies, the Shareholder Representative and Directors could cast votes proportionate to the BHP Subsidiary's 33.3% Participating Interest.

Gareca Decl., Ex. 10, §§ 3.3, 8.2. Board decisions required majority approval and Shareholders' Committee decisions required 75% approval. Gareca Decl., Ex. 10, §§ 3.3, 8.2.

The Shareholders' Agreements for the three Cerrejón Entities further provided that Senior Employees (which included "the President, the Chief Operating Officer, all Vice-Presidents or their equivalents" of each of CDC and CZN, and "the Chief Executive Officer and the most senior financial officer" of CMC) were to be "employed and renumerated" by their respective Cerrejón Entity, rather than by the shareholders, and specified that the Senior Employees were to "perform independently of the Groups of Shareholders." Gareca Decl., Ex. 9, §§ 1.1, 9.3, Ex. 10, §§ 1.1, 9.4. With respect to CMC, the Shareholders' Agreement further specified that such Senior Employees could *not* be employees of the shareholders. Gareca Decl., Ex. 10, § 9.2. The Shareholders' Agreements provided that the Cerrejón Entities would distribute dividends of "Distributable Cash" to their shareholders, which constituted the available cash after providing for "current debts, operating expenses, working capital and committed but not expended replacement and new capital . . . after deduction of all amounts required to be transferred to any and all reserves required to be created and/or maintained under applicable law and regulation." Gareca Decl., Ex. 9, §§ 1.1, 11.1, Ex. 10, §§ 1.1, 11.1.

The shareholders in Cerrejón did not own any of the coal produced by the Cerrejón Mining Companies or marketed and sold by CMC (the exclusive agent for the sale of Cerrejón coal), and the proceeds of such sales were remitted to the Cerrejón Mining Companies, not to the shareholders. Gareca Decl., Ex. 11, §§ 1.04, 1.06, 2.01. The Sales Agency Agreement between the Cerrejón Mining Companies and CMC provided that CMC would be engaged "exclusively as [the Cerrejón Mining Companies'] agent to sell Coal . . ." and further specified that CMC paid

"the proceeds of sale under the Sales Contract to the PRINCIPAL's [the Cerrejón Mining Companies'] nominated bank account." Gareca Decl., Ex. 11, §§ 2.01, 1.04.

According to publicly available information reported to the U.S. Government, the last export of coal from the Cerrejón Mining Companies to the coal plant in Guayama, Puerto Rico, which is owned and operated by AES Puerto Rico, occurred in 2009, after which AES Puerto Rico obtained its coal from other entities, including Drummond Ltd. *See* Lee Decl, ¶ 17. Finally, in January 2022, the BHP Subsidiaries sold their interests in the Cerrejón Entities.[3] Gareca Decl., Exs. 2, 12.

## ARGUMENT

### I. PLAINTIFFS BEAR THE BURDEN TO ESTABLISH JURISDICTION

"Plaintiffs must satisfy both Puerto Rico's long-arm statute and the Due Process Clause of the Fourteenth Amendment" to establish personal jurisdiction over BHP for Plaintiffs' Puerto Rico law claims. *Extreme LLC v. Extreme Elecs. Corp.*, 2017 WL 3098092, at *2 (D.P.R. July 20, 2017). "Puerto Rico's long-arm statute is coextensive with the outer limits of the Constitution," so the Court can "march directly to the constitutional inquiry." *Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 160 (1st Cir. 2022).

Here, Plaintiffs' jurisdictional allegations are insufficient to support the exercise of either general or specific jurisdiction over BHP. Plaintiffs "bear[] the burden of proving the Court's jurisdiction over" BHP and must "proffer 'evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" *Vargas-Santos v. Sam's West, Inc.*, 2021 WL 4768387, at *2 (D.P.R. Oct. 12, 2021) (internal quotation omitted); *see also Allscripts*, 43 F.4th at 160; *Extreme LLC*, 2017 WL 3098092, at *2; Joint Motion, Section I–III.

---

[3] This divestiture of all interests in Cerrejón occurred before BHP eliminated its dual-listed company structure. Gareca Decl., Exs. 1, 2, 12.

## II.  PLAINTIFFS CANNOT ESTABLISH GENERAL JURISDICTION OVER BHP

Defendants are subject to general jurisdiction in a forum only "when they are engaged in 'continuous and systematic' activity within the forum such that they are considered at home there." *Vargas-Santos*, 2021 WL 4768387, at *3 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "The paradigmatic examples of locales in which a defendant corporation is considered at home are its state of incorporation and the state that houses its principal place of business." *Kuan Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 51, 57 (1st Cir. 2020) (internal citation omitted).  As Plaintiffs concede and as set forth in the Gareca Declaration, BHP is neither incorporated nor has its principal place of business in Puerto Rico.  *See* Am. Compl. ¶ 171; Gareca Decl. ¶ 5.  Thus, this Court may not exercise general personal jurisdiction over BHP as there are no allegations in the Amended Complaint that BHP is "at home" in Puerto Rico.

## III.  PLAINTIFFS CANNOT ESTABLISH SPECIFIC JURISDICTION OVER BHP

Nor can Plaintiffs establish specific jurisdiction over BHP with respect to the Puerto Rico law claims asserted in the Amended Complaint.  For personal jurisdiction over a non-resident defendant to comply with the Due Process Clause, Plaintiffs must show that BHP has "certain minimum contacts" with Puerto Rico such that exercising jurisdiction over BHP would not "offend traditional notions of fair play and substantial justice." *Allscripts*, 43 F.4th at 160 (citing *Int'l Shoe Co. v. Wash. Off. Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)) (internal quotation omitted).  "[T]he First Circuit applies a three-part test to determine whether the plaintiff has pled sufficient facts in their complaint to establish specific personal jurisdiction.

> First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum.  Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws.  Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction."

*Vargas-Santos*, 2021 WL 4768387, at *3 (internal citation omitted).  The Court must make "[a]n affirmative finding on each of the three elements of the test . . . to support a finding of specific jurisdiction."  *Negron-Torres v. Verizon Commc'ns Inc.*, 478 F.3d 19, 24 (1st Cir. 2007).  Plaintiffs cannot satisfy any element of this three-part test.

*First*, Plaintiffs cannot establish the "relatedness" element because Plaintiffs do not allege, nor could they, any direct contacts that BHP itself has with Puerto Rico.  Plaintiffs still do not allege that BHP made any misrepresentations directed at Plaintiffs or their residents, that BHP marketed or advertised any products to Plaintiffs or their residents, or that BHP sold any coal products to Plaintiffs or their residents.  While Plaintiffs added to the Amended Complaint some allegations about purported "false claims" and a "ploy" to mislead consumers, *see* Am. Compl. ¶¶ 556, 572–574, these are press reports or statements published on BHP's globally-accessible website (and in two instances the Amended Complaint does not even cite to any statement made by BHP at all but rather cites to an unaffiliated third-party website), *see* Am. Compl. ¶¶ 556, 572–574. To support the exercise of jurisdiction, Plaintiffs must show that such statements were "designed specifically for the [Puerto Rico] market, or that [the statements at issue] are heavily or predominantly distributed in [Puerto Rico]."  *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 460 (9th Cir. 2007); *Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 35 (1st Cir. 2010) ("It is clear that the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum. Given the 'omnipresence' of internet websites, such a rule would 'eviscerate' the limits on personal jurisdiction over out-of-state defendants.") (internal quotations omitted); *Kuan Chen*, 956 F.3d 45 at 60 (specific jurisdiction could not be established based on an "informational website" that "happened to be available" in the forum state, because if so, "the universality of

websites in the modern world would overwhelm constitutional limitations on the exercise of personal jurisdiction."). Plaintiffs' Amended Complaint is bereft of any allegation that any of these statements were made in Puerto Rico, directed towards Puerto Rico or Puerto Rico residents, or were seen or heard by Puerto Rico residents. Thus, Plaintiffs' new allegations are insufficient to establish personal jurisdiction over BHP in Puerto Rico. *See Canatelo, LLC v. NUVICO, Inc.*, 2013 WL 4546017, at *2 (D.P.R. Aug. 27, 2013) (finding plaintiff who could not show that defendant "purposefully directed activities at residents of the forum" failed to establish specific jurisdiction).

The absence of a single allegation of contact between BHP and Puerto Rico ends the "relatedness" inquiry. *Allscripts*, 43 F.4th at 162 (affirming dismissal for lack of personal jurisdiction where plaintiff "failed to satisfy this first prong of the due-process inquiry") (citing *United States v. Swiss Am. Bank, Ltd*, 274 F.3d 610, 625 (1st Cir. 2001), which held "failure to show relatedness ends the inquiry"). "[T]here can be no requisite nexus between the contacts and the cause of action if no contacts exist." *Swiss Am. Bank,* 274 F.3d at 621.

*Second*, having alleged no contact that BHP itself had with Puerto Rico, Plaintiffs instead continue to rely on the contacts of other non-party corporate entities—the Cerrejón Entities— which are alleged to have exported "about 1.6 million short tons of coal [annually] . . . to supply Puerto Rico's coal-fired electricity generating plant at Guayama." Am. Compl. ¶¶ 172–174. The allegations are offered in a failed attempt to establish that BHP purposefully availed itself of the opportunity to do business in Puerto Rico through investment in the Cerrejón Entities who allegedly supply coal to the Guayama plant. But the fact that "BHP was a 1/3 owner" of the Cerrejón Entities, Am. Compl. ¶172, is not enough to establish jurisdiction over BHP by imputing to BHP the Cerrejón Entities' contacts with Puerto Rico.

As an initial matter, Plaintiffs ignore that the defendant in this action, BHP Group Limited, was *not* a shareholder of any of the Cerrejón Entities. Instead, the minority shareholders in the three Cerrejón Entities were indirect subsidiaries of BHP. *See* Gareca Decl., Exs. 3–8, 13. It is well established in the First Circuit that "generally, the jurisdictional contacts of a subsidiary corporation are not imputed to its parent" and that "[t]he mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is the sole owner of the subsidiary." *Allscripts*, 43 F.4th at 161 (citing *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980)). This is because "[t]here is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." *Vargas-Santos*, 2021 WL 4768387, at *3 (internal citation and quotation omitted). Here, Plaintiffs still do not plead *any* facts that BHP Group Limited exercised the requisite amount of control over the BHP Subsidiaries to overcome this presumption; Plaintiffs do not mention the BHP Subsidiaries at all.

Even if BHP itself had been the minority shareholder of the Cerrejón Entities (which it was not), the purported forum contacts of the Cerrejón Entities still could not be imputed to BHP. To be clear, the Cerrejón Entities are *not* subsidiaries of BHP and were not operated by BHP. They are each corporate entities separate and distinct from BHP, which was at most an indirect 1/3 shareholder. "Under Puerto Rico law, corporations are presumed to be legal entities separate from their officers, directors, *and shareholders* . . . [a]s a rule, this shield will almost never be dismantled." *Situ v. O'Neill*, 124 F. Supp. 3d 34, 50 (D.P.R. 2015) (emphasis added) (internal citation and quotation omitted). Indeed, the purposeful availment requirement ensures that a defendant is not haled into a forum solely due to "the unilateral activity of another party or a third person," even if a corporate affiliate. *Allscripts*, 43 F.4th, at 164 (citing *Burger King v. Rudzewicz*,

471 U.S. 462, 475 (1985)) (internal quotation omitted).

Plaintiffs must therefore meet a "high burden of proof" to overcome this presumption of corporate separateness between BHP and the Cerrejón Entities. *Velazquez v. P.D.I. Enters.*, 141 F. Supp. 2d 189, 193 (D.P.R. 1999). Under Puerto Rico law, "[t]he principal reasons that justify the piercing of a corporate veil are that the corporation is being used to sanction fraud, provide injustice, evade obligations, defeat public policy, justify inequity, protect fraud or defend crime." *Milan v. Centennial Comm'ns Corp.*, 500 F. Supp. 2d 14, 26 (D.P.R. 2007). A court may impute the contacts of a separate entity to the defendant only if plaintiff can "produce 'strong and robust' evidence of control . . . rendering the [separate entity] a mere shell." *Allscripts*, 43 F.4th at 161 (internal citation and quotation omitted). Here, Plaintiffs still do not make any factual allegations that if established would justify piercing the corporate veil, having alleged only that BHP was a 1/3 shareholder of the Cerrejón Entities—without more. *See* Am. Compl. ¶ 172.

Nor do Plaintiffs allege any facts supporting the inference that BHP exerted a level of control over the Cerrejón Entities which rendered them "mere shells." Indeed, the Shareholders' Agreements make clear that the Cerrejón Entities operated independently from their shareholders, and that the relevant BHP Subsidiary minority shareholder could not unilaterally dictate the actions of the Cerrejón Entities. The shareholders did not own the coal mined by the Cerrejón Mining Companies, and marketed and sold by CMC, and did not receive the proceeds of such sales. *See* Gareca Decl., Ex. 11, §§ 1.04, 1.06. Further, as set forth in the Shareholders' Agreements:

- The Cerrejón Entities had their own boards of directors and management who directed the day-to-day operations, and the Shareholders' Agreements required that management operate independently of the shareholders. *See* Gareca Decl., Ex. 9, §§ 6.2, 9.3; Ex. 10, §§ 6.1, 9.2. In contrast, the shareholders would consider and approve draft budgets and anticipated cash flows for the Cerrejón Entities through the Shareholders' Committees and/or Boards of Directors, and set goals for the future. *See* Gareca Decl., Ex. 9, §§ 3.3, 10, 13; Ex. 10, §§ 3.3, 10, 13.

- BHP could not unilaterally dictate the actions of the Cerrejón Entities. BHP was entitled to elect only one representative on the three-member Shareholders' Committee and only 1/3 of the Directors on the Board, *see* Gareca Decl., Ex. 9, § 6.3; Ex. 10, §§ 3.2, 6.2, 6.3, which representatives could cast votes only in proportion to BHP's 33.33% shareholder stake. All decisions by the Shareholders' Committees and Boards required more than a 33.33% vote in favor. *See* Gareca Decl., Ex. 9, § 3.3; Ex. 10, §§ 3.3, 8.2.

- The shareholders did not receive the proceeds from CMC's sale of Cerrejón coal. Rather, CMC paid the proceeds of Cerrejón coal to the Cerrejón Mining Companies, who annually determined the "Distributable Cash" (i.e., cash on hand after providing for debts, expenses, working capital, committed new capital, amounts required to be transferred, and required reserves) and that amount was paid out to the shareholders as dividends. *See* Gareca Decl., Ex. 10, §§ 1.1, 11.

Plaintiffs cannot pierce the corporate veil between BHP and the Cerrejón Entities and, accordingly, cannot rely on the purported contacts of the Cerrejón Entities with Puerto Rico to establish jurisdiction here over BHP.[4]

*Third*, having failed to establish the first two elements of the First Circuit's test, the Court need not even consider the "reasonableness" prong. *See Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995) ("failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness"). Even if the Court were to consider reasonableness, the exercise of jurisdiction over BHP (a foreign corporation that is not alleged to have *any* contacts of its own with Puerto Rico and, as a minority shareholder, did not control the activities of the

---

[4] Similarly, Plaintiffs' allegations regarding BHP's purported membership in certain industry trade associations and actions or statements ***those associations*** are alleged to have taken or made are insufficient to establish jurisdiction over BHP in Puerto Rico. *See* Am. Compl. ¶¶ 211, 364, 365, 372, 381, 395, 483. Any contacts that the industry associations allegedly have with Puerto Rico (and Plaintiffs do not appear to even allege any in the Amended Complaint) could not be imputed to BHP. Mere membership in an industry association with alleged contacts with the forum would not be sufficient to establish personal jurisdiction over a foreign defendant like BHP. *See Groma, LLC v. BuildRE, LLC*, 2023 WL 2761201, at *7 (D. Mass. Apr. 3, 2023); *Cal. Chiropractic Ass'n v. Am. Specialty Health Plans, Inc.*, 2003 WL 1870963 (Cal. Ct. App. Apr. 14, 2003). Plaintiffs' conclusory allegation that "each of the Defendants was the agent . . . of each of the remaining Defendants herein," Am. Compl. ¶ 212, is likewise insufficient to establish personal jurisdiction over BHP. Plaintiffs offer no non-conclusory allegations sufficient to show the existence of an agency relationship such that another defendant's purported contacts with Puerto Rico could be imputed to BHP. *Carreras v. PMG Collins*, 660 F.3d 549, 556 (1st Cir. 2011) (finding that plaintiffs failed to allege sufficient facts to establish an agency relationship, including a "manifested . . . assent to have [purported agent] act on [the purported principal's] behalf and subject to its control," that would support jurisdictional contacts being imputed to defendant).

Cerrejón Entities, and therefore could not have reasonably expected to be haled into court in Puerto Rico) would be entirely unreasonable. *See id.* at 1396 ("Although the exercise of jurisdiction may be proper when a borderline showing of relatedness and purposeful availment is supported by an especially solid showing of reasonableness, our 'gestalt' analysis in the instant case fails to reveal any such fortification.") (internal citation omitted).

*Fourth*, even if Plaintiffs were able to satisfy their burden on each of the three factors, specific jurisdiction would still be lacking. Just as a plaintiff who alleges a continuous tort or continuous violation may not recover absent showing that an actionable "act fell within the limitations period," *Ayala v. Shineski*, 780 F.3d 52, 57 (1st Cir. 2015), a similar concept applies to the allegation of jurisdictional contacts. Where the exercise of jurisdiction is premised on an aggregation of contacts over a long period of time, at least one jurisdictionally significant contact must occur within the limitations period. *See, e.g., Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 588 (E.D. Pa. 2015) (concerts performed by defendant in the forum 17 years earlier were not "contacts upon which the Court may base its exercise of specific jurisdiction" when the statute of limitations was only three years); *see also Ciolli v. Iravani*, 651 F. Supp. 2d 356, 369 (E.D. Pa. 2009) (defamatory conversation within the forum that occurred outside the limitations period could not support specific jurisdiction); *Wilder v. News Corp.*, 2015 WL 5853763, at *11 n.6 (S.D.N.Y. Oct. 7, 2015) (claims premised on time-barred statements "provide no basis for this Court to exercise specific personal jurisdiction"). Indeed, in a substantially similar climate change lawsuit filed by the City and County of Honolulu, the Hawai'i court dismissed BHP for lack of personal jurisdiction, including because the evidence established that BHP's jurisdictionally significant contacts with Hawai'i ended more than a decade before the suit was filed and thus were all outside the limitations period. *See* Ex. C, Order Granting Defendants BHP Group Limited and BHP Group

-14-

plc's Motion to Dismiss for Lack of Personal Jurisdiction, *City and County of Honolulu v. Sunoco LP*, No. 1CCV-20-0000380 (JPC) (Haw. 1st Cir. Apr. 7, 2022). So too here, the Cerrejón Entities last exported coal to the Guayama plant in 2009, *see* Lee Decl. ¶ 10, well outside the applicable limitations period for Plaintiffs' Puerto Rico law claims, *see* Joint Motion, Section I. Plaintiffs have not added allegations of any exports of coal within the limitations period. Accordingly, even if the Cerrejón Entities' contacts with Puerto Rico were relevant to establishing jurisdiction over BHP here, those contacts are too old to confer personal jurisdiction over BHP.

*Finally*, Plaintiffs added allegations of contacts BHP purportedly has with the U.S. more generally. *See* Am. Compl. ¶¶ 175 (alleging BHP has business operations in Arizona, California, Mexico, and Utah, corporate offices in Arizona and Washington, DC, and a foundation headquartered in the U.S.), 176 (alleging BHP's "operations in the [U.S.] are for mining" and BHP's "membership and participation with the GCC and other fossil fuel trade associations" were performed in the U.S. and targeted the U.S. public). But these allegations are wholly irrelevant to establishing personal jurisdiction with respect to Plaintiffs' Puerto Rico law claims which require a showing of jurisdictional contacts **with Puerto Rico** specifically. *Gonzalez Canton v. Mad Ruk Ent., Inc.*, 2023 WL 4546545, at *7 (D.P.R. July 13, 2023) (finding that contacts with other jurisdictions in the U.S. did not support specific jurisdiction in Puerto Rico).

### IV. CONCLUSION

For all the foregoing reasons and the reasons stated in the Joint Motion, Defendant BHP Group Limited respectfully requests that the Court dismiss the claims against BHP for lack of personal jurisdiction.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the case participants appearing in said system.

Dated: January 30, 2024
San Juan, Puerto Rico

Respectfully submitted,

| | |
|---|---|
| */s/ Carlos A. Rodriguez-Vidal* <br> Carlos A. Rodriguez-Vidal <br> (USDC No. 201213) <br> (crodriguez-vidal@gaclaw.com) <br> GOLDMAN ANTONETTI & <br> CORDOVA, LLC <br> American International Plaza <br> 250 Muñoz Rivera Avenue, Suite 1500 <br> San Juan, Puerto Rico 00918 <br> T: 787-759-4117 <br> F: 787-767-9177 | */s/ Victor L. Hou* <br> Victor L. Hou (*pro hac vice*) <br> (vhou@cgsh.com) <br> Boaz S. Morag (*pro hac vice*) <br> (bmorag@cgsh.com) <br> CLEARY GOTTLIEB STEEN & <br> HAMILTON LLP <br> One Liberty Plaza <br> New York, New York 10006 <br> T: 212-225-2000 <br> F: 212-225-3999 <br> <br> *Attorneys for Defendant* <br> *BHP Group Limited* |