# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

MUNICIPALITY OF BAYAMÓN, et al.

    *Plaintiffs*,

  v.

EXXON MOBIL CORP., et al.

    *Defendants*.

Case No. 3:22-cv-01550-SCC-HRV

# DEFENDANT RIO TINTO PLC'S
# MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL
# JURISDICTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ......................................................................................................... 2

STANDARD OF REVIEW ......................................................................................... 3

ARGUMENT ............................................................................................................... 3

I.    THIS COURT DOES NOT HAVE GENERAL OR SPECIFIC JURISDICTION OVER RIO TINTO ............ 3

    A.    Plaintiffs Cannot Establish General Jurisdiction Over Rio Tinto. ...........................4

    B.    Plaintiffs Likewise Cannot Establish Specific Jurisdiction Over Rio Tinto. ...........4

        1.    Rio Tinto Lacks Even Minimum Contacts with Puerto Rico. ....................5

        2.    Plaintiffs' Claims Do Not Arise Out of Defendants' Alleged Contacts with Puerto Rico. ...........................................................6

        3.    Exercise of Jurisdiction Over Rio Tinto is Unreasonable. ...........................7

II.   THERE IS NO STATUTORY BASIS TO CLAIM PERSONAL JURISDICTION OVER RIO TINTO ............ 8

    A.    Plaintiffs' RICO Claims Against Rio Tinto Do Not Confer Personal Jurisdiction Over Rio Tinto and Must Be Dismissed. .............................................8

        1.    Plaintiffs Cannot Demonstrate That Rio Tinto Has Sufficient Minimum Contacts with the United States as a Whole. .............................9

        2.    Plaintiffs Fail to Adequately Allege Facts Connecting Rio Tinto to a RICO Conspiracy so the Court Therefore Cannot Use RICO as a Basis for Obtaining Personal Jurisdiction Over Rio Tinto. ......................10

    B.    Plaintiffs' Antitrust Claims Against Rio Tinto do not Provide This Court with Personal Jurisdiction Over Rio Tinto and Must Be Dismissed. ...................13

CONCLUSION.......................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*A Corp. v. All Am. Plumbing, Inc.*,
    812 F.3d 54 (1st Cir. 2016) ................................................................................. 3

*Am. Elec. Power Co., Inc. v. Connecticut*,
    564 U.S. 410 (2011) ........................................................................................... 7

*Amtrol, Inc. v. Vent-Rite Valve Corp.*,
    646 F. Supp. 1168 (D. Mass. 1986) ................................................................. 14

*In re Asbestos Sch. Litig.*,
    46 F.3d 1284 (3d Cir. 1994) ............................................................................ 12

*In re Auto. Refinishing Paint Antitrust Litig.*,
    No. 1426, 2002 WL 31261330 (E.D. Pa. July 31, 2002), *aff'd*, 358 F.3d 288
    (3d Cir. 2004) ................................................................................................... 14

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
    582 U.S. 255 (2017) ....................................................................................... 4, 6

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
    788 F.2d 535 (9th Cir. 1986) ............................................................................. 8

*C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*,
    771 F.3d 59 (1st Cir. 2014) ............................................................................... 4

*Cambridge Literary Props. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.*,
    295 F.3d 59 (1st Cir. 2002) ............................................................................. 15

*Canatelo, LLC. v. NUVICO, Inc.*,
    Civ. No. 12-1430 (JAG), 2013 WL 4546017 (D.P.R. Aug. 27, 2013) ................. 7

*Carreras v. PMG Collins, LLC*,
    660 F.3d 549 (1st Cir. 2011) ............................................................................. 3

*Chaney v. Dreyfus Serv. Corp.*,
    595 F.3d 219 (5th Cir. 2010) ........................................................................... 13

*City of New York v. Chevron Corp.*,
    993 F.3d 81 (2d Cir. 2021) ................................................................................. 7

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ........................................................................................... 4

**Cases**                                                                           **Page(s)**

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005) ................................................................13

*Debrenci v. Bru-Jell Leasing Corp.*,
    710 F. Supp. 15 (D. Mass. 1989) ..........................................................3

*Debt Relief Network, Inc. v. Fewster*,
    367 F. Supp. 2d 827 (D. Md. 2005) .....................................................5

*Doe v. Unocal Corp.*,
    27 F. Supp. 2d 1174 (C.D. Cal. 1998) ..................................................9

*Douglas v. Hirshon*,
    63 F.4th 49 (1st Cir. 2023) ..................................................................12

*Escude Cruz v. Ortho Pharm. Corp.*,
    619 F.2d 902 (1st Cir. 1980) ..............................................................10

*Foster-Miller, Inc. v. Babcock & Wilcox Can.*,
    46 F.3d 138 (1st Cir. 1995) ...................................................................3

*Funk v. Limelight Media Grp., Inc.*,
    No. Civ. A. 1:06-CV-72-M, 2006 WL 2983058 (W.D. Ky. Oct. 16, 2006) ...........................5

*Gen. Cigar Holdings, Inc. v. Altadis, S.A.*,
    205 F. Supp. 2d 1335 (S.D. Fla. 2002) ................................................9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ..............................................................................4

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000) ..........................................................13

*Hernandez-Denizac v. Kia Motors Corp.*,
    257 F. Supp. 3d 216 (D.P.R. 2017) ......................................................4

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1946) ............................................................................14

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
    725 F.3d 718 (7th Cir. 2013) ..............................................................13

*Kohler Co. v. Kohler International, Ltd.*,
    196 F.Supp.2d 690 (N.D. Ill. 2002) ....................................................11

*Kuan Chen v. U.S. Sports Acad., Inc.*,
    956 F.3d 45 (1st Cir. 2020) ....................................................................4

**Cases**                                                            **Page(s)**

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
   26 F. Supp. 2d 593 (S.D.N.Y. 1998) ........................................................9

*In re Lupron Mktg. and Sales Practices Litig.*,
   245 F. Supp. 2d 280 (D. Mass. 2003) .....................................................11

*Macri v. Macri*,
   No. CIV 01-464-JD, 2002 WL 826823 (D.N.H. May 1, 2002) .................3

*Mallory v. Norfolk & S. Ry. Co.*,
   600 U.S. 122 (2023) ..................................................................................4

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*,
   142 F.3d 26 (1st Cir. 1998) .......................................................................3

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) ................................................................................12

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   307 F. Supp. 2d 145 (D. Me. 2004) ..........................................10, 14, 15

*Nicholas v. Buchanan*,
   806 F.2d 305 (1st Cir. 1986) .....................................................................6

*Nuevos Destinos, LLC v. Peck*,
   No. 3:19-cv-00045, 2019 WL 6481441 (D.N.D. Dec. 2, 2019) ................9

*Phillips v. Prairie Eye Ctr.*,
   530 F.3d 22 (1st Cir. 2008) .......................................................................3

*PREP Tours, Inc. v. Am. Youth Soccer Org.*,
   913 F.3d 11 (1st Cir. 2019) .......................................................................5

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ................................................................................13

*Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*,
   43 F.4th 150 (1st Cir. 2022) ...............................................................6, 10

*Shat Acres Highland Cattle, LLC v. Am. Highland Cattle Ass'n*,
   No. 2:20-cv-62, 2021 WL 2125357 (D. Vt. 2021) .................................13

*In re Takata Airbag Prod. Liab. Litig.*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019) ..................................................11

**Cases**                                                                                                    **Page(s)**

*Taylor v. Airco, Inc.*,
   503 F. Supp. 2d 432 (D. Mass. 2007), *aff'd sub nom Taylor v. Am. Chemistry*
   *Council*, 576 F.3d 16 (1st Cir. 2009) ...................................................................................12

*United States v. Swiss Am. Bank, Ltd.*,
   274 F. 3d 610 (1st Cir. 2001)...............................................................................................8

*U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*,
   894 F.2d 9 (1st Cir. 1990)....................................................................................................6

*Walden v. Fiore*,
   571 U.S. 277 (2014).................................................................................................5, 6, 10

*World Depot Corp. v. Onofri*,
   16-cv-12439-FDS, 2017 WL 6003052 (D. Mass. Dec. 4, 2017)........................................8, 10

**Statutes**

U.S. Const. amend V.........................................................................................................15

U.S. Const. amend XIV, Due Process Clause...........................................................................4, 5

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. .................*passim*

     18 U.S.C. § 1962(c) ..................................................................................................13

     18 U.S.C. § 1965 ...............................................................................................8, 11

Sherman Act, 15 U.S.C §1 et seq..................................................................................1, 13, 14

Clayton Act § 12, 15 U.S.C. § 22 ..........................................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)..................................................................................................1, 15

Financial Oversight & Management Board for Puerto Rico, Contract Review,
   https://oversightboard.pr.gov/contract-review (last visited Jan. 28, 2024)..........................6, 7

L. Civ. R. 7(f)..............................................................................................................1

**TO THE HONORABLE COURT:**

Defendant Rio Tinto plc ("Rio Tinto") submits this memorandum of law in support of its motion to dismiss Plaintiffs' Amended Complaint, ECF No. 205 ("Am. Compl."), for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Rio Tinto adopts and incorporates by reference Defendants' Joint Motion to Dismiss Amended Complaint; Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction ("Joint 12(b)(2) Motion"), *see* L. Civ. R. 7(f), and Joint Motion for Extension of Time to Answer or Otherwise Respond to the Amended Complaint, ECF No. 211, but writes separately to highlight other jurisdictional deficiencies as to Rio Tinto.

## PRELIMINARY STATEMENT

The Municipalities of Puerto Rico ("Plaintiffs") bear the burden of establishing personal jurisdiction over each claim and each Defendant. Plaintiffs cannot meet this burden through unsupported allegations, but rather must allege well-pleaded facts demonstrating that the exercise of personal jurisdiction over each Defendant, including Rio Tinto, is both constitutionally proper and reasonable. Plaintiffs have twice tried and twice failed to meet this burden with respect to Rio Tinto, and it would be impossible for them to do so. Rio Tinto is a foreign defendant incorporated in England and Wales, and thus, not "at home" in the territory of Puerto Rico. Rio Tinto conducts no operations, production, or marketing in Puerto Rico, maintains no offices or employees in Puerto Rico, is not registered to do business in Puerto Rico, and generates no sales or income in Puerto Rico. Therefore, Rio Tinto does not have any claim-related "minimum contacts" with Puerto Rico that would comport with constitutional due process and subject it to specific personal jurisdiction. Nor can Plaintiffs satisfy their jurisdictional burden by citing the Racketeer Influenced & Corrupt Organizations Act ("RICO") or the venue and service provisions of the Sherman Act

as, among other things, Rio Tinto does not have the requisite "minimum contacts" with the United States to support personal jurisdiction under either statute.

Plaintiffs' Amended Complaint does nothing to cure these jurisdictional deficiencies with respect to Rio Tinto. Their new allegations regarding the activities of various Rio Tinto affiliates that are not named defendants in this case are conclusory, establish no connections to Puerto Rico, and allege only passing and minimal references to any connection that these affiliated entities have to the U.S. in general—although not (because they cannot) as to any production of coal (or oil or gas), which form the basis for their allegations. As such, all of Plaintiffs' claims against Rio Tinto must be dismissed with prejudice for lack of personal jurisdiction.

## BACKGROUND

In the Amended Complaint, Plaintiffs assert multiple claims for harm "resulting from the catastrophic storms of September 2017 and their aftermath." Am. Compl. ¶ 1. But the allegations specific to Rio Tinto are virtually nonexistent; Rio Tinto is only mentioned in 18 of the Complaint's 834 paragraphs. *See* Am. Compl. ¶¶ 75, 180-86, 211, 368, 381, 395, 430, 483, 531, 555, 575, and 725. Plaintiffs correctly identify Rio Tinto plc as an entity "incorporated in England and Wales, with its principal place of business in London, England." Am. Compl. ¶ 180,[1] yet they improperly—and unsuccessfully—attempt to impute the actions of various affiliates to Rio Tinto in an effort to confer jurisdiction on the named defendant. As demonstrated by the Declaration of Michael Pasmore submitted in support of this Motion, Rio Tinto does not have U.S.-based

---

[1] Plaintiffs also mention in passing Rio Tinto Limited, an entity that they correctly allege is incorporated in Australia with its principal place of business in Melbourne, Australia, Am. Compl. ¶ 180, and Rio Tinto Energy America Inc., which they incorrectly allege is incorporated in Delaware (Rio Tinto Energy America Inc. is incorporated in Salt Lake City, Utah), with its principal place of business in South Jordan, Utah. Am. Compl. ¶ 182. Neither Rio Tinto Limited nor Rio Tinto Energy America Inc. is named as a defendant or was served with the Amended Complaint, however. Confusingly, Plaintiffs state that the defined term "Rio Tinto" as used in the Amended Complaint includes the Australian entity—Rio Tinto Limited "along with their affiliates, division and subsidiaries" Am. Compl. ¶ 180. Yet only Rio Tinto plc (referred to herein as "Rio Tinto") has been named as a defendant.

operations or sufficient contacts with the U.S. generally, or Puerto Rico specifically.[2] Pasmore Decl. ¶¶ 6, 8. Beyond that, Plaintiffs' allegations about Rio Tinto are conclusory, limited, irrelevant, or in some cases, patently wrong.

## STANDARD OF REVIEW

"Personal jurisdiction implicates the power of a court over a defendant," *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 143 (1st Cir. 1995), and Plaintiffs bear the burden of demonstrating that this Court has personal jurisdiction over Rio Tinto. *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 25 n.1 (1st Cir. 2008). Moreover, Plaintiffs must demonstrate "an independent basis for the assertion of personal jurisdiction for each claim[,] [and] [j]urisdiction over one claim does not imply jurisdiction over another." *Macri v. Macri*, No. CIV 01-464-JD, 2002 WL 826823, at *11 (D.N.H. May 1, 2002) (*quoting Debrenci v. Bru-Jell Leasing Corp.*, 710 F. Supp. 15, 19 (D. Mass. 1989)). Under the "prima-facie" standard for determining whether this burden has been met, Plaintiffs may not rely on "unsupported allegations in [their] pleadings," and instead, must put forward "evidence of specific facts" that establish personal jurisdiction. *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (citations omitted). The Court also must consider "facts put forward by the defendants, to the extent that they are uncontradicted." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

## ARGUMENT

**I.   THIS COURT DOES NOT HAVE GENERAL OR SPECIFIC JURISDICTION OVER RIO TINTO**

A federal court can exercise personal jurisdiction over out-of-state defendants when doing so is both authorized by a statute and comports with the constitutional protections of due process. *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011). Personal jurisdiction under

---

[2]  Solely for purposes of this motion, those allegations not expressly rebutted by the Pasmore Declaration submitted with this motion are accepted as true.

Puerto Rico's long-arm statute is co-extensive with the reach of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, *id.*, and as recognized by the U.S. Supreme Court, must be either "general" or "specific." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017). Plaintiffs cannot establish either general or specific jurisdiction over Rio Tinto, and the Amended Complaint must be dismissed with prejudice as against Rio Tinto.

### A.    Plaintiffs Cannot Establish General Jurisdiction Over Rio Tinto.

General jurisdiction exists against a corporate defendant if "the corporation is fairly regarded as at home" in that forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also Kuan Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 57 (1st Cir. 2020). Plaintiffs admit that Rio Tinto is not incorporated or headquartered in Puerto Rico. Am. Compl. ¶ 180; *see also* Pasmore Decl. ¶ 4. Nor has Rio Tinto consented to jurisdiction here. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023). As a result, the Court cannot exercise general jurisdiction over Rio Tinto. *See Daimler AG v. Bauman*, 571 U.S. 117, 118-19 (2014).

### B.    Plaintiffs Likewise Cannot Establish Specific Jurisdiction Over Rio Tinto.

To establish specific jurisdiction, a plaintiff must show that its claim "directly arise[s] out of, or relate[s] to, the defendant's forum state activities" and that those activities are sufficient to satisfy the minimum contact requirement that "the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Hernandez-Denizac v. Kia Motors Corp.*, 257 F. Supp. 3d 216, 221 (D.P.R. 2017) (internal quotations omitted) (*citing C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014)). If a plaintiff satisfies these hurdles, it must then show that the exercise of jurisdiction over the defendant is reasonable. *Id.*

For the reasons set forth below, and in the related briefs adopted and incorporated here by reference and joined by Rio Tinto, Plaintiffs do not (and cannot) establish that this Court can exercise specific jurisdiction over Rio Tinto.

      1.    <u>Rio Tinto Lacks Even Minimum Contacts with Puerto Rico.</u>

Plaintiffs do not meet their burden—nor could they—of alleging that Rio Tinto has the necessary contacts with Puerto Rico to justify an exercise of specific jurisdiction by this Court. The Amended Complaint is devoid of any allegation—well pleaded or otherwise—of any conduct by Rio Tinto in Puerto Rico. Indeed, Plaintiffs allege only that "[t]he Municipalities of Puerto Rico and/or their citizens have invested in Rio Tinto as a publicly traded company." Am. Compl. ¶ 186. Even if this allegation were true, it would be insufficient to establish the minimum contacts required for personal jurisdiction. *Funk v. Limelight Media Grp., Inc.*, Civ. A. 1:06CV-72-M, 2006 WL 2983058, at *5 n.4 (W.D. Ky. Oct. 16, 2006) ("The Plaintiff has not cited any case law that establishes where a defendant intends to acquire a majority interest in a corporation it subjects itself to personal jurisdiction in every state in which the corporation's shareholders reside."); *Debt Relief Network, Inc. v. Fewster*, 367 F. Supp. 2d 827, 830 (D. Md. 2005). If this were a suitable basis for personal jurisdiction, the entire concept of *purposeful* availment would mean nothing because any plaintiff could establish jurisdiction over any publicly-traded defendant merely by buying a single share of that entity on the open market. This cannot be. The voluntariness of a defendant's actions is a fundamental element of the limitations imposed by the Due Process Clause. *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 19-20 (1st Cir. 2019). As the Supreme Court has made clear, it is the *defendant's* in forum contacts that provide the basis for jurisdiction, not the plaintiff's or a non-party's. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The limited number of other Puerto Rico-related jurisdictional allegations are not specific to Rio Tinto and are entirely

conclusory. Am. Compl. ¶ 13. Plaintiffs fail to allege the necessary details and provide the specific evidentiary basis for these assertions against Rio Tinto, such as identifying what business Rio Tinto "conducts" in Puerto Rico, or what products Rio Tinto has allegedly sold there.[3] In fact, Rio Tinto does not sell or market its products in Puerto Rico and never has, Pasmore Decl. ¶ 7, nor does it have any other contacts with Puerto Rico. *Id.* ¶ 6. Rio Tinto thus lacks the requisite minimum contacts with Puerto Rico, *see Nicholas v. Buchanan*, 806 F.2d 305, 307 (1st Cir. 1986), *and U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir. 1990), and the claims against it must be dismissed. *Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 160 (1st Cir. 2022).

> 2.   Plaintiffs' Claims Do Not Arise Out of Defendant's
>       Alleged Contacts with Puerto Rico.

Not only are Plaintiffs required to demonstrate, with specific allegations, that Rio Tinto has sufficient minimum contacts with Puerto Rico to warrant the exercise of jurisdiction—which they have failed to do—but they also are required to include sufficient allegations demonstrating that Rio Tinto's "suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284. In particular, to establish specific jurisdiction, Plaintiffs' claims must "aris[e] out of or relat[e] to" Rio Tinto's alleged conduct with Puerto Rico. *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (brackets in original) (citations omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 264.

Nowhere in the Amended Complaint do the Plaintiffs sufficiently allege any activities undertaken by Rio Tinto in Puerto Rico, much less any which contributed to their alleged injuries.

---

[3]   Indeed, even Puerto Rico's database of government contracts does not indicate that any Puerto Rican governmental entity has entered into any contracts with Rio Tinto. Financial Oversight & Management Board for Puerto Rico, *Contract Review*, https://oversightboard.pr.gov/contract-review (last visited Jan. 28, 2024).

The heart of the Amended Complaint appears to be that Defendants marketed and sold coal (in Rio Tinto's case) to consumers in Puerto Rico. Am. Compl. ¶ 2. *First*, any such conduct cannot be attributed to the injuries Plaintiffs allegedly suffered as a result of global climate change. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 92 (2d Cir. 2021) ("Since greenhouse gases once emitted become well mixed in the atmosphere, . . . emissions in [New York or] New Jersey may contribute no more to flooding in New York than emissions in China.") (*quoting Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 422 (2011)) (quotations omitted). Thus, Plaintiffs' allegations that Rio Tinto's non-coal extractive activities in parts of the continental U.S. contributed to climate change that caused Hurricane Maria cannot be used to confer jurisdiction over Rio Tinto in Puerto Rico. Am. Compl. ¶¶ 183-84. *Second*, Plaintiffs' allegation that Rio Tinto "discovers, extracts, produces, transports and markets coal" is false. Am. Compl. ¶ 182. Rio Tinto has never sold or marketed coal, or any other fossil fuel, in or to Puerto Rico, its municipalities, or its citizens. *See* Financial Oversight & Management Board for Puerto Rico, *Contract Review*, https://oversightboard.pr.gov/contract-review (last visited Jan. 28, 2024); Pasmore Decl. ¶ 7. In fact, neither Rio Tinto, nor any of its affiliates, has produced or sold coal anywhere in the U.S. since 2013, *id*. ¶ 9, and Rio Tinto divested itself of all coal production operations globally years ago.[4] *Id*. ¶ 11. As such, Plaintiffs have articulated no theory—nor can they—under which Rio Tinto's in-forum activities contributed to or were related to Plaintiffs' alleged injuries.

3.     <u>Exercise of Jurisdiction Over Rio Tinto is Unreasonable.</u>

Having failed the first and second prongs of the test, there should be no need to delve into the arguments concerning reasonableness. *Canatelo, LLC v. NUVICO, Inc.*, Civ. No. 12-1430

---

[4]     Indeed, Plaintiffs' source purportedly supporting their allegation that Rio Tinto holds coal reserves is from 2007 and applies to Rio Tinto Energy America Inc., not Rio Tinto. Am. Compl. ¶183 n.162.

(JAG), 2013 WL 4546017, at *4 (D.P.R. Aug. 27, 2013) (*citing United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001) ("If the plaintiff fails to make a strong showing with respect to the first two prongs, then the exercise of personal jurisdiction is more likely to be found unreasonable under the third prong.")). Even so, forcing Rio Tinto to defend this suit in Puerto Rico (where it has no contacts) would be unreasonable. This consideration also counsels in favor of the Court refusing to exercise specific jurisdiction over Rio Tinto.

## II.   THERE IS NO STATUTORY BASIS TO CLAIM PERSONAL JURISDICTION OVER RIO TINTO

Recognizing that this Court lacks general and specific personal jurisdiction over Rio Tinto, Plaintiffs attempt to manufacture personal jurisdiction over Rio Tinto (and other Defendants), and supplemental jurisdiction over the Puerto Rico law claims, by asserting federal antitrust and RICO claims. The allegations underlying these claims are not only spurious and fail as a matter of law, *see* Defendants' Joint Motion to Dismiss, pp. 24-37, but they also fail to provide any basis for this Court to exercise personal jurisdiction over Rio Tinto.

### A.   Plaintiffs' RICO Claims Against Rio Tinto Do Not Confer Personal Jurisdiction Over Rio Tinto and Must Be Dismissed.

RICO's venue and process provisions permit a court to exercise personal jurisdiction over a defendant, but only in limited circumstances, *see Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986), none of which apply here. In particular, 18 U.S.C. § 1965 "provides for nationwide service of process in civil cases under certain circumstances, in order "to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a single court in a trial." *World Depot Corp. v. Onofri*, 16-cv-12439-FDS, 2017 WL 6003052, at *4 (D. Mass. Dec. 4, 2017) (*quoting Butcher's*, 788 F.2d at 539). For the reasons set forth in Defendants' Joint 12(b)(2) Motion, pp. 21-22, RICO's nationwide jurisdiction provision is inapplicable due to Plaintiffs' failure to adequately plead a RICO claim, and as such, the relevant contacts here are Puerto Rico-

8

specific. Plaintiffs have not met and cannot meet their burden. This is because even if Plaintiffs could establish specific jurisdiction over some defendant in Puerto Rico for RICO purposes, they still would not be able to establish personal jurisdiction over Rio Tinto. To do so, Plaintiffs would have to be able to serve Rio Tinto somewhere within the United States,[5] which they cannot do, and would have to sufficiently allege: (1) that Rio Tinto has minimum contacts with the United States; and (2) a RICO conspiracy to which Rio Tinto is connected. They have wholly failed to do so, in either their original or their Amended Complaint.

      1.     <u>Plaintiffs Cannot Demonstrate That Rio Tinto Has Sufficient Minimum Contacts with the United States as a Whole.</u>

As set forth in the Pasmore Declaration, Rio Tinto plc, the named defendant, does not have any minimum contacts with the U.S. broadly, or Puerto Rico specifically. Pasmore Decl. ¶¶ 6, 8. Plaintiffs allege that Rio Tinto currently produces and holds coal reserves in the United States through a wholly owned subsidiary, Rio Tinto Energy America, Inc. Am. Compl. ¶ 182. However, Rio Tinto has not held any U.S. coal reserves since 2013. Pasmore Decl. ¶ 9.

In a failed attempt to manufacture specific jurisdiction, Plaintiffs amend their complaint to inaccurately and deceptively excerpt a statement from the annual report of the Rio Tinto Group to mislead the Court regarding the location of the Group's assets. Am. Compl. ¶ 183.[6] Plaintiffs then

---

[5]    Even when courts determine that RICO allows for nationwide service of process, they have held that "to activate [that] provision, . . . a plaintiff must actually serve the defendant pursuant to that provision." *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1340 (S.D. Fla. 2002); *see also Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1183 (C.D. Cal. 1998); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998); *Nuevos Destinos, LLC v. Peck*, No. 3:19-cv-00045, 2019 WL 6481441, at *13 (D.N.D. Dec. 2, 2019). Rio Tinto does not operate in the United States and has no offices or employees or agents for service within the United States. Pasmore Decl. ¶ 8. Thus, Rio Tinto could not be served within the United States, as Plaintiffs are well-aware. Indeed, Plaintiffs initially sought to effect service on Rio Tinto pursuant to the Hague Convention, which is applicable only to foreign defendants. ECF No. 9 ¶ 6. Rio Tinto ultimately agreed to accept service of the summons by mail in London as part of an overall agreement regarding a briefing, while explicitly preserving its rights to raise any and all defenses, including lack of jurisdiction. ECF No. 25 ¶ 3, n.1.

[6]    Specifically, Plaintiffs allege that "Rio Tinto operates in 35 different countries but most of [Rio Tinto's] assets are in…North America." Am. Compl. ¶183. Plaintiffs' allegation is incorrect. The actual sentence states: "We work across six continents in 35 countries. Most of [Rio Tinto's] assets are *in Australia* and North America, with

point to U.S.-based Rio Tinto subsidiaries in an effort to conflate the extractive activities of those entities with coal mining. Am. Compl. ¶183. These allegations fail to confer jurisdiction for two reasons. First, courts in this circuit have explicitly stated that a subsidiary's jurisdictional contacts cannot be imputed to the parent, even when that subsidiary is wholly owned by the parent. *Rodriguez-Rivera*, 43 F.4th at 161 (*citing Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 906 (1st Cir. 1980)). Second, Plaintiffs cannot establish personal jurisdiction through Rio Tinto's non-coal operations in Utah, Arizona, and California, as these activities do not arise out of or relate to Plaintiffs' alleged injuries in Puerto Rico. *Walden*, 571 U.S. at 284.

2. Plaintiffs Fail to Adequately Allege Facts Connecting Rio Tinto to a RICO Conspiracy so the Court Therefore Cannot Use RICO as a Basis for Obtaining Personal Jurisdiction Over Rio Tinto.

To the extent Plaintiffs claim jurisdiction through a conspiracy, courts in this circuit have questioned and declined to adopt this theory. *See, e.g.*, *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 307 F. Supp. 2d 145, 158 (D. Me. 2004). But even if the theory were valid, it could not provide Plaintiffs with jurisdiction over Rio Tinto because Plaintiffs fail to allege a conspiracy. *See* Defendants' Joint Motion to Dismiss, pp. 36-37.

Courts have warned that "[b]ecause of the broad jurisdictional reach of the RICO statute, [judges] should be particularly vigilant not to permit a plaintiff to assert a spurious RICO claim in order to try to obtain personal jurisdiction over other defendants (or supplemental subject-matter jurisdiction over state-law claims)." *World Depot Corp.*, 2017 WL 6003052, at *5; *see also In re*

---

operations also in Europe, Asia, Africa, and Central and South America." (emphasis added). *See* Rio Tinto, Operations, https://www.riotinto.com/operations (last visited Jan. 26, 2024). The omission of "Australia" and the deceptive use of ellipses is significant. Furthermore, Plaintiffs ignore the map on that same webpage which shows where the assets of various Rio Tinto affiliates are located (for example, 22 locations in Australia, 8 locations in Canada, and only 3 locations in the United States—with numerous additional assets and operations spread across 32 other countries). *Id.*; Pasmore Decl. ¶ 5. US-based assets do not account for "most" of the Rio Tinto Group's overall assets. Pasmore Decl. ¶ 5.

*Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1144 (S.D. Fla. 2019) ("[W]hether a basis exists for exercising specific jurisdiction under Section 1965(d) depends on whether the [plaintiffs' allegations] state colorable RICO claims. . . . It necessarily follows, then, that determining whether the [plaintiffs'] RICO claims are colorable—or not wholly immaterial or insubstantial—is a separate and distinct question from whether the RICO claims are plausibly alleged.") (quotations omitted). That is particularly true here. Plaintiffs have amended their complaint to include more— but not better—RICO allegations as to Rio Tinto. Am. Comp. ¶ 725. In doing so, however, they have failed to cure their initial defect: the allegations remain conclusory and lack the specificity required to survive a motion to dismiss.

As set forth in Defendants' Joint Motion to Dismiss, pp. 24-37, Plaintiffs have failed to plead viable RICO claims against *any* of the Defendants. Plaintiffs' attempt to ensnare Rio Tinto in this litigation fails for this reason alone. But, even if Plaintiffs could (and, they cannot) allege a cognizable RICO claim, they still have not established that this Court could exercise personal jurisdiction over Rio Tinto. To do so, Plaintiffs must plead, with particularity, that Rio Tinto was part of the RICO conspiracy. *See In re Lupron Mktg. and Sales Practices Litig.*, 245 F. Supp. 2d 280, 294 (D. Mass. 2003) (*citing Kohler Co. v. Kohler International, Ltd.*, 196 F. Supp. 2d 690, 697 (N.D. Ill. 2002)) ("[A] plaintiff must allege specific facts warranting the inference that a defendant was a member of a conspiracy; naked allegations do not meet a plaintiff's jurisdictional burden."). This they cannot do. *See* Rio Tinto's Memorandum of Law in Support of its Motion to Dismiss Amended Complaint for Failure to State a Claim ("Rio Tinto 12(b)(6) Motion"), pp. 12-15. With respect to Rio Tinto, Plaintiffs have alleged nothing about Rio Tinto that is relevant to their alleged RICO conspiracy. Instead, Plaintiffs' RICO claims are premised solely on Defendants' alleged membership in various industry groups including the National Mining Association

11

("NMA"), Global Climate Coalition ("GCC"), Information Council for the Environment ("ICE"), American Coalition for Clean Coal Electricity ("ACCCE"), and International Emissions Trading Association ("IETA"). Am. Compl. ¶¶ 184, 368, 395; App. to Am. Compl., ¶ 42. But Plaintiffs do not allege any action on Rio Tinto's part to further the alleged conspiracy beyond allegedly being one of hundreds of members of these industry groups. Rio Tinto 12(b)(6) Motion, pp. 5-7.

Thus, Plaintiffs conclusory and unsupported allegations, even if accepted, are insufficient as a matter of law to establish that Rio Tinto was part of any RICO conspiracy. *See* Rio Tinto 12(b)(6) Motion, pp. 12-14. Vague allegations that Rio Tinto "associated" with other co-defendants or industry associations is insufficient to show that Rio Tinto "knowingly joined" a conspiracy. *Douglas v. Hirshon*, 63 F.4th 49, 56 (1st Cir. 2023) (affirming dismissal under 12(b)(6) of civil RICO claims due to complaint's scant details and conclusory assertion regarding the defendants' participation in the alleged conspiracy) (quotations omitted). Membership in an industry organization by itself is not, as a matter of law, sufficient to establish a conspiracy on behalf of the industry association's members because "[a] member of a trade group or other similar organization does not necessarily endorse everything done by that organization or its members." *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1290 (3d Cir. 1994). Rather, as required by the Supreme Court, "[f]or liability to be imposed by reason of association," it is "necessary" that "the group itself possessed unlawful goals *and that the individual held a specific intent to further those illegal aims.*" *Id.* at 1289 (emphasis in original) (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982)); *accord Taylor v. Airco, Inc.*, 503 F. Supp. 2d 432, 446 (D. Mass. 2007) (membership and participation in a trade group is insufficient to make defendant responsible for trade group's statements understating risks of chemical), *aff'd sub nom Taylor v. Am. Chemistry*

*Council*, 576 F.3d 16 (1st Cir. 2009).[7] Because membership in industry organizations cannot establish that Rio Tinto was part of any alleged conspiracy, any attempt to obtain jurisdiction through conspiracy-like theories also fails.

Moreover, to satisfy the conduct element of Section 1962(c), Plaintiffs must show that each Defendant played "*some* part in directing the enterprise's affairs," rather than simply having had some involvement in its affairs generally. *Reves v. Ernst & Young*, 507 U.S. 170, 177-79 (1993) (emphasis in original). They have failed to do so.[8]  *See* Rio Tinto 12(b)(6) Motion, pp. 13-14.

In sum, Plaintiffs' RICO allegations are exactly the kind of spurious, unsupported ones that Courts should scrutinize carefully, particularly when they are the basis for asserting personal jurisdiction that otherwise would not exist. Plaintiffs have failed to meet their burden of showing that this Court has jurisdiction over Rio Tinto based on RICO allegations, or otherwise.

**B.     Plaintiffs' Antitrust Claims Against Rio Tinto Do Not Provide This Court with Personal Jurisdiction Over Rio Tinto and Must Be Dismissed.**

For Sherman Act antitrust claims, "the private right of action to pursue antitrust claims is provided by the Clayton Act." *Shat Acres Highland Cattle, LLC v. Am. Highland Cattle Ass'n*, No. 2:20-cv-62, 2021 WL 2125357, at *3 (D. Vt. Jan. 13, 2021) (quotation marks omitted). Even where, as with the Clayton Act,[9] courts have held that global service of process confers personal

---

[7]     *See also Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) ("A person cannot be held liable for a RICO conspiracy 'merely by evidence that he associated with other . . . conspirators.'"); Rio Tinto 12(b)(6) Motion, pp. 12-13.

[8]     Plaintiffs' attempt to cure this by alleging that Rio Tinto "operates and controls the NMA" also fails. Am. Compl. ¶ 575. It is not only conclusory and false, but also irrelevant. Nowhere do Plaintiffs allege that the NMA itself is an "enterprise" for RICO purposes. *See* Am. Compl. ¶¶ 717-24; Rio Tinto 12(b)(6) Motion, pp. 13-14.

[9]     *See* 15 U.S.C. § 22. Courts disagree on how Section 12 of the Clayton Act should be read for the purpose of conferring personal jurisdiction. The Second, Seventh and D.C. Circuits have held that the Clayton Act's "service of process provision can properly confer personal jurisdiction over a defendant only when the action is brought in the district where the defendant resides, is found, or transacts business, that is, the district where Section 12 venue lies." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 427 (2d Cir. 2005) (quotation marks omitted); *see also GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000); *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 728 (7th Cir. 2013). The Third and Ninth Circuits have held that Section 12's service of process provision is independent of the venue provision. *Daniel*, 428 F.3d at 422. The

jurisdiction, minimum contacts with the U.S. are still necessary such that "'maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Amtrol, Inc. v. Vent-Rite Valve Corp.*, 646 F. Supp. 1168, 1172 (D. Mass. 1986) (*quoting Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1946)). In matters involving federal questions, the minimum contacts analysis is substantially the same as that performed under a specific jurisdiction analysis, but for the entire U.S. *Amtrol*, 646 F. Supp. at 1172. Defendants must also purposefully avail themselves by conducting activities within the forum State. *In re Auto. Refinishing Paint Antitrust Litig*, No. 1426, 2002 WL 31261330, at *5 (E.D. Pa. July 31, 2002), *aff'd*, 358 F.3d 288 (3d Cir. 2004). Rio Tinto's contacts with the U.S. as a whole are insufficient to meet this standard. Pasmore Decl. ¶ 8.

Moreover, Plaintiffs' Sherman Act claims are predicated on Defendants' alleged sale of fossil fuel products to Puerto Rico at below-market prices to "maintain their energy monopoly, fix prices, and increase obstacles for competitive entry into the market by alternative energy companies." Am. Compl. ¶ 767. But as set forth above and in the Pasmore Declaration, Rio Tinto does not sell or market its products in the U.S.; is not registered to do business in the U.S.; is not subject to U.S. income tax; does not have bank accounts or a registered agent for service of process in the U.S.; does not have U.S.-based employees; does not have offices, telephone listings, or mailing addresses in the U.S.; does not maintain corporate books or records in the U.S.; and does not own or operate personal or real property in the U.S. Pasmore Decl. ¶ 8.[10]

Furthermore, Rio Tinto has never sold oil or gas in the U.S., *id.* ¶ 10—the primary focus of the Complaint—and contrary to Plaintiffs' allegations, Rio Tinto also has no jurisdictionally-

---

First Circuit has yet to choose an approach. However, regardless of which approach this Court takes, there can be no personal jurisdiction over Rio Tinto because, as set forth herein, Rio Tinto does not have the necessary minimum contacts with Puerto Rico or the U.S. more broadly.

[10]   Again, to the extent Plaintiffs are asserting a conspiracy theory of jurisdiction, despite the First Circuit's skepticism of this doctrine, this argument must fail because Plaintiffs fail to adequately allege a conspiracy. *See, e.g.*, *In re New Motor*, 307 F. Supp. 2d at 158.

relevant coal-related contacts with the U.S. No Rio Tinto affiliate has engaged in coal production, held U.S. coal reserves, marketed, or sold coal in the U.S. since 2013. *Id*. ¶ 9. This Circuit has determined that "for purposes of specific jurisdiction[], contacts should be judged when the cause of action arose." *Cambridge Literary Props. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.*, 295 F.3d 59, 66 (1st Cir. 2002). Plaintiffs' allegations center around a 2017 hurricane, four years after any affiliate of Rio Tinto made any coal sales anywhere in the U.S. As such, even if alleged, historical coal production by Rio Tinto affiliates would be inadequate to provide minimum contacts sufficient to confer personal jurisdiction over Rio Tinto.

Rio Tinto also did not purposefully avail itself of the U.S. as a forum. In *In re New Motor*, the district court assessed whether Canadian subsidiaries of global auto manufacturers had purposely availed themselves of the forum using a Fifth Amendment due process analysis. 307 F. Supp. 2d at 145. The court concluded that while other entities affiliated with the defendant had manufactured vehicles in Canada for sale into the U.S., the defendant itself had not done so. *Id.* at 156. The court thus dismissed the complaint for lack of personal jurisdiction. *Id.* The same result is warranted here. Because Plaintiffs cannot establish that Rio Tinto ever sold any coal in Puerto Rico, their antitrust claim must fail for lack of personal jurisdiction.

## CONCLUSION

Rio Tinto respectfully requests that all claims against it be dismissed with prejudice for lack of personal jurisdiction.

**WHEREFORE**, defendant Rio Tinto respectfully requests this Honorable Court to **grant** the instant motion and dismiss the Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(2).

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date the foregoing

motion was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys and participants of record.

      Respectfully submitted on January 30, 2024.

<u>*s/ Roberto A. Cámara-Fuertes*</u>
Roberto A. Cámara-Fuertes
USDC-PR Bar No. 219002
Jaime A. Torrens-Dávila
USDC-PR Bar No. 223810
Mónica Ramos-Benítez
USDC-PR Bar No. 308405
FERRAIUOLI LLC
P.O. Box 195168
San Juan, PR 00919-5168
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
E-mail: rcamara@ferraiuoli.com
E-mail: jtorrens@ferraiuoli.com
E-mail: mramos@ferraiuoli.com

Linda H. Martin (*pro hac vice*)
David Y. Livshiz (*pro hac vice*)
Noelle L. Williams (*pro hac vice*)
Jennifer E. King (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
E-mail: linda.martin@freshfields.com
E-mail: david.livshiz@freshfields.com
E-mail: noelle.williams@freshfields.com
E-mail: Jennifer.king@freshfields.com

Jennifer Loeb (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
E-mail: jennifer.loeb@freshfields.com

*Attorneys for Defendant Rio Tinto plc*