# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

THE MUNICIPALITIES OF BAYAMÓN,
CAGUAS, LOÍZA, LARES, BARRANQUITAS,
COMERÍO, CAYEY, LAS MARÍAS, TRUJILLO
ALTO, VEGA BAJA, AÑASCO, CIDRA,
AGUADILLA, AIBONITO, MOROVIS, MOCA,
BARCELONETA, CAMUY, CATAÑO,
SALINAS, ADJUNTAS, ARROYO, CULEBRA,
DORADO, GUAYNABO, HORMIGUEROS,
JUNCOS, LAJAS, MANATÍ, NAGUABO,
NARANJITO, UTUADO, VILLALBA, COAMO,
OROCOVIS, VIEQUES, and
YABUCOA on behalf of themselves and others
 similarly situated, known as the
MUNICIPALITIES OF PUERTO RICO,

*Plaintiffs*,

v.

EXXONMOBIL CORP., ET AL.

*Defendants*.

Civil Action No. 22-CV-1550 HRV

## PLAINTIFFS' OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**Table of Contents**

INTRODUCTION.................................................................................................................1

STATEMENT OF FACTS..................................................................................................4

LEGAL STANDARD .........................................................................................................6

ARGUMENT .......................................................................................................................8

   **I. Puerto Rico's Nationwide Jurisdiction Provision Establishes Personal Jurisdiction Over Defendants**........................................................................................................................8

      *a. Defendant Rio Tinto PLC's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction (ECF No. 246)*........................................................................................10

      *b. Motiva Enterprises LLC's Supplemental Motion to Dismiss (ECF No. 240)* ...........12

      *c. Occidental Petroleum's Motion to Dismiss Amended Complaint (ECF No. 232)* ......13

   **II. Defendants' Activity Falls Under Puerto Rico's Long-Arm Statute** ..........................14

   **III. Defendants are Subject to Specific Jurisdiction in Puerto Rico** ...............................15

      *a. Defendants Purposefully Availed Themselves to Puerto Rico Through In-State Activities* ......16

         i. Defendant BHP Group Limited's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (ECF No. 245) ...............................................................17

         ii. Motiva Enterprises LLC's Supplemental Motion to Dismiss (ECF No. 240) ...........18

         iii. Occidental Petroleum's Motion to Dismiss Amended Complaint (ECF No. 232).................18

         iv. Defendant Rio Tinto PLC's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction (ECF No. 246) ..................................................................................19

      *b. Plaintiffs' Claims "Arise Out Of" and/or "Relate to" Defendants' Contacts With Puerto Rico* 20

         i. Ford Does Not Require Proof of Causation for Personal Jurisdiction .......................21

         ii. The Plaintiffs' Allegations Sufficiently Relate to Defendants' Conduct in Puerto Rico to Establish Jurisdiction ............................................................................................25

            A. Defendant BHP Group Limited's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (ECF No. 245) ..................................................26

            B. Motiva Enterprises LLC's Supplemental Motion to Dismiss (ECF No. 240) .....................28

            C. Occidental Petroleum's Motion to Dismiss Amended Complaint (ECF No. 232) ...............30

            D. Defendant Rio Tinto PLC's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction (ECF No. 246).................................................................33

      *c. Defendants Have Failed to Show How Exercising Personal Jurisdiction Over Defendants Would Be Unreasonable and How It Would Conflict With Principles of Federalism* ...................34

         i. Defendant BHP Group Limited's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (ECF No. 245) ...............................................................38

         ii. Motiva Enterprises LLC's Supplemental Motion to Dismiss (ECF No. 240) ...........39

         iii. Defendant Rio Tinto PLC's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction (ECF No. 246) ..................................................................................39

   **IV. Plaintiffs Provided Sufficient Service of Process**.......................................................40

      *a. Occidental Petroleum's Motion to Dismiss Amended Complaint (ECF No. 232)*......41

CONCLUSION .................................................................................................................42

## Table of Authorities

Page(s)

## CASES

*Adelson v. Hananel*,
   652 F.3d 75  (1st Cir. 2011) ..................................................................... 20

*AIG Specialty Ins. Co. v. McColgan*,
   2023 WL 5200069 (D. Mass. Aug. 14, 2023) ........................................... 11

*American Express International, Inc. v. Mendez-Capellan*,
   889 F.2d 1175 (1st Cir. 1989) ...................................................................... 7

*Amtrol, Inc. v. Vent-Rite Valve Corp.*,
   646 F. Supp. 1168 (D. Mass. 1986) ........................................................... 19

*angual v. General Battery Corp.*,
   710 F.2d 15, 1(1st Cir.1983); ....................................................................... 7

*Asahi Metal Indus. v. Super. Ct. of Cal., Solano Cnty.*,
   480 U.S. 102 (1987)................................................................................ 16, 18

*Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*,
   817 F. Supp. 326, 1993 U.S. Dist. LEXIS 4450 (E.D.N.Y.1993) .................... 10, 14

*Boateng v. Inter American University of Puerto Rico*,
   188 F.R.D. 26 (D.P.R.1999) ....................................................................... 40

*Boit v Gar-Tec Products Inc.*,
   967 F. 2d 671 (1st Cir. 1992) ........................................................................ 8

*Bridge v. Invest Am., Inc.*,
   748 F. Supp. 948 (D.R.I. 1990)...................................................................... 9

*Bristol-Myers Squibb Co.*,
   582 U.S. ............................................................................................... 21, 35

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)................................................................................... 34

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986) ........................................................................ 9

*Cappello v. Rest. Depot, LLC*,
   2023 WL 2588110 (D.N.H. Mar. 21, 2023) .............................................. 23

*Carreras v. PMG Collins, LLC*,
   660 F.3d 549 (1st Cir. 2011) ...................................................................... 14

*Chloe v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010)....................................................................... 24

*City of New York v. Chevron Corp.*,
   993 F.3d 81 (2d Cir. 2021)......................................................................... 24

*City of Oakland v. BP p.l.c.*,
   325 F. Supp. 3d 1017 (N.D. Cal. 2018) ..................................................... 24

*City of Oakland*,
   2018 WL 3609055 ...................................................................................... 24

*Coleman v. Cranberry Baye Rental Agency*,
   202 F.R.D. 106 (N.D.N.Y. 2001) ............................................................... 41

*Commonwealth of Puerto Rico v. SS Zoe Colocotroni*,
   628 F.2d 652 (1st Cir.1980) ............................................................................... 7

*Cory v. Aztec Steel Bldg., Inc.*,
   468 F.3d 1226 (10th Cir. 2006) ........................................................................... 9

*Davila-Fermin v. Se. Bank, N.A.*,
   738 F. Supp. 45 (D.P.R. 1990) ......................................................................... 14

*Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A.*,
   290 F.3d 42 (1st Cir. 2002) ...................................................................... 7, 8, 25

*De La Rosa v. Philip Morris Prod., Inc.*,
   975 F. Supp. 161 (D.P.R. 1997) ....................................................................... 14

*Dispensa v. Nat'l Conf. of Cath. Bishops*,
   2020 WL 2573013 (D.N.H. May 21, 2020) ...................................................... 9

*ESAB Group, Inc. v. Centricut, Inc.*,
   126 F.3d 617 (4th Cir. 1997) ............................................................................. 9

*FordMotor Co. v. Mont. Eight Judicial Dist. Court*,
   141 S. Ct. 1017, 1026 (2021) .................................................................... passim

*Glaros v. Perse*,
   628 F.2d 679 (1st Cir. 1980) ........................................................................... 11

*Greater Newburyport Clamshell All. v. Pub. Serv. Co. of New Hampshire*,
   1983 WL 489274 (D. Mass. May 25, 1983) ................................................... 11

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ........................................................................................ 16

*Hepp v. Facebook*,
   14 F.4th 204 (3d Cir. 2021) ............................................................................. 23

*Hogar Crea*,
   708 F. Supp. 2d ............................................................................................... 35

*In re New Motor Vehicles Canadian Export*,
   307 F. Supp. 2d 145 (D. Me. 2004) ................................................................ 11

*Int'l Shoe Co. v. Wash. Office of Un*employment Comp. & Plac*ement*,
   326 U.S. 310, 316, 66 S.Ct.154 (1945) ................................................. 7, 19, 34

*Lisak v. Mercantile Bancorp, Inc.*,
   834 F.2d 668 (7th Cir. 1987) ............................................................................. 9

*LNS Enters, LLC v. Cont'l Motors, Inc.*,
   22 F.4th 852 (9th Cir. 2022) ............................................................................ 23

*Malave-Torres v. Cusido*,
   839 F. Supp. 2d 501 (D.P.R. 2012) ........................................................... 35, 36

*Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R.*,
   2015 WL 5719801 (D.P.R. Sept. 29, 2015) .................................................. passim

*Martins v. Bridgestone Am. Tire Ops., LLC*,
   266 A.3d 753 (R.I. 2022) ................................................................................ 23

*Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
   142 F.3d 26 (1st Cir. 1998) ............................................................................... 8

*Mohajer v. Monique Fashions*,
   945 F. Supp. 23 (D.P.R. 1996) ..................................................................... 8, 36

*N. Laminate Sales, Inc. v. Davis*,
   403 F.3d 14 (1st Cir. 2005) ............................................................................... 7

*Native Vill. Of Kivalina v. ExxonMobil Corp.*,
 663 F. Supp. 2d 863 (N.D. Cal. 2009) ................................................................ 24
*NBA Properties, Inc. v. HANWJH*,
 46 F.4th 614 (7th Cir. 2022) ............................................................................... 23
*Nowak v. Tak How Invs., Ltd.*,
 94 F.3d 708 (1st Cir. 1996) .................................................................................. 37
*Phillips v. Prairie Eye Ctr.*,
 530 F.3d 22 (1st Cir. 2008) .................................................................................. 20
*Ponce Fed. Bank, F.S.B. v. Ramiro Colon*,
 1996 WL 590274 (D.P.R. Sept. 26, 1996) ............................................................. 8
*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*,
 138 F.3d 65 (2d Cir.1998) ..................................................................................... 9
*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
 119 F.3d 935 (11th Cir. 1997) .............................................................................. 9
*ritzker v. Yari*,
 42 F.3d 53, 6(1st Cir. 1994); .................................................................... 7, 20, 35
*Rodriguez v. Dixie S. Indus., Inc.*,
 113 F. Supp. 2d 242 (D.P.R. 2000) .................................................................. 7, 8
*Rodriguez v. Fullerton Tires Corp.*,
 115 F.3d 81 (1st Cir. 1997) ................................................................................... 8
*Salgado-Santiago v. American Baler Co.*,
 394 F.Supp.2d 394 (D.P.R. 2005) ................................................................ 15, 36
*Sawtelle v. Farrell*,
 70F.3d 1381 (1st Cir. 1985) ........................................................................ 7, 15, 36
*Sinatra v. Nat'l Enquirer, Inc.*,
 854 F.2d 1191 (9th Cir. 1988) ............................................................................. 35
*Ticketmaster-New York, Inc. v. Alioto*,
 26 F.3d 201 (1st Cir. 1994) ..................................................................... 25, 34, 39
*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
 960 F.2d 1080 (1st Cir.1992) .............................................................................. 15
*Vapotherm, Inc. v. Santiago*,
 38 F.4th 252 (1st Cir. 2022) ................................................................................ 23
*Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.*,
 557 F.2d 886 (1st Cir.1977) .................................................................................. 7
*Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*,
 2015WL 4467064 (D. Mass. July 20, 2015) ....................................................... 13
*Worthington v. Commodity Credit Corp.*,
 157 F. Supp. 497 (E.D.N.C. 1957) ..................................................................... 41

## **RULES**

Federal Rules of Civil Procedure 4 (k)(1)(A). .................................................... 7, 40
Federal Rules of Civil Procedure 12(b)(2) ........................................................... 7, 8
Federal Rules of Civil Procedure 12(b)(5) ............................................................. 40
Puerto Rico Rules of Civil Procedure Rule 4 ......................................................... 40

## **STATUTES**

18 U.S.C. § 1965.......................................................................................................... 2, 8, 10, 14

32 L.P.R.A. App. III Rule 4.7 ................................................................................................... 14

## INTRODUCTION

Plaintiffs initiated this action to seek remedies for injuries within the Municipalities of Puerto Rico resulting from the Defendants' extensive efforts to undermine the scientific consensus on global warming and hide the risks associated with their fossil fuel products. Defendants collectively knowingly deceived the municipality leaders and residents, and this action seeks to hold them accountable for propaganda that left them ill-prepared to face the inevitable devastation from national disasters that ensued because of a false sense of security pervaded by the maleficent actors as evinced in Plaintiffs' pleadings. Plaintiffs' Amended Complaint ("Am. Compl.") thoroughly asserts several claims against the Defendants, as set forth in Plaintiffs' Response in Opposition to Defendants' Joint Motion to Dismiss for Failure to State a Claim ("Pls.' Resp. in Opp. to Defs.' J. Mot. to Dismiss Am. Compl.").

Plaintiffs' Amended Complaint further set forth ample allegations to demonstrate personal jurisdiction over the Defendants. Each of the Defendants involved in this lawsuit has sufficient ties to Puerto Rico to support the exercise of personal jurisdiction. The ties establish a pattern of deceptive marketing practices regarding global warming that this Court has the jurisdictional power to allow plaintiffs to seek justice for regarding the resultant grave destruction that resulted from the successful campaigns. Clearly, had Plaintiffs been better educated they could have prepared for the catastrophic storms that led to the loss of lives and billions in devastation.  The systemic cleansing of the dialogue regarding the use of fossil fuels is at the crux of why this Court has jurisdiction and why the Puerto Rico Municipal plaintiffs must have their day in Court to seek justice for their residents for the tantamount suffering and devastation that resulted from defendants' heinous and preventable behavior.

Section 1965 of the Racketeer Influenced and Corrupt Organizations Act ("RICO") extends nationwide service of process where the "ends of justice require." *See* 18 U.S.C. § 1965(b). Arguably, all the Defendants can be subject to personal jurisdiction by this Court. However, the statute requires that this Court only needs to find that one defendant has personal jurisdiction for this matter to move forward. Undoubtedly, the extensive marketing, distributing, processing and other actions as plead in the various pleadings establishes prima facie actions against at least one of the defendants to this Court's satisfaction or it should. None of defendants' counsel rebutted the arguments against its coconspirators because they cannot. This Court should not allow the cacophony of arguments woven between social policy and a misapprehension of what Plaintiffs' counsel plead to find that none of the defendants herein are subject to personal jurisdiction. That simply cannot be the case based upon the pleadings presented herein.

Notwithstanding Section 1965 which affords for jurisdiction as previously stated against one defendant as satisfying for all, all three elements of the specific jurisdiction test are satisfied for each Defendant as artfully plead herein because: (1) they purposefully availed themselves of the privilege of conducting activities in Puerto Rico, where each of them sold, marketed, and promoted their fossil fuel products; (2) Plaintiffs' claims arise out of and/or relate to Defendants' production, marketing, and sale of those products in Puerto Rico and their tortious conduct of disseminating disinformation to the Plaintiffs in Puerto Rico; and (3) Defendants did not meet their burden to illustrate that exercising personal jurisdiction over them would be unreasonable.

Importantly, only four of the Defendants assert that they do not meet the "purposeful availment" prong of the specific jurisdiction test.[1] Instead, Defendants' claim that the Plaintiffs cannot meet the second prong of the specific jurisdiction test because their injuries were not

---

[1] *See infra* sections III.a.i-iv (addressing specified arguments by BHP, Motiva, Occidental, and Rio Tinto).

exclusively caused by their Puerto Rico activities. This conflicts with established case law on personal jurisdiction. In *Ford Motor Co. v. Mont. Eight Judicial Dist. Court*, the Supreme Court clearly rejects the notion that "only a strict causal relationship between the defendant's in-state activity and the litigation will do." 141 S. Ct. 1017, 1026 (2021). Rather, it is sufficient that there be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 1025 (cleaned up). Ultimately, the strict causal connection between the allegations brought against the Defendants' actions and Plaintiffs' injuries is a merits question, to be determined by the Court at a later pleading stage. Further, the argument regarding specific causation as raised did not address the deceptive propaganda arguments as evinced in Plaintiffs' pleadings. Again, that question is at the crux as to why this Court has personal jurisdiction over this litigation and Defendants' counsel cannot rebut that, so they are largely silent on the monies and efforts spent to rebut global warming and instead attempt to confuse this Court as to the heart of this instant action. Again, defendants must answer for their conduct that led to the municipalities lack of apprehension for the gravity of what they faced because of global warming resulting in loss of life and property. This action seeks justice for that conduct and this court has jurisdiction to allow it to proceed as plead.

Lastly, even if this Court accepted a more draconian interpretation and required an obligation of strict causation, Plaintiffs have plainly demonstrated a causal connection between Defendants' conduct and the injuries. For almost seven decades, Defendants knew that their fossil fuel products were the primary cause of climate change, and that with the increasing production and use of fossil fuels, the effects of climate change due to greenhouse gases would accumulate in deadly and dangerous ways, like the superstorms that have ravaged the Plaintiffs' land. Am.

Compl. ¶¶ 297-316. Knowing these impacts, Defendants intentionally deceived consumers by disseminating climate disinformation to the public, including consumers and residents of Puerto Rico, and marketed and sold their fossil fuel products in Puerto Rico. Am. Compl. ¶¶ 347-585. The fact that Defendants contribute to climate change in other places does not negate the fundamental link between their actions in Puerto Rico and the extensive damages caused by climate change that occurred during the hurricanes there. Had Defendants acted responsibly and educated Plaintiffs, the mass devastation and loss of lives could have been mitigated. This action seeks to hold them accountable for their propaganda based on federal statute, Puerto Rico law and common law claims. This Court should afford for this action to proceed for an adjudication on its merits so that justice can be served for those who perished and the billions in devastation that resulted because of defendants' successful propaganda that still permeates today.

## STATEMENT OF FACTS

*a. Background of Litigation*

Plaintiffs bring this action for the role Defendants' fossil fuel products played in causing the losses, deaths, and destruction of property resulting from storms and their aftermath in September 2017. Am. Compl. ¶ 1. Plaintiffs seek remedies for the losses and economic damages resulting from Defendants' acts which caused, and continue to cause, significant damage and alteration to Puerto Rico's climate. Am. Compl. ¶ 9. Plaintiffs' injuries were a direct result of Defendants' decades-long campaign to promote fossil fuels and deceive the public on fossil fuels' direct causation to climate change and the risks associated with it. Am. Compl. ¶¶ 2-3. Plaintiffs bring forward RICO claims due to Defendants' formation of an enterprise and collusion regarding their climate disinformation campaign. Am. Compl. ¶ 11. Plaintiffs further seek remedies for injuries caused by Defendants' failure to warn about the serious effects of unrestricted fossil fuel usage, antitrust, nuisance, negligent design defect, and unjust enrichment. *Id.* All Defendants are

subject to the jurisdiction of this Court, first through RICO Section 1965, as well as through specific jurisdiction. Am. Compl. ¶¶ 12-19.

Regarding the Defendants' conduct performed in Puerto Rico, directed at the Commonwealth, and profoundly threatening the well-being of and vitality of the municipal Plaintiffs in Puerto Rico, their Amended Complaint:

- Describes each Defendant's substantial fossil fuel-related business in Puerto Rico, including, e.g., advertisement, marketing, and sales of products in Puerto Rico, retention of Plaintiffs as customers of their fossil fuel products, retention of Plaintiffs as investors in their publicly traded companies, operation and sale of service stations in Puerto Rico, sale of access to terminals and airports in Puerto Rico, sale of branded gasoline and other fossil fuel products in Puerto Rico. Am. Compl. ¶¶ 99, 101-103 (ExxonMobil); 111, 113 (Shell); 123, 126, 128 (Chevron); 137, 139, 140-141 (BP); 150, 153 (ConocoPhillips); 163 (Motiva); 169 (Occidental); 174, 176, 179 (BHP); 184, 186 (Rio Tinto); and 197 (All Defendants);
- Describes the specific harm caused to Puerto Rico due to the superstorms of September 2017 which were caused by Defendants' conduct and fossil fuel products. Am. Compl. ¶¶ 10-11, 238-270, 735, 770; Am. Racketeering Case Stmt. ¶¶ 30-31.
- Details Defendants' decades-long understanding—obtained via industry-controlled research—that the continuous use of the fossil fuel products will cause a steady rise in the average world temperature, resulting in serious ramifications, like sea level rise and superstorms, for island states like Puerto Rico. Am. Compl. ¶¶ 297-316 (detailing studies, investigations, and reports by and on behalf of Defendants); 317-341 (detailing Defendants' acknowledgment of their culpability and alterations to their own practices to defend their business against climate change); and
- Details the intentional and fraudulent actions Defendants took "to undermine climate science they knew to be true and block climate action." Am. Compl. ¶ 346. Defendants "launched an extensive, multi-decade long campaign of denial to deceive consumers, the media, policymakers, and the public about the potentially 'catastrophic' impacts of their business practices and ensure the longevity of the fossil fuel industry." *Id.*; *see also* Am. Compl. ¶¶ 347-585 (detailing publicity campaigns, articles, and other initiatives used by Defendants and their proxies to cast doubt on climate science and increase demand for their goods); Am. Compl. ¶¶501-585 (detailing specific new tactics Defendants pursued once climate science became widely accepted knowledge, including greenwashing, deceptive pledges, and impractical energy alternatives).

Plaintiffs' Amended Complaint and Amended Racketeering Case Statement thoroughly outline facts that demonstrate the Defendants' substantial fossil fuel-based connections in Puerto Rico. Plaintiffs' allegations also set forth their deliberate and malicious actions to deceive them about the grave ramifications of fossil fuel usage that now particularly harm Puerto Rico. The dire consequences of climate change reached Puerto Rico and the effects will continue for many years to come.

    *b.  Procedural History*

Plaintiffs filed their first complaint on November 22, 2022. Dkt 1. Defendants then filed joint motions to dismiss, individual motions, and a Joint Motion for Judicial Notice on October 13, 2023. Dkts. 174, 184, 185, 186, 187, 188-190, 193, & 195-199. To incorporate additional parties and new scientific data specific to the issues of this matter, Plaintiffs filed their Amended Complaint on November 3, 2023. *See* Dkt. 205; *see also* Dkt. 206 (Amended RICO Case Statement). Plaintiffs' alterations included more specified data on the causation of Defendants' conduct and the injuries incurred by the Plaintiffs and more information regarding Defendants' contacts and interactions with the forum. Plaintiffs' alterations do not affect the sufficiency of the pleading for either merits or personal jurisdictional purposes. Defendants again filed joint motions to dismiss, individual motions, and a Joint Motion for Judicial Notice on joint motion to dismiss for lack of personal jurisdiction. Dkts. 232, 234-247, 254. Plaintiffs now file this response in opposition to Defendants Joint Motion to Dismiss for Lack of Personal Jurisdiction ("Defs.' J. Mot. (ECF 234)"). Plaintiffs contemporaneously file another opposition to Defendants' joint motion for failure to state a cause of action under Rule 12(b)(6).

## **LEGAL STANDARD**

When a district court considers a motion to dismiss for lack of personal jurisdiction, the Court conducts inquiries into whether Puerto Rico's long-arm statute grants jurisdiction over the

Defendant and whether the exercise of personal jurisdiction over the Defendant comports with the Due Process clause of the United States Constitution. *See N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 24 (1st Cir. 2005); *Rodriguez v. Dixie S. Indus., Inc.*, 113 F. Supp. 2d 242, 249 (D.P.R. 2000); *see also American Express International, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir. 1989); *Muñiz v. Walgreen Co.*, 2014 U.S. Dist. WL 4702203 at *3 (D.P.R. 2014); *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1985). Puerto Rico's long-arm statute, 32 L.P.R.A. App. III Rule 4.7, has been construed to extend "as far as the Federal Constitution permits." *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994); *see also* Fed. R. Civ. P. 4 (k)(1)(A). This includes extending the court's jurisdiction over a non-resident defendant so as long as it remains constitutional. *See, e.g., Mangual v. General Battery Corp.*, 710 F.2d 15, 19 (1st Cir.1983); *Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 668 (1st Cir.1980); *Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.*, 557 F.2d 886, 889 (1st Cir.1977). Implicitly, the need to satisfy the long-arm statute is fulfilled if this Court finds that it is constitutionally legitimate to exercise jurisdiction over Defendants. *Rodriguez v. Dixie*, 113 F. Supp. 2d at 250. The Court bases its reasoning on whether the non-resident defendants "maintain[] sufficient minimum contacts with Puerto Rico so as to comport to traditional notions of fair play and substantial justice." *Muñiz v. Walgreen Co.*, 2014 U.S. Dist. WL 4702203 at *3 (D.P.R. 2014) (quoting *Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 (1945)).

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of "establishing that jurisdiction exists over the non-resident defendant. FRCP 12(b)(2). *Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). When evaluating the motion and assessing whether the plaintiff has satisfied this burden, the court may

use several different techniques. When a matter is in its early stages of litigation and no evidentiary hearing has been held, as is true in this case, the Court uses the *prima facie* standard. *See Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997); *Rodriguez v. Dixie Southern*, 113 F.Supp.2d at 249; *Mohajer v. Monique Fashions*, 945 F. Supp. 23, 26 (D.P.R. 1996). Under this standard, the court considers whether the plaintiff has proffered evidence that, "if credited, is enough to support findings of all the facts essential to personal jurisdiction." *Boit v. Gar-Tec Products Inc.*, 967 F. 2d 671, 675 (1st Cir. 1992), *Rodriguez v. Dixie*, 113 F. Supp. 2d at 249. For purposes of a Rule 12(b)(2) motion, the Court must accept the well-pleaded factual allegations in the plaintiff's complaint as true and construe them in the "light most congenial to the plaintiff's jurisdictional claim." *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998); *see also Daynard*, 290 F.3d at 51.

Additionally, if the court has jurisdiction established by the minimal connections of at least one defendant with the forum State, Section 1965 of RICO permits the court to exercise personal jurisdiction over an out-of-state defendant based on nationwide contacts. *Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R.*, 2015 WL 5719801, at *3 (D.P.R. Sept. 29, 2015), *report and recommendation adopted*, (D.P.R. Mar. 31, 2016); *Ponce Fed. Bank, F.S.B. v. Ramiro Colon*, 1996 WL 590274, at * 3 (D.P.R. Sept. 26, 1996).

## ARGUMENT

### I. Puerto Rico's Nationwide Jurisdiction Provision Establishes Personal Jurisdiction Over Defendants

Defendants are, first and foremost, subject to this Court's jurisdiction through Section 1965 of RICO. Section 1965 authorizes nationwide service of process "when it is shown that the ends of justice require." *See* 18 U.S.C. § 1965(b). Though there is a Circuit split on this provision, the majority of courts interpret Section 1965(b) to hold that "a federal court may exercise personal jurisdiction over a civil RICO defendant otherwise lacking traditional minimum contacts with the

forum state," if "(i) personal jurisdiction over another civil RICO defendant otherwise exists in the forum," and "(ii) 'the ends of just require' that the court exercise personal jurisdiction over the civil RICO codefendant lacking the requisite contacts." *Dispensa v. Nat'l Conf. of Cath. Bishops*, No. 19-CV-556-LM, 2020 WL 2573013, at *10 (D.N.H. May 21, 2020); *see also Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538-39 (9th Cir. 1986); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671-72 (7th Cir. 1987); *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 70-72 (2d Cir. 1998); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229-33 (10th Cir. 2006). The Fourth and Eleventh Circuit have found that section 1965(d) controls, allowing personal jurisdiction over any RICO defendant if personal jurisdiction exists over any other RICO codefendant in the forum. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). This analysis requires no inquiry into the ends of justice. *See Panama*, 119 F.3d at 942; *ESAB Group*, 126 F.3d at 626.

The First Circuit has not ruled on this issue, however, four district courts, including this Court, have decided upon it. *See Kalika, LLC v. Bos. & Maine Corp.*, Case No. CV 15-14043-GAO, 2019 WL1276099, at *1, 7 (D. Mass. Mar. 20, 2019) (following the majority); *Dispensa*, No. CV 15-14043-GAO, 2020 WL 2573013, at *10 (following the majority); *Marrero-Rolon v. Autoridad de Energia Electrica de P.R.*, 2015 WL 5719801, at *3 (D.P.R. Sep. 29, 2015), *report and recommendation adopted,* 2016 WL 9459821, at *1 (D.P.R. Mar. 31, 2016) (following the majority); *but see Bridge v. Invest Am., Inc.*, 748 F. Supp. 948, 949 (D.R.I. 1990) (following the Fourth and Eleventh Circuits). Regardless of how this Court chooses to interpret the provision, Plaintiffs' allegations are sufficient to confer personal jurisdiction over Defendants.

Plaintiffs have met both requirements for Puerto Rico's Nationwide jurisdiction provision to apply. First, Plaintiffs state a valid RICO claim. *See* Pls.' Resp. in Opp. to Defs.' J. Mot. to Dismiss Am. Compl. at section III.  Plaintiffs allege each element of a RICO claim throughout their Amended Complaint and Amended Racketeering Case Statement. Am. Compl. ¶¶ 717-763; Am. Racketeering Case Stmt. ¶¶ 2-19. Plaintiffs provide cited allegations regarding Defendants' racketeering activities throughout the factual portions of the Amended Complaint to support the elements of RICO, as well. Am. Compl. ¶¶ 6, 7(d)-(e), 79, 176, 184, 346, 363-397, 405-462, 488, 524, 618, 637, 674. Finally, Plaintiffs provide a RICO Case Statement and an Appendix outlining each instance of a RICO violation—describing the nature of the violation, the means, the date, and the Defendant or Defendants involved. *See* Am. Racketeering Case Stmt. ¶¶ 8-18; *see also* App'x. to Am. Compl. *See Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 817 F. Supp. 326, 1993 U.S. Dist. LEXIS 4450 (E.D.N.Y. 1993) ("Jurisdiction may be established over foreign co-conspirator in RICO action, even though 18 USCS § 1965(d) makes no provision for service outside of U.S., because service may be made under law of state in which District Court sits.").

Further, for the reasons stated below, Plaintiffs have established jurisdiction over all the Defendants in this matter, meeting the minimal requirement for RICO's Section 1965 to apply. The Court should not dismiss based on personal jurisdiction when a valid RICO claim has been made and questions of both law and fact remain to be resolved at a later stage based on those RICO claims.

### a. Defendant Rio Tinto PLC's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction (ECF No. 246)

Defendant Rio Tinto PLC ("Rio Tinto") alleges the same arguments regarding RICO section 1965 as Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction. Rio Tinto states that the allegations of Plaintiffs' Amended Complaint are insufficient to demonstrate specific

jurisdiction over it. Def. Rio Tinto's Mot. at 8-10. Rio Tinto is incorrect. Plaintiffs state a valid RICO claim by alleging each element of the claim. *See* Pls.' Resp. in Opp. to Defs.' J. Mot. to Dismiss Am. Compl. at section IV.A; *see also* Am. Compl. ¶¶ 717-763; Am. Racketeering Case Stmt. ¶¶ 2-19. Rio Tinto, specifically, is asserted to have participated in conduct performed furtherance of the enterprise. Am. Compl. ¶¶ 211(a), 368, 381, 395, 430(c), 483, 725; Am. Racketeering Case Stmt. ¶¶ 3(b)(i), 10; App'x to Am. Compl. Racketeering Act Nos. 14-15, 42, 64-65.

Further, Rio Tinto argues that Plaintiffs have failed to allege an anti-trust conspiracy. *See* Def. Rio Tinto's Mot. at 14 n. 10.[2] But, the Complaint lays out a decades-long conspiracy in violation of §1 of the Sherman Act (*see* Pls.' Resp. in Opp. to Defs.' J. Mot. to Dismiss Am. Compl. at section IV.A) and alleges Rio Tinto's specific role in that conspiracy. *See* Compl. ¶¶ 180-87, 211(b), 368, 381, 395, 430, 483, 531, 555.

Plaintiffs also allege sufficient contacts between Rio Tinto and the United States. Am. Compl. ¶ 182 (alleging that Rio Tinto markets and sells products in several regions of the United States), *id.* (alleging that Rio Tinto has businesses within the United States), ¶ 183 (alleging that Rio Tinto holds about 1.4 billion short tons of US coal reserves; retains most of its company's assets in the United States; controls, owns, and operates mines in Utah, California, and Arizona; receives almost 16% of its total Consolidated Sales Revenue from the United States).

Rio Tinto also argues that, as a foreign defendant, it cannot be subject to the nationwide contacts provision of RICO. Def. Rio Tinto's Mot. at 9, n. 5. However, under Puerto Rico's long

---

[2] Rio Tinto cites *In re New Motor Vehicles Canadian Export*, 307 F. Supp. 2d 145 (D. Me. 2004) ("NMV") and argues that the conspiracy theory of personal jurisdiction is disfavored in the First Circuit (*id.* at 158); however, the First Circuit has explicitly *not* decided whether this is a viable theory of establishing personal jurisdiction over a defendant. *See Glaros v. Perse*, 628 F.2d 679, 682 n.4 (1st Cir. 1980); *AIG Specialty Ins. Co. v. McColgan*, 2023 WL 5200069, at *3 (D. Mass. Aug. 14, 2023). Indeed, at least one court in this Circuit has accepted such a theory. *see Greater Newburyport Clamshell All. v. Pub. Serv. Co. of New Hampshire*, 1983 WL 489274, at *2 (D. Mass. May 25, 1983).

arm statute, specific jurisdiction over a foreign Defendant can be asserted. *See infra* section II. Further, Rio Tinto's membership and participation with US associations National Mining Association, the GCC, and the America Political Action Committee took place in the US. Am. Compl. ¶¶ 183, 211(b), 368, 381, 430(c), 483, 575. Rio Tinto's actions with these groups targeted US legislation and the US public, including the Plaintiffs and their citizens in Puerto Rico. *Id.* As such, Rio Tinto's contacts with the US directly relate to Plaintiffs' allegations and injuries.

### b. *Motiva Enterprises LLC's Supplemental Motion to Dismiss (ECF No. 240)*

Defendant Motiva Enterprises LLC ("Motiva") alleges the same arguments regarding RICO section 1965 as Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction. Motiva states that the allegations of Plaintiffs' Amended Complaint are insufficient to demonstrate specific jurisdiction over it. Def. Motiva's Mot. at 10-12. Motiva is incorrect. Plaintiffs state a valid RICO claim by alleging each element of the claim. *See* Pls.' Resp. in Opp. to Defs.' J. Mot. to Dismiss Am. Compl. at section III; *see also* Am. Compl. ¶¶ 717-763; Am. Racketeering Case Stmt. ¶¶ 2-19.

Plaintiffs also allege sufficient contacts between Motiva and the United States. Am. Compl. ¶¶ 156, 159 (alleging that Motiva markets and sells products in several regions of the United States), ¶ 159 (alleging that Motiva owns and operates a refinery Port Arthur, Texas); 162 (alleging that Motiva's fossil fuel products are supplied to the United States at more than 5200 locations); 163 (alleging that Motiva markets and sells its products to Puerto Rican customers). Further, Motiva's membership and participation with US associations API and GCC took place in the US. *Id.* ¶¶ 205, 430(b)-(c), 728(a). Motiva's actions with these groups targeted US legislation and the US public, including the Plaintiffs and their citizens in Puerto Rico. *Id.* As such, Motiva's contacts with the US directly relate to Plaintiffs' allegations and injuries.

### c. *Occidental Petroleum's Motion to Dismiss Amended Complaint (ECF No. 232)*

Defendant Occidental Petroleum ("Occidental") alleges the same arguments regarding RICO section 1965 as Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction. Occidental states that the allegations of Plaintiffs' Amended Complaint are insufficient to demonstrate specific jurisdiction over it. Def. Occidental's Mot. at 15. Occidental is incorrect. Plaintiffs state a valid RICO claim by alleging each element of the claim. *See* Pls.' Resp. in Opp. to Defs.' J. Mot. to Dismiss Am. Compl. at section III; *see also* Am. Compl. ¶¶ 717-763; Am. Racketeering Case Stmt. ¶¶ 2-19.

Plaintiffs also allege sufficient contacts between Occidental and the United States. Am. Compl. ¶ 169 (alleging that Occidental markets and sells products to the US and Puerto Rico), ¶ 165 (alleging that Occidental is headquartered in Houston, Texas). Further, Occidental's membership and participation with US associations API and GCC took place in the US. *Id.* ¶¶ 365, 430(b)-(c), 514, 522, 725. Occidental's actions with these groups targeted US legislation and the US public, including the Plaintiffs and their citizens in Puerto Rico. *Id.* As such, Occidental's contacts with the US directly relate to Plaintiffs' allegations and injuries.

Occidental alleges that Plaintiffs failed to plead any specific allegations against Occidental regarding participation in an enterprise or conspiracy sufficient to establish personal jurisdiction. Def. Occidental's Mot. at 11-12. Yet, the Amended Complaint alleges Occidental's specific role in the decades-long conspiracy in violation of RICO. *See* Pls Section IV.A.1-6; *see also* Am. Compl. ¶¶ 365, 430(b)-(c), 725, 728(a); Am. Racketeering Case Stmt. ¶¶ 8(b)(i), 10, 25; App'x to Am. Compl. Racketeering Act Nos. 1, 17, 64-65, 80. Plaintiffs even meet the heightened standard of particularity of Rule 9(b) with regards to Occidental. Contrary to Occidental's assertions, Plaintiffs are not merely pleading a group pleading, but rather have alleged multiple instances of deception and fraud with particularity that constitute a "plausible claim." *Whitman & Co., Inc. v.*

*Longview Partners (Guernsey) Ltd.*, No. 14-CV-12047-ADB, 2015 WL 4467064, at *10 (D. Mass. July 20, 2015).

## II.  **Defendants' Activity Falls Under Puerto Rico's Long-Arm Statute**

Even if the Court does not find that RICO's Section 1965 nationwide service of process subjects the Defendants to this Court's jurisdiction, Plaintiffs have still adequately established personal jurisdiction over all Defendants through traditional means. "[T]he reach of Puerto Rico's long-arm statute is coextensive with the reach of the Due Process Clause," *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011). When analyzing whether activity falls under Puerto Rico's long-arm statute, 32 L.P.R.A. App. III Rule 4.7, the Court considers that the phrase "participated in tortious acts within Puerto Rico" should include the tortious acts performed outside Puerto Rico when the effects of such acts are felt within the Commonwealth. *Davila-Fermin v. Se. Bank, N.A.*, 738 F. Supp. 45, 48 (D.P.R. 1990). Codefendants whose conduct may not have been performed directly in Puerto Rico, but the results of which were felt by Plaintiffs in Puerto Rico, can be subject to the Court's personal jurisdiction through the long-arm statute. *De La Rosa v. Philip Morris Prod., Inc.*, 975 F. Supp. 161, 166-67 (D.P.R. 1997). It is in the interest of the Commonwealth to utilize the long-arm statute to protect its citizens as far as the Constitution permits. *Id.* at n.3. Further, under Puerto Rico's long-arm statute, international defendants can still be subject to the Court's jurisdiction. *See Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 817 F. Supp. 326, RICO Bus. Disp. Guide ¶ 8295, 1993 U.S. Dist. LEXIS 4450 (E.D.N.Y. 1993) ("Jurisdiction may be established over foreign co-conspirator in RICO action, even though 18 USCS § 1965(d) has no provision for service outside of U.S., because service may be made under law of state in which District Court sits.").

Defendants' activity in Puerto Rico falls under the forum's long-arm statute. Plaintiffs' Complaint alleges that Defendants conducted fossil fuel-related business in Puerto Rico,

committed torts outside of and within Puerto Rico that had major effects on Puerto Rico, and caused injury in Puerto Rico. Am. Compl. ¶¶ 99, 101-103, 111, 113, 123, 126, 128, 137, 140-141, 150, 153, 163, 169, 174, 176, 179, 184, 186 (conducting fossil fuel business in Puerto Rico); *id.* ¶¶ 347-585 (committing fraud and torts outside of and within Puerto Rico); and *id.* ¶¶ 238-270 (torts caused injury in Puerto Rico). Due to Defendants' conduct affecting Puerto Rico, and the below arguments detailing how jurisdiction comports with the Due Process Clause, Puerto Rico's long-arm statute will allow for this Court to exercise personal jurisdiction over each Defendant.

III.   <u>**Defendants are Subject to Specific Jurisdiction in Puerto Rico**</u>

The only question now before the Court is whether it may exercise jurisdiction over the Defendants in accordance with federal constitutional Due Process. In short, the Court may do so due to all three requirements for specific jurisdiction being met. Specific jurisdiction may be applied to an out-of-state defendant where the claim "arises directly out of, or relates to, the defendant's forum-based contacts." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088–89 (1st Cir.1992). The Court "should embark on a tripartite inquiry as to defendant's contacts with the forum state: relatedness, purposeful availment, and reasonableness" to determine whether special jurisdiction over the defendant exists in this case. *See, e.g., Salgado-Santiago v. American Baler Co.*, 394 F.Supp.2d 394, 400 (D.P.R. 2005) (Casellas, D.J.) (citing *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1985)). "This tripartite analysis must be made on a case-by-case basis." *Id.* (citation omitted).

First, Defendants' Joint Motion does not contest the prong of the minimum contacts test that they "purposefully avail[ed]" themselves of the forum. *See* Defs.' J. Mot. (ECF 234) at 10.[3] They focus solely on the issues of whether Plaintiffs' claims "arise out of or relate to" Defendants'

---

[3] In separate motions, Defendants Rio Tinto, Motiva, and BHP contest that they purposefully availed themselves to Puerto Rico. *See infra* sections III.a.i-iv.

Puerto Rico contacts and whether the exercise of specific jurisdiction is reasonable. *Ford*, 141 S. Ct. at 1025. Second, the Plaintiffs' claims outline in the Amended Complaint relate to Defendants' contact with Puerto Rico because they marketed, promoted, and sold their fossil fuel products within and to Puerto Rico, while also targeting Puerto Rico through their disinformation campaign on fossil fuels and climate change. Third, it is constitutionally reasonable for the Court to exercise jurisdiction over Defendants because their activities within Puerto Rico are extensive.  Moreover, Plaintiffs have substantial interest in the litigation, and there would be no burden on Defendants in litigating here.

### a. *Defendants Purposefully Availed Themselves to Puerto Rico Through In-State Activities*

To establish jurisdiction that comports with federal Due Process, a defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford*, 141 S. Ct. at 1024-25 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[A]ctivities" include, but are not limited to, designing products for markets in the forum state or marketing or advertising products to the forum state. *See Asahi Metal Indus. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) (plurality opinion).

Defendants cannot contest purposeful availment due to their extensive contacts with Puerto Rico. All Defendants have marketed, advertised, sold, supplied, or made business-specific arrangements relating to fossil fuel products with Puerto Rico. *See Am. Compl.* ¶¶ 101-103, 111, 113, 123, 128, 137, 140-141, 150, 153, 163, 169, 174, 176, 179, 184, 186. Some Defendants have operated fossil fuel infrastructure in Puerto Rico through their own activities, subsidiaries, or otherwise. Am. Compl. ¶¶ 99, 126. Further, all Defendants have engaged in a coordinated and long-standing disinformation campaign designed to deceive the public about the dangers of usage of their fossil fuel products. Am. Compl. ¶¶ 317-500; Am. Racketeering Case Stmt. ¶ 5. Not only

did Defendants fail to warn Plaintiffs, but actively sought to conceal and deny such information—conduct that continues to this day.  Am. Compl. ¶¶ 501-585; Am. Racketeering Case Stmt. ¶ 5. Due to the extensive contacts Defendants had with Puerto Rico, the prong of purposeful availment is met.

### i.   Defendant BHP Group Limited's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (ECF No. 245)

Attempting to redefine what "contacts" with a forum means, Defendant BHP Group Limited ("BHP") claims that its operations of the Cerrejón Entities do not constitute a demonstration of BHP's purposeful availment to the forum. Def. BHP's Mot. at 10. Even though BHP was a 1/3 owner of the Cerrejón Entities, which exported 1.6 million short tons of coal *every year* to Puerto Rico's coal-fired electricity plant, BHP maintains that such extensive and long-standing activity with the forum does not count as a contact or purposeful availment. Am. Compl. ¶¶ 172–174. BHP attests that the jurisdictional contacts of the Cerrejón Entities cannot be imputed to it, as its parent company. Despite "corporate separateness" between the two companies, BHP still targeted Puerto Rico customers, its electricity market, and pursued their business ventures in this jurisdiction. Def. BHP's Mot. at *11;* Am. Compl. ¶¶ 172–174, 179.  Even further, BHP itself is alleged to have engaged in the RICO enterprise and mislead the public, including Puerto Rico, for its product's contribution to climate change. Am. Compl. ¶¶ 211(a)-(b), 365, 372, 381, 395, 483, 555-556, 572-574.

Additionally, because the Court should find that RICO Section 1965 provides nationwide jurisdiction, BHP's numerous contacts with the United States provides jurisdiction. Plaintiffs allege several different contacts which demonstrate that BHP has purposefully availed itself of the U.S. Am. Compl. ¶¶ 175 ("BHP conducts business in the United States through various exploration and remediation operations. BHP has had established interests in the US for over 40 years. It has

business operations located in Arizona, California, New Mexico and Utah with corporate offices in Tucson and Washington, DC. BHP has also established a foundation headquartered in the United States. BHP was a member of the American Petroleum Institute (API) since at least 2019,159 and likely before 2017. BHP continues to operate coal mines in Queensland and operates several mines in the US."). These contacts provide additional foundation to assert personal jurisdiction over BHP.

### ii.  *Motiva Enterprises LLC's Supplemental Motion to Dismiss (ECF No. 240)*

Similarly, Defendant Motiva asserts that Plaintiffs' allegations are insufficient to show that Motiva purposefully availed itself of the Puerto Rico forum. Def. Motiva's Mot. at 9. However, by selling and marketing its fossil fuel products to Puerto Rico consumers, Motiva availed itself to this Court's jurisdiction. Am. Compl. ¶ 163. Given that Motiva promoted and sold products in Puerto Rico, as alleged by the Amended Complaint, it was foreseeable that they could be hailed into this Court's jurisdiction as such conduct constitutes "activities." *See Asahi*, 480 U.S. at 112; *see also infra* section III.a.

### iii.  *Occidental Petroleum's Motion to Dismiss Amended Complaint (ECF No. 232)*

Like the Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction, Defendant Occidental asserts that Plaintiffs' allegations are insufficient to show that Occidental purposefully availed itself of the forum. Def. Occidental's Mot. at 8-9. Plaintiffs' Amended Complaint adequately demonstrates that Occidental has availed itself of Puerto Rico, alleging that Occidental, and its predecessor in interest, sell and have sold fossil fuel products to Puerto Rico. Am. Compl. ¶169. The Amended Complaint further asserters that the Plaintiffs have been and remain customers of Occidental. *Id.* Lastly, Plaintiffs allege that Plaintiffs and their citizens have invested in Occidental as a publicly traded company. *Id.*

Occidental further contends that Plaintiffs' allegation that it is "responsible for 0.66% of all global GHG emissions from 1965–2022" does not lend to personal jurisdiction. Def. Occidental's Mot. at 8-9 (quoting Am. Compl. ¶ 170). Plaintiffs do not contend that this percentage establishes contacts between Puerto Rico and Occidental. It demonstrates Occidental's significant contribution in the acceleration of climate change which directly led to Plaintiffs' injuries.

> iv.   *Defendant Rio Tinto PLC's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction (ECF No. 246)*

Defendant Rio Tinto claims that it did not purposefully avail itself to Puerto Rico because it does not voluntarily conduct activities within the forum state. Def. Rio Tinto's Mot. at 4-5. However, Plaintiffs' Amended Complaint asserts sufficient facts to demonstrate Rio Tinto's purposeful availment with Puerto Rico. Plaintiffs asserts that Rio Tinto has contacts with Puerto Rico and the United States. Am. Compl. ¶¶ 182-184, 186. Though Rio Tinto alleges that it has not had coal reserves in the United States since 2013 (Def. Rio Tinto's Mot. at 7), the information Plaintiffs provide says otherwise. Am. Compl. ¶¶ 183 n.162-166.  Despite Rio Tinto's contention, Plaintiffs still allege a foundation to demonstrate contacts between Rio Tinto and the forum through their business and involvement within the United States. Am. Compl. ¶¶ 182-184, 186.

With regards to Rio Tinto's claim that the Anti-Trust allegations do not establish personal jurisdiction, Rio Tinto is again incorrect. Def. Rio Tinto's Mot. at 14. Like RICO Section 1965, antitrust claims confer personal jurisdiction through global service of process so long as a plaintiff can demonstrate minimum contacts with the United States. *Amtrol, Inc. v. Vent-Rite Valve Corp*., 646 F. Supp. 1168, 1172 (D. Mass. 1986) (quoting *Int'l Shoe Co. v. Washn.*, 326 U.S. 310, 316 (1946)). *In other words,* allegations require only contacts with the U.S. as a forum for jurisdiction to apply. *Id.* Rio Tinto's contacts with the U.S. as a forum is extensive, as Plaintiffs have alleged. Am. Compl. ¶¶ 182-184, 186 (Rio Tinto operates its subsidiary Rio Tinto Energy America Inc. in

the US; Rio Tinto is a major holder of U.S. Coal Reserves; Rio Tinto operates several mining operations in the US; 15.9% of all of Rio Tinto's Consolidated Sales Revenue is from the US; Rio Tinto engages in US lobbying and trade groups). Under RICO's nationwide provision and antitrust claims' US-focused jurisdictional analysis, Plaintiffs' Amended Complaint alleges several facts which indicate that Rio Tinto purposefully avails itself of the business of the U.S. and thus, is subject to its jurisdiction.

### b. Plaintiffs' Claims "Arise Out Of" and/or "Relate to" Defendants' Contacts With Puerto Rico

Plaintiffs' claims easily satisfy the relatedness prong of the tripartite analysis. The relatedness test requires a plaintiff to demonstrate a "nexus between [its] claims and [the defendant's] forum-based activities…" *Adelson v. Hananel,* 652 F.3d 75 81 (1st Cir. 2011) (internal citation omitted). This test is a "flexible, relaxed standard." *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994). Defendants contend that Plaintiffs' claims do not "arise out of or relate" to Defendants' contacts in Puerto Rico. Defs.' J. Mot. (ECF 234) at 10. This argument rests on a fundamental misunderstanding of both binding case law and Plaintiffs' Amended Complaint allegations. First, contrary to Defendants' assertions, the controlling precedent *Ford* creates no legal requirement that demands that the Plaintiffs allege that the "use or malfunction of a defendant's product in the State injured the plaintiff in the State." Defs.' J. Mot. (ECF 234) at 2, 14. Defendants also misrepresent that Defendants' products are required to have malfunctioned *in* the forum to show specific jurisdiction. Defs.' J. Mot. (ECF 234) at 2-3 (citing *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008)). Second, the facts alleged in Plaintiffs' Amended Complaint plainly relate to Defendants' numerous business contacts with Puerto Rico.

### i.    Ford *Does Not Require Proof of Causation for Personal Jurisdiction*

Defendants argue that this Court may only subject them to personal jurisdiction if the climate change injuries Plaintiffs allege were solely *caused* by Defendants' fossil fuel products being burned in Puerto Rico.[4] Defendants' repeated argument against jurisdiction is flawed and rests on a faulty misunderstanding of the controlling case *Ford*. 141 S. Ct. at 1026. The *Ford* Court explicitly rejected the *causation-only* approach that Defendants suggest. 141 S. Ct. at 1026 ("[W]e have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about *because of the defendant's in-state conduct*.") (emphasis added). Rather, it is sufficient that there be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 1025 (cleaned up).

In support of the *Ford* Court's decision to reject causation-only arguments, it asserted that the Fourteenth Amendment's requirement is met when the claims "arise out of *or* relate to" the defendant's forum contacts. *Id.* (emphasis altered). The Court explains that the first half of this standard relates to causation, but the second half "contemplates that some relationship will support jurisdiction *without a causal showing*." *Id*. (emphasis added). The *Ford* Court assured that even if a plaintiff's claims are not causally related to the defendant's in-state conduct, the forum "may yet have jurisdiction, because of another 'activity [or] occurrence' involving the defendant that takes place in the State" related to the plaintiff's claims. *Id.* at 1026 (quoting *Bristol-Myers Squibb Co.*,

---

[4] *See, e.g.*, Defs.' Mot. at 11 ("[A]lthough *Ford Motor* permitted the exercise of personal jurisdiction without requiring a strict but-for causal relationship between the defendant's in-state activities and the injury, it did so only where the alleged injury within the forum State resulted from use *and malfunction* of the defendant's product within the State"); *id.* at 13 ("[N]either the events giving rise to Plaintiffs' claims nor Plaintiffs' alleged injuries resulted from, or relate in any way to, the use of any of Defendants' products *in the forum*") (emphasis in original); *id.* at 14 ("And even if Plaintiffs could allege that Defendants' products were used in and malfunctioned in Puerto Rico (which Plaintiffs cannot), their claims would be limited to injuries allegedly resulting from *that use and malfunction* of Defendants' products *in Puerto Rico*") (emphasis in original).

582 U.S. at 262). When there is a "strong relationship among the defendant, the forum, and the litigation," jurisdiction can be asserted. *Id.* at 1028 (quotation omitted).

Plaintiffs' allegations satisfy *Ford*'s actual requirements. Defendants promote and/or sell fossil fuel products throughout Puerto Rico, have done so for years, and have worked together through trade organizations, such as the American Petroleum Institute ("API") and the previously active Global Climate Coalition ("GCC"), to target consumers including Plaintiffs' residents as well as municipal officials. Am. Compl. ¶ 25; *see also id.* ¶¶ 207, 211(a)-(h), 362-385; Am. Racketeering Case Stmt.¶¶ 3(b), 8(b)(xii), 8(d)(ii)(a)-(c), 8(e), 9, 18, 30. Plaintiffs' allegations assert that Exxon and Chevron operated service stations in Puerto Rico, through their own businesses or their subsidiaries. Am. Compl. ¶¶ 99, 126. Plaintiffs' Amended Complaint also asserts that all Defendants have promoted, marketed, and sold their branded fossil fuel products in Puerto Rico and to Puerto Rico consumers. Am. Compl. ¶¶ 101-103, 111, 113, 123, 128, 137, 140-141, 150, 153, 163, 169, 174, 176, 179, 184, 186. Further, all Defendants have individually and in concert failed to warn the Plaintiffs about the risks posed by the intended use of their fossil fuel products. Am. Compl. ¶¶ 7(d), 346, 586, 616, 643, 652, 697, 711, 783-797. All Defendants have also, in coordination and in their own individual capacities, engaged in a decades-long campaign to deceive the Plaintiffs about fossil fuels' connection to climate change. Am. Compl. ¶¶ 362-585; Am. Racketeering Case Stmt. ¶¶ 8-18. As *Ford* requires, Defendants have "continuously and deliberately exploited [Puerto Rico's] market for fossil fuel products. *See* 141 S. Ct. at 1027 (cleaned up). Following this, Defendants could reasonably anticipate that they could be haled into Puerto Rico's Court to address any litigation over conduct or products within that forum. *Id.*

Defendants also assert that specific jurisdiction requires a finding that a plaintiff suffers "an *in-state* injury from the *in-state* use and *malfunction* of a defendant's product." Defs.' J. Mot.

(ECF 234) at 11.[5] However, the Court in *Ford* used in-state "malfunction" and "injur[y]" as one of multiple examples of a scenario where there was a sufficiently "strong relationship among the defendant, the forum, and the litigation. 141 S. Ct. at 1028. By putting forth this argument here, Defendants are once more necessitating the causation requirement that *Ford* rejected when they argue that they can only be subject to specific jurisdiction if "the alleged injury within the forum State resulted from use *and malfunction* of the defendant's product within the State." Defs.' J. Mot. (ECF 234) at 11. Here, Defendants have not only conducted extensive activities in Puerto Rico that are undoubtedly related to this litigation (*e.g.*, operation and sale of gas service stations, promotion and sale of fossil fuel products such as oil, gasoline, etc., advertisement campaigns directed at the forum), but also performed fraudulent and tortious acts by sowing misinformation on climate change and failing to warn the Plaintiffs. Am. Compl. ¶ 362, 377-380, 383, 407, 416, 435, 450, 460-461, 469, 498 (false scientific research and reports), *id.* ¶¶ 388(a)-(h), 501-502, 525-532 (misleading advertisements). Such actions constitute significantly more contacts than what has been sufficient to establish specific jurisdiction in other cases. *See NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 627 (7th Cir. 2022), *cert. denied,* 143 S. Ct. 577, 214 L. Ed. 2d 341 (2023)

---

[5] Defendants inaccurately rely on multiple cases to argue that courts interpret *Ford* as requiring causation and malfunction *within* the State. *See* Defs.' Mot. (ECF 234) at 11-12 (citing *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 260-261 (1st Cir. 2022); *LNS Enters, LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 863 (9th Cir. 2022); *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021); *Cappello v. Rest. Depot, LLC*, 2023 WL 2588110, at *4 (D.N.H. Mar. 21, 2023); *Martins v. Bridgestone Am. Tire Ops., LLC*, 266 A.3d 753, 761 (R.I. 2022). Only *Vapotherm* would constitute binding authority over this court, and Defendants misrepresent its conclusion. *Vapotherm* involved claims for breach of contract and tortious interference with contract, distinct from the claims brought here. Further, the court found a lack of jurisdiction due to the defendant's complete lack of contacts with the forum state, much less contacts relating to the plaintiff's claims. A more accurate reading of *Vapotherm* would conclude that in-state injury alone is not enough to prove relatedness, not that in-state malfunctioning is necessary to establish specific jurisdiction. None of the other cases stand for a place-of-malfunction requirement nor are they factually similar to this case. *See LNS Enters, LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 863 (9th Cir. 2022) (finding no connections to the forum nor tortious conduct occurred in or directed at the forum); *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (finding no relation between defendants' in-state activities and the litigation); *Cappello v. Rest. Depot, LLC*, 2023 WL 2588110, at *4 (D.N.H. Mar. 21, 2023) (finding no relation between defendants' in-state activities and the litigation and no in-state injuries); *Martins v. Bridgestone Am. Tire Ops., LLC*, 266 A.3d 753, 761 (R.I. 2022) (finding no relation between defendants' in-state activities and the litigation and no in-state injuries).

(finding that a defendant's single sale in the forum caused it to be subject to the Illinois Court's specific personal jurisdiction); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165 (2d Cir. 2010).

To circumvent the requirements laid out in *Ford*, Defendants rely on the tired approach of claiming that Plaintiffs' local injuries are the result of cumulative global emissions, and thus, seek to expand personal jurisdiction beyond its traditional bounds. Defs.' J. Mot. (ECF 234) at 3-4, 7, 13-17. Defendants' reasoning grossly distorts Plaintiffs' Amended Complaint to fabricate theories of liability and damages that the Plaintiffs are not alleging nor seeking. Specifically, Defendants contend that Plaintiffs want to hold Defendants strictly liable for the injuries always resulting from all greenhouse gas emission globally.[6] Plaintiffs do not seek this.

Defendants confuse the issues regarding the actual theory behind the Plaintiffs' causes of action, which is to remedy the injuries incurred due to Defendants' unlawful and fraudulent conduct of deception regarding climate change, aimed at Puerto Rico consumers and its municipal officials. Am. Compl. ¶ 2 ("Plaintiffs seek to impose liability on Defendants who misrepresented the dangers of the carbon-based products which they marketed and sold despite their unique early awareness of the devastation they would and did cause Puerto Rico.") Nowhere in the Amended

---

[6] Defendants familiarly rely on three main cases to justify this distorted reading regarding worldwide emissions. Defs.' Mot. (ECF 234) 13-17. Defendants cite to *City of Oakland v. BP p.l.c.*, 325 F. Supp. 3d 1017, 1026 (N.D. Cal. 2018) ("*Oakland I*"), *vacated on other grounds*, 960 F.3d 570 (9th Cir. 2020), *City of New York v. Chevron Corp.*, 993 F.3d 81, 92 (2d Cir. 2021), and *Native Vill. Of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 880 (N.D. Cal. 2009), *aff'd*, 696 F.3d 849 (9th Cir. 2012). These cases do nothing to justify Defendants' distorted reading of the Plaintiffs' Amended Complaint or finding of a lack of specific jurisdiction. First, Defendants rely on vacated dicta by the California district court when referencing *City of Oakland*. The district court had failed to recognize that it lack subject matter jurisdiction, as was reversed by the Ninth Circuit, and it incorrectly applied a causation requirement for personal jurisdiction, contrary to *Ford*. *See City of Oakland*, 2018 WL 3609055, at *3 (finding a lack of personal jurisdiction because there was not "'but for' cause of their harm"); *contra Ford*, 141 S. Ct. at 1026 (finding that the connection between a plaintiff's claims and a defendant's activities should not rely solely on a "causation-only approach".) Second, *City of New York* focused on questions of federal preemption, not personal jurisdiction, regarding claims related to commercial conduct and not tortious marketing. 993 F.3d at 86, 94. Lastly, *Kivalina* involved completely different claims from those brought forth in Plaintiffs' Amended Complaint, making their reliance on the district court's Article III standing analysis irrelevant and superfluous.

Complaint do the Plaintiffs seek to curtail or control greenhouse gas emissions, enjoin Defendants from producing fossil fuels, nor remedy global climate change. Am. Compl. ¶ 10. Plaintiffs allege that Defendants deceived them regarding fossil fuel's direct causal link to climate change to prevent transitioning away from fossil fuels and to maintain the fossil fuel market through a racketeering scheme. Am. Compl. ¶¶ 88, 735. Defendants' fraudulent conduct resulted in the lack of preparation for the foreseeable storms that lead to Plaintiffs' loss of lives, property, and welfare. Defendants' conduct caused the destruction of infrastructure, abandonment, population loss that forever affected Plaintiffs' municipal economies.   This action seeks justice, and this Court has the power to allow Plaintiffs to have their day in Court to achieve same. Am. Compl. ¶ 10.

> ii.   *The Plaintiffs' Allegations Sufficiently Relate to Defendants' Conduct in Puerto Rico to Establish Jurisdiction*

Plaintiffs' Amended Complaint allegations satisfy the relatedness requirement. In order to meet the relatedness prong, the claim that forms the basis of the cause of action must be directly connected to, or result from, the defendant's forum state activity. *Daynard*, 290 F.3d at 60; *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994) ("[Relatedness] focus on the nexus between the defendant's contacts and the plaintiff's cause of action.").

Here, Defendants' contacts with Puerto Rico suggest a strong connection to Plaintiffs' claims. Plaintiffs' lawsuit is directly related to the Defendants' climate change disinformation campaign, as well as their marketing and sales practices. Am. Compl. ¶¶ 616-619. Plaintiffs relied on the false assertions and misrepresentations made by Defendants. Am. Compl. ¶¶ 3, 7(h), 14, 73, 79, 611, 614, 652, 677, 697, 711, 770, 781, 787, 796, 801, 807, 817, 827, 833. Plaintiffs allege that Defendants engaged in a climate disinformation campaign that they directed at Puerto Rico, failed to warn Plaintiffs about the dangers of unabated use of their products, and availed themselves to the privilege of doing business there.  Defendants marketed directly to Plaintiffs' its residents and

25

sold their products to them. Defendants also conducted business within Plaintiffs' municipalities in Puerto Rico. Am. Compl. ¶¶ 6, 7(d)-(e), 79, 176, 184, 346, 363-397, 405-462, 488, 524, 618, 637, 674 (engaged in a coordinated disinformation campaign); Am. Compl. ¶¶ 7(d), 346, 586, 616, 643, 652, 697, 711, 783-797 (failed to warn Plaintiffs); Am. Compl. ¶¶ 101-103, 111, 113, 123, 128, 137, 140-141, 150, 153, 163, 169, 174, 176, 179, 184, 186 (availed themselves to the privilege of doing business in Puerto Rico). Arising from these specified assertions, Plaintiffs claim nuisance, failure to warn, design defect, consumer fraud, conspiracy to commit consumer fraud, a pattern of racketeering, antitrust, and unjust enrichment. Am. Compl. ¶¶ 634-834. These allegations against Defendants are directly related to Plaintiffs' claims that each of them misled, committed fraud, and failed to warn of fossil fuel dangers regarding climate change. Am. Compl. ¶ 619. Defendants' contacts with Puerto Rico and Plaintiffs' claims are directly connected through Defendants' fossil fuel products and the sale, marketing, and promotion of said products. Am. Compl. ¶¶ 13-14, 69, 73, 82. Further, Plaintiffs consumption and use of Defendants' fossil fuel products in Puerto Rico are directly related to Defendants' failure to warn about the dangers of unabated fossil fuel usage. Am. Compl. ¶¶ 344-346, 783-797.

Plaintiffs are not obligated to prove causation for this Court to find specific jurisdiction. Further, the connections between the Defendants' conduct and the Plaintiffs' allegations sufficiently satisfy *Ford*'s requirements for finding personal jurisdiction.

### A. Defendant BHP Group Limited's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (ECF No. 245)

Defendant BHP similarly argues that the Plaintiffs' claims do not arise out of or relate to BHP's contacts with Puerto Rico. Def. BHP's Mot. at 9-10. As delineated in *supra* section III.b.ii, it is enough to demonstrate that Plaintiffs' allegations relate to BHP's contacts with Puerto Rico.

Here, BHP's contacts with Puerto Rico suggest a strong connection to Plaintiffs' claims. Plaintiffs' claims against BHP are directly related to BHP's conduct in furthering the climate change disinformation campaign, as well as their marketing and sales practices. Plaintiffs relied, and continue to rely, on the false assertions and misrepresentations made by BHP. Am. Compl. ¶¶ 555-556, 572-574. Plaintiffs allege that BHP engaged in the climate disinformation campaign that was directed at the Puerto Rico municipalities and their residents and failed to warn them about the dangers of unabated use of their products.  Moreover, Defendants availed themselves to the privilege of doing business within Puerto Rico and its residents by marketing and selling to the Commonwealth and conducting business there. Am. Compl. ¶¶ 211(a)-(b), 365, 372, 381, 395, 483, 725 (engaged in a coordinated disinformation campaign); *id.* at ¶¶ 172-174, 179 (availed themselves to the privilege of doing business in Puerto Rico). Arising from these specified assertions, Plaintiffs claim nuisance, failure to warn, design defect, consumer fraud, conspiracy to commit consumer fraud, a pattern of racketeering, antitrust, and unjust enrichment. *Id.* at ¶¶ 634-834. BHP's contacts with Puerto Rico and Plaintiffs' claims are directly connected through its fossil fuel products and the sale, marketing, and promotion of said products. Am. Compl. ¶¶ 172-178. Further, Plaintiffs consumption and use of Defendants' fossil fuel products, including BHP's, in Puerto Rico are directly related to Defendants' failure to warn about the dangers of unabated fossil fuel usage. Am. Compl. ¶¶ 344-346, 783-797.

Additionally, BHP's contact with the US is directly connected to the Plaintiffs' allegations given that BHP's numerous mining operations throughout the US contribute significantly to climate change. Am. Compl. ¶176. Further, with regards to BHP's connection to the RICO enterprise, BHP's membership and participation with the GCC and with other fossil fuel trade associations took place in the US with US groups. *Id.* BHP's actions with these groups targeted

US legislation and the US public, including the Plaintiffs and their citizens in Puerto Rico. *Id.* As such, BHP's contacts with the US directly relate to Plaintiffs' allegations and injuries.

Contrary to BHP's argument that its contacts with the forum do not fall within the statute of limitations period, BHP's contacts with both Puerto Rico and the US continue to this day. Def. BHP's Mot. at 14; Am. Compl. ¶¶ 172-178, 179. BHP asserts that any contact with the Cerrejón Entities ceased in 2009. Def. BHP's Mot. at 14. Regardless, the marketing and sale of fossil fuels directed as Puerto Rico and the US continue today, as do the tortious and fraudulent activities to conceal their involvement in the RICO enterprise. Am. Compl. ¶¶ 211(a)-(b), 365, 372, 381, 395, 483, 555-556, 572-574, 725. Due to BHP's ongoing and continuous activity relating to Plaintiffs' activities, the statute of limitation also continues to run. *See* Pls.' Resp. in Opp. to Defs.' J. Mot. to Dismiss Am. Compl. at section I. Because both the conduct of BHP availing itself of Puerto Rico and the US and the statute of limitations period are ongoing, BHP's argument fails.

### B.  Motiva Enterprises LLC's Supplemental Motion to Dismiss (ECF No. 240)

Defendant Motiva contends that Plaintiffs' Amended Complaint improperly attributes non-defendant Saudi Aramco's activities to it. Def. Motiva's Mot. at 5. Defendant Motiva's arguments fundamentally misunderstand Plaintiffs' allegations. Plaintiffs are not attempting to pierce the corporate veil and attribute all Saudi Aramco's actions to Motiva. Plaintiffs do not assert anywhere that Saudi Aramco is in full control of Motiva to remove "corporate separateness" from the two. Def. Motiva's Mot. at 6. The Amended Complaint merely demonstrates Motiva's connection to one of the most polluting oil and gas companies in the world, while also asserting that Motiva, in its wholly separate capacity from Saudi Aramco, as well as alongside Saudi Aramco, has contributed to climate change, deceived the public, and committed violations.

Plaintiffs provide context regarding Motiva and Saudi Aramco's business relationship, however, the claims made against Motiva are for Motiva's conduct alone. Am. Compl. ¶¶ 75, 156-164. Though some conduct was performed by "predecessors in interest," such information is provided to demonstrate Motiva's eventual involvement in the complex and long-standing scheme of the RICO enterprise. Am. Compl. ¶¶ 205, 430(b)-(c), 576, 725, 728(a). Motiva is specifically alleged to have engaged in the conduct that Plaintiffs are seeking relief for. *Id.* From this, Motiva cannot absolve itself from responsibility by offering that Plaintiffs are accusing only Aramco of misdeeds. On the contrary, Plaintiffs asserts that Motiva engaged in 35 separate RICO violations. App'x to Am. Compl. Plaintiffs' allegations demonstrate that Motiva has misled the public about its oil and gas initiatives. Am. Compl. ¶ 576. Plaintiffs' allegations also assert specifically that Motiva participated in crucial elements of the RICO enterprise, as a member of the American Petroleum Institute and the Global Climate Science Communications Team. Am. Compl. ¶ 205, 430(a)-(b), 728(a). Plaintiffs' allegations also reference Motiva's own marketing, production, and sales of fossil fuels relevant to Plaintiffs' injuries. Am. Compl. ¶ 159, 162-163.

Motiva further alleges that the contacts alleged in the complaint do not "arise out of or relate to" Plaintiffs' injuries. Def. Motiva's Mot. at 8. Here, Motiva's contacts with Puerto Rico suggest a strong connection to Plaintiffs' claims. Plaintiffs' claims against Motiva are directly related to Motiva's conduct in furthering the climate change disinformation campaign, as well as their marketing and sales practices. Plaintiffs relied on the false assertions and misrepresentations made by Motiva. Am. Compl. ¶¶ 576. Plaintiffs allege that Motiva engaged in the climate disinformation campaign that was directed at Puerto Rico and availed themselves to the privilege of doing business with Puerto Rico and its residents by marketing and selling to Puerto Rico and conducting business there. Am. Compl. ¶¶ 430(b)-(c), 725, 728(a) (engaged in a coordinated

29

disinformation campaign); *id.* at ¶163 (availed themselves to the privilege of doing business in Puerto Rico). Arising from these specified assertions, Plaintiffs claim nuisance, failure to warn, design defect, consumer fraud, conspiracy to commit consumer fraud, a pattern of racketeering, antitrust, and unjust enrichment. *Id.* at ¶¶ 634-834. Motiva's contacts with Puerto Rico and Plaintiffs' claims are directly connected through its fossil fuel products and the sale, marketing, and promotion of said products. Am. Compl. ¶¶ 159, 162-164. Further, Plaintiffs consumption and use of Defendants' fossil fuel products, including Motiva's, in Puerto Rico are directly related to Defendants' failure to warn about the dangers of unabated fossil fuel usage. Am. Compl. ¶¶ 163, 344-346, 783-797.

Finally, for purposes of nationwide contacts and with regards to Motiva's connection to the RICO enterprise, Motiva's membership and participation with the GCC and with other fossil fuel trade associations took place in the US with US groups. *Id.* Motiva's actions with these groups targeted US legislation and the US public, including the Plaintiffs and their citizens in Puerto Rico. *Id.* As such, Motiva's contacts with the US directly relate to Plaintiffs' allegations and injuries.

## C. Occidental Petroleum's Motion to Dismiss Amended Complaint (ECF No. 232)

Occidental similarly argues that the Plaintiffs' claims do not arise out of or relate to BHP's contacts with Puerto Rico. Def. Occidental's Mot. at 8-9. As delineated in *supra* section III.b.ii, it is enough to demonstrate that Plaintiffs' allegations relate to Occidental's contacts with Puerto Rico. Plaintiffs indeed allege that their claims arise out of the purchase of Occidental's goods.[7]

---

[7] Though Occidental feigns ignorance as to what "consumer products" Plaintiffs have purchased from Occidental, as an oil and gas company, the products that consumers can buy would be oil and gas products. Plaintiffs outline Occidental's products in the Amended Complaint. Am. Compl. ¶¶ 166-168 ("Occidental explores for, develops and produces oil and condensate, natural gas, and natural gas liquids"; "[Occidental] purchases, markets, gathers, processes, transports and stores oil, condensate, natural gas liquids, natural gas, carbon dioxide, and power"; "[Occidental] produced 1,159 thousand barrels of oil equivalent per day" in 2022.)

Am. Compl. ¶¶ 3 (Plaintiffs were induced into wrongly "believing that the purchase and use of Defendants' carbon-based products were safe and would not endanger the lives or livelihoods of the residents therein."), 7(e) (Plaintiffs' were "unaware" that Defendants' products, including Occidental's, "would create monster storms, debilitating flooding, and an ongoing public health crisis in Puerto Rico."

Here, Occidental's contacts with the Puerto Rico municipalities and their residents suggest a strong connection to Plaintiffs' claims. Plaintiffs' claims against Occidental are directly related to Occidental's conduct in furthering the climate change disinformation campaign, as well as their marketing and sales practices. Plaintiffs relied on the false assertions and misrepresentations made by Occidental. Am. Compl. ¶¶ 551, 577-578. Plaintiffs allege that Occidental engaged in the climate disinformation campaign that was directed at the Puerto Rico municipality Plaintiffs and availed themselves to the privilege of doing business there and its residents by marketing and selling their products there. Am. Compl. ¶¶ 365, 430(b)-(c), 725, 728(a) (engaged in a coordinated disinformation campaign); *id.* at ¶¶ 169 (availed themselves to the privilege of doing business in Puerto Rico). Arising from these specified assertions, Plaintiffs claim nuisance, failure to warn, design defect, consumer fraud, conspiracy to commit consumer fraud, a pattern of racketeering, antitrust, and unjust enrichment. *Id.* at ¶¶ 634-834. Occidental's contacts with Puerto Rico and Plaintiffs' claims are directly connected through its fossil fuel products and the sale, marketing, and promotion of said products. Am. Compl. ¶¶ 172-178. Further, Plaintiffs consumption and use of Defendants' fossil fuel products, including Occidental's, in Puerto Rico are directly related to Defendants' failure to warn about the dangers of unabated fossil fuel usage. Am. Compl. ¶ 169.

Additionally, Occidental's contact with the US is directly connected to the Plaintiffs' allegations given that Occidental's operations are within the US and contribute significantly to

climate change. Am. Compl. ¶¶ 165, 170. Further, with regards to Occidental's connection to the RICO enterprise, Occidental's membership and participation with the GCC and with other fossil fuel trade associations took place in the US with US groups. *Id.* ¶¶ 365, 430(b)-(c). Occidental's actions with these groups targeted US legislation and the US public, including the Plaintiffs and their citizens in Puerto Rico. *Id.* As such, Occidental's contacts with the US directly relate to Plaintiffs' allegations and injuries.

Occidental then contends that personal jurisdiction cannot be asserted because "[t]hird parties' contacts cannot be imputed to [Occidental]". Def. Occidental's Mot. at 10-12. Plaintiffs' allegations, though associated with Anadarko as Occidental's predecessor in interest, focuses on Occidental's harm to the Plaintiffs. The Amended Complaint merely demonstrates Occidental's connection to its acquired and wholly merged company, Anadarko. Am. Compl. ¶¶ 165-170. The Amended Complaint asserts that Occidental, in its own capacity, as well as previously through Anadarko, has contributed to climate change, deceived the public, and committed violations. Am. Compl. ¶¶ 75, 166-170, 365, 430(b)-(c), 551, 577-578, 725, 728(a). Though some conduct was performed by "predecessors in interest," such information is provided to demonstrate Occidental's eventual involvement in the complex and long-standing scheme of the RICO enterprise. Am. Compl. ¶¶ 365, 430(b)-(c), 725, 728(a). Occidental is specifically alleged to have engaged in the conduct that Plaintiffs are seeking relief for. *Id.* Plaintiffs asserts that Occidental engaged in 35 separate RICO violations. App'x to Am. Compl. Plaintiffs' allegations demonstrate that Occidental has misled the public about its oil and gas initiatives. Am. Compl. ¶¶ 551, 577-578. Plaintiffs' allegations also assert specifically that Motiva participated in crucial elements of the RICO enterprise, as a member of the American Petroleum Institute and the Global Climate Science Communications Team. Am. Compl. ¶¶ 430(a)-(b), 728(a).

    D.  Defendant Rio Tinto PLC's Motion to Dismiss Amended Complaint
        for Lack of Personal Jurisdiction (ECF No. 246)

Defendant Rio Tinto similarly argues that the Plaintiffs' claims do not arise out of or relate to BHP's contacts with Puerto Rico. Def. Rio Tinto's Mot. at 6-7. As delineated in *supra* section III.b.ii, it is enough to demonstrate that Plaintiffs' allegations relate to Rio Tinto's contacts with Puerto Rico.

Here, Rio Tinto's contacts with Puerto Rico suggest a strong connection to Plaintiffs' claims. Plaintiffs' claims against Rio Tinto are directly related to Rio Tinto's conduct in furthering the climate change disinformation campaign, as well as their marketing and sales practices. Plaintiffs relied on the false assertions and misrepresentations made by Rio Tinto. Am. Compl. ¶¶ 531, 555, 575. Plaintiffs allege that Rio Tinto engaged in the climate disinformation campaign that was directed at Puerto Rico and availed themselves to the privilege of doing business with Puerto Rico and its residents by marketing and selling to Puerto Rico and conducting business there. Am. Compl. ¶¶ 211(b), 368, 381, 430(c), 483, 725 (engaged in a coordinated disinformation campaign); *id.* at ¶¶ 186 (availed themselves to the privilege of doing business in Puerto Rico). Arising from these specified assertions, Plaintiffs claim nuisance, failure to warn, design defect, consumer fraud, conspiracy to commit consumer fraud, a pattern of racketeering, antitrust, and unjust enrichment. *Id.* at ¶¶ 634-834. Rio Tinto's contacts with Puerto Rico and Plaintiffs' claims are directly connected through its fossil fuel products and the sale, marketing, and promotion of said products. Am. Compl. ¶¶ 172-178. Further, Plaintiffs consumption and use of Defendants' fossil fuel products, including Rio Tinto's, in Puerto Rico are directly related to Defendants' failure to warn about the dangers of unabated fossil fuel usage. Am. Compl. ¶¶ 344-346, 783-797.

Finally, Rio Tinto's contact with the US is directly connected to the Plaintiffs' allegations given that Rio Tinto's numerous operations and assets throughout the US contribute significantly

to climate change. Am. Compl. ¶ 182-184. Further, with regards to Rio Tinto's connection to the RICO enterprise, Rio Tinto's membership and participation with the GCC and with other fossil fuel trade associations took place in the US with US groups. *Id.* ¶¶ 183, 211(b), 368, 381, 430(c), 483. Rio Tinto's actions with these groups targeted US legislation and the US public, including the Plaintiffs and their citizens in Puerto Rico. *Id.* As such, Rio Tinto's contacts with the US directly relate to Plaintiffs' allegations and injuries.

###   c.   *Defendants Have Failed to Show How Exercising Personal Jurisdiction Over Defendants Would Be Unreasonable and How It Would Conflict With Principles of Federalism*

Exercising specific jurisdiction over Defendants comports with Due Process because their arguments do not prove that jurisdiction would be unreasonable. The Court must determine whether it is just to subject a nonresident defendant to the Court's jurisdiction to meet the reasonableness criterion. *See Ticketmaster–New York,* 26 F.3d at 209. The reasonableness test, often referred to as the Gestalt considerations in the First Circuit, is the third prong of the tripartite test. *Id.* When determining whether the claim of personal jurisdiction would be consistent with "fair play and substantial justice," it may be concluded that the defendant intentionally created minimal connections inside the forum State. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 320 (1945). The Supreme Court has identified five factors to consider. *See Ticketmaster–New York,* 26 F.3d at 209. The factors are: (1) the defendant's burden of appearance; (2) the forum state's adjudicatory interest; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in finding effective resolution for the controversy; and (5) the common interests of sovereigns in promoting social policies. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

First, when looking at the burden on a defendant, a court typically considers two issues: whether a defendant would be subjected to a "burden if litigation occurred in the forum," and whether a defendant would have to "submit[] to the coercive power of a State that may have little legitimate interest in the claims in question." *See Bristol-Myers Squibb Co.*, 582 U.S. at 263, 256. Here, the burden placed on the Defendants to appear in court is reasonable. For example, given the advancements in communications and transportation, Defendants would not be subject to burdensome tasks to be present in the forum. *Pritzker*, 42 F3d at 64 (finding "no especially ponderous burden" in bringing a New York corporation into Puerto Rico court); *see also Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) (finding that modern communication and transportation significantly reduces the burden of litigating in other forums). Further, according to this Court, business travelers do not find traveling between two U.S. states to be particularly difficult, at least not when there are no "special or unusual considerations." *Malave-Torres v. Cusido*, 839 F. Supp. 2d 501, 510 (D.P.R. 2012). Further, Defendants identify no other practical obstacle to litigating in this Court that would render exercising jurisdiction constitutionally unreasonable. *See Core-Vent Corp. v. Nobel Indus. AB*, 11F.3d 1482, 1489 (9th Cir. 1993) (finding that a "large international corporation," like each of the Defendants, would not face unreasonable burden in the forum). Thus, this first factor weighs in favor of the Court's exercise of jurisdiction over the Defendants.

The second factor looks to the forum's interest in adjudicating the dispute. "Courts have made clear that this consideration does not weigh [Puerto Rico]'s interest against that of other states, but simply considers whether [Puerto Rico] has an interest in the dispute." *See e.g., Hogar Crea,* 708 F. Supp. 2d at 173 (citation omitted). Here, the Defendants are all major fossil fuel companies that do significant business with the United States and Puerto Rico. Regarding the

Plaintiffs, "[t]he Commonwealth has a cognizable stake in providing a forum to redress its citizens' complaints[.]" *Malave-Torres v. Cusido*, 839 F. Supp. 2d 501, 510 (D.P.R. 2012) (observing that the plaintiff's "inclusion of plausible causes of action under [Puerto Rico] law underscores this point."). Plaintiffs alleged to suffer injury in the Commonwealth under numerous tortious claims and other counts attributed to the Defendants. As such, Puerto Rico, as a forum, "has a demonstrable interest in exercising jurisdiction over a defendant who has caused a tortious injury within the state." *Mohajer v. Monique Fashions*, 945 F. Supp. 23, 28 (D.P.R. 1996) (citations omitted). By exercising jurisdiction over these Defendants, the Court could guarantee efficacy and prevent multiple lawsuits regarding the same issue. Further, as an island state with significant adverse impacts mounting against it as climate change progresses, Plaintiffs and their residents face a large threat due to Defendants' deceit and failure to warn. Am. Compl. ¶¶ 213-345. Thus, the second factor weighs in favor of the Court's exercise of jurisdiction over the Defendants.

The third factor takes the plaintiff's desire for convenient relief into account. The First Circuit has "repeatedly held that 'a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience.'" *Salgado-Santiago v. Am. Baler Co.*, 394 F. Supp. 2d 394, 405 (D.P.R. 2005) (quoting *Sawtelle*, 70 F3d at 1395). Plaintiffs are municipalities within Puerto Rico and chose to bring their suit to this Court. Certainly, it is more convenient for these Plaintiffs to litigate where they reside. The Plaintiffs' interest in obtaining convenient and effective relief weigh in favor of Puerto Rico being the forum of litigation. Thus, the third factor weighs in favor of the Court's exercise of jurisdiction over the Defendants.

The fourth factor considers the judicial system's interest in finding the most efficient resolution for the case at hand. Because this Court is better equipped to apply Puerto Rican law to the facts of the case at hand and analyze the extent of injuries to the Plaintiffs in Puerto Rico, this

element thus works in Plaintiff's' advantage. *E.g.*, *Malavé-Torres*, 839 F.Supp.2d at 510. Further, because the damages and losses incurred by the Plaintiffs have been experienced in Puerto Rico, this factor further favors allowing this action to move forward in this Court.

The last factor addresses the shared interest of all sovereigns in advancing substantive social policies. All sovereigns and the legal system would benefit from this Court asserting jurisdiction because it is well-versed in Puerto Rican law and in the losses incurred by the Municipalities. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996). Puerto Rico has an interest in protecting its citizens and its municipalities from out-of-state businesses who provide fossil fuel products to its residents and consumers. Puerto Rico also has interest in providing a convenient forum where they can bring a claim. Puerto Rico's interest in protecting its citizens would be best served by this Court exercising its jurisdiction over Defendants. Contrary to Defendants' mischaracterization of Plaintiffs' claims, Plaintiffs do *not* have an interest in advancing social policies that would "chill[] Defendants' speech on matters of public concern…, curb[] energy production and the use of fossil fuels, or allocat[e] the downstream costs of global climate change to the energy companies to bear directly." Defs.' J. Mot. (ECF 234) at 20.

Contrary to assertions, Plaintiffs' claims do not intend to control the production of energy or modify the otherwise legal production and distribution of fossil fuel products. Am. Compl. ¶¶ 10, 826. Rather, Plaintiffs seek only redress for the local damages brought about by Defendants' tortious and deceptive behavior in spreading false and misleading information regarding their fossil fuel products and climate change. Am. Compl. ¶¶ 2, 632, 827. Further, any argument regarding Defendants' speech protection under the First Amendment are unfounded given that they put forth no arguments that deem this Court unable to properly consider such defenses, such

that exercising specific jurisdiction would violate Defendants' due process rights or be unreasonable.

       i.   *Defendant BHP Group Limited's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (ECF No. 245)*

BHP contends that it would be unreasonable to assert personal jurisdiction over BHP due to it being a foreign corporation without contacts in Puerto Rico. Def. BHP's Mot. at 13. As has been demonstrated in the previous sections, BHP does indeed have contacts with Puerto Rico and the U.S. sufficient to meet the first two prongs, even using contacts unrelated to the Cerrejón Entities. *See supra* sections III.a.i, III.b.ii.A. Even if the court finds that Plaintiffs' allegations are merely a borderline showing of the first two prongs, there is strong support to show that subjecting BHP to this Court's jurisdiction would be reasonable. *See Ticketmaster–New York,* 26 F.3dat 210 ("[I]n certain circumstances, unreasonableness can trump a minimally sufficient showing of relatedness and purposefulness.").

Under the five Gestalt factors analyzed in the previous section, Plaintiffs demonstrate a strong case for why subjecting all Defendants, including BHP, to the jurisdiction of this Court in the instant matter would be reasonable. *See supra* section III.c. For the first factor, though BHP is a foreign defendant, it has contacts throughout the United States and is a large, international business. Am. Compl. ¶ 171. Also, there are no unusual circumstances that would make it overly burdensome for BHP to appear in Puerto Rico. Therefore, under the first factor, BHP would not be overly burdened by appearing in this forum. The analysis for Gestalt factors 2-5 is the same as Plaintiffs previously asserted in section III.c. Because Plaintiffs have adequately shown personal jurisdiction over BHP to be reasonable, BHP should be subject to the Court's jurisdiction.

BHP also questions Plaintiffs' allegations regarding BHP's numerous contacts with the US generally. Def. BHP's Mot. at 15. Despite BHP's decision not to address RICO section 1965,

Plaintiffs' factual assertions regarding BHP's US contacts are sufficient to support a showing that BHP is subject to personal jurisdiction under RICO's Section 1965 nationwide contacts provision. *See supra* section I.

### ii.  *Motiva Enterprises LLC's Supplemental Motion to Dismiss (ECF No. 240)*

Contrary to Motiva's assertion that the first two prongs of personal jurisdiction are not met, Plaintiffs' have shown that Motiva's conduct in Puerto Rico and the United States are related to the Plaintiffs' allegations and that Motiva purposefully availed itself of the forum. *See supra* section III.a-b. Because these two prongs have been met, and because Defendant Motiva does not raise any reasonableness issues, Plaintiffs' showing of reasonableness in *supra* section III.c is applicable to personal jurisdiction over Defendant Motiva.

### iii.  *Defendant Rio Tinto PLC's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction (ECF No. 246)*

Rio Tinto's asserts that the first two prongs of personal jurisdiction are not met. Def. Rio Tinto's Mot. at 7-8. However, Plaintiffs' have shown that Rio Tinto's conduct in Puerto Rico and the United States are related to the Plaintiffs' allegations and that Rio Tinto purposefully availed itself of the forum. *See supra* section III.a-b. Defendant Rio Tinto also contends that it would be unreasonable to assert personal jurisdiction over Rio Tino due to it being without contacts in Puerto Rico. Def. Rio Tinto's Mot. at 7-8. As has been demonstrated in the previous sections, Rio Tinto does indeed have contacts with Puerto Rico and the U.S. sufficient to meet the first two prongs. *See supra* sections III.a.iv, III.b.ii.D. Even if the court finds that Plaintiffs' allegations are merely a borderline showing of the first two prongs, there is strong support to show that subjecting Rio Tinto to the court's jurisdiction would be reasonable. *See Ticketmaster–New York*, 26 F.3d at 210 ("[I]n certain circumstances, unreasonableness can trump a minimally sufficient showing of relatedness and purposefulness.").

Under the five Gestalt factors analyzed in the previous section, Plaintiffs demonstrate a strong case for why subjecting all Defendants, including Rio Tinto, to the jurisdiction of this court in the instant matter would be reasonable. *See supra* section III.c. For the first factor, though Rio Tinto is a foreign defendant, it has contacts throughout the United States and is a large, international business likely engages in transportation often. Am. Compl. ¶¶ 182-184. There are no unusual circumstances that would make it overly burdensome for BHP to appear in Puerto Rico. The analysis for Gestalt factors 2-5 is the same as Plaintiffs previously asserted in section III.c. Because the Plaintiffs have adequately shown personal jurisdiction over Rio Tinto to be reasonable, Rio Tinto should be subject to the Court's jurisdiction.

## IV.   Plaintiffs Provided Sufficient Service of Process

In a motion to dismiss under FRCP 12(b)(5), a party challenges the way in which service of process was carried out. *Boateng v. Inter American University of Puerto Rico,* 188 F.R.D. 26, 27 (D.P.R.1999) ("A party filing a motion under. . . . Rule 12(b)(5) essentially is contesting the way process or service of process was performed. Therefore, the Court refers to the rules governing service of process."). Rule 4(h), which governs service upon corporations, guides the Court's analysis in this matter. *Id.* Rule 4(h) states that service on a corporation is proper if the service complies with the legal requirements of the state where the District Court is located (here, Puerto Rico), or where service is made (here, Texas). *Id.*

In Puerto Rico, the pertinent source of law for proper service upon corporations is Rule 4.4(e) of the Puerto Rico Rules of Civil Procedure. *Boateng v. Inter American University of Puerto Rico*, 188 F.R.D. 26 (D.P.R. 1999). Under Rule 4.4(e) of the Puerto Rico Rules of Civil Procedure, "a corporation, company, partnership, association or any other artificial person, [may be served] by delivering a copy of the summons and of the complaint to an officer, managing or general agent, or to any other agent authorized by appointment or designated by law to receive service of

40

process." In Texas, proper service is in line with the state's requirements by serving the president, vice president, or registered agent of the corporation. *See* Tex. Bus. Orgs. Code §§ 5.255 (1), 5.201(a), (b).

### a.  Occidental Petroleum's Motion to Dismiss Amended Complaint (ECF No. 232)

Under both jurisdiction's legal requirements, Plaintiffs have properly served Defendant Occidental. Plaintiffs delivered a copy of the Summons and of the Complaint "to Office Services who indicated they were the person authorized to accept with identity confirmed by subject stating their name." *See* ECF 8-1, Proof of Service on Occidental Petroleum. Further, as stated in the Proof of Service, Plaintiffs "served the summons on Office Services, who is designated by law to accept service of process on behalf of OCCIDENTAL PETROLEUM F.K.A. ANADARKO PETROLEUM [on] 02/13/2023." In doing so, Plaintiffs met the requirements of Rule 4(h).

Additionally, the purpose of service of process is to notify defendant of cause of action so that a defendant will have full and adequate opportunity to defend against the litigation. *Worthington v. Commodity Credit Corp.*, 157 F. Supp. 497, 500 (E.D.N.C. 1957), *rev'd,* 263 F.2d 178 (4th Cir. 1959). Here, given the fact that Occidental has been active in this matter since service was processed, Occidental received notice and has had a full and fair opportunity to defend themselves; because of this, the purpose is met.

Lastly, even if the court finds that service was not timely, there was good cause for it being so. To determine whether good cause exists for failure of timely service, the court considers whether plaintiff made reasonable efforts to serve defendant, and whether defendant has been prejudiced. *Coleman v. Cranberry Baye Rental Agency*, 202 F.R.D. 106, 109 (N.D.N.Y. 2001). Here, Plaintiffs did their due diligence to serve the summons on the Defendant. Additionally, because Occidental has been on notice, Occidental is in no way prejudiced.

## CONCLUSION

Defendants fail to establish that this Puerto Rico Federal Court is not a proper venue for this action to proceed in.  Defendants cannot rebut their extensive contacts within the Commonwealth and the United States.   They must answer for their propaganda machine that resulted in fraudulent marketing and for their products that caused so much harm to the environment. The law is clear on jurisdiction that the deceptive marketing and distribution of the fossil fuels within the United States and Puerto by Defendants establishes jurisdiction for the Federal, Puerto Rico and common law causes of action as plead herein. This Court should not allow Defendants to obfuscate from their responsibilities for the loss of life and billions of property loss that their conduct resulted in from the environmental tragedies in Puerto Rico in 2017.

For the foregoing reasons, this Court has specific personal jurisdiction over each of the Defendants, and, thus, this Court should deny Defendants' motion in their entirety together with such, other and further relief it deems just and equitable under the circumstances.

Dated: May 15, 2024                         Respectfully submitted,


                                            */s/Roy L. Mason*_____
                                            Roy L. Mason (308164)
                                            Zachary E. Howerton (*pro hac vice* forthcoming)
                                            Smouse & Mason, LLC
                                            223 Duke of Gloucester Street
                                            Annapolis, Maryland 21401
                                            (t): (410) 269-6620
                                            (f): (410) 269-1235
                                            rlm@smouseandmason.com
                                            zeh@smouseandmason.com


                                            Luis Valiente Almeida-Olivieri (308307)
                                            Marc D. Grossman (*pro hac vice* forthcoming)
                                            Melissa K. Sims (*pro hac vice* forthcoming)
                                            Vicki J. Maniatis (*pro hac vice* forthcoming)

Milberg Coleman Bryson Phillips Grossman LLC
1311 Ponce de Leon Ave, Suite 700
San Juan, Puerto Rico 00907
(t): (866) 252-0878
lalmeida@milberg.com
mgrossman@milberg.com
msims@milberg.com
vmaniatis@milberg.com