# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MUNICIPALITY OF BAYAMON, et al.<br><br>　　*Plaintiffs*,<br><br>　　v.<br><br>EXXON MOBIL CORP., et al.<br><br>　　*Defendants*. | Case No. 3:22-cv-01550-SCC-HRV |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT RIO TINTO PLC'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPAINT UNDER FED. R. CIV. P. 12(B)(6)**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.    Plaintiffs Have Waived Any Opposition to Rio Tinto's Defenses to Counts 1-2, 4-10 and 13 ............................................................................................................. 2

II.    Plaintiffs Fail to Rehabilitate Their Deficient Claims Against Rio Tinto .......................... 4

        A.    Plaintiffs' Fraudulent Misrepresentation Claims Fail .............................................. 5

        B.    Plaintiffs' Conspiracy Based Claims Fail ................................................................. 7

III.    All Counts in the Amended Complaint are Time-Barred ....................................... 8

CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
   181 F.3d 216 (2d Cir. 1999)............................................................................................7

*Álvarez-Maurás v. Banco Popular of P.R.*,
   919 F.3d 617 (1st Cir. 2019)...........................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................3, 8

*Douglas v. Hirshon*,
   63 F.4th 49 (1st Cir. 2023)..............................................................................................7

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
   720 F.3d 33 (1st Cir. 2013).............................................................................................8

*Friendly Hotel Boutique Corp. v. ME & A Cap., LLC*,
   Civil No. 11–1709 (JAG), 2012 WL 4062795 (D.P.R. Sept. 14, 2012).......................8

*Gonzalez v. United States*,
   284 F.3d 281 (1st Cir. 2002).........................................................................................10

*J. Geils Band Emp. Ben. Plan v. Smith Barney Shearson, Inc.*,
   76 F.3d 1245 (1st Cir. 1996)...........................................................................................9

*Lorenzo v. Perfect Cleaning Servs.*,
   No. CV 15-1301 (JAG), 2018 WL 10715439 (D.P.R. Jan. 30, 2018).........................3

*New England Data Servs., Inc. v. Becher*,
   829 F.2d 286 (1st Cir. 1987)...........................................................................................7

*Norfe Grp. Corp. v. R.Y. Espinosa Inc.*,
   Civil No. CV 19-1897 (BJM), 2021 WL 5235119 (D.P.R. Nov. 9, 2021)..................7

*Orellano-Laureano v. Instituto Medico del Norte, Inc.*,
   Civil No. 22-01322 (MAJ), 2023 WL 4532418 (D.P.R. July 13, 2023) ....................3

*Perez-Velez v. ESJ Resort, LLC*,
   No. CV 23-1072 (ADC), 2024 WL 1420740 (D.P.R. Mar. 30, 2024) .......................2

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993).......................................................................................................7

*Rodriguez Narvaez v. Nazario*,
   895 F.2d 38 (1st Cir.1990).............................................................................................8

| **Cases** | **Page(s)** |

*Taylor v. Airco, Inc.*,
  503 F. Supp. 2d 432 (D. Mass. 2007), *aff'd*, 576 F.3d 16 (1st Cir. 2009) ................................ 6

*United States v. Zannino*,
  895 F.2d 1, 17 (1st Cir. 1990) ................................................................................................ 3

| **Other Authorities** | **Page(s)** |

L. Civ. R. 7(f) ................................................................................................................................ 1

Union of Concerned Scientists, "The Climate Deception Dossiers," (July 2015) ......................... 5

Information Council on the Environment, Internal Memoranda (May 1991) .............................. 5

Jiarui Chen, et al. "How Much Have the Oil Supermajors Contributed to Climate Change? Estimating the Carbon Footprint of the Oil Refining and Petroleum Product Sales Sectors," Columbia Center on Sustainable Investment, March 2022, https://ccsi.columbia.edu/content/oil-supermajors-carbon-footprint-refining-sales-climate-change ............................................................................................................................... 9

Talon Mine Project Greenwashing and the Illusion of Corporate Care, EARTHWORKS (Oct. 16, 2023), https://earthworks.org/blog/talon-mine-project-greenwashing-and-the-illusion-of-corporate-care/ (last visited July 9, 2024) ............................................................................... 10

## INTRODUCTION

Plaintiffs' Opposition is long on rhetoric, but short on well-pleaded factual allegations that would rescue their defective claims against Rio Tinto plc ("Rio Tinto"). Defendants' Joint 12(b)(6) explained why the gravamen of Plaintiffs' Amended Complaint—that Defendants "misrepresented" dangers associated with their products in a "campaign of climate change denial"—resoundingly fails on behalf of all 10 named defendants. Rio Tinto wrote separately, highlighting why Plaintiffs' claims specifically fail as against the Company. To wit, Plaintiffs' claims are fundamentally based on Defendants' purported denial of the existence and risks of climate change. In fact, Rio Tinto has—for nearly three decades—issued numerous public statements saying the *opposite*. As early as 1997, Rio Tinto acknowledged the existence of man-made climate change and the need for steps to manage it. These statements are fatal to Plaintiffs' claims. Unsurprisingly, Plaintiffs offer no response to such statements, or indeed to any argument in Rio Tinto's Motion to Dismiss the Amended Complaint for Failure to State a Claim ("Rio Tinto's 12(b)(6)"). This Court should dismiss all claims against Rio Tinto with prejudice.[1]

*First*, Plaintiffs do not dispute a single argument made in Rio Tinto's 12(b)(6); they simply ignore them. Plaintiffs accept that to survive dismissal they must make out plausible claims supported by well-pleaded factual allegations as to each Defendant, without relying on group pleading. But, their Opposition mentions Rio Tinto only **_once_**. That sole reference, buried in a footnote, states that Rio Tinto was an "active member" of a public relations organization that,

---

[1] As described in the Defendants' Joint 12(b)(6), Rio Tinto's 12(b)(6), and Rio Tinto's 12(b)(2), Rio Tinto moves to dismiss all counts listed in Plaintiffs' Amended Complaint.

Pursuant to L. Civ. R. 7(f), Rio Tinto adopts and incorporates by reference Defendants' Joint 12(b)(2) and 12(b)(6) Reply Briefs and Rio Tinto's 12(b)(2) Reply, submitted contemporaneously herewith, as well as Defendants' Joint 12(b)(6), Defendants' Joint 12(b)(2), Rio Tinto's 12(b)(6), and Rio Tinto's 12(b)(2).

Capitalized terms not defined herein have the same meaning as defined in Rio Tinto's 12(b)(6).

according to Plaintiffs' own sources, did not include Rio Tinto and disbanded in 1991. Because Plaintiffs failed to contend with Rio Tinto's well-grounded arguments in support of dismissal, they waive any opposition to them, and thus their claims against Rio Tinto should be dismissed.

*Second*, Plaintiffs do nothing to resuscitate *any* of their deficient claims against Rio Tinto. Plaintiffs' Opposition cites no well-pleaded factual allegations supporting a reasonable inference that Rio Tinto was involved in the alleged wrongful conduct: it simply refers back to insufficient prior allegations offered without support or context that are contradicted by Plaintiffs' own sources and ignore Rio Tinto's longstanding record of judicially noticeable public statements that acknowledge climate change and support bold climate action. *See, e.g.*, King Decl. Ex. B (1997 Annual Report, Companies House A3ZHU760, June 22, 1998) at 33.

*Third*, Plaintiffs' suit is untimely. Unable to show their claims are timely, Plaintiffs instead invent a fraudulent concealment narrative in a manufactured effort to toll the limitations period. But, again, Plaintiffs muster no acts by Rio Tinto that warrant expanding the limitations period. All claims should therefore be dismissed as to Rio Tinto as time-barred.

The Opposition does nothing to answer or remedy the fundamental deficiencies in the Amended Complaint as to Rio Tinto, thus dooming Plaintiffs' claims to fail; therefore, this Court should dismiss their Amended Complaint as against Rio Tinto, with prejudice.

## ARGUMENT

### I. PLAINTIFFS HAVE WAIVED ANY OPPOSITION TO RIO TINTO'S DEFENSES TO COUNTS 1-2, 4-10 AND 13

Plaintiffs' Opposition fails to address any of the specific arguments advanced by Rio Tinto, thereby waiving any opposition to the arguments set forth in Rio Tinto's 12(b)(6). Courts routinely find that where an issue of fact or law is raised in an opening brief, but is uncontested in the opposition brief, the issue is deemed waived by the non-movant. *Perez-Velez v. ESJ Resort,*

2

*LLC*, No. CV 23-1072 (ADC), 2024 WL 1420740, at *2 (D.P.R. Mar. 30, 2024) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

Similarly, where a Plaintiff addresses some arguments in a Defendant's motion to dismiss, but not others, those arguments not addressed or opposed are deemed waived. *See Orellano-Laureano v. Instituto Medico del Norte, Inc*., No. 22-01322 (MAJ), 2023 WL 4532418, at *8 (D.P.R. July 13, 2023) (dismissing claims with prejudice and stating that "Plaintiff did not address Defendant's contention that her Section 16 claim was barred. Accordingly, Plaintiff waived any opposition to this argument."); *Lorenzo v. Perfect Cleaning Servs*., No. CV 15-1301 (JAG), 2018 WL 10715439, at *9 (D.P.R. Jan. 30, 2018) (dismissing all claims with prejudice after finding Plaintiffs' Opposition "neglected to present any argument as to [certain] claims. Therefore, Plaintiffs' arguments, as to th[o]se claims, are deemed waived.").

Plaintiffs' Opposition does not acknowledge, let alone respond to, any of Rio Tinto's well-formed arguments. *See generally* Rio Tinto's 12(b)(6). For example, Plaintiffs concede that liability under the Sherman Act requires specific allegations of actions that facilitate collusion, beyond membership in trade groups. *See* Opp. at 58. Plaintiffs attempt to plead such actions against other Defendants but make no effort to allege any such conduct by Rio Tinto. *See id*, citing Am. Compl. ¶¶ 354-59, 361, 377, 378, 380, 384, 463-70. Indeed, the *only* mention of Rio Tinto in the Opposition states that it was an "active member" of the Information Council for the Environment ("ICE"). Opp. at 56 n.12. This alone does not rebut a single one of the legal arguments in Rio Tinto's 12(b)(6), not least because Plaintiffs expressly acknowledge that "mere membership" in industry groups is insufficient for liability. *See* Opp. at 30, 52; *cf. Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 567 n.12 (2007) (rejecting the argument that a conspiracy to restrain

3

trade could be inferred from defendants' membership in trade associations). Plaintiffs' Opposition does not offer *any* additional facts to bolster their deficient claims against Rio Tinto or alternative precedents that would support a claim for relief based on group pleading.

Plaintiffs' silence as to Rio Tinto is particularly notable because they acknowledge that group pleading is impermissible and attempt to provide particularized allegations against **all Defendants except Rio Tinto** and one other defendant. For instance, Plaintiffs' Opposition concedes that Rule 9(b) applies to their state law claims that sound in fraud, *see* Opp. at 79, and seeks to identify statements by specific Defendants to support those claims—but fails to include a *single* statement by Rio Tinto, *see, e.g.*, Opp. at 80-82 (purporting to provide fraudulent assertions satisfying the Rule 9(b) standard for fraud-based claims against BP P.L.C.), 80 n.33 (referencing the Appendix to the Amended Complaint purporting to show allegedly fraudulent conduct in response to the Motions to Dismiss filed by BP, ConocoPhillips, BHP, and Exxon).[2] Plaintiffs also acknowledge that Rule 9(b)'s pleading requirements apply to their RICO claims. *See* Opp at 41. Their Opposition thus seeks to make out particularized factual allegations against eight of the ten Defendants in this case, but ***not*** Rio Tinto. *See* Opp. at 48-53, 59-63.[3]

Plaintiffs' silence therefore waives any opposition to the well-formed arguments in Rio Tinto's 12(b)(6). This Court should credit these arguments and dismiss Rio Tinto from this case.

II.    **PLAINTIFFS FAIL TO REHABILITATE THEIR DEFICIENT CLAIMS AGAINST RIO TINTO**

Rio Tinto's 12(b)(6) outlined Plaintiffs' failure to assert cognizable claims against Rio

---

[2] Even these allegations are insufficient for the reasons described in Defendants' Joint Reply Briefs.

[3] Plaintiffs' contention, based on select out-of-circuit cases, that the Rule 9(b) requirements are "not as stringent" in cases alleging "lengthy, fraudulent schemes" fails. Opp. at 41. As set forth on pages 3-4 of Defendants' Joint 12(b)(6) Reply, Rule 9(b) applies to allegations that charge fraud, and no less "stringent" standard should apply here. Furthermore, a less "stringent" Rule 9(b) standard, even if one were to apply, would not rescue Plaintiffs' deficient claims against Rio Tinto, which lack the necessary specificity to meet even a relaxed Rule 9(b) standard.

4

Tinto, as they have not plausibly alleged that Rio Tinto played a particularized role in any purportedly wrongful activity. *See* Rio Tinto's 12(b)(6) at 10-12. Plaintiffs' Opposition does nothing to remedy this deficiency, simply declaring that all Defendants are liable based on "100 pages of allegations" in the Amended Complaint and its Appendix. Opp. at 55, 70. However, Plaintiffs deeming their own Amended Complaint sufficient does not make it so.

### A. Plaintiffs' Fraudulent Misrepresentation Claims Fail

Plaintiffs acknowledge that they must allege "specific instances" of fraudulent misrepresentation or concealment to make out their claims and, in the same breath, fail to do so for Rio Tinto. *See, e.g.*, Opp. at 13, 31-32. As described in Rio Tinto's 12(b)(6), the Amended Complaint does not include sufficiently particularized allegations against Rio Tinto, instead relying on allegations regarding industry associations. As a matter of law, that is insufficient. *See* Rio Tinto's 12(b)(6) at 10-11. The Opposition fails to overcome this deficiency, as the only allegation cited in Plaintiffs' Opposition specific to Rio Tinto is that Rio Tinto was an "active member" of the ICE, which "peddl[ed] intentional skepticism" about the harms of climate change. Opp. at 55-56 n.12. Rio Tinto has already explained, however, that (*i*) neither source Plaintiffs cite listing purported members of ICE mentions Rio Tinto[4]; and (*ii*) Plaintiffs fail to allege any purportedly wrongful actions that Rio Tinto took through ICE. *See* Rio Tinto's 12(b)(6) at 6. Further, it is simply not logical that Rio Tinto plc, an entity incorporated in the UK that is not registered to do business in the US, was an "active member" of a US public relations organization that began and folded in 1991. *See* Pasmore Decl. ¶¶ 4, 7 ("Rio Tinto is incorporated in England and Wales …. [and] is not registered to do business in the United

---

[4] Union of Concerned Scientists, "The Climate Deception Dossiers," (July 2015), at 19-21; Information Council on the Environment, Internal Memoranda (May 1991) (cited in Am. Compl. ¶ 368 nn.395-96).

5

States."). Even if this allegation did pass muster, statements by industry associations do not support a cognizable claim against Rio Tinto. *See Taylor v. Airco, Inc.*, 503 F. Supp. 2d 432, 446-47 (D. Mass. 2007), *aff'd sub nom. Taylor v. Am. Chemistry Council,* 576 F.3d 16 (1st Cir. 2009). Accordingly, this allegation further underscores the Amended Complaint's deficiencies described in Rio Tinto's 12(b)(6) and below.

*First*, Plaintiffs provide unsupported allegations with minimal context. For example, Plaintiffs allege Rio Tinto was a member of the American Coalition for Clean Coal Electricity ("ACCCE"), which purportedly sent "forged letters" to Congress in 2009, but provide no sources linking Rio Tinto to the ACCCE or concerning Rio Tinto's purported role in alleged ACCCE conduct. App'x Am. Compl. ¶¶ 13, 42. Similarly, Plaintiffs allege that Rio Tinto made "false commitments and pledges to the Paris Agreement" and "false commitments and pledges to become net-zero," but articulate no facts undermining Rio Tinto's climate pledges. *See* App'x Am. Compl. ¶¶ 64-65, Am. Compl. ¶ 575. These *ipse dixit* allegations fail under Rule 9(b).

*Second*, Plaintiffs' allegations against Rio Tinto of fraudulent misrepresentation for denying the existence of climate change are contradicted by Rio Tinto's judicially noticeable public statements cited in Rio Tinto's 12(b)(6). *See, e.g.,* King Decl., Ex. A ("If left unchecked, climate change will create significant risks . . . [so we are] putting the transition to a low-carbon future and future energy scenarios at the heart of our business strategy."); Ex. K ("We have publicly acknowledged the reality of climate change for over two decades . . . . [We are] the only major mining company not producing fossil fuels."); Rio Tinto's 12(b)(6) at 8-9. Even without reaching the veracity of such statements, Plaintiffs' inclusion of Rio Tinto in a purported conspiracy to mislead the public about climate change is not plausible given this record.

The Amended Complaint's pleading deficiencies—individually and together—make

clear that Plaintiffs have not alleged fraudulent misrepresentation or concealment by Rio Tinto.

### B. Plaintiffs' Conspiracy Based Claims Fail

As they must, Plaintiffs accept in their Opposition that membership in industry groups, without more, is insufficient to sustain liability under RICO or the Sherman Act. *See* Opp. at 30, 44-45, 52, 58. RICO requires sufficient factual allegations as to each Defendant showing involvement in the "operation or management" of the alleged enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183 (1993); *Norfe Grp. Corp. v. R.Y. Espinosa Inc.,* Civil No. CV 19-1897 (BJM), 2021 WL 5235119, at *3 (D.P.R. Nov. 9, 2021). Meanwhile, the Sherman Act requires particularized evidence of agreement in furtherance of a conspiracy, a test that is not met through membership in trade groups alone. *See AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216 (2d Cir. 1999). As Plaintiffs' Opposition does no more than refer back to allegations of "mere membership" against Rio Tinto, these conspiracy-based claims fail.[5]

The enterprises allegedly at the center of Plaintiffs' RICO claims are the Global Climate Coalition ("GCC"), which shuttered in 2001, and the American Petroleum Institute ("API"). The US Supreme Court requires that RICO Defendants operate or manage "the enterprise itself." *Reves*, 507 U.S. at 177-79. Plaintiffs claim they identify "specific facts that demonstrate Defendants are not mere associates with the GCC and API enterprises." *See* Opp. at 45, citing Am. Compl. ¶¶ 746-48. But *no facts* in Plaintiffs' briefs or extensive supporting documents plausibly suggest Rio Tinto was directly involved in either supposed enterprise. *See* Rio Tinto's 12(b)(6) at 5-7, 12-14. Plaintiffs instead claim Rio Tinto was a member of trade groups that were

---

[5] The Opposition argues that limited *Becher* discovery should be permitted in this case to allow Plaintiffs to develop their RICO claims. *See* Opp. at 39-40, citing *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987). Becher discovery is inappropriate here. This Circuit "has never applied *Becher* in a case, like this one, where the complaint fell short not only of Rule 9(b)'s heightened particularity requirements but also of the ordinary plausibility standard." *Douglas v. Hirshon*, 63 F.4th 49, 59 (1st Cir. 2023) (citations omitted).

purportedly themselves GCC or API members, but this is insufficient to sustain RICO liability. *See Friendly Hotel Boutique Corp. v. ME & A Cap., LLC*, Civil No. 11–1709 (JAG), 2012 WL 4062795, at *2 (D.P.R. Sept. 14, 2012).

Plaintiffs' Opposition insists that their Sherman Act Section 1 claim adequately alleges an anti-competitive agreement, based on the Defendants' active participation in trade organizations and "cooperative advertising" campaigns, not based on their membership status alone. *See* Opp. at 54-58. However, the Supreme Court has unambiguously rejected the premise that anticompetitive practices by a trade group can be automatically imputed to its members. *Twombly,* 550 U.S. at 567 n.12. Plaintiffs rely on *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, but that case supports dismissal as to Rio Tinto, because Plaintiffs have not "sufficiently alleged action by [Rio Tinto] as an independent entity." 720 F.3d 33, 49 n.4 (1st Cir. 2013).

Accordingly, Plaintiffs' RICO and Sherman Act claims fail against Rio Tinto because they fail to raise a plausible inference of a nexus between Rio Tinto and the alleged enterprise.

### III.    ALL COUNTS IN THE AMENDED COMPLAINT ARE TIME-BARRED

As discussed in Defendants' Joint Motion to Dismiss the Amended Complaint and Reply 12(b)(6) Brief, Plaintiffs' claims are time-barred. The arguments raised in Plaintiffs' Opposition that further confirm its claims against Rio Tinto are time-barred.

Plaintiffs seek damages arising from storms that occurred in 2017. The applicable limitations period for Plaintiffs' state-law claims is one year. *Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 42 (1st Cir.1990). Plaintiffs argue that the statute of limitations period did not begin to accrue until 2022 because Plaintiffs allegedly only learned of the "author[s]" of their injuries in March 2022 when a report was published linking certain companies' carbon emissions to climate change impacts. Opp. at 6-10, 15-17 ("After reviewing this report, Plaintiffs learned which

entities have a causal link to Plaintiffs' injuries and their respective market shares in the fossil fuel industry."). However, Plaintiffs cannot argue that the statute of limitations only began to run as to Rio Tinto upon the publication of the March 2022 report because the report **does not even mention Rio Tinto**. *See.* Opp. at 7.[6]

The applicable statute of limitations for Plaintiffs' federal RICO and antitrust claims is four years—a period that runs in the First Circuit from the moment "when a plaintiff knew or should have known of his injury." *Álvarez-Maurás v. Banco Popular of P.R.,* 919 F.3d 617, 625-26 (1st Cir. 2019) ("[D]iscovery of the injury, not discovery of the other elements of the claim is what starts the clock"). Plaintiffs cannot dispute that they knew of their purported injury in 2017 but failed to bring their RICO and antitrust claims by September 2021, during the limitations period.

Unable to contend that they filed suit within the applicable statutes of limitations, Plaintiffs seek (and fail) to toll the limitations period. Plaintiffs assert that their claims—filed in 2022, five years after the storms at issue—are tolled because Defendants continue to fraudulently conceal their "disinformation campaign." Opp. at 6, 15-16. But to toll the limitations period, Plaintiffs must plead fraudulent concealment with particularity. *See J. Geils Band Emp. Ben. Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996). However, Plaintiffs fail to allege ***any*** particularized facts plausibly showing that Rio Tinto engaged in an underlying disinformation campaign about the risks of fossil fuel products, let alone engaged in fraudulent concealment of such a campaign since 2017. *See* Rio Tinto's 12(b)(6); *infra* Section B. The only

---

[6] Jiarui Chen, et al. "How Much Have the Oil Supermajors Contributed to Climate Change? Estimating the Carbon Footprint of the Oil Refining and Petroleum Product Sales Sectors," Columbia Center on Sustainable Investment, March 2022, https://ccsi.columbia.edu/content/oil-supermajors-carbon-footprint-refining-sales-climate-change (cited in Am. Compl. ¶ 76 n.25) (last visited July 9, 2022).

specific actions that Plaintiffs allege Rio Tinto has taken since 2017 are as follows: (*i*) committed in 2023 to "lower [its] Scope 1 and 2 emissions by 2050"; (*ii*) initiated a project in 2023 to mine materials for electric vehicles, a project purportedly incorrectly advertised as a "green mine" due to "surrounding communities' concerns" and "potential environmental risks"[7] and; (*iii*) held a position on the NMA Board and ESG Committee. *See* Am. Compl. ¶¶ 531, 575. Plaintiffs offer no explanation or factual context connecting these alleged actions by Rio Tinto—actions that support a low carbon future—to efforts to conceal the harm of climate change. Because "plaintiff's conclusory allegations are insufficient for a finding that [Rio Tinto] engaged in fraudulent concealment … [this court] need not [further] consider" whether the limitations period need be tolled as against Rio Tinto. *Gonzalez v. United States*, 284 F.3d 281, 292 (1st Cir. 2002) (affirming dismissal of untimely claim at 12(b)(6) stage).

For these reasons, Plaintiffs failed to bring their claims against Rio Tinto within the relevant limitations periods, and their efforts to toll the relevant statute of limitations periods fail.

## CONCLUSION

Rio Tinto respectfully requests that all claims against it be dismissed with prejudice.

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date the foregoing motion was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys and participants of record.

Respectfully submitted on September 3, 2024.

> Roberto A. Cámara-Fuertes
> *s/ Roberto A. Cámara-Fuertes*
> USDC-PR Bar No. 219002

---

[7] Talon Mine Project Greenwashing and the Illusion of Corporate Care, EARTHWORKS (Oct. 16, 2023), https://earthworks.org/blog/talon-mine-project-greenwashing-and-the-illusion-of-corporate-care/ (last visited September 3, 2024) (cited in Am. Compl. ¶ 531 n.622).

FERRAIUOLI LLC
PO Box 195168
San Juan, Puerto Rico 00919-5168
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
E-mail: rcamara@ferraiuoli.com

Linda H. Martin (admitted *pro hac vice*)
David Y. Livshiz (admitted *pro hac vice*)
Noelle L. Williams (admitted *pro hac vice*)
Jennifer E. King (admitted *pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
3 World Trade Center
175 Greenwich St., 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
E-mail: linda.martin@freshfields.com
E-mail: david.livshiz@freshfields.com
E-mail: noelle.williams@freshfields.com
E-mail: Jennifer.king@freshfields.com

Jennifer Loeb (admitted *pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
E-mail: jennifer.loeb@freshfields.com

*Attorneys for Defendant Rio Tinto plc*

11