**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MUNICIPALITY OF BAYAMON et al., | |
| *Plaintiffs,* | Case No. 3:22-cv-01550-SCC |
| v. | |
| EXXON MOBIL CORP. et al., | |
| *Defendants.* | |

**PLAINTIFFS' CONSOLIDATED OBJECTIONS TO REPORT AND**
**RECOMMENDATION**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

LEGAL STANDARD....................................................................................................... 1

OBJECTIONS.................................................................................................................. 2

I.     PLAINTIFFS' OBJECTIONS TO JURISDICTION RECOMMENDATIONS................ 2

II.    PLAINTIFFS' OBJECTION TO RECOMMENDATION TO DISMISS
       RACKETEERING CLAIMS UNDER 18 U.S.C. §§ 1962(A) AND (B)........................... 4

       A.     Plaintiffs Have Pleaded A Cognizable Injury Under Section 1962(a)................... 5

       B.     Plaintiffs Have Adequately Alleged A Claim Under Section 1962(b) .................. 6

III.   PLAINTIFFS' OBJECTION TO RECOMMENDATION TO DISMISS
       PLAINTIFFS' DESIGN DEFECT CLAIM ...................................................................... 7

       A.     Plaintiffs Adequately Alleged A Design Defect ...................................................... 7

       B.     Plaintiffs Adequately Alleged Proximate Causation............................................. 10

IV.    PLAINTIFFS' OBJECTION TO REPORT'S RECOMMENDATION TO DISMISS
       FAILURE TO WARN CLAIM ....................................................................................... 12

       A.     Puerto Rico Law Recognizes A Duty To Warn Of Both Immediate And Latent
       Risks........................................................................................................................ 13

       B.     Defendants Knew Of The Latent Effects Of Their Products But Chose To
       Suppress This Information ...................................................................................... 13

V.     PLAINTIFFS' OBJECTION TO RECOMMENDATION TO DISMISS UNJUST
       ENRICHMENT CLAIM ................................................................................................. 16

       A.     Plaintiffs' Unjust Enrichment Claim Is Not Barred Merely Because Other Legal
       Claims Exist ............................................................................................................ 16

       B.     Plaintiffs Have Passed The *Twombly* Plausibility Test For Unjust Enrichment ... 17

VI.    PLAINTIFFS' OBJECTION TO RECOMMENDATION TO DISMISS PUBLIC
       AND PRIVATE NUISANCE CLAIMS........................................................................... 19

       A.     Plaintiffs Properly Alleged Abatement Under Puerto Rico Law ......................... 19

       B.     Plaintiffs Adequately Alleged Causation .............................................................. 21

VII.   OBJECTION TO REPORT AND RECOMMENDATION REGARDING PARENS
       PATRIAE STANDING .................................................................................................. 22

       A.     The Magistrate Judge's Misapplication of *Parens Patriae* Doctrine To Puerto
       Rico ........................................................................................................................ 22

       B.     Plaintiffs' Claims Are Properly Framed Within Rule 23 Class Action Principles 23

VIII.  CONDITIONAL REQUEST FOR LEAVE TO AMEND THE COMPLAINT .............. 24

## <u>TABLE OF AUTHORITY</u>

<u>Cases</u>

*Adams v. Union Carbide Corp.,* 737 F.2d 1453 (6th Cir. 1984) .................................................. 13

*Aponte Rivera v. Sears Roebuck,* 144 D.P.R. 830 (1998)............................................................ 13

*Ayala v. Kia Motor Corp.,* 633 F. Supp. 3d 555 (D.P.R. 2022) .................................................. 10

*Carballo-Rodriguez v. Clark Equip. Co.,* 147 F. Supp. 2d 66  (D.P.R. 2001) ........................ 8, 10

*Casio Computer Co. Ltd. v. Savo,* 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ......................... 3

*Cruz Vargas v. R.J. Reynolds Tobacco Co.,* 348 F.3d 271 (1st Cir. 2003) .................... 13, 14, 15

*Guevara v. Dorsey Labs., Div. of Sandoz, Inc.,* 845 F.2d 364 (1st Cir. 1998) ............................ 12

*Hatton v. Municipality of Ponce,* 134 D.P.R. 1001 (1994)......................................................... 17

*Lass v. Bank of Am., N.A.,* 695 F.3d 129 (1st Cir. 2012)............................................................. 17

*Lopez Flores v. Gonzalez Padin Co.,* 117 D.P.R. 94 (1986) ...................................................... 22

*Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R.,* 2015 WL 5719801 (D.P.R. Sept. 29, 2015), Report and Recommendation adopted (D.P.R. Mar. 31, 2016)........................................... 3

*Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,* 196 F.3d 284 (1st Cir. 1999).................... 2

*Reassurance D'Ile de France v. New England Reinsurance Corp.,* 57 F.3d 56 (1st Cir. 1995).... 5

*Sales v. Torres,* 91 D.P.R. 488 (1964) .................................................................................. 19, 20

*Schofield v. First Commodity Corp. of Bos.,* 793 F.2d 28 (1st Cir. 1986).................................... 5

*Silva v. Am. Airlines, Inc.,* 960 F. Supp. 528 (D.P.R. 1997)....................................................... 14

*Tompkin v. American Brands,* 219 F.3d 566 (6th Cir. 2000)....................................................... 15

*U.S. Bank Nat'l Ass'n v. BFPRU I, LLC,* 230 F. Supp. 3d 253 (S.D.N.Y. 2017) ........................ 16

*Vieira v. First Am. Title Ins. Co.,* 668 F. Supp. 2d 282 (D. Mass. 2009) .................................... 17

**Statutes and Rules**

18 U.S.C. § 1962(a) ................................................................................ 2, 4, 5, 6, 7

18 U.S.C. § 1962(b) ................................................................................. 2, 4, 6, 7

18 U.S.C. § 1962(c) ...................................................................................... 1, 5

18 U.S.C. § 1962(d) ........................................................................................ 1

28 U.S.C. § 636(b)(1) ..................................................................................... 1

Fed. R. Civ. P. 8(a)(3) ................................................................................... 17

Fed. R. Civ. P. 8(d) ...................................................................................... 17

Fed. R. Civ. P. 15(a)(2) ................................................................................. 24

P.R. Laws Ann. tit. 21, § 7012 ........................................................................ 22

P.R. Laws Ann. tit. 21, § 7013(bb) .................................................................. 22

P.R. Laws Ann. tit. 21, § 7013(p) .................................................................... 23

P.R. Laws Ann. tit. 32, § 2761 ................................................................... 19, 20

P.R. Laws Ann. tit. 32, § 277 ............................................................... 11, 19, 20

Pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules, Plaintiffs, the municipalities of Bayamón, Caguas, Loíza, Lares, Barranquitas, Comerío, Cayey, Las Marías, Trujillo Alto, Vega Baja, Añasco, Cidra, Aguadilla, Aibonito, Morovis, Moca, Barceloneta, Camuy, Cataño, Salinas, Adjuntas, Arroyo, Culebra, Dorado, Guaynabo, Hormigueros, Juncos, Lajas, Manatí, Naguabo, Naranjito, Utuado, Villalba, Coamo, Orocovis, Vieques, and Yabucoa ("Plaintiffs"), respectfully submit their Objections to the Magistrate Judge's Omnibus Report and Recommendation regarding Defendants' Motions to Dismiss entered in this matter on February 20, 2025 ("Report").

## INTRODUCTION

The Magistrate's Report carefully and thoroughly considers the issues presented; this Court should largely follow its reasoning. As the Report recommends, the Court should deny the motion to dismiss the antitrust claim and the RICO claims under §§1962(c) and (d). Plaintiffs object, however, to other findings and recommendations that could unduly limit Plaintiffs' ability to pursue relief against Defendants for their decades-long campaign of deception regarding the dangers of fossil fuel consumption and its direct impact on Puerto Rico's climate and infrastructure.

## LEGAL STANDARD

This Court reviews the Magistrate's decision *de novo*. *See* 28 U.S.C. §636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

## OBJECTIONS

Plaintiffs object to the Report's recommendation of limited jurisdictional discovery and the recommendation to defer the jurisdictional analysis under RICO §1965(b) until jurisdictional discovery is completed. Additionally, Plaintiffs object to the recommendation to dismiss Plaintiffs' RICO claims under §§1962(a) and (b) and the recommendation to dismiss Plaintiffs' RICO claim against API. Finally, Plaintiffs object to the recommendation to dismiss their state law claims; ultimately, the public and private nuisance, strict liability and negligent design defect, and unjust enrichment claims under Puerto Rico law are well-pleaded and independently viable.

## I.    PLAINTIFFS' OBJECTIONS TO JURISDICTION RECOMMENDATIONS

Plaintiffs object to the Report's recommendation of limited jurisdictional discovery and the recommendation to defer the jurisdictional analysis under RICO §1965(b) until jurisdictional discovery is completed. Report, at 18-27. The Report contains a careful analysis of the three elements necessary to establish specific personal jurisdiction: (1) relatedness, (2) purposeful availment, and (3) reasonableness. *Id.* at 13-25 (citing *Phillips ExeterAcad. v. Howard Phillips Fund, Inc*., 196 F.3d 284, 288 (1st Cir.1999) (The exercise of specific personal jurisdiction requires that: "(1) the claim underlying the litigation must directly relate to or arise out of Defendant's contacts with the forum; (2) those contacts must constitute purposeful availment of the benefits and protections afforded by the forum's laws; and (3) jurisdiction must be reasonable in light of a number of factor's touching upon fundamental fairness.")).

As to the first element, relatedness, the Report found that "taking as true plaintiffs' allegations that defendants are conducting a sweeping marketing and promotional activities in Puerto Rico, there is sufficient relatedness." *Id.* at 23. As to the second element, purposeful availment, the Report found that "relying on Plaintiffs' well-pleaded allegations claiming that

Defendants marketed, promoted, and sold products in Puerto Rico, I conclude that the purposeful availment test is met." *Id.* at 18. Finally, as to the last element, reasonableness, the Report found that "it weighs in favor of finding that jurisdiction in Puerto Rico is reasonable." *Id.* at 24. In addition to these findings, the Report analyzed individual motions filed by BHP, Motiva, and Rio Tinto, and decided against a recommendation to dismiss for lack of jurisdiction. *Id.* at 29-32. The Report concluded that "[i]n the aggregate, these factors weigh in favor of finding that Puerto Rico has jurisdiction over the Defendants." *Id.* at 25.

Despite the conclusions above, the Report recommended further record development in the form of limited jurisdictional discovery as to each element and each individual Defendant. *Id.* at 18-25; 29-32. However, consistent with the Report's conclusions, Plaintiffs' allegations are sufficient to survive the 12(b)(6) stage and proceed to discovery as a whole.

The Report deferred analysis on RICO §1965(b) until jurisdictional discovery is completed. Section 1965 permits a court overseeing a valid RICO claim to exercise "personal jurisdiction over an out-of-state defendant [based on nationwide contacts] so long as the Court has jurisdiction established by the minimum contacts of at least one defendant [with the forum State]." *Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R.*, 2015 WL 5719801, at *3 (D.P.R. Sept. 29, 2015), report and recommendation adopted, (D.P.R. Mar. 31, 2016); *see also Casio Computer Co. Ltd. v. Savo*, 2000 WL 1877516, at *26 (S.D.N.Y. Oct. 13, 2000). Consistent with the Report's conclusions, Plaintiffs have alleged a valid RICO claim and have sufficiently established the requisite contacts of the Defendants to provide a proper basis for jurisdiction. Indeed, Plaintiffs alleged with specificity that numerous Defendants have intentionally and repeatedly directed their commercial activities—including the sale, marketing, and distribution of petroleum products— toward Puerto Rico, which is acutely susceptible to climate change impacts. Am. Compl. ¶¶ 99-

197. These allegations demonstrate that each of these Defendants could reasonably anticipate being haled into court in Puerto Rico based on their own actions and involvement in the RICO conspiracy.

Even "limited" jurisdictional discovery will generate an extensive motions practice about what is appropriate to include in a presently undefined "limited" jurisdictional discovery. These motions will inevitably result in a delay in accomplishing discovery, which will itself require scores of depositions and extensive written and documentary discovery. The extent of this discovery alone will undoubtably delay the ultimate resolution of this matter. Plaintiffs ask that the Court consider any delay in the resolution of this matter in the context of the impact on the Puerto Rican population of a determination of the responsibility, or not, of the Defendants for the past, present and future impacts of Maria and the hurricanes to come.

## II.    PLAINTIFFS' OBJECTION TO RECOMMENDATION TO DISMISS RACKETEERING CLAIMS UNDER 18 U.S.C. §§ 1962(A) AND (B)

Plaintiffs object to the Report's recommendation to dismiss Plaintiffs' RICO claims under 18 U.S.C. §§1962(a) and (b). Report, at 57-58. The Report concluded that "Plaintiffs have not pled that Defendants' acquisition or maintenance of control over the enterprises is what caused the harm, nor have they pled that they suffered injuries from the use or investment of any income derived from the racketeering activities." *Id.* at 58. As detailed below, Plaintiffs sufficiently alleged, under §1962(a), that Defendants reinvested racketeering proceeds into fraudulent disinformation campaigns, which directly harmed Plaintiffs by perpetuating fossil fuel consumption and climate-related destruction. Additionally, Plaintiffs sufficiently alleged, under §1962(b), Defendants' control over the enterprise enabled them to sustain decades of deception, misleading Plaintiffs and the public. Plaintiffs' allegations satisfy the pleading requirements for RICO claims, and the Court should allow these claims to proceed.

4

**A. Plaintiffs Have Pleaded A Cognizable Injury Under Section 1962(a)**

The Report is incorrect in finding that Plaintiffs did not plead that "they suffered injuries from the use or investment of any income derived from the racketeering activities," Report, at 58, so as to plausibly allege a violation of § 1962(a). Plaintiffs alleged that Defendants funneled revenues derived from their racketeering activity into an orchestrated campaign of deception, designed to mislead the public—including Plaintiffs—about the adverse effects of fossil fuel consumption. *See* Am. Compl. ¶¶ 738, 740, 742, 757, 758; Am. Racketeering Case Stmt. ¶¶ 15, 16, 17, 18, 31. This reinvestment prolonged and intensified the deceptive scheme, which induced increased reliance on fossil fuels, leading directly to the climate-related destruction Plaintiffs suffered. *See* Am. Compl. ¶¶ 733-735, 741-743, 752-754, 760-762.  This activity is therefore "distinct from an injury caused by the predicate acts themselves."  Report, at 58 (quoting *Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995)). These allegations satisfy the pleading requirements for §1962(a) for all Defendants, as they plausibly state that Defendants' use or investment of racketeering income was a proximate cause of Plaintiffs' injury. The Report's failure to acknowledge these allegations constitutes a misapprehension of the claims presented.[1]

This same error infected the Report's recommendation that the RICO claim against API be dismissed in its entirety.  The Court dismissed that claim on the ground that API could not satisfy §1962(a)—the only provision available to API. *See* Report, at 62 (quoting *Schofield v. First Commodity Corp. of Bos.*, 793 F.2d 28, 31 (1st Cir. 1986) ("The language in section 1962(a) does not require a relationship between the person and the enterprise as does section 1962(c), and so it

---

[1] Plaintiffs made these arguments in their Omnibus Response (Dkt. No. 280, p. 33, 47, and 49) filed in response to Defendants' arguments for dismissal, yet the Report disregarded these arguments and Plaintiffs' well-pleaded allegations.

does not require the involvement of two separate entities.")). As detailed above, this was incorrect. Plaintiffs have sufficiently alleged that Defendants, including API, funneled revenues derived from their racketeering activity into an orchestrated campaign of deception, designed to mislead the public—including Plaintiffs—regarding the adverse effects of fossil fuel consumption. This reinvestment prolonged and intensified the deceptive scheme, which induced increased reliance on fossil fuels, leading directly to the climate-related destruction Plaintiffs suffered. Accordingly, Plaintiffs have sufficiently alleged a claim against API under RICO.

**B. Plaintiffs Have Adequately Alleged A Claim Under Section 1962(b)**

The Report further erred in concluding that Plaintiffs failed to allege an injury resulting from Defendants' acquisition or maintenance of control over the RICO enterprise under § 1962(b). Report, at 58. Plaintiffs alleged that Defendants acquired and maintained control over the enterprise to perpetuate their fraudulent scheme, which directly harmed Plaintiffs by facilitating increased carbon emissions and climate-related destruction. *See* Am. Compl. ¶¶ 726-763*;* Am. Racketeering Case Stmt. ¶¶ 16, 18; *see also* § 1962(b) ("It shall be unlawful for any person through a pattern of racketeering activity … to acquire or maintain … any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."). The injuries Plaintiffs suffered were a direct and foreseeable consequence of this unlawful control, as it enabled Defendants to deceive Plaintiffs and the public, forestalling necessary climate mitigation efforts. *See* Am. Racketeering Case Stmt. ¶¶ 5, 8(e)(i), 9. The harm inflicted upon Plaintiffs – the forestalling of necessary climate mitigation efforts – is a distinct injury sufficient to allege their claims.

For the foregoing reasons, Plaintiffs respectfully request that the Court decline to follow the Report's recommendation to dismiss the claims brought pursuant to §§1962(a) and (b) and

6

allow these claims to proceed. The allegations in the Amended Complaint and Racketeering Case Statement sufficiently establish the necessary elements for these causes of action, and dismissal at this stage would be premature and unjust.

In the alternative, Plaintiffs should be allowed discovery on the RICO §§1962(a) and (b) claims, just as the Report recommends allowing discovery on the RICO claims more generally. *See* Report, at 54. Plaintiffs have sufficiently alleged that most of the information pertaining to Defendants RICO activities, including information concerning Defendants' reinvestment of the proceeds and acquisition and control of the enterprise, is under the control of Defendants. Omnibus Response, Dkt. No. 280, at 35. Taking these allegations as true, as the Court must, it is reasonable to deduce that Defendants should have discoverable information regarding their funding and control.

## III. PLAINTIFFS' OBJECTION TO RECOMMENDATION TO DISMISS PLAINTIFFS' DESIGN DEFECT CLAIM

The Report identifies the applicable tests to establish a design defect as the consumer expectation test or the cost-benefit analysis test, citing *Vazquez-Filippetti v. Banco Popular de Puerto Rico*, 504 F.3d 43, 52 (1st Cir. 2007), but erroneously concluded that Plaintiffs failed to plead a design defect and causation. Report, at 86-87. This presents two layers of inaccuracy; Plaintiffs have adequately alleged a design defect under the consumer expectation test, and they have adequately alleged that the defect proximately caused their injuries.

### A. Plaintiffs Adequately Alleged A Design Defect

Plaintiffs' well-pleaded allegations satisfy the consumer expectation test. *See Vazquez-Filippetti*, 504 F.3d at 52. Under that test, "a product may be found defective in design if the plaintiff demonstrates 'that the product failed to perform as safely as an ordinary consumer would

expect when used in an intended or reasonably foreseeable manner.'" *Carballo-Rodriguez v. Clark Equip. Co.*, 147 F. Supp. 2d 66, 71 (D.P.R. 2001).

The Report faulted Plaintiffs for supposedly failing to allege what the "ordinary consumer would expect" in using the product as intended. *See* Report, at 86. But Plaintiffs alleged exactly what a consumer would expect from fossil fuels: a safe product. Am. Compl. ¶¶ 3, 656. Plaintiffs alleged that Defendants' extensive and deliberate misrepresentations about the safety and environmental impact of fossil fuel products actively prevented consumers from forming an accurate expectation of how their products should work. *Id.* ¶¶ 17, 658, 778, 800. Plaintiffs alleged that the Defendants had extensive scientific knowledge of the dangers posed by their products, intentionally hid this information, and led misleading marketing campaigns that prevented the public from independently understanding the true catastrophic effects of fossil fuel consumption and plastic proliferation on the climate. Am. Compl. ¶¶ 294-585.

Consumer expectations are not formed in a vacuum. Rather, they are shaped by the representations of the seller. When manufacturers withhold critical safety information, they prevent consumers from forming accurate expectations regarding safety. As a result, the products are more dangerous than could have been anticipated by consumers who did not have this critical information. *See Carballo-Rodríguez*, 147 F. Supp. 2d at 72 (holding that that a product can be deemed defective even when the accident itself precludes identification of a specific defect, so long as the plaintiff can show the product did not meet ordinary consumer expectations). This principle is particularly significant where omissions of material information prevent consumers from forming an accurate understanding of a product's risks.

As detailed below, Plaintiffs alleged that the fossil fuel industry knew for decades that their products would lead to climate catastrophe but failed to disclose this information. Instead, they

engaged in a calculated campaign of misinformation, including misrepresenting to the public that

climate change was non-existent or harmless. For instance, Defendants falsely promoted claims

such as:

1. "Carbon dioxide is a harmless trace essential gas in the atmosphere that humans exhale…
   Slightly higher atmospheric CO2 levels cannot possibly supplant the numerous complex
   and inter-connected forces that have always determined Earth's climate." Am. Compl. ¶
   673(f).

2. "Scientific uncertainty and the evolution of energy systems indicate that policies to curb
   greenhouse gas emissions beyond 'no regrets' measures could be premature, divert
   resources from more pressing needs and further distort markets." Am. Compl. ¶ 361.

3. "The GCC believes that the preponderance of the evidence indicates that most, if not all,
   of the observed warming is part of a natural warming trend which began approximately
   400 years ago. If there is an anthropogenic component to this observed warming, the GCC
   believes that it must be very small and must be superimposed on a much larger natural
   warming trend…The GCC believes there is no convincing evidence that future increases
   in greenhouse gas concentrations will produce significant climate effects." Am. Compl. ¶
   366.

4. "There is considerable debate on whether or not man-made greenhouse gases (produced
   primarily by burning fossil fuels) are triggering a dangerous 'global warming' trend…. We
   know that climate change over the last 100 years is well within the planet's natural variation
   (the global climate has never been 'stable'). If scientists don't agree that man-made global
   warming is a problem, does the United States want to pay the costs incurred from an energy
   tax, including a diminished competitive position with our trading partners?" Am. Compl.
   ¶ 374.

5. "[f]or the first half of 1992, America was inundated by the media with dire predictions of
   global warming catastrophes . . . the media hype proclaiming the sky was falling did not
   properly portray the consensus of the scientific community." Am. Compl. ¶ 376.

6. "[t]he notion that scientists have reached consensus that man-made emissions of
   greenhouse gases are leading to a dangerous level of global warming is not true." Am.
   Compl. ¶ 380.

7. "Scientific evidence remains inconclusive as to whether human activities affect the global
   climate... Taking drastic action immediately is unnecessary since many scientists agree
   there's ample time to better understand climate systems and develop the best long-term
   strategies." Am. Compl. ¶ 384.

These statements, and others like them, clearly demonstrate Defendants' efforts to manipulate public perception and suppress knowledge of the catastrophic consequences of fossil fuel usage. As a result of these deliberate misrepresentations, the ordinary consumer would expect that, when used as intended, fossil fuels would have a minimally dangerous impact, if *any*, on the climate. This is not true. In reality, they have a disastrous impact on the climate, and therefore "failed to perform as safely" as an ordinary consumer would expect. *Carballo-Rodriguez*, 147 F. Supp. 2d at 71. The Court should decline to follow the recommendation on this issue and hold that Plaintiffs have adequately alleged a design defect.

### B. Plaintiffs Adequately Alleged Proximate Causation

The Report did not meaningfully engage with Plaintiffs' proximate cause argument, holding in a single sentence that Plaintiffs "have not established that Defendants' fossil fuel products proximately caused a design defect injury." Report, at 86-87. This Court should decline to adopt this recommendation and allow the question of proximate causation to proceed to discovery.

Under Puerto Rico law, to prove proximate cause, Plaintiffs must show that there is a "reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." *Ayala v. Kia Motor Corp.*, 633 F. Supp. 3d 555, 569 (D.P.R. 2022). Plaintiffs have met this burden. Plaintiffs have alleged that Defendants' fossil fuel products caused an increase in greenhouse gas emissions, which in turn accelerated climate change and led to the damages suffered by Puerto Rico municipalities, including extreme weather events, rising sea levels, and infrastructure destruction. Am. Compl. ¶¶ 213-293. Plaintiffs' Amended Complaint further alleges that Defendants knew about the causal link and

attempted to hide it. Am. Compl. ¶¶ 294-585. Specifically, the Amended Complaint, along with the Racketeering Case Statement, alleged:

1. Defendants' internal studies dating back to the 1950s and 1960s acknowledged that fossil fuel combustion would lead to increased atmospheric $CO_2$ levels and resultant global warming, with foreseeable catastrophic consequences. Am. Compl. ¶¶ 297-300.

2. Defendants, after confirming the risks of fossil fuel consumption, shifted from scientific inquiry to public deception, funding misinformation campaigns to cast doubt on climate science and suppress public awareness of the risks. Am. Compl. ¶¶ 346-347, 353-500.

3. Defendants deliberately misrepresented their fossil fuel products as environmentally safe, falsely promoting them as "clean" or "green energy," despite their internal knowledge of the devastating environmental consequences of continued use. Am. Compl. ¶¶ 525-557.

4. Defendants' projections showed that climate change would intensify hurricanes and other extreme weather events, disproportionately affecting coastal and island communities such as Puerto Rico. Am. Racketeering Case Stmt. ¶ 19.

5. Defendants conspired through industry groups like the Global Climate Coalition (GCC) and the American Petroleum Institute (API), whom itself was a founding member of the GCC, to perpetuate climate change denial, ensuring continued fossil fuel consumption despite knowing the harm it would cause. Am. Compl. ¶¶ 205-208, 363-387; Am. Racketeering Case Stmt. ¶¶ 2, 5, 18-19.

6. Plaintiffs explicitly allege that Defendants' fossil fuel products were designed in a way that made their normal and intended use the primary driver of climate change, directly leading to sea level rise, stronger hurricanes, and infrastructure destruction in Puerto Rico. Am. Compl. ¶¶ 216-217, 272-277.

7. Defendants' failure to warn and continued promotion of their fossil fuel products directly contributed to the increased severity of hurricanes, which caused massive damage to Puerto Rico's municipalities. Am. Compl. ¶¶ 238-293.

In sum, Plaintiffs have provided extensive allegations, backed by Defendants' own internal research and conduct, demonstrating that Defendants' fossil fuel products' defective design was the proximate cause of their injuries. The Report's conclusions that proximate causation was not established—a conclusion in a single conclusory sentence—ignores all these allegations. For these reasons, the Court should allow the design defect claim to proceed to discovery, where the full extent of Defendants' misconduct can be properly examined.

## IV.  PLAINTIFFS' OBJECTION TO REPORT'S RECOMMENDATION TO DISMISS FAILURE TO WARN CLAIM

The Report recommends dismissing the duty to warn claim on the ground that he "do[es] not read the duty to warn" to be so "expansive" to apply to a failure to warn "of the effects that fossil fuels had on climate change." Report, at 87-88. But Courts have long held that when a manufacturer possesses specialized knowledge about its product's risks but fails to disclose this information, consumers cannot be deemed to have assumed those risks. *See*, *e.g.*, *Guevara v. Dorsey Labs., Div. of Sandoz, Inc.*, 845 F.2d 364, 367 (1st Cir. 1988) ("The duty to warn in general is limited to hazards not commonly known to the relevant public.") And here, Defendants knew for decades that their products would cause long-term environmental devastation, yet they failed to disclose these risks. Am. Compl. ¶¶ 294-585. Latent dangers, especially those known to the manufacturer but unknowable to the consumer, squarely fall within the scope of a failure-to-warn claim.  Thus, the Court should allow the claim to proceed to discovery.

### A. Puerto Rico Law Recognizes A Duty To Warn Of Both Immediate And Latent Risks

As the Report correctly recognized, to prevail on a failure-to-warn claim, Plaintiffs must only show:

1. The manufacturer knew or should have known of the risk inherent in the product;

2. There were no warnings or instructions, or those provided were inadequate;

3. The absence of warnings made the product inherently dangerous; and

4. The absence of adequate warnings or instructions was the proximate cause of Plaintiffs' injury.

Report, at 87 (quoting *Cruz Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 276 (1st Cir. 2003) (citing *Aponte Rivera v. Sears Roebuck*, 144 D.P.R. 830 (1998))).

However, nothing in these four requirements restricts this duty solely to immediate effects to "users [who] may encounter using the product." Report, at 87. Thus, the defining elements are whether the manufacturer possessed superior knowledge of the risk and failed to warn consumers. *Id.* (citing *Adams v. Union Carbide Corp.*, 737 F.2d 1453, 1456-57 (6th Cir. 1984)). As discussed in detail below, Plaintiffs adequately pleaded those elements.

### B. Defendants Knew Of The Latent Effects Of Their Products But Chose To Suppress This Information

The Report's reasoning failed to consider that Plaintiffs alleged—extensively and with specificity—that Defendants engaged in a coordinated campaign to conceal the very risks that would have triggered their duty to warn. Am. Compl. ¶¶ 297-585. Defendants' internal research confirmed as early as the 1950s that fossil fuel combustion and plastic pollution would lead to climate catastrophe. Am. Compl. ¶¶ 297-300. Instead of warning the public, Defendants deliberately spread misinformation to downplay or outright deny these dangers. Am. Compl. ¶¶ 300-585.

13

This is precisely the type of conduct that Puerto Rico's failure-to-warn doctrine is designed to prevent. Plaintiffs' allegations demonstrate that Defendants:

- Had actual knowledge of the long-term risks of their fossil fuel and plastic products, including their role in climate change and environmental degradation *Id.* ¶ 785;

- Were uniquely positioned to understand and disclose these risks, given their scientific expertise and internal research *Id.*; and

- Actively chose to suppress this information, misleading the public and regulators into believing these products were safe. *Id.* ¶ 787.

Puerto Rico law recognizes that a manufacturer has a duty to warn of risks associated with its product, including those that arise from foreseeable uses. *Silva v. Am. Airlines, Inc.*, 960 F. Supp. 528, 533 (D.P.R. 1997) (holding that "[t]he omission to provide warnings is a basis for the application of liability, if the defendant knew, or should have known, of the danger or risk involved, and the need to warn in order to assure the safest use of the product."). Here, Defendants' failure to warn of climate-related harms was not merely an omission, but a deliberate concealment of known dangers—conduct that goes beyond negligence and into the realm of intentional misconduct.

Defendants' duty to warn is particularly important in this case because, unlike ordinary risks that consumers might perceive (e.g., fire hazards or toxicity warnings), the climate consequences of fossil fuel products are complex, long-term, and dependent on scientific data in Defendants' possession. This case is analogous to tobacco litigation, where courts rejected the notion that consumers should have inherently known the long-term risks of smoking. In *Cruz Vargas*, the First Circuit recognized that a failure-to-warn claim against tobacco manufacturers could be maintained because the manufacturers possessed superior knowledge regarding the long-

term dangers of smoking, failed to disclose them, and then seeded doubt as to the dangerous effects of smoking. *Cruz Vargas*, 348 F.3d at 276 (citing *Tompkin v. American Brands*, 219 F.3d 566, 568-70 (6th Cir. 2000) (holding that smokers were not adequately informed of risks because of the contents of industry reports and periodicals released in the relevant time period). Similarly, here, Defendants' fossil fuel products were marketed as safe and essential, and any emerging public knowledge about climate risks was countered by Defendants' misinformation campaigns.

As a result of Defendants' misinformation campaign, and in the absence of adequate warnings, Defendants' fossil fuel products have created long-term environmental hazards, including:

- Rising global temperatures and extreme weather events. Am. Compl. ¶ 226;

- Irreversible damage to coastal infrastructure and economies. Am. Compl. ¶ 248; and

- Damage to critical infrastructure and access to clean water. Am. Compl. ¶¶ 258-259.

These dangers, had they been properly disclosed, would have allowed municipalities, regulators, and consumers to take precautionary measures—potentially mitigating the devastation that Puerto Rico now faces. Defendants' deliberate failure to warn ensured that such measures were never taken.

In sum, Plaintiffs have adequately pleaded all of the required elements necessary to allege a viable claim:

1. Defendants knew of the long-term catastrophic effects of their fossil fuel and plastic products. Am. Compl. ¶ 787;

2. Had a duty to warn under Puerto Rico law. Am. Compl. ¶ 786.

3. Failed to warn, instead engaging in a decades-long campaign of deception. Am. Compl. ¶ 787; and

4. Caused Plaintiffs' damages by preventing municipalities and consumers from taking necessary precautions. Am. Compl. ¶ 796.

Accordingly, Plaintiffs respectfully request that the Court decline to follow the Report's recommendation to dismiss the failure-to-warn claim and allow the case to proceed to discovery, where Defendants' suppression of critical scientific knowledge can be fully examined.

## V.    PLAINTIFFS' OBJECTION TO RECOMMENDATION TO DISMISS UNJUST ENRICHMENT CLAIM

The unjust enrichment claim should not be dismissed. The Magistrate Judge's Report recommends dismissing this claim solely on the basis that "there are other forms of relief available in this case." Report, at 90. But this decision is premature, because it is too early to tell whether there will be other forms of relief available or not. At this stage, the question is whether Plaintiffs have alleged facts sufficient to state a claim for unjust enrichment. They have done so; therefore, dismissal is improper at this stage and the claim should proceed.

### A. Plaintiffs' Unjust Enrichment Claim Is Not Barred Merely Because Other Legal Claims Exist

The Report is incorrect in holding that unjust enrichment claims must always be dismissed when there are other remedies "available," in the sense of plausibly pled. Were this true, a party could *never* plead an unjust enrichment claim along with other plausible claims for relief. That cannot be right.

Indeed, courts routinely allow unjust enrichment claims to proceed alongside other claims where the precise scope of legal remedies remains uncertain. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. BFPRU I, LLC,* No. 16-CV-01450 (JGK), 230 F.Supp.3d 253, 266 (S.D.N.Y. Jan. 30, 2017) ("A court may allow a breach of contract and an unjust enrichment claim to proceed past the motion to dismiss stage when the validity or scope of the contract is difficult to determine."). The premise is

consistent the Federal Rules of Civil Procedure. *See* Fed. R. Civ. Pro. 8(a)(3) and (d). Federal Rule 8(a)(3) provides that "a demand for relief … may include relief in the alternative or different types of relief." Fed. R. Civ. Pro. 8(a)(3). The First Circuit has stated that "it is accepted practice to pursue both [unjust enrichment and other] theories at the pleading stage." *Lass v. Bank of Am.*, N.A., 695 F.3d 129, 140 (1st Cir. 2012); *see also Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 294-95 (D. Mass. 2009) (noting that Federal Rule of Civil Procedure 8(d) "permits Plaintiffs to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if Plaintiffs only can recover under one of these theories").

The Court has the discretion to wait to dismiss the Plaintiff's unjust enrichment claim later if, after discovery, one of the other claims provides an adequate remedy. It should do just that. This exercise of discretion is particularly important at this stage because the precise scope of legal remedies remains uncertain. For example, if the Court adopts the Report's recommendations and dismisses Plaintiffs' claims under Puerto Rico law, the only available remedy under Puerto Rico law would be unjust enrichment. Under Puerto Rico law, Plaintiffs should be allowed to pursue an unjust enrichment claim in the event no other Puerto Rico law claims are available.

**B. Plaintiffs Have Passed The *Twombly* Plausibility Test For Unjust Enrichment**

The Magistrate Judge's Report did not address Plaintiffs' allegations other than to say the claim was barred due to the existence of other forms of relief, but this Court should hold that Plaintiffs have plausibly pled the elements of unjust enrichment. Under Puerto Rico law, a claim for unjust enrichment requires: (1) the existence of enrichment; (2) a correlative loss; (3) a nexus between the loss and enrichment; (4) the lack of a legal cause for the enrichment; and (5) the absence of a legal precept excluding the application of enrichment without cause. *Montalvo v. LT's Benjamin Records, Inc.*, 56 F. Supp. 3d 121, 136 (D.P.R. 2014) (citing *Hatton v. Municipality of*

17

*Ponce*, 1994 P.R.-Eng. 909605, 134 D.P.R. 1001 (PR 1994)).  All five elements are satisfied here.  *See* Am. Compl. ¶¶ 289-291.  In particular:

- **Enrichment & Correlative Loss**: The Amended Complaint alleges that Defendants profited by selling fossil fuel products while knowingly deceiving the public about their long-term climate impacts. *See,* Am. Compl. ¶¶ 80, 82, 202, 261, 580, 617. Meanwhile, Plaintiffs suffered economic losses by having to fund disaster recovery, healthcare, and infrastructure repairs caused by extreme weather events linked to Defendants' products. *See,* Am. Compl. ¶ 240.

- **Nexus Between Enrichment and Loss**: The Amended Complaint alleges that Defendants' fraudulent conduct directly contributed to Plaintiffs' financial burdens by delaying meaningful climate mitigation efforts and shifting the costs of climate adaptation onto local governments. *See,* Am. Compl. ¶ 584. This establishes a clear causal connection between Defendants' enrichment and Plaintiffs' losses.

- **Lack of Cause for Enrichment**: Defendants' enrichment was not based on a lawful right but rather on decades of deception, misinformation, and concealment of climate risks, which denied Plaintiffs the ability to take preventive measures.

- **No Legal Precept Excluding Unjust Enrichment**: Defendants have pointed to no Puerto Rico statute that precludes unjust enrichment in these circumstances.  In this case, the sole reason why the Magistrate Judge recommended the claim for unjust enrichment be dismissed is the existence of alternative means of relief.

For these reasons, Plaintiffs respectfully request that the Court maintain the unjust enrichment claim and allow the case to proceed to discovery. Puerto Rico law does not *prohibit*

proceeding on unjust enrichment as an alternative theory of relief to the other causes of action alleged in this case, and factual disputes remain as to the adequacy of other legal remedies.

## VI.    PLAINTIFFS' OBJECTION TO RECOMMENDATION TO DISMISS PUBLIC AND PRIVATE NUISANCE CLAIMS

Plaintiffs respectfully object to the Report's recommendation that Plaintiffs' private and public nuisance causes of action be dismissed. Report, at 88-89. The Report appeared to provide two reasons for this recommendation. First, the Report suggested that recovery of damages for private and public nuisance under P.R. Laws Ann. tit. 32, § 2761 is "dependent on abatement" in the form of *injunctive relief*, and that Plaintiffs failed to seek that remedy. Report, at 88. This is incorrect; seeking abatement through injunctive relief is not required to allege a plausible claim for nuisance, and, in any event, Plaintiffs clearly requested abatement through damages and injunctive relief. Second, the Report found that Plaintiffs failed to properly plead causation for their nuisance claims. *Id.* at 89. This is incorrect as well; Plaintiffs adequately alleged that Defendants' activities caused the damages claimed.

### A.  Plaintiffs Properly Alleged Abatement Under Puerto Rico Law

To the extent the Magistrate Judge held that a nuisance claim may proceed only if a party seeks abatement by injunction, that is incorrect. *See* Report, at 88. In *Casiano Sales v. Lozada Torres*, 91 D.P.R. 488 (1964), the Supreme Court summarized the purpose of an award of damages under nuisance law as follows:

> In applying § 277 of our Code of Civil Procedure, two purposes must be accomplished: (1) abate the nuisance to such an extent as to be compatible with the enjoyment of the property, and (2) compensate the damages caused up to the time of the trial. The existence of a nuisance bears relation of cause and effect on the damage suffered. In case of minimum damages, the annoyance being also minimum, the only concern is the amount of the compensation.

19

*Sales v. Torres*, 91 D.P.R. 488, 1964. The purpose above is consistent with the plain language of § 277 of the Code of Civil Procedure of Puerto Rico, which states that "[s]uch action may be brought by any person, public agency or municipality whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be either ***enjoined or abated***, as well as damages recovered.  P.R. Laws Ann. tit. 32, § 2761 (emphasis added). Thus, Plaintiffs do not have to seek abatement exclusively by way of injunctive relief under Puerto Rico law.

Plaintiffs clearly seek abatement, which is an appropriate remedy for the Municipalities. *See* Restatement (Second) of Torts, § 821C, cmt. j ("A public official who is authorized to represent the state or an appropriate subdivision in an action to abate or enjoin a public nuisance may of course maintain the action."). The Amended Complaint details the ongoing and substantial harms caused by Defendants' actions, which harms include the destruction of municipal infrastructure, the exacerbation of extreme weather events, and the urgent need for protective and remedial measures that have yet to be fully implemented due to financial constraints. Am. Compl. ¶ 774. Plaintiffs allege that Defendants' conduct has forced municipalities to bear increasing costs to rebuild essential services, such as power grids, transportation infrastructure, and public buildings, Am. Compl. ¶ 774, and that further mitigation efforts—including seawalls, infrastructure hardening, and protections for fisheries and coral reefs—are necessary to safeguard against (to abate) future climate-related harms. Am. Compl. ¶ 775. While some costs have already been incurred, the Amended Complaint makes clear that additional remedial actions are needed, and the abatement sought is the financial relief required to implement those necessary measures. Am. Compl. ¶ 775. Furthermore, Plaintiffs assert that these harms are permanent and worsening, directly resulting from Defendants' deliberate misinformation

campaign regarding climate change. Am. Compl. ¶¶ 779-780. The necessity of these corrective measures and the assertion that the harms will continue without intervention demonstrate a clear request for abatement.

In any event, to the extent a request for abatement through injunctive relief is also required (and, as explained above, it is not), Plaintiffs seek abatement by injunctive relief as well. The Amended Complaint's Prayer for Relief requests damages "to be paid by the Municipalities of Puerto Rico and their citizens in the future on account of the Defendants' wrongful conduct", Am. Compl. ¶ 834(b)), and "[f]or such other and further extraordinary equitable, declaratory, and/or *injunctive relief* as permitted by law as necessary to assure that the Municipalities of Puerto Rico and their citizens have an effective remedy." Am. Compl. ¶ 834(f)) (emphasis added). Thus, Plaintiffs are seeking abatement, *including by injunctive relief*.

### B. Plaintiffs Adequately Alleged Causation

Plaintiffs object to the Report's finding that "Plaintiffs have failed to show a causal nexus between Defendants' acts or omissions and the damages claimed for any prior or ongoing conduct that can be said to be injurious to health and that interfered with the enjoyment of property by the Municipalities." Report, at 89. Plaintiffs alleged a causal nexus. Indeed, the Report found that Plaintiffs alleged proximate cause under RICO. Report, at 45-48. This analysis is no different.

The Amended Complaint states that "Defendants have deceived and continue to deceive the Municipalities and their citizens", and that "Plaintiffs relied on those deceptions and therefore were unprepared for the impact of the ferocious storms of 2017 and the ongoing losses from them." Am. Compl. ¶ 611. Plaintiffs alleged that "Defendants knew that their acts, omissions, and deceit of the consumers represented by the Plaintiffs as detailed [], would, and did, prevent the Municipalities of Puerto Rico and their citizens from having the knowledge that they needed to

adequately prepare for the "hotter and wetter" storms that pummeled the Island in 2017." *Id.* ¶ 619. In short, had Defendants not deceived Plaintiffs as to the damages caused by fossil fuels, Plaintiffs would have been able to prepare for the increased intensity of the storms and avoided the resulting injuries. *See Lopez Flores v. Gonzalez Padin Co.*, 117 D.P.R. 94, 1986 (holding that, insofar as to liability resulting from omissions, a factor to be taken into account is that the injury could have been avoided if the omitted act were carried out). This is a causal nexus sufficient to plead nuisance.

## VII.    OBJECTION TO REPORT AND RECOMMENDATION REGARDING *PARENS PATRIAE* STANDING

The Report improperly limits Plaintiffs' standing by precluding recovery for their residents under a theory akin to *parens patriae*. *See* Report, at 67-68. This was incorrect for two reasons. First, Puerto Rico law grants municipalities the power to act in the public interest, including taking measures necessary for the protection of public health and safety. Second, Plaintiffs structured their claims under Rule 23, seeking damages and injunctive relief on behalf of a class, which includes their residents as a subclass. The *Parens Patriae* doctrine is inapplicable here.

### A. The Magistrate Judge's Misapplication of *Parens Patriae* Doctrine to Puerto Rico

The Report concluded that Plaintiffs' claims must be dismissed to the extent they seek recovery on behalf of their residents. Report, at 67-68. In so holding, the Report ignores key distinctions between United States state subdivisions and Puerto Rican municipalities.

Unlike counties and cities in the United States, Puerto Rican municipalities operate under a unique statutory regime that expressly *empowers* them to act to protect the public welfare. *See* P.R. Laws Ann. tit. 21, § 7012 ("Municipal autonomy is hereby recognized in the exercise of legal, economic, and administrative powers concerning matters related to the general welfare of their inhabitants."); P.R. Laws Ann. tit. 21, § 7013(bb) ("Municipalities shall have any other inherent

power necessary for the protection of health, safety, and welfare within their territorial jurisdiction."); and P.R. Laws Ann. tit. 21, § 7013 (p) (Municipalities have the power "[t]o exercise both legislative and executive authority in all matters of a municipal nature that promote the community's welfare... and protect the health and safety of individuals..."). Plaintiffs have a responsibility under this regime to maintain infrastructure, protect the public health, and ensure the safety of the environment, all of which have been harmed by Defendants' actions. *Id.* The *parens patriae* case law cited in the Report (at 68) is inapposite, as it pertains to United States cities that are not similarly empowered. This statutory grant establishes a legal basis distinct from traditional *parens patriae* claims brought by sovereign states. Plaintiffs are not invoking *parens patriae* in the conventional sense but are exercising their statutory power to protect their communities from environmental and economic harm inflicted by Defendants' misconduct.

### B. Plaintiffs' Claims Are Properly Framed Within Rule 23 Class Action Principles

In any event, Plaintiffs never asserted a *parens patriae* claim. Instead, they structured their claims under Rule 23 of the Federal Rules of Civil Procedure, seeking damages and injunctive relief on behalf of a class, which includes their residents as a subclass. *See* Am. Compl. ¶¶ 620-622. Plaintiffs' Amended Complaint outlines a well-defined class of all municipalities in Puerto Rico, reserving the right to refine subclass definitions during the class certification stage. *Id.* As detailed in Plaintiffs' Omnibus Response, Plaintiffs' claims are consistent with the statutory framework that allows municipalities to act in the public interest when addressing threats to the health and safety of their communities. *See* Omnibus Response, Dkt. 280, at pp. 100-101. Plaintiffs' Omnibus Response reinforces that the class mechanism serves as the vehicle for representing impacted residents, negating any need to rely on *parens patriae* standing. *Id.* at 82, 102-103.

In sum, Plaintiffs urge the Court to recognize their standing to bring these claims in accordance with Puerto Rico law and the broader principles of justice and community protection. Plaintiffs have demonstrated a statutory basis for their claims unique to Puerto Rico municipalities and have properly framed their case within the Federal Rules of Civil Procedure. Dismissing claims related to their residents would disregard Puerto Rico's legislative framework and deny municipalities the ability to seek redress for harm inflicted upon their communities.

## VIII.  CONDITIONAL REQUEST FOR LEAVE TO AMEND THE COMPLAINT

The Federal Rules of Civil Procedure favor granting leave "freely" to amend a complaint when "justice so requires." Fed. R. Civ. P. 15(a)(2). To the extent the Court finds the Complaint deficient in any regard, Plaintiffs respectfully request dismissal without prejudice with leave to amend so that it may amend to cure any deficiencies. Given the magnitude of Defendants' misconduct and their ongoing concealment of relevant evidence, Plaintiffs should be permitted to amend their claims.

*By: /s/Roy L. Mason*
Roy L. Mason
USDC-PR Bar No. 308164
SMOUSE & MASON LLC
223 Duke of Gloucester Street
Annapolis, Maryland 21401
Telephone: (410) 269-6620
Facsimile: (410) 269-1235
rlm@smouseandmason.com

Luis Valiente Almeida-Olivieri
USDC-PR Bar No. 308307
MILBERG COLEMAN BRYSON PHILLIPS
GROSMAN LLC
1311 Ponce de Leon Ave, Suite 700
San Juan, Puerto Rico 00907
Telephone: (866) 252-0878
lalmeida@milberg.com

*Attorney for Plaintiffs*