# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE MUNICIPALITIES OF BAYAMÓN, CAGUAS, LOÍZA, LARES, BARRANQUITAS, COMERÍO, CAYEY, LAS MARÍAS, TRUJILLO ALTO, VEGA BAJA, AÑASCO, CIDRA, AGUADILLA, AIBONITO, MOROVIS, MOCA, BARCELONETA, CAMUY, CATAÑO, SALINAS, ADJUNTAS, ARROYO, CULEBRA, DORADO, GUAYNABO, HORMIGUEROS, JUNCOS, LAJAS, MANATÍ, NAGUABO, NARANJITO, UTUADO, VILLALBA, COAMO, OROCOVIS, VIEQUES, and YABUCOA on behalf of themselves and others similarly situated, known as the MUNICIPALITIES OF PUERTO RICO, | Civil Case No. 3:22-cv-01550-SCC-HRV

Re:
Consumer Fraud; Deceptive Business Practices; Racketeer and Corrupt Organizations Act, 18 U.S.C. § 1962; Sherman Act, 15 U.S.C. § 1 et seq.; Public Nuisance; Strict Liability – Failure to Warn; Strict Liability – Design Defect; Negligent Design Defect; Private Nuisance; Unjust Enrichment |
| Plaintiffs, | |
| v. | |
| EXXONMOBIL CORP, SHELL PLC F.K.A. ROYAL DUTCH SHELL PLC, CHEVRON CORP, BP PLC, CONOCOPHILLIPS, MOTIVA ENTERPRISES LLC, OCCIDENTAL PETROLEUM F.K.A. ANADARKO PETROLEUM CORP, BHP, RIO TINTO PLC, AMERICAN PETROLEUM INSTITUTE, XYZ CORPORATIONS 1-100, and JOHN AND JANE DOES 1-100, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

## DEFENDANTS' JOINT RESPONSES TO

## PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ........................................................................................... 6

ARGUMENT ........................................................................................................ 7

    I.    The Magistrate Judge Correctly Recommended Dismissal of Plaintiffs'
        Section 1962(a) and (b) RICO Claims................................................... 7

    II.    As the Magistrate Judge Recognized, Plaintiffs' Puerto Rico Law Claims
        Should Be Dismissed. ........................................................................... 8

        A.    Plaintiffs' Puerto Rico Law Claims Are Barred By Federal Law. ............ 9

        B.    Like Plaintiffs' Federal Claims, Plaintiffs' Puerto Rico Law
            Claims Are Barred By The Statute of Limitations.................................... 21

        C.    Plaintiffs Failed To State A Claim Under Puerto Rico Law.................... 24

        D.    Plaintiffs Failed to Plead Their Puerto Rico Law Claims With
            Particularity.......................................................................................... 34

    III.    Plaintiffs Lack *Parens Patriae* Standing. ............................................ 35

    IV.    Jurisdictional Discovery Is Not Warranted.......................................... 36

    V.    The Court Should Reject Plaintiffs' Conditional Request For Leave to
        Amend................................................................................................... 38

CONCLUSION.................................................................................................... 38

## TABLE OF AUTHORITIES

**Cases**

*Abraham v. Woods Hole Oceanographic Inst.*,
    553 F.3d 114 (1st Cir. 2009) .......................................................................................6

*Am. Elec. Power Co. v. Connecticut*,
    564 U.S. 410 (2011) ...........................................................................................11, 15

*Am. Ins. Ass'n v. Garamendi*,
    539 U.S. 396 (2003) ...........................................................................................17, 18

*Anne Arundel Cnty. v. BP plc*,
    No.C-02-CV-21-000565, 2025 WL 588595 (Md. Cir. Ct. Jan. 23, 2025) ...............................3

*Aponte-Torres v. Univ. of Puerto Rico*,
    445 F.3d 50 (1st Cir. 2006)...................................................................................6, 38

*Ayala v. Kia Motor Corp.*,
    633 F. Supp. 3d 555 (D.P.R. 2022).............................................................................25

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.), Inc.*,
    2024 WL 3204275 (Colo. Dist. Ct. June 21, 2024) ....................................................16

*Bell v. Cheswick Generating Station*,
    734 F.3d 188 (3d Cir. 2013)...................................................................................19

*Bonilla v. Trebol Motor Corp.*,
    913 F. Supp. 655 (D.P.R. 1995).................................................................................23

*Borden v. Sec'y of Health & Human Servs.*,
    836 F.2d 4 (1st Cir. 1987).......................................................................................6

*Boyle v. United Techs. Corp.*,
    487 U.S. 500 (1988)...............................................................................................10

*Caro-Bonet v. Lotus Mgmt., LLC*,
    195 F. Supp. 3d 428 (D.P.R. 2016)............................................................................34

*Carballo-Rodríguez v. Clark Equip. Co.*,
    147 F. Supp. 2d 66 (D.P.R. 2001).............................................................................27

*Cherox Inc. v. Tip Top Constr. Corp.*,
    175 F. Supp. 3d 1 (D.P.R. 2016).................................................................................2

*City & Cnty. of Honolulu v. Sunoco LP*,
    537 P.3d 1173 (Haw. 2023) ....................................................................................16

*City of Annapolis v. BP plc*,
    No. C-02-CV-21-000250, 2025 WL 588595 (Md. Cir. Ct. Jan. 23, 2025) ...............3, 4, 14, 20

*City of Milwaukee v. Illinois*,
    451 U.S. 304 (1981)...............................................................................................11

*City of New York v. Chevron Corp.*,
   325 F. Supp. 3d 466 (S.D.N.Y. 2018)..........................................................3, 11, 13

*City of New York v. Chevron Corp.*,
   993 F.3d 81 (2d Cir. 2021).......................................3, 10, 11, 13, 16, 17, 18, 19

*City of New York v. Exxon Mobil Corp.*,
   No. 451071/2021, 2025 WL 209843 (N.Y. Sup. Ct. Jan. 14, 2025).....................3

*City of Oakland v. BP P.L.C.*,
   325 F. Supp. 3d 1017 (N.D. Cal. 2018) .....................................................3, 11, 13

*Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*,
   57 F.3d 56 (1st Cir. 1995)..............................................................................3, 7, 8

*Cruz-Vargas v. R.J. Reynolds Tobacco Co.*,
   348 F.3d 271 (1st Cir. 2003)..............................................................................28, 29

*Davet v. Maccarone*,
   973 F.3d 22 (1st Cir. 1992) ......................................................................................1

*Doe v. Trustees of Bos. Coll.*,
   942 F.3d 527 (1st Cir. 2019)..................................................................................33

*Dillon v. Combs*,
   895 F.2d 1175 (7th Cir. 1990) ...............................................................................35

*State ex rel. Ellison v. Am. Petroleum Inst.*,
   No. 62-CV-20-3827 (Minn. Dist. Ct. Feb. 14, 2025) ...........................................16

*Entact Servs., LLC v. Rimco, Inc.*,
   526 F. Supp. 2d 213 (D.P.R. 2007).....................................................................1, 7

*Erie R. Co. v. Tompkins*,
   304 U.S. 64, 78 (1938)...........................................................................................33

*In re Fin. Oversight & Mgmt. Bd.*,
   578 F. Supp. 3d 267 (D.P.R. 2021)..................................................................31, 32

*In re Firearm Cases*,
   126 Cal. App. 4th 959 (2005) ...............................................................................28

*In re Rivera*,
   627 B.R. 765 (B.A.P. 1st Cir. 2021) .....................................................................36

*Fisher v. Kadant, Inc.*,
   589 F.3d 505 (1st Cir. 2009)...................................................................................6

*Foisie v. Worcester Polytechnic Inst.*,
   967 F.3d 27 (1st Cir. 2020)....................................................................................34

*Franchise Tax Bd. of Cal. v. Hyatt*,
   587 U.S. 230 (2019)................................................................................................10

*Ghaffar v. Paulson*,
   2024 WL 453142 (D.P.R. Feb. 5, 2024) .................................................................31

*Goya de Puerto Rico, Inc. v. Rowland Coffee*,
   206 F. Supp. 2d 211 (D.P.R. 2002) ........................................................................33

*Guevara v. Dorsey Laboratories, Div. of Sandoz, Inc.*,
   845 F.2d 364 (1st Cir. 1988) ...................................................................................30

*Hodge v. Parke Davis & Co.*,
   833 F.2d 6 (1st Cir. 1987) .......................................................................................21

*Illinois v. City of Milwaukee*,
   406 U.S. 91 (1972) ...................................................................................................11

*Illinois v. City of Milwaukee*,
   731 F.2d 403 (7th Cir. 1984) ...................................................................................16

*Int'l Paper Co. v. Ouellette*,
   479 U.S. 481 (1987) ....................................................................................11, 18, 19

*State ex rel. Jennings v. BP Am. Inc.*,
   2024 WL 98888 (Del. Super. Ct. Jan. 9, 2024) .................................3, 14, 19, 22, 27

*Johnson & Johnson Talcum Powder Cases*,
   37 Cal. App. 5th 292 (2019) ....................................................................................29

*Kelley v. Machine Learning Integration LLC*,
   2022 WL 22257065 (D.P.R. Sept. 30, 2022) ..........................................................32

*Kelley v. Mammoth Energy Services*,
   2022 WL 22257070 (D.P.R. Sept. 2, 2022) ............................................................31

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997) .................................................................................................23

*Kotler v. Am. Tobacco Co.*,
   926 F.2d 1217 (1st Cir. 1990) .................................................................................26

*Kurns v. R.R. Friction Prods. Corp.*,
   565 U.S. 625 (2012) .................................................................................................18

*López-Flores v. Cruz-Santiago*,
   526 F. Supp. 2d 188 (D.P.R. 2007) ........................................................................22

*Machado-Mariscal v. Bayamón Med. Ctr. Corp.*,
   2024 WL 5405261 (D.P.R. 2024) ..............................................................................2

*Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R.*,
   2015 WL 5719801 (D.P.R. 2015) ............................................................................32

*Mayor & City Council of Baltimore v. BP P.L.C.*,
   2024 WL 3678699 (Md. Cir. Ct. July 10, 2024)................................3, 14, 19, 23, 29

*McCabe v. Am. Honda Motor Co.*,
    100 Cal. App. 4th 1111 (2002) ..........................................................................26

*McMillan v. Rodríguez Negrón*,
    511 F. Supp. 3d 75 (D.P.R. 2020) ....................................................................23

*Medellín v. Texas*,
    552 U.S. 491 (2008) ..........................................................................................18

*Mendoza v. Cervecería Corona*,
    97 P.R. Dec. 499 (1969) ....................................................................................25

*Merrick v. Diageo Ams. Suppl, Inc.*,
    805 F.3d 685 (6th Cir. 2015) ............................................................................19

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    No. 07 CIV. 10470, 2015 WL 3763645 (S.D.N.Y. June 16, 2015) ....................28

*Mitchell v. City of Warren*,
    803 F.3d 223 (6th Cir. 2015) ............................................................................29

*N. Bridge Assocs., Inc. v. Boldt*,
    274 F.3d 38 (1st Cir. 2001) ..............................................................................37

*N. Carolina ex. rel. Cooper v. Tenn. Valley Auth.*,
    615 F.3d 291 (4th Cir 2010) ......................................................................15, 19

*Negrón-Torres v. Verizon Commc'ns, Inc.*,
    478 F.3d 19 (1st Cir. 2007) ..............................................................................37

*Ocaso, S.A., Compañía de Seguros y Reaseguros v. P.R. Mar. Shipping Auth.*,
    915 F. Supp. 1244 (D.P.R. 1996) ......................................................................31

*Orellano-Laureano v. Instituto Médico del Norte, Inc.*,
    2023 WL 4532418 (D.P.R. July 13, 2023) ..........................................................7

*Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*,
    840 F.2d 985 (1st Cir. 1988) ....................................................................2, 6, 25

*People of State of N.Y. by Abrams v. Seneci*,
    817 F.2d 1015 (2d Cir. 1987) ............................................................................35

*Platkin v. Exxon Mobil Corp.*,
    2025 WL 604846 (N.J. Super. Ct. Law Div. Feb. 5, 2025) ............3, 4, 9, 15, 16, 17

*Ponsa-Rabell v. Santander Sec., LLC*,
    2020 WL 4219685 (D.P.R. July 22, 2020) ..........................................................8

*Prado Álvarez v. R.J. Reynolds Tobacco Co.*,
    313 F. Supp. 2d 61 (D.P.R. 2004) ....................................................................27

*Puerto Ricans for P.R. Party v. Dalmau*,
    544 F.3d 58 (1st Cir. 2008) ..............................................................................36

*Puerto Rico Soccer League NFP, Corp. v. Federación Puertorriqueña de Fútbol*,
    2024 WL 4362339 (D.P.R. Sept. 30, 2024) ..................................................................25, 32

*Quintana-Ruiz v. Hyundai Motor Corp.*,
    303 F.3d 62 (1st Cir. 2002) ..................................................................................26, 27

*Rhode Island v. Shell Oil Prods. Co.*,
    35 F.4th 44 (1st Cir. 2022) ............................................................................16, 19, 20

*Rife v. One W. Bank, F.S.B.*,
    873 F.3d 17 (1st Cir. 2017) ..........................................................................................38

*Rivera-Muñiz v. Horizon Lines Inc.*,
    737 F. Supp. 2d 57 (D.P.R. 2010) ..............................................................................31

*Rodríguez v. Senor Frog's de la Isla, Inc.*,
    642 F.3d 28 (1st Cir. 2011) ..........................................................................................27

*Román Rivera v. Puerto Rico Elec. Power Auth.*,
    2012 WL 13170557 (D.P.R. Sept. 25, 2012) ..............................................................7

*Rutherford v. Owens-Illinois, Inc.*,
    16 Cal. 4th 953 (1997) ................................................................................................27

*Silva v. Am. Airlines, Inc.*,
    960 F. Supp. 528 (D.P.R. 1997) ................................................................................30

*Soule v. Gen. Motors Corp.*,
    8 Cal. 4th 548 (1994) ..................................................................................................26

*State of Texas v. Enter. Companies, Inc.*,
    No. 85-5519, 1986 WL 31561 (S.D. Tex. Jan. 7, 1986) ............................................35

*Sylva v. Culebra Dive Shop*,
    389 F. Supp. 2d 189 (D.P.R. 2005) ..............................................................................6

*T.H. v. Novartis Pharms. Corp.*,
    4 Cal. 5th 145 (2017) ..................................................................................................29

*Templeman v. Chris Craft Corp.*,
    770 F.2d 245 (1st Cir. 1985) ........................................................................................8

*Tex. Indus. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ....................................................................................................11

*Torres v. E.I. Dupont De Nemours & Co.*,
    219 F.3d 13 (1st Cir. 2000) ..........................................................................................22

*U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*,
    230 F. Supp. 3d 253 (S.D.N.Y. Jan. 30, 2017) ..........................................................31

*U.S. v. Raddatz*,
    447 U.S. 667 (1980) ......................................................................................................6

## Statutes

15 U.S.C. § 15c ...................................................................................................35

18 U.S.C. § 1962 ...........................................................................................2, 3, 7, 8

18 U.S.C. § 1965 ...................................................................................................38

28 U.S.C. § 636 .....................................................................................................6

42 U.S.C. § 7401 ...................................................................................................20

P.R. Laws Ann. tit. 21, § 7012 ...............................................................................36

P.R. Laws Ann. tit. 21, § 7013 ...............................................................................36

## Rules

Fed. R. Civ. P. 9(b) ...........................................................................................4, 34

Fed. R. Civ. P. 72 ..................................................................................................1

Local Civ. R. 5 ......................................................................................................36

Local Civ. R. 72 ...................................................................................................1, 6

## Other Authorities

Appellant Br., *City of New York v. v. BP P.L.C.*, 2018 WL 5905772, No. 18-2188, Dkt. 89 (2d Cir. Nov. 8, 2018) ..............................................................................13

Complaint, *City of Oakland v. BP PLC*, No. RG17875889 (Cal. Super Ct. Sep. 19, 2017) .................................................23

Complaint, *City of San Francisco v. BP PLC*, No. CGC-17-561370 (Cal. Super. Ct. Sep. 19, 2017) ...........................................23

European Commission Joint Research Center, *GHG Emissions of All World Countries* (2024) ...................................................................................................21, 27

Tr. Of Oral Arg., *Baltimore v. BP P.L.C.*, 2021 WL 197342 (U.S. Jan. 19, 2021) ......................13

**TO THE HONORABLE COURT:**

Pursuant to Fed. R. Civ. P. 72(b) and Local Rule 72(d), Defendants respectfully submit these responses to Plaintiffs' Consolidated Objections to Magistrate Judge Héctor Ramos-Vega's February 20, 2025 Report and Recommendation (the "Objections"). Dkt. 323.

## INTRODUCTION

The Magistrate Judge recommended dismissal of all nine of Plaintiffs' Puerto Rico law claims (Claims 1–3, 9–14) and two of Plaintiffs' federal RICO claims (Claims 5 and 6). Because Plaintiffs do not object to the Magistrate Judge's recommended dismissal of Claims 1–3 (Common Law Consumer Fraud, Civil Conspiracy, and Rules Against Misleading Practices and Advertisements), this Court should summarily adopt the Magistrate Judge's recommendation to dismiss them. *See Davet v. Maccarone*, 973 F.3d 22, 30–31 (1st Cir. 1992) ("[F]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal.").

Plaintiffs' objections to the recommended dismissal of their remaining claims are improper and without merit. As a preliminary matter, the Court should disregard many of Plaintiffs' objections as waived because they failed to raise them in opposing Defendants' motions to dismiss and thus failed to raise before the Magistrate Judge. *Compare* Dkt. 280 at 82–87 (Opposition to Joint 12(b)(6) MTD) *with* Dkt. 323 at 7–22 (Objections). Objections to a Magistrate Judge's report and recommendation may not raise "new arguments . . . that w[ere] not provided to [the] Magistrate Judge." *Entact Servs., LLC v. Rimco, Inc.*, 526 F. Supp. 2d 213, 223 (D.P.R. 2007). But that is precisely what Plaintiffs have done here.

For example, in their opposition to Defendants' 12(b)(6) Motion to Dismiss, Plaintiffs' argument in support of their design defect claims was a two-paragraph recitation of the legal standard with no analysis, argument, or citation to the Amended Complaint. Dkt. 280 at 82–83. In stark

contrast, Plaintiffs' objections to the Magistrate Judge's recommendation on that claim span six pages and include arguments advanced for the first time. Dkt. 323 at 7–12. This is improper. As the First Circuit has held that "an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate." *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988); *see also Cherox Inc. v. Tip Top Constr. Corp.*, 175 F. Supp. 3d 1, 3 (D.P.R. 2016); *Machado-Mariscal v. Bayamón Med. Ctr. Corp.*, 2024 WL 5405261, at *2 (D.P.R. 2024) (Carreño, J.). In any event, even if considered, Plaintiffs' new arguments are still insufficient to avoid dismissal, as shown below.

Similarly, for Plaintiffs' Section 1962(a) and (b) RICO claims, Defendants argued that Plaintiffs failed to plead injuries directly attributable to Defendants' alleged *investment* of racketeering income and *control* over the enterprise that are distinct from the injuries allegedly attributable to the predicate racketeering acts. Dkt. 235 at 35. In their Opposition, Plaintiffs offered no response to this argument. Dkt. 280 at 49. The Magistrate Judge noted Plaintiffs' failure to rebut Defendants' arguments on this issue and recommended dismissal of these claims. Dkt. 315 at 58. Plaintiffs now object, claiming for the first time that they adequately pleaded that Defendants' reinvestment of profits "prolonged and intensified the deceptive scheme" and that Defendants' control allowed them to "perpetuate their fraudulent scheme." Dkt. 323 at 5–6. This belated argument was waived. *See Paterson-Leitch*, 840 F.2d at 990–91 ("We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.").

In any event, the Magistrate Judge properly recommended dismissal of Plaintiffs' Section 1962(a) & (b) RICO claims and their Puerto Rico law claims, and nothing in Plaintiffs' Objections calls into question that sound conclusion. To the contrary, additional grounds justify dismissal.

- 2 -

**I.**  Plaintiffs' challenge to the Magistrate Judge's recommendation on the Section 1962(a) & (b) RICO claims fails because those subsections require a plaintiff to allege injuries caused directly by the *investment* of racketeering funds themselves (subsection (a)) or by the *control* of the enterprise itself (subsection (b))—not from the underlying predicate racketeering acts.  Plaintiffs failed to do so here, which is fatal to their claims.  *See Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995).

**II.A.**  Although the Magistrate Judge did not recommend dismissal on this basis, Plaintiffs' Puerto Rico law claims are also subject to dismissal because they are preempted and precluded by federal law.  Indeed, the Court can and should dismiss all of Plaintiffs' Puerto Rico law claims on this ground alone.  Such dismissal would be consistent with the rising chorus among "federal and state courts across the country that have rejected the availability of state tort law in the climate change context." *Platkin v. Exxon Mobil Corp.*, 2025 WL 604846, at *3 (N.J. Super. Ct. Law Div. Feb. 5, 2025) (collecting cases).[1]  The Magistrate Judge did not address any of these cases in its analysis of Defendants' federal constitutional argument and held that Plaintiffs' claims were not preempted on the view that they did not concern "the effect of emissions on the environment." Dkt. 315 at 80.  But that overlooks that Plaintiffs' only causation theory depends on emissions attributed to Defendants' products.  *See* Dkt. 235 at 9; Am. Compl. ¶¶ 75–76, 102, 295, 345, 614. Because Plaintiffs do not, and cannot, dispute that they seek damages for the alleged impacts of interstate and international emissions, their state law claims are preempted and precluded by federal law.  This Court should therefore dismiss all Plaintiffs' Puerto Rico law claims on this basis

---

[1] *See, e.g.*, *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021); *City of New York v. Chevron Corp.*, 325 F. Supp. 3d 466 (S.D.N.Y. 2018), *aff'd*, 993 F.3d 81; *City of Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017 (N.D. Cal. 2018), *vacated on other grounds*, 960 F.3d 570 (9th Cir. 2020); *Mayor & City Council of Baltimore v. BP P.L.C.*, 2024 WL 3678699 (Md. Cir. Ct. July 10, 2024); *State ex rel. Jennings v. BP Am. Inc.*, 2024 WL 98888 (Del. Super. Ct. Jan. 9, 2024) ("*Delaware*"); *City of Annapolis v. BP plc*, No. C-02-CV-21-000250, 2025 WL 588595 (Md. Cir. Ct. Jan. 23, 2025); *Anne Arundel Cnty. v. BP plc*, No.C-02-CV-21-000565, 2025 WL 588595 (Md. Cir. Ct. Jan. 23, 2025)); *cf. City of New York v. Exxon Mobil Corp.*, No. 451071/2021, 2025 WL 209843 (N.Y. Sup. Ct. Jan. 14, 2025).

alone—as multiple other courts have done.  *See, e.g., Platkin*, 2025 WL 604846, at *10; *Annapolis*, 2025 WL 588595, at *6–*7.  The Court can also dismiss the Puerto Rico law claims on multiple freestanding bases—including those recommended by the Magistrate Judge, as explained below.

**B.**  Plaintiffs' Puerto Rico law claims, like Plaintiffs' federal law claims, are also time barred, as set forth in Defendants' Objections.  *See* Dkt. 326 at 23–31.  In drawing a contrary conclusion, the Magistrate Judge incorrectly credited Plaintiffs' conclusory assertions, as well as Plaintiffs' improper contention that a 2022 study supposedly put them on notice of the purported "authors" of Plaintiffs' climate change injuries.  That contention is neither pleaded in the Amended Complaint nor remotely plausible.  *See id.*; Dkt. 315 at 35–41.

**C.**  Plaintiffs failed to plead essential elements of their Puerto Rico law claims, as the Magistrate Judge correctly found.  Dkt. 315 at 85–92.  As noted, Plaintiffs waived most of their objections to the Magistrate Judge's findings because Plaintiffs did not make the arguments in opposition to Defendants' Motion to Dismiss.  *Compare* Dkt. 280 at 82–87 (Opposition) *with* Dkt. 323 at 7–22 (Objections).  But those arguments also fail on their merits for numerous reasons.

**D.**  Plaintiffs also failed to plead their Puerto-Rico law claims—all of which turn on Defendants' allegedly deceptive statements—with particularity, as required by Rule 9(b).  And, in all events, Plaintiffs fail to state a claim upon which relief may be granted, thus compelling the dismissal recommended by the Magistrate Judge.

Finally, Plaintiffs' other objections to the Magistrate Judge's recommendations similarly fall short.

**III.**  The Magistrate Judge concluded that Plaintiffs "have no *parens patriae* standing" and thus "have standing to bring this action only as to their own proprietary rights."  Dkt. 315 at 67–68.  Although Plaintiffs now object to the Magistrate Judge's finding, they argued in opposition to

Defendants' motion to dismiss that their claims are not "veiled *parens patriae* claims [but] Plaintiffs are simply claiming damages as harmed municipalities." Dkt. 280 at 54; *see id.* at 69 ("Nowhere in their complaint do Plaintiffs claim they are bringing a *parens patriae* action; instead, they are suing in their proprietary capacity as municipalities[.]"). Plaintiffs' new objection is therefore not only waived, but also directly contradicts the arguments in their original briefing. In any event, the Magistrate Judge correctly concluded that Plaintiffs lack *parens patriae* standing. Plaintiffs also assert that "they structured their claims under Rule 23 . . . seeking damages and injunctive relief on behalf of their class, which includes their residents as a subclass." Dkt. 323 at 23 (citing Dkt. 205 ¶¶ 620–22). But that assertion is baseless. The only class Plaintiffs attempted to allege was "[a]ll Municipalities within Puerto Rico," Dkt. 205 ¶¶ 620–22, and there are no subclasses referenced. Plaintiffs' residents are not putative class members.

**IV.** Plaintiffs also object to the Magistrate Judge's recommendation on personal jurisdiction, which seemed to recommend both finding personal jurisdiction *and* ordering jurisdictional discovery. Dkt. 326 at 3. As Defendants noted in their Objections, the Magistrate Judge erred in failing to recommend dismissal for lack of personal jurisdiction because Plaintiffs' claims do not relate to Defendants' alleged Puerto Rico contacts, the exercise of jurisdiction would not be reasonable, and RICO's nationwide jurisdiction provision does not apply. *Id.* at 32–36. Plaintiffs also object to the Magistrate Judge's recommendation of jurisdictional discovery, as have Defendants. Dkt. 323 at 2–3.[2]

**V.** Finally, Plaintiffs' belated "conditional request for leave to [again] amend the complaint" should be disregarded as improper. Dkt. 323 at 24. Plaintiffs already amended once and do not explain how any further amendment could remedy the fatal defects in the Amended

---

[2] Certain Defendants have independently contested the jurisdictional allegations as to them in their separate motions.

Complaint.  *See Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006) ("The absence of supporting information may, in and of itself, be a sufficient reason for the denial of leave to amend").  In particular, Plaintiffs lack any good faith basis upon which to amend so as to show their claims are timely.  In any event, Plaintiffs also have not moved to amend, and a "contingent request to amend" made in an opposition to a motion to dismiss does not "constitute a motion to amend a complaint."  *Fisher v. Kadant, Inc.*, 589 F.3d 505, 509 (1st Cir. 2009) (quotations omitted).  As such, the request should be denied.  In any event, amendment would be futile.  *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 117 (1st Cir. 2009).

For the reasons stated herein and in Defendants' Objections, Dkt. 326, the Court should dismiss all of Plaintiffs' claims with prejudice.[3]

## LEGAL STANDARD

A timely objection requires *de novo* review of "portions of the report or specified proposed findings or recommendations to which specific objection is made."  *Sylva v. Culebra Dive Shop*, 389 F. Supp. 2d 189, 191–92 (D.P.R. 2005) (citing *U.S. v. Raddatz*, 447 U.S. 667, 673 (1980)).  "[T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); Local Civ. R. 72(d).

Parties may not object by raising arguments that were not raised before the Magistrate Judge.  "Parties must take before the magistrate, not only their best shot but all of their shots."  *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).  "[I]t would be fundamentally unfair to permit [plaintiffs] to set [their] case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge."  *Paterson-Leitch* , 840 F.2d at 991.  Accordingly, "objections that

---

[3] For a detailed account of the relevant procedural history, please see Defendants' Objections, Dkt 325 at 3–5.

[plaintiffs] do not raise at the Magistrate [Judge's] level are deemed waived," and "new arguments, or new known evidence, are to be excluded as reconsideration arguments originally available to movant at the time of the submission to the Magistrate Judge." *Entact*, 526 F. Supp. 2d at 223.

## ARGUMENT

## I.    The Magistrate Judge Correctly Recommended Dismissal of Plaintiffs' Section 1962(a) and (b) RICO Claims.

To state a claim under Section 1962 (a) and (b), Plaintiffs must plead that they were harmed by Defendants' alleged investment of the racketeering income and Defendants' alleged maintenance and control of the racketeering enterprise. *See Román Rivera v. Puerto Rico Elec. Power Auth.*, 2012 WL 13170557, at *5 (D.P.R. Sept. 25, 2012); *Compagnie*, 57 F.3d at 92.  To state a claim under either provision, it is essential that the alleged injury be distinct from any injury allegedly sustained as a result of the predicate racketeering acts.  *Id.* at 92.

Defendants argued in their 12(b)(6) motion to dismiss that Plaintiffs failed to plead distinct injuries under Sections 1962(a) and (b).  Dkt. 235 at 35–36.  As the Magistrate Judge recognized, Plaintiffs did not respond to Defendants' argument.  *See* Dkt. 280 at 49; Dkt. 315 at 58.  Plaintiffs have thus conceded the point and waived any opposition to it.  *See Orellano-Laureano v. Instituto Médico del Norte, Inc.*, 2023 WL 4532418, at *8 (D.P.R. July 13, 2023) (noting that "Plaintiff waived any opposition to [an] argument" she failed to address in opposition to Defendants' motion to dismiss).  This should be the end of the inquiry.

Even if Plaintiffs had not waived any objections, their Objections fail to meaningfully respond to the Magistrate Judge's analysis and Defendants' arguments.  According to Plaintiffs, they have alleged that Defendants' reinvestment of profits "prolonged and intensified the deceptive scheme" and Defendants' control allowed them to "perpetuate their fraudulent scheme."  Dkt. 323 at 5–6.  That argument is waived, and it would fail in any event because the only harm Plaintiffs

allege from the purported investment and control is through the commission of predicate racketeering acts. Accordingly, as the Magistrate Judge found, dismissal is appropriate because Plaintiffs have failed to allege an injury that is "distinct from an injury caused by the predicate acts themselves." *Compagnie*, 57 F.3d at 91. That, by itself, is dispositive. But Plaintiffs Section 1962(a) and (b) claims also fail for the additional reasons stated in Defendants' Objections, including being time-barred and failing to adequately allege a sufficiently direct causal link. *See* Dkt. 326 at 5–13.

## II.   As the Magistrate Judge Recognized, Plaintiffs' Puerto Rico Law Claims Should Be Dismissed.

The Magistrate Judge correctly recommended dismissing all of Plaintiffs' Puerto Rico law claims. Dkt. 315 at 78–92. In their Objections, Plaintiffs do not challenge any aspect of the Magistrate Judge's recommendation to dismiss Claims 1 (Common Law Consumer Fraud), 2 (Civil Conspiracy), or 3 (Rules Against Misleading Practices and Advertisements). *See* Dkt. 323. Plaintiffs have therefore waived any objections and any "right to review" of those recommendations before this Court, and the Court may conclude "that [P]laintiffs agree[] [with] the magistrate's recommendation" of dismissal. *Ponsa-Rabell v. Santander Sec., LLC*, 2020 WL 4219685, at *1 (D.P.R. July 22, 2020), *aff'd*, 35 F.4th 26 (1st Cir. 2022). *See also Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985)("[A]bsent objection by the plaintiffs, the district court [may] assume that plaintiffs agree to the magistrate's recommendation.").

Although Plaintiffs do object to the Magistrate Judge's recommendation that this Court dismiss their other Puerto Rico law claims—design defect (Claims 11, 12), failure to warn (Claim 10), public and private nuisance (Claim 9, 13), and unjust enrichment (Claim 14), *see* Dkt. 323 at 7–22—the Court should dismiss those claims for reasons the Magistrate Judge identified and for additional reasons. First, each of the Puerto Rico law claims is preempted and precluded by federal

law.  Second, each is untimely, because they are subject to a one-year statute of limitations.  Third, each of the claims fails as a matter of Puerto Rico law, as the Magistrate Judge concluded.  Dkt. 315 at 85–92.  Fourth, Plaintiffs failed to plead their Puerto Rico law claims with particularity. Each reason independently supports the Magistrate Judge's recommendation to dismiss the Puerto Rico law claims.

### A.   Plaintiffs' Puerto Rico Law Claims Are Barred By Federal Law.

The simplest way for the Court to resolve all of Plaintiffs' Puerto Rico law claims is by joining the rising chorus of "federal and state courts across the country that have rejected the availability of state tort law in the climate change context." *Platkin*, 2025 WL 604846, at *3 (collecting cases); *see supra* n.1. As explained in Defendants' Joint Rule 12(b)(6) briefing, federal law— including core constitutional principles of federalism and foreign affairs powers, and the Clean Air Act ("CAA")—bars Plaintiffs' Puerto Rico law claims.  Dkt. 235 at 43–52; Dkt. 297 at 30–43.

#### 1.    Plaintiffs' Claims Are Barred Because Puerto Rico Law Cannot Constitutionally Be Applied.

Defendants argued that the Constitution, its structure, and core principles of federalism and comity bar the application of Puerto Rico law in disputes involving interstate and international emissions.  Dkt. 235 at 44–48, Dkt. 297 at 31–39.  As Defendants explained, the U.S. Supreme Court has repeatedly held that the structure of the federal Constitution precludes and preempts state law claims seeking redress for injuries caused by the effects of interstate and international pollution.  *See* Dkt. 235 at 44–48.

The Magistrate Judge recommended against dismissal on this basis because, in his view, (1) "the federal common law that Defendants rely upon has been displaced" and (2) Plaintiffs' claims "cannot be read as claims to regulate greenhouse gas emissions directly or to recover for damages for interstate emissions."  Dkt. 315 at 79.  He concluded, instead, that because the "heart

of Plaintiffs' claims" is a "misinformation and propaganda campaign," "the culprit is Defendants' words, not their emissions." *Id.*  The Magistrate Judge, respectfully, misapprehended Defendants' argument:  Defendants rely on the U.S. Constitution and Plaintiffs' pleaded theory of causation that depends on transboundary emissions, not whether Plaintiffs consider the emissions themselves to be tortious.

Defendants argue that the Constitution—independent of federal common law—precludes and preempts Puerto Rico law claims seeking damages for climate-related harms allegedly caused by interstate and international emissions.[4]  Plaintiffs can allege no other mechanism by which they were even conceivably injured by Defendants' alleged conduct.  Under the U.S. Constitution's structure, there are "a few areas, involving 'uniquely federal interests,' [that] are so committed by the Constitution . . . to federal control that state law is pre-empted." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988).  In these areas, the Constitution "implicitly forbids that exercise of power because the 'interstate . . . nature of the controversy makes it inappropriate for state law to control.'" *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 246 (2019).[5]  These exclusively federal areas include "interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations," and other areas "in which a federal rule of decision is necessary to protect uniquely federal interests"; in such cases, "our federal system does not permit the controversy to be resolved under state law." *Tex. Indus. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640–41 (1981).

The U.S. Supreme Court has long held that interstate air and water pollution is one of these

---

[4] As the Second Circuit noted in *City of New York*, "[s]ince greenhouse gases once emitted become well mixed in the atmosphere, emissions in New York or New Jersey may contribute no more to flooding in New York then emissions in China."  993 F.3d at 92 (cleaned up).

[5] The U.S. Supreme Court has long made clear that the Constitution precludes state law here "implicitly," even absent a specific constitutional provision on point.  *Hyatt*, 587 U.S. at 246.

exclusively federal areas.  Individual States and Commonwealths cannot apply their own law to claims dealing with "air and water in their ambient or interstate aspects;" in those contexts, "borrowing the law of a particular State would be inappropriate" because, under "the basic scheme of the Constitution," these disputes are "areas of national concern," not "matters of substantive law appropriately cognizable by the [S]tates."  *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421–22 (2011) ("*AEP*").[6]

On this basis, every federal court to address this issue in a climate change-related case has held that state-law claims seeking damages for climate-change harms are preempted and precluded by the U.S. Constitution.  *E.g.*, *City of New York*, 325 F. Supp. 3d at 471–72 (claims of this sort "are ultimately based on the 'transboundary' emission of greenhouse gases," so "our federal system does not permit the controversy to be resolved under state law"); *City of Oakland*, 325 F. Supp. 3d at 1021 (holding that only federal law can be used to resolve climate change claims because they "depend on a global complex of geophysical cause and effect involving all nations of the planet" that "demands to be governed by as universal a rule of apportioning responsibility as is available").  Because suits that "deal with air and water in the ambient or interstate aspects" are beyond the limits of state law, *AEP*, 564 U.S. at 421, any suits seeking to recover damages for climate-change injuries allegedly caused by global emissions fall within the Constitutional bar, *City of New York*, 993 F.3d at 91.

The Magistrate Judge discounted the relevance of this precedent, concluding that the tortious conduct here is a "purported decades-long misinformation and propaganda campaign" and

---

[6] *See also, e.g.*, *Illinois v. City of Milwaukee*, 406 U.S. 91, 105 n.6, 107 n.9 (1972) ("*Milwaukee I*"); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987) ("interstate . . . pollution is a matter of federal, not state, law").  Accordingly, "state law cannot be used" to resolve claims seeking redress for injuries allegedly caused by out-of-state pollution. *City of Milwaukee v. Illinois*, 451 U.S. 304, 313 n 7 (1981) ("*Milwaukee II*").

not the greenhouse gas emissions themselves.  Dkt. 315 at 79–80.[7]  But that is a meaningless distinction (and, as discussed below, it is not actually a distinction at all).  On the face of the Amended Complaint, the only way Plaintiffs allege that the supposed "campaign" injured them is by allegedly inflating demand for fossil fuels and thereby increasing greenhouse gas emissions (which, in turn, allegedly exacerbated climate change, intensified the 2017 Hurricanes, and caused Plaintiffs' injuries).  Plaintiffs did not deny that their claims depend on—as an essential and unavoidable causal step—the allegation that Defendants' conduct increased interstate and international greenhouse gas emissions.  *See* Dkt. 297 at 31 (citing Dkt. 280 at 71).  Indeed, the very first paragraph of the Amended Complaint makes clear that Plaintiffs are seeking damages from the losses associated with the 2017 storms due to Defendants' alleged acts "to cause, accelerate[], and contribute to the deleterious alteration of Puerto Rico's climate[.]"  Dkt. 205 ¶ 1.  The Amended Complaint also contains lengthy charts purporting to show each Defendant's supposed "global industrial GHG emissions" over the course of the last half century, Dkt. 205 ¶ 75, and it posits that Defendants' global "collective emissions were a substantial factor in the increase in intensity of the 2017 Atlantic Hurricane Season," *id.*  ¶ 591.  Thus, Plaintiffs' claims intrinsically link Defendants' conduct to extensive impacts of interstate and international pollution, as essential to causing their alleged injuries.

Indeed, this purported deception "campaign" was also central to the theory of liability in *City of New York*, *Oakland*, and other climate change cases that rejected the availability of state law.  For example, the plaintiff in *City of New York* alleged that certain energy companies

---

[7] The Magistrate Judge stated that "[h]aving carefully reviewed the allegations in this case, I find that Defendants' characterization of Plaintiffs' Puerto Rico law claims as claims about the effect of emissions on the environment is incorrect."  Dkt. 315 at 80.  But the Magistrate Judge also recognized that Plaintiffs are seeking to recover climate-change related injuries.  Indeed, elsewhere the Magistrate Judge noted that Plaintiffs argue that Defendants "have engaged in conduct—causing extreme w[eather] events and impacting climate change—that" injured Plaintiffs.  *Id.* at 88.

(including several Defendants here) "ha[d] known for decades that their fossil fuel products pose[d] a severe risk to the planet's climate" yet "downplayed the risks and continued to sell massive quantities of fossil fuels," and were therefore liable under state law for injuries caused by global climate change. *City of New York,* 993 F.3d at 86–87.[8]  But the Second Circuit correctly recognized, as the Court should here, that the purported deceptive speech was not the full extent of the plaintiff's claims.  Rather, "[i]t is precisely *because* fossil fuels emit greenhouse gases—which collectively 'exacerbate global warming'—that the City is seeking damages." *Id.* at 91.  As the court concluded, the City's attempt to "focus on" a particular "moment in the global warming lifecycle is merely artful pleading and does not change the substance of [plaintiff's] claims." *Id.* at 97.  Like the City of New York's case, Plaintiffs' case is not just about speech; it is about speech *and* emissions.  Plaintiffs allege no harm "other than those caused by emissions." *Id.* at 97 n.8.  The Magistrate Judge failed to recognize this important point.[9]

Over the last year and a half, other courts considering the merits of nearly identical climate change claims have similarly rejected the narrow view adopted by the Magistrate Judge.  Dkt. 315 at 79.  For example, the Delaware Superior Court held that claims "seeking damages for injuries resulting from out-of-state or global greenhouse emission"—including claims alleging deceptive

---

[8] As the plaintiff there put it, "[t]he primary fault [New York City] allege[d] [wa]s that Defendants contributed to serious environmental harm that they knew their highly profitable production and marketing activities would cause." Appellant Br. 16, 2018 WL 5905772, No. 18-2188, Dkt. 89 (2d Cir. Nov. 8, 2018).  Just like Plaintiffs and the Magistrate Judge here, the City of New York argued unsuccessfully that state law was not precluded because it involves the "promotion[] and sale of fossil fuels, not the regulation of emissions."  993 F.3d at 91.

[9] The other federal district judges to consider the question have reached the same conclusion as the Second Circuit. *See City of Oakland*, 325 F. Supp. 3d at 1021 (holding that only federal law can be used to resolve similar claims because they "depend on a global complex of geophysical cause and effect involving all nations of the planet" and "demand[] to be governed by as universal a rule of apportioning responsibility as is available"); *City of New York*, 325 F. Supp. 3d at 471–72, 476 (such claims "are ultimately based on the 'transboundary' emission of greenhouse gases," so "our federal system does not permit the controversy to be resolved under state law").  The United States also made similar arguments as an amicus in climate change cases, asserting that even where a plaintiff "tried to plead around" contrary precedent by alleging the tortious conduct is deceptive speech or marketing, "its case still depends on alleged injuries to [the plaintiff] caused by emissions from all over the world, and those emissions just can't be subjected to potentially conflicting regulations by every state and city."  Tr. Of Oral Arg. 31:7–13, *Baltimore*, 2021 WL 197342 (U.S. Jan. 19, 2021).

marketing and efforts to discredit scientific evidence—are "beyond the limits of Delaware common law." *Delaware*, 2024 WL 98888, at *9.

Similarly, the Maryland Circuit Court dismissed Baltimore City's claims, which alleged that "Defendants deployed a sophisticated campaign of deception to misrepresent and conceal their products' risks" because "the Constitution's federal structure does not allow the application of state law to claims like those presented by Baltimore." *Baltimore*, 2024 WL 3678699, at *1, *6–*7.  The court explained that Baltimore's assertion that "it only seeks to address and hold Defendants accountable for a deceptive misinformation campaign" was "artful but not sustainable" because its "complaint is entirely about addressing the injuries of global climate change and seeking damages for such alleged injuries." *Id.* at *5.[10]  That said, even if the pleadings were not merely "artful," the *Baltimore* court noted that it still would dismiss the claims because "[w]hether the complaint is characterized one way or another the analysis and answer are the same—the Constitution's federal structure does not allow the application of state law to claims like those presented by [Plaintiffs]," which seek redress for injuries allegedly stemming from interstate and international emissions. *Baltimore*, 2024 WL 3678699, at *6.

Another Maryland Circuit Court likewise dismissed two materially identical cases alleging a deception campaign but seeking climate-change related damages.  The court held that "the U.S. Constitution's federal structure does not allow" state-law claims "seeking damages for injuries resulting from out-of-state or global greenhouse emissions and interstate pollution" to proceed. *Annapolis*, 2025 WL 588595, at *6.  Those claims are "federally preempted" and "beyond the

---

[10] The *Baltimore* court underscored that "[t]he explanation by Baltimore that it only seeks to address and hold Defendants accountable for a deceptive misinformation campaign is simply a way to get in the back door what they cannot get in the front door." *Id.*  "Baltimore's complaint is entirely about addressing the injuries of global climate change and seeking damages from such alleged injuries" its "characterization of the Complaint does not matter . . . because [Plaintiff] admits that its alleged injuries all stem from interstate and international emissions." *Id.* at *5–6. So too here.

limits of [state] law." *Id.* (quotations omitted).

And the New Jersey Superior Court dismissed another such case on the grounds that "only federal law can govern [p]laintiffs' interstate and international emissions claims because 'the basic scheme of the Constitution so demands.'" *Platkin*, 2025 WL 604846, at *5 (quoting *AEP*, 564 U.S. at 421). That court explained that "[d]espite the artful pleading by the Plaintiffs in this case, this court finds that Plaintiffs' complaint, even under the most indulgent reading, is entirely about addressing the injuries of global climate change and seeking damages for such alleged injuries." *Id.* at *9. Therefore, the court concluded, such claims are "preempted." *Id.* at *3. The court thereby joined the "federal and state courts across the country that have rejected the availability of state tort law in the climate change context." *Id.* at *6.

In each of those cases, the plaintiff insisted that its claim was not about emissions, but rather about deceptive marketing and failure to warn. But each court rejected the plaintiff's attempt to artfully evade the structure of our Constitution by disguising their claims for climate-related harms in that fashion. This case is no different—Plaintiffs claim that their case is about a supposed campaign of deception, but they do not disclaim, nor could they, that their claimed injuries are the result of global emissions. Their focus on alleged deception is nothing more than an attempt to circumvent preemption under the Constitution.

This Court should follow *City of New York* and the many other similar decisions and hold that the federal structure of the U.S. Constitution bars Plaintiffs' Puerto Rico law claims. The alternative—addressing this global issue through a patchwork of more than fifty different states and commonwealths—would be unworkable. *See N. Carolina ex. rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 298 (4th Cir 2010) ("If courts across the nation were to use the vagaries of [state] public nuisance doctrine to overturn the carefully enacted rules governing airborne

emissions, it would be increasingly difficult for anyone to determine what standards govern.").

The Magistrate Judge also appears to rely on the point that the CAA has displaced federal common law. But that is not relevant to Defendants' arguments. Whether a *remedy* is available under federal common law—and, if so, whether such a remedy has been displaced by federal statute (here, the CAA)—are separate issues from the question presented by Defendants' motion: whether state law can apply in the first place.[11] As the *Platkin* court explained, "federal common law applied in the first place only because state law was not fit to govern; Congress's decision to displace and replace federal common law with a statutory scheme (the Clean Air Act) did not somehow render state law competent to apply to this exclusively federal subject matter." 2025 WL 604846, at *4. "[S]tate law does not suddenly become presumptively competent to address issues that demand a unified federal standard simply because Congress saw fit to displace a federal court-made standard with a legislative one." *City of New York*, 993 F.3d at 98. It is *the U.S. Constitution and its federal structure* that precludes and preempts state-law claims seeking redress for injuries allegedly caused by the effects of interstate and international pollution—and whether Congress has displaced federal common law does "nothing to undermine that result." *Illinois v. City of Milwaukee*, 731 F.2d 403, 410 (7th Cir. 1984) ("*Milwaukee III*"). Cases like *City & County of Honolulu v. Sunoco LP*, 537 P.3d 1173 (Haw. 2023) are "not persuasive … because [they] d[o] not address this critical point." *Platkin*, 2025 WL 604846, at *4.[12]

---

[11] The climate-change decisions that have declined to dismiss similar claims as a matter of law all suffer from the same fundamental error: They rely on the irrelevant point that the CAA has displaced federal common law and ignore that the plaintiffs' pleaded theory of causation and damages depends on transboundary emissions, to which only federal law can apply. *See City & Cnty. of Honolulu v. Sunoco LP*, 537 P.3d 1173 (Haw. 2023); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.), Inc.*, 2024 WL 3204275 (Colo. Dist. Ct. June 21, 2024); *State ex rel. Ellison v. Am. Petroleum Inst.*, No. 62-CV-20-3827 (Minn. Dist. Ct. Feb. 14, 2025).

[12] The Magistrate Judge's decision could also be read as saying that this argument is foreclosed by *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44 (1st Cir. 2022). *See* Dkt. 315 at 80–81. For the reasons discussed below (at 18 n.13, and 20–21), that is not correct—*Rhode Island* is a removal case dealing with the *procedural* issue of federal subject matter jurisdiction, not the *substantive* merits of the ordinary preemption inquiry.

The Magistrate Judge also erred in failing to dismiss the claims for injuries allegedly resulting from international emissions. Plaintiffs argued that the CAA displaces federal common law regarding both domestic and international emissions. Dkt. 280 at 75. But there is no question that the CAA does not apply extraterritorially, so "[t]here is simply no counter" to the fact that federal common law "has *not* been displaced with respect to *foreign* emissions." *Platkin*, 2025 WL 604846, at *4 (emphases added). Moreover, even if the CAA displaced federal common law regarding international emissions, the federal constitutional structure still preempts and precludes claims regulating international emissions for the same reasons as interstate emissions: "state law does not suddenly become presumptively competent to address issues that demand a unified federal standard simply because Congress saw fit to displace a federal court made standard with a legislative one"; indeed, such an argument is "too strange to seriously contemplate." *City of New York*, 993 F.3d at 98–99.

### 2. Plaintiffs' Claims Are Barred Because They Intrude on Foreign Affairs.

Plaintiffs' claims are also barred because the Constitution "allocat[es] . . . the foreign relations power to the National Government." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413 (2003). Accordingly, a Commonwealth "action with more than incidental effect on foreign affairs is preempted," and, here, Plaintiffs' claims have far more than an "incidental" effect on foreign affairs. *Id.* at 418; *see* Dkt. 235 at 48–50; Dkt. 297 at 39–41.

The Magistrate Judge found that the "allegations here do not implicate greenhouse emissions or foreign policy" because they are "tort-based claims based on advertising, unfair business practices, and consumer protection" and "[n]ot a single cause of action pertains to the 'exploration, production, marketing, sale, or combustion of fossil fuels and their emissions[.]'" Dkt. 315 at 82.

But while Plaintiffs purportedly allege that a supposed "campaign," not emissions, was tortious, Plaintiffs' theory still turns on the premise that the alleged campaign somehow increased

interstate and international emissions (and thereby affected *global* climate change, led to the 2017 storms, and ultimately caused Plaintiffs' damages). As alleged in the Amended Complaint, global emissions from Defendants' (and many others') products are the result of activities undertaken in foreign countries, including activities undertaken by foreign governments (including some owners of Defendants' joint venture partners). *See* Dkt. 235 at 49. Plaintiffs' claims would require a jury to determine whether the campaign affected international emissions, which itself requires an evaluation of how foreign states have acted both in the commercial marketplace and in the regulation of greenhouse gas emissions. Such issues are well beyond the scope of state or Puerto Rico law.

Plaintiffs' claims, if successful, would plainly have an extraterritorial effect. Defendants may be subject to ongoing future liability for producing and selling fossil fuel products abroad unless they do so in the manner that Puerto Rico law is deemed to require (regardless of whether Puerto Rico law conflicts with that of Delaware, Maryland, New Jersey, or any of the other States and Territories, let alone numerous foreign jurisdictions). That is a paradigmatic example of a State or Commonwealth improperly using "damages" to "regulat[e]" an industry's extraterritorial operations, *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012), by forcing Defendants to "change [their] methods of doing business . . . to avoid the threat of ongoing liability," *Ouellette*, 479 U.S. at 495. Indeed, as the Second Circuit has explained, "[a]ny actions" Defendants "take to mitigate their liability" on a theory akin to Plaintiffs' in Puerto Rico "must undoubtedly take effect across every state (and country)." *City of New York*, 993 F.3d at 92.[13]

---

[13] The Magistrate Judge noted that Plaintiffs argued that *Garamendi* may not apply with full force today and that some other courts have rejected similar arguments, Dkt. 315 at 82, but neither assertion withstands scrutiny. Plaintiffs suggest that *Medellín v. Texas*, 552 U.S. 491 (2008) somehow limited the breadth of *Garamendi*, Dkt. 280 at 76–77, but *Medellín* expressly reaffirmed *Garamendi* by stating "[w]e do not question these propositions," 552 U.S. at 524 (citing *Garamendi*, 539 U.S. at 414), and repeatedly cited *Garamendi* favorably, *see, e.g.*, *id.* at 530–32. And the other cases that Plaintiffs argued "rejected similar arguments" are not relevant. *Cf.* Dkt. 315 at 82; Dkt. 280 at 77. Those federal removal decisions that only address the procedural question of whether a federal district court has subject-matter jurisdiction, not the substantive merits question presented here about foreign affairs preemption. *See* Dkt. 297 at 41. The First Circuit has specifically cautioned against relying on procedural removal cases in evaluating

### 3.    Plaintiffs' Puerto Rico Law Claims Are Preempted By The Clean Air Act.

Plaintiffs' Puerto Rico law claims are also preempted by the CAA.  *See* Dkt. 235 at 50–52; Dkt. 297 at 41–43.  As numerous courts have held, claims "seeking damages for injuries resulting from out-of-state or global greenhouse emissions and interstate pollution[] are pre-empted by the CAA."  *Delaware*, 2024 WL 98888, at *9.  In *Ouellette*, the Supreme Court held that the Clean Water Act, a statute similar to the CAA, bars states from applying any of their laws to pollution originating out-of-state unless such claims are "specifically preserved" by the act.  479 U.S. at 492. This holding applies equally to the CAA.  *See* Dkt. 235 at 51 & n.21 (collecting cases).[14]  And courts have dismissed similar climate change cases on this basis.  For example, like Plaintiffs here, the plaintiff in *Delaware* alleged that a purported "campaign" of misinformation was the tortious conduct at issue and that the campaign caused them injury by leading to increased consumption of fossil fuels, increased global greenhouse gas emissions, and accelerated climate change.  2024 WL 98888, at *4 (holding that the CAA bars climate change suits involving interstate emissions); *see also City of New York*, 993 F.3d at 85–86, 100 (concluding the CAA does not authorize climate change suits predicated on interstate emissions to proceed under state law and noting that permitting claims seeking "damages caused by global greenhouse gas emissions" to proceed would replace the "carefully crafted frameworks" Congress established in the CAA "with a patchwork of claims under state nuisance law"); *Baltimore*, 2024 WL 3678699, at *8 ("The CAA speaks directly to the domestic emissions issues in this case" and "regardless of whether Baltimore seeks

---

substantive merits questions, emphasizing that there are "heightened standard[s] unique to the removability inquiry." *Rhode Island*, 35 F.4th at 55; *accord Baltimore*, 2024 WL 3678699, at *6 (noting the question in removal cases is "the doctrine of complete preemption and not the federal defense of ordinary preemption as it applie[s] to the merits of the case," so removal decisions do "not preclude this court from holding that [the] claims would/could be preempted by federal law"); *id.* at *8 ("This court, like the Second Circuit, considers the Defendants' preemption defense argument on its own terms and not under the heightened standard unique to the removability inquiry.").

[14] *See, e.g.*, *Merrick v. Diageo Ams. Suppl, Inc.*, 805 F.3d 685, 693 (6th Cir. 2015); *Bell v. Cheswick Generating Station*, 734 F.3d 188, 194–96 & n.6 (3d Cir. 2013); *Cooper*, 615 F.3d at 306.

injunctive relief or damages" its "claims are barred by the CAA[.]"); *Annapolis*, 2025 WL 588595, at *7 (similar).

Plaintiffs all but conceded the argument. Dkt. 280 at 79. Their only response was to claim that the CAA's "purpose" involves regulating emissions, but they never explained how this "purpose" overrides the holdings of *Ouellette*, *Delaware*, or the numerous climate change cases finding preemption of claims seeking damages based on interstate emissions. Dkt. 280 at 79.

Going beyond Plaintiffs' arguments, the Magistrate Judge rejected CAA preemption, concluding that the First Circuit already held that "the CAA did not preempt the state-law claims" in *Rhode Island*. *See* Dkt. 315 at 81. That is incorrect.

The First Circuit's analysis of the CAA does not apply to Plaintiffs' claims. The jurisdictional issue in *Rhode Island* was whether the CAA "completely preempted" all state regulation of emissions for purposes of removal and subject matter jurisdiction, which involves a "heightened standard" inapplicable to whether claims are substantively preempted on the merits. 35 F.4th at 55; *see supra* n.13. The First Circuit held that the heightened procedural standard was not met because the CAA has provisions which allow states *some* authority to regulate pollution emitted *from a source within their own borders*. *Id.* at 57–58 (citing, *e.g.*, 42 U.S.C. § 7401, which approves state regulation of "air pollution … at its source"). Here, Plaintiffs have never argued that those provisions save their claims, *see* Dkt. 280 at 79, nor did the Magistrate Judge provide any explanation of how those provisions could apply, *see* Dkt. 315 at 81.[15]

Indeed, those provisions are unable to salvage Plaintiffs' claims because Plaintiffs do not allege that their injuries stem from the "campaign" by virtue of its allegedly causing incrementally higher greenhouse gas emissions *in Puerto Rico alone*. *See* Dkt. 235 at 28. Plaintiffs did not

---

[15] As Defendants argued, Plaintiffs waived the issue. Dkt. 297 at 42, n.31.

dispute (and the Magistrate Judge did not reject) the understanding that Plaintiffs' theory of injury necessarily relies on increases to global greenhouse gas emissions. Indeed, "Plaintiffs' claims . . . are not limited to the marketing, sale, or combustion of fossil-fuel products *in Puerto Rico*, much less *by Defendants* in Puerto Rico. The Amended Complaint nowhere alleges a causal connection between the September 2017 hurricanes and *anyone's* Puerto Rico-specific consumption of fossil fuel products" or—for that matter—"any allegedly misleading statements directed to Puerto Rico." Dkt. 235 at 8–9. Indeed, *all of Puerto Rico's emissions* (much less the portion of Puerto's Rico's emissions that were allegedly higher because of the supposed "campaign") make up at most a de minimis portion of *global* greenhouse gas emissions—estimated at ***only 0.03% of global greenhouse gas emissions***.[16] Accordingly, even if the CAA permits Puerto Rico to regulate emissions sources within Puerto Rico, it still preempts Plaintiffs' claims.

The Court should dismiss all Plaintiffs' Puerto Rico law claims as preempted by the CAA.

## B. Like Plaintiffs' Federal Claims, Plaintiffs' Puerto Rico Law Claims Are Barred By The Statute of Limitations

The Magistrate Judge recommended that this Court deny Defendants' motion to dismiss on statute of limitations grounds, based on the conclusion that the continuous tort doctrine and equitable tolling apply here. Dkt. 315 at 35–41. As discussed in Defendants' Joint Objections, the Magistrate Judge erred in that conclusion. Dkt. 326 at 23–32.

Because Plaintiffs brought their Puerto Rico law claims "more than a year after the injury took place, [they] bea[r] the burden of proving that [they] lacked the requisite 'knowledge' at the relevant times" to avoid application of the statute of limitations. *Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir. 1987) (applying Puerto Rico law). Puerto Rico law "does not require actual

---

[16] European Commission Joint Research Center, *GHG Emissions of All World Countries* (2024), https://edgar.jrc.ec.europa.eu/report_2024#emissions_table.

knowledge" of the exact identity of the person who caused an injury for the statutory period to begin to run. *López-Flores v. Cruz-Santiago*, 526 F. Supp. 2d 188, 190 (D.P.R. 2007). Instead, it requires "notice," which includes "deemed knowledge" and assumes a plaintiff's "diligence" in investigating its injuries. *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 19 (1st Cir. 2000).

Plaintiffs' argument boils down to an implausible proposition: that they had no reason to investigate the supposed causes of the September 2017 storms until at least November 2021. The Magistrate Judge credited Plaintiffs' naked assertion that they only "learned which entities have a causal link to Plaintiffs' injuries and their respective market shares in the fossil fuel industry" after viewing a 2022 report entitled "How Much Have the Oil Supermajors Contributed to Climate Change?" Dkt. 315 at 39 (citing Dkt. 280 at 7). But as discussed in Defendants' Joint Objections, the Magistrate Judge should have found that the earlier articles Defendants cited—as well as earlier articles cited in Plaintiffs' original and amended complaints—put Plaintiffs on inquiry notice, if not actual notice, of their claims prior to the limitations period.

While Plaintiffs claim to have relied on a specific 2022 article, they do not and cannot explain how that article is any different from the dozens of articles before or after 2017 that both alleged a causal link between Defendants' activities and climate change-related damages—including those related to the 2017 Atlantic Hurricane season—and detailed Defendants' respective market shares in the fossil fuel industry. Nor can Plaintiffs explain how the information in the 2022 article is any different from the information in the other high-profile climate lawsuits filed in 2017 that leveled the same allegations against certain Defendants.[17] *See Delaware*, 2024 WL 98888, at *19 (dismissing similar climate change claims on statute of limitations grounds); *Baltimore*, 2024

---

[17] Moreover, as discussed in Defendants' objections, the argument that the statute of limitations only began to run as to Rio Tinto, BHP, Motiva, and Occidental upon publication of the report fails because the report does not even mention these Defendants.

WL 3678699, *15 (same).  The 2022 article does not reveal anything about any alleged campaign of deception, but merely sets forth the purported emissions levels of some of the companies Plaintiffs ultimately sued here—and who have also been defendants in dozens of similar climate change lawsuits filed around the country since at least 2017.  *See, e.g.*, Compl., *City of San Francisco v. BP PLC*, No. CGC-17-561370 (Cal. Super. Ct. Sep. 19, 2017) (suing BP, Chevron, ConocoPhillips, ExxonMobil, and Shell); Compl., *City of Oakland v. BP PLC*, No. RG17875889 (Cal. Super Ct. Sep. 19, 2017) (suing BP, Chevron, ConocoPhillips, ExxonMobil, and Shell).  It strains credulity to claim that diligent plaintiffs—interested in learning the cause of the 2017 hurricanes—would not have known the names of the Defendant fossil-fuel companies until 2022, even though commenters publicly accused those Defendants of worsening those storms many years prior.

　　Nor does the continuous tort doctrine salvage Plaintiffs' claims.  Plaintiffs did not even argue that the doctrine applies to their Puerto Rico law claims.  *See* Dkt. 280 at 6–18.  And in any event, Plaintiffs' suit seeks damages related to the 2017 storms, so no act or omission *after* those storms could logically have caused those storms (or resulting injuries).  The relevant "continuous" activity necessarily must have ceased by 2017.  *McMillan v. Rodríguez Negrón*, 511 F. Supp. 3d 75, 83 (D.P.R. 2020).  Accordingly, "the statutory period," cannot begin "running again" with subsequent new acts because the new acts are not "part of the violation" being alleged and did not independently "injur[e] the plaintiff" within the scope of the claim.  *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997).  It is well established that "continual ill effects from an original violation" are not a basis for tolling.  *Bonilla v. Trebol Motor Corp.*, 913 F. Supp. 655, 659 (D.P.R. 1995).  Accordingly, the tortious conduct in question cannot be "continuous," and the continuous tort doctrine does not apply.

　　Nor does equitable tolling apply.  As explained in Defendants' objections, equitable tolling

requires particularized allegations of fraudulent concealment that Plaintiffs have not made. Dkt. 326 at 26–27. Plaintiffs' allegations and judicially noticeable facts demonstrate there was no concealment of the relevant facts at all, much less through November 2021. *Id.* at 27–32. Nor have Plaintiffs alleged or plausibly argued that they were diligent in investigating their claims. *Id.*

For this and other reasons raised in the original briefing and the Defendants' Objections, the Court should dismiss the Puerto Rico law claims—indeed, all Plaintiffs' claims—as untimely. *See* Dkt. 326 at 23–32, Dkt. 235 at 15–17; Dkt. 297 at 5–11.

### C. Plaintiffs Failed To State A Claim Under Puerto Rico Law.

#### 1. Plaintiffs Did Not Object To The Magistrate Judge's Recommendation To Dismiss Their Puerto Rico Fraud Claims.

Plaintiffs made no objection to the Magistrate Judge's recommendation to dismiss Claims 1 (Common Law Consumer Fraud), 2 (Civil Conspiracy), and 3 (Rules Against Misleading Practices and Advertisements). *See* Dkt. 323. In any event, the Magistrate Judge correctly concluded Puerto Rico law does not provide Plaintiffs a cause of action for the claims. Dkt. 315 at 83–85; *see* Dkt. 297 at 43. The Court should therefore dismiss those claims.[18]

#### 2. Design Defect.

As the Magistrate Judge properly concluded, Plaintiffs failed to plead a claim for design defect because their allegations were conclusory, they do not allege a defect under either the consumer expectation test or cost-benefit test, and they did not properly plead that Defendants'

---

[18] Plaintiffs also waived any response to distinct API arguments. First, Plaintiffs did not respond to the core First Amendment problem—resolving *all* claims against API—that Plaintiffs' claims against API are content- and viewpoint-based restrictions untailored to any compelling government interest. *See* API Mot. 6-8 (ECF 254). Although the Omnibus Opposition responded to *other* First Amendment arguments, Plaintiffs did not dispute (and thus waived) that their claims constitute unjustifiable content- and viewpoint-discrimination *as to API*. Second, Plaintiffs never responded to API's distinct argument against Claims 10-12 that API is a non-seller that owes no duty to the public at large and lacks control over products it does not manufacture or produce. *Id.* at 18-19. Last, there is an independent basis for affirming dismissal of the nuisance claims (9 and 13) as to API because as a trade association, API by definition lacks the necessary control over the products that allegedly caused climate change injuries. *Id.* at 20-21.

products "proximately caused" Plaintiffs' injuries.  Dkt. 315 at 86–87; *Ayala v. Kia Motor Corp.*, 633 F. Supp. 3d 555, 569 (D.P.R. 2022) ("In sum, '[i]f the damage is not attributable to a defect of the product, there is no ground for applying the strict liability rule.' *Mendoza v. Cervecería Corona*, 97 P.R. Dec. 499, 512 (1969))").  Raising arguments they failed to present before the Magistrate Judge, Plaintiffs now object to the Magistrate Judge's recommendation, arguing that they have adequately alleged design defect claims under the consumer expectation theory, and that they have sufficiently alleged proximate cause.

As a preliminary manner, Plaintiffs' purported objections are arguments they failed to raise before the Magistrate Judge and thus this Court should not consider them.  In response to Defendants' arguments that Plaintiffs failed to allege a claim for design defect and causation, all Plaintiffs provided in their opposition brief was a two-paragraph restatement of the applicable legal standards—they provided no substantive argument or even a single citation to the Amended Complaint.  Dkt. 280 at 82–83.  Now, in a novel analysis that spans six pages, Plaintiffs attempt to raise entirely new arguments as to why their allegations satisfy the consumer expectation theory and why they have adequately alleged causation.  Dkt. 323 at 7–12.  But, having failed to respond with those points in their opposition to the motion to dismiss, Plaintiffs conceded Defendants' arguments and thus waived the responsive arguments they belatedly seek to raise.  *Puerto Rico Soccer League NFP, Corp. v. Federación Puertorriqueña de Fútbol*, 2024 WL 4362339, at *13 (D.P.R. Sept. 30, 2024).  As noted above, an unsuccessful party is not entitled to *de novo* review by the district judge of an argument never raised before the magistrate.  *Paterson-Leitch*, 840 F.2d at 990–91.

Plaintiffs' new arguments are unavailing in any event.  Plaintiffs' admission that their design defect claims turn on a "risk inherent to [Defendants'] fossil fuel products" is fatal to any design defect claim.  Dkt. 280 at 84.  Such a claim cannot be asserted where the presence of the

alleged defect is a characteristic of the product itself. *Kotler v. Am. Tobacco Co*., 926 F.2d 1217, 1225 (1st Cir. 1990) (rejecting liability for design defect absent a showing the product was defective in a way aside from its inherent characteristics). That alone warrants dismissal.

While Plaintiffs argue they have stated a design-defect claim under the consumer-expectation test based on the allegation that consumers expected Defendants' products to be "safe," Dkt. 323 at 8, that is wrong. First, that is the wrong test for a case like this one. *Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 77 (1st Cir. 2002). "'[T]he consumer expectations test is reserved for cases in which the *everyday experience* of the product's users permit a conclusion that the product's designs violated *minimum* safety assumptions." *Id.* (quoting *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 567 (1994) (emphases added). The test is improper in a case where, as here, a product allegedly causes injury in a way unrelated to "consumers' reasonable minimum assumptions about [the product's] safe performance." *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1122 (2002) (quotations omitted).

The circumstances of this case make the consumer expectation test inapplicable. Here, Plaintiffs' allegation that fossil fuel combustion is the "primary driver" of global warming, Am. Compl. ¶ 217, turns not on an aspect of consumers' everyday experience using fossil fuels but based on "climate science," "climate scientists," and the purported "scientific consensus" regarding the link between fossil fuels and global climate change, *e.g.*, *id.* ¶¶ 72, 219, 305, 318, 329, 336, 346, 351, 354, 368, 370, 373, 397, 400. 415, 439, 446, 449, 481, 593, 595, 660, 675. Indeed, Plaintiffs allege that "the climate consequences of fossil fuel products are complex, long-term, and dependent on scientific data[.]" Dkt. 323 at 14. Accordingly, the consumer expectations test does not apply, and Plaintiffs' conclusory allegation that consumers expect fossil fuels to be "safe" does not suffice.

Second, Plaintiffs do not plausibly allege that "the ordinary consumer in Puerto Rico" was unaware of the alleged impact of fossil fuels on global climate change. *See Prado Álvarez v. R.J. Reynolds Tobacco Co.*, 313 F. Supp. 2d 61, 74 (D.P.R. 2004). For many years, "the general public had knowledge of or had access to information . . . regarding the existence of climate change and effects." *Delaware*, 2024 WL 98888, at *19; *see also* Dkt. 235 at 11–17; Dkt. 326 at 23–32. Accordingly, Plaintiffs have not pleaded that Defendants' products failed to meet consumers' expectations. *Carballo-Rodríguez v. Clark Equip. Co.*, 147 F. Supp. 2d 66, (D.P.R. 2001).[19]

Finally, Plaintiffs failed to plead the requisite causal link between Defendants' products and Plaintiffs' alleged injuries. Puerto Rico makes up a negligible fraction—around 0.03%—of global energy consumption and carbon production, and climate change is a global phenomenon.[20] Plaintiffs themselves allege that stopping the harms of climate change would require a lengthy *global* effort. *See* Am. Compl. ¶ 599. Plaintiffs do not and cannot argue that if Defendants had not sold incrementally more fossil fuel products to Puerto Rico municipalities between 1989 and 2017, climate change would have been stopped, let alone that the 2017 hurricanes would not have occurred or would not have caused Plaintiffs' damages. Plaintiffs even admit that Puerto Rico is located in the "notorious Hurricane Alley." *Id.* ¶ 4. To suggest that the damage caused by the 2017 storms (and their impacts on the municipalities, and by extension Puerto Rico citizens) was caused by Defendants' alleged statements and their impact within Puerto Rico is entirely speculative. *See, e.g.*, *Rodríguez v. Senor Frog's de la Isla, Inc.*, 642 F.3d 28, 36 (1st Cir. 2011) ("[S]peculation or conjecture will not cut it when it comes to proximate cause."); *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997) ("[A] force which plays only an 'infinitesimal' or

---

[19] That the public was aware that some governments and scientists drew a connection between fossil fuels and climate change does not mean their knowledge was based on their "everyday experience" using Defendants' products. *See Quintana-Ruiz*, 303 F.3d at 77.

[20] *See* European Commission Joint Research Center, *supra* n.16.

'theoretical' part in bringing about injury, damage, or loss is not a substantial factor."). *See also In re Firearm Cases*, 126 Cal. App. 4th 959, 991 (2005) (finding no causation where the complaint "attempts to reach too far back in the chain of distribution when it targets the manufacturer of a legal, non-defective product that lawfully distributes its product").

### 3. Failure to Warn.

The Magistrate Judge recommended dismissing Plaintiffs' failure to warn claim because the duty to warn is not so "expansive" as to encompass a duty to warn about the effects that fossil fuels allegedly have on climate change. Dkt. 315 at 87–88. Plaintiffs argue that a duty existed because Defendants allegedly possessed "specialized knowledge" about the "risks" or "latent dangers" of fossil fuels. Dkt. 323 at 12. But Plaintiffs did not make this argument in opposing Defendants' motion to dismiss, *see* Dkt. 280 at 82–84, so it is waived—and it is wrong in any event.

First, the Court should not consider Plaintiffs' objections because Plaintiffs failed to preserve them. *See* Dkt. 280 at 85. Plaintiffs' opposition to the motions to dismiss made no mention of "specialized knowledge" or "immediate and latent risks." *Compare id. with* Dkt. 323 at 12–16. The argument is therefore waived.

Second, Plaintiffs' arguments are without merit. Defendants had no duty to warn that fossil fuel use may contribute to global climate change. That information was known to both average consumers and sophisticated ones like Plaintiffs here. *See Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 275 (1st Cir. 2003) ("[A] manufacturer cannot be held liable under either strict liability or negligence for failure to warn of a danger commonly known to the public."); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 07 CIV. 10470, 2015 WL 3763645, at *4 (S.D.N.Y. June 16, 2015) ("[A] manufacturer is not liable to a sophisticated user of its product for failure to warn of a risk, harm, or danger, if the sophisticated user knew or should have known of that risk, harm, or danger.") (quotations omitted) (applying Puerto Rico law). Likewise,

finding a duty to warn here would impose an obligation on Defendants to "warn the world," because under Plaintiffs' theory, premised on injuries allegedly resulting from *global* climate change, the only warning that would have prevented Plaintiffs' injuries would be a warning to all consumers worldwide. *Baltimore*, 2024 WL 3678699, at *11. There is no support for such an expansive duty in Puerto Rico law, and courts outside the Commonwealth have expressly rejected such a duty. *See id.* at 25 (holding, under Maryland law, that "[o]ne cannot be expected to owe a duty to the world at large to protect it against the actions of third parties"). If Defendants had a duty to warn in this case, it necessarily would extend to every person in the world because climate change is a global phenomenon. The notion that Defendants had a "duty to warn [that] extended to every single human being on the planet whose use of fossil fuel products may have contributed to global climate change" is breathtaking and incorrect. *Id.* at *12; *see also Mitchell v. City of Warren*, 803 F.3d 223, 230 (6th Cir. 2015) ("A company does not have a duty to warn of all theoretically possible dangers."); *Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 315 (2019) ("[A] manufacturer generally has no duty to warn of risks from another manufacturer's product[.]"); *T.H. v. Novartis Pharms. Corp.*, 4 Cal. 5th 145, 164, (2017) ("The manufacturer has no duty to warn of risks that are merely speculative or conjectural, or so remote and insignificant as to be negligible.") (quotations omitted).

None of the cases cited by Plaintiffs compels a different result. In fact, Plaintiffs mischaracterize these cases. In *Cruz-Vargas*, the First Circuit did *not* "recognize[] that a failure-to-warn claim against tobacco manufacturers could be maintained because the manufacturers possessed superior knowledge regarding the long-term dangers of smoking[.]" Dkt. 323 at 14–15. To the contrary, the First Circuit affirmed the district court's grant of summary judgment *in favor of the defendant manufacturer* based on the "common knowledge" doctrine. *Cruz-Vargas*, 348 F.3d at

274. The court held that "no reasonable jury could have found a lack of common knowledge during the relevant time period regarding the health hazards and habit-forming nature of cigarettes." *Id.* at 280–81. In *Silva v. Am. Airlines, Inc.*, 960 F. Supp. 528, 530 (D.P.R. 1997), an airline passenger hit her head on an overhead bin. The court granted summary judgment *in favor of the defendant airline*, holding that the "hazard" posed by overhead bins is "apparent and obvious" and that the defendant should not be held liable for damages caused by "a structure that is easily perceived at a glance every time one boards an airplane." *Id.* at 533–34. And in *Guevara v. Dorsey Laboratories, Div. of Sandoz, Inc.*, 845 F.2d 364 (1st Cir. 1988), the First Circuit reversed the district court's denial of the *defendant pharmaceutical company's* motion for judgment notwithstanding the verdict, expressly rejecting the plaintiff's argument that the defendant needed to warn of the specific "*kind* of [adverse] reaction she experienced." *Id.* at 366 (emphasis in original). The "specific question at issue," the court explained, was whether "the danger, or potentiality of danger, is *generally* known and recognized" in the relevant community. *Id.* at 367 (quotations omitted) (emphasis in original). If it is, there is no duty to warn. *Id.*

In short, none of the cases Plaintiffs cite support their theory that Defendants had a duty to warn consumers worldwide about the effects that fossil fuels have on climate change. Dkt. 323 at 12. As the Magistrate Judge correctly recognized, no court has "read the duty to warn in such an expansive manner" and neither should this Court. Dkt. 315 at 88.

### 4. Unjust Enrichment.

The Magistrate Judge correctly recommended dismissal of Plaintiffs' unjust enrichment claim because Plaintiffs allege other forms of relief. Dkt. 315 at 90. As the Magistrate Judge noted, Plaintiffs "offer[ed] no substantive argument in response" to Defendants' motions to dismiss. *Id.* Plaintiffs' objections should thus be rejected because they are based on arguments that were not presented to or considered by the Magistrate Judge and are therefore waived. *Compare*

Dkt. 280 at 87 *with* Dkt. 323 at 16–19.

These waived arguments are also based on incorrect statements of law.[21]  Unjust enrich-ment is only available when "there is no statute applicable to the case at issue[.]"  *In re Fin. Over-sight & Mgmt. Bd.*, 578 F. Supp. 3d 267, 296 (D.P.R. 2021).  Thus, "claims 'for unjust enrichment are subsidiary to other remedies provided by law and is unavailable if the plaintiff may seek other forms of relief.'"  *Id.* (quoting *Rivera-Muñiz v. Horizon Lines Inc.*, 737 F. Supp. 2d 57, 65 (D.P.R. 2010)); *see also Ghaffar v. Paulson*, 2024 WL 453142, at \*14 (D.P.R. Feb. 5, 2024) ("[I]t has been well established that the [unjust enrichment] doctrine is . . . only available as a last resort and when there is no statute or remedy directly applicable to the situation.").  Consequently, "[w]hen plain-tiffs allege conduct that is covered by an applicable statute, *even if plaintiffs have failed to suffi-ciently allege that claim or if the claim is time-barred*, it is inappropriate to allow a claim for unjust enrichment."  *In re Fin. Oversight & Mgmt. Bd.*, 578 F. Supp. 3d at 296 (emphasis added); *see also Ocaso, S.A., Compañía de Seguros y Reaseguros v. P.R. Mar. Shipping Auth.*, 915 F. Supp. 1244, 1263 n.15 (D.P.R. 1996) (dismissing claim for unjust enrichment when facts would allow for a claim sounding in tort, despite tort claim being time-barred).

Indeed, federal courts in Puerto Rico routinely dismiss unjust enrichment claims under Puerto Rico law where, as here, Plaintiffs alleged *other* statutory claims.  *See Kelley v. Mammoth Energy Services*, 2022 WL 22257070, at \*14 (D.P.R. Sept. 2, 2022) (although "[t]he relatively scant body of caselaw that has discussed this doctrine has done so in light of alternative state, not

---

[21] Plaintiffs' claim that "courts routinely allow unjust enrichment claims to proceed alongside other claims where the precise scope of legal remedies remains uncertain" is supported by just one case, which is inapposite here.  *See* Dkt. 323 at 16 (citing *U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 266 (S.D.N.Y. Jan. 30, 2017)).  Unlike Plaintiffs' Amended Complaint here, in *U.S. Bank*, the Southern District of New York was analyzing an unjust en-richment claim specifically brought in connection with a breach of contract claim.  Nevertheless, the court explained, supporting Defendants' position here, that "[u]njust enrichment claims are 'available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'"  *Id.* at 265–66 (citation omitted).

federal law remedies . . . [t]he Court . . . finds that the Puerto Rico Supreme Court's holding that unjust enrichment is applicable where other relief at law is not available to be telling") (report and recommendation adopted in *Kelley v. Machine Learning Integration LLC*, 2022 WL 22257065 (D.P.R. Sept. 30, 2022)); *In re Fin. Oversight & Mgmt. Bd.*, 578 F. Supp. 3d at 296 (dismissing unjust enrichment claim where plaintiffs alleged violations of Puerto Rico contract and tort law); *Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R.*, 2015 WL 5719801, at \*19 (D.P.R. 2015)(Carreño, M.J.), report and recommendation adopted, 2016 WL 9459821 (D.P.R. 2016) (dismissing in light of other claims including RICO, and listing cases.)  The Court should do the same and adopt the Magistrate Judge's recommendation to dismiss the unjust enrichment claim.

### 5.  Public and Private Nuisance.

The Magistrate Judge correctly found that Plaintiffs' nuisance claims fail because Plaintiffs "do not seek to abate [the alleged nuisance] by way of injunctive relief" and fail to "show a causal nexus between Defendants' acts or omissions and the damages claimed for any prior or ongoing conduct that can be said to be injurious to health and that interfered with the enjoyment of property by the Municipalities."  Dkt. 315 at 89.  Plaintiffs now purport to object on several grounds but did not oppose Defendants' motion to dismiss on any of them.  *See* Dkt. 280 at 85.  This Court should reject each argument because Plaintiffs have waived any opposition.  *See Puerto Rico Soccer League NFP, Corp.*, 2024 WL 4362339, at \*13 (finding waiver by failing to address defendants' arguments in motion to dismiss); Dkt. 280 at 85.

In any event, Plaintiffs' purported objections are without merit.  First, Plaintiffs belatedly claim they are seeking injunctive relief because the Amended Complaint includes a boilerplate request for "such other . . . equitable, declaratory, and/or injunctive relief as permitted by law[.]"  Dkt. 323 at 21.  But the Amended Complaint expressly states that it "does not seek to enjoin any oil and coal operations or sales, or to enforce emission controls of any kind, nor damages or

abatement relief for damages to or occurring on federal lands," and that "[n]othing in this Complaint seeks to enjoin Defendants from their fossil fuel production or compel them to curb or otherwise alter their greenhouse gas emissions." Am. Compl. ¶ 10. *See also id.* ¶ 826. Plaintiffs' express disavowal of injunctive relief or abatement is fatal to their nuisance claims.[22]

Second, Plaintiffs claim they are seeking abatement by seeking "financial relief" to fund "remedial actions." Dkt. 323 at 20–21. But "financial relief" will not abate greenhouse gas emissions or climate change. Indeed, Plaintiffs allege that the effects of global climate change are "permanent and long-lasting." Am. Compl. ¶ 779. In any event, the Amended Complaint does not request an "abatement fund," but only "punitive and compensatory damages." *Id.* ¶¶ 782, 828.

Third, Plaintiffs claim they have adequately alleged causation. Dkt. 323 at 21–22. They have not. As the Magistrate Judge correctly determined, Plaintiffs' causation allegations "are conclusory, at best." Dkt. 315 at 89. As the R&R observes, Plaintiffs do not allege that Defendants are "burning fossil fuels . . . in Puerto Rico, or operating facilities in the Municipalities." *Id.*[23] Rather, Plaintiffs theorize that Defendants' alleged "campaign to manufacture the appearance of uncertainty and lack of consensus about the causes and effects of climate change" caused the "worst global warming scenarios" to unfold, including "harsher tropical storms" and "more extreme precipitation events." Am. Compl. ¶ 780. But Plaintiffs' theory is hopelessly speculative. *See supra* II.C.2.

Perhaps recognizing as much, Plaintiffs attempt to shift gears. Plaintiffs now claim that

---

[22] The Puerto Rico Supreme Court has of course never applied a nuisance cause of action to prohibit or punish any kind of speech, as Plaintiffs purport to do in this case. "Federal courts are not free to extend the reach of state law." *Doe v. Trustees of Bos. Coll.*, 942 F.3d 527, 535 (1st Cir. 2019) ("[F]ederal courts must apply state law as 'declared by its Legislature in a statute or by its highest court in a decision.'" *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). A litigant who chooses federal court cannot expect that court "to ... blaze new and unprecedented jurisprudential trails as to state law." *Id*.

[23] Puerto Rico laws do not apply extraterritorially. *Goya de Puerto Rico, Inc. v. Rowland Coffee*, 206 F. Supp. 2d 211, 215 (D.P.R. 2002).

Defendants' alleged statements in the 1980s, 1990s, and early 2000s somehow caused Plaintiffs to forego making adequate preparations for the 2017 storms. Dkt. 323 at 21–22. But Plaintiffs' alleged failure to prepare is not a "nuisance," let alone the nuisance alleged in the Amended Complaint. Am. Compl. ¶¶ 774, 821. Regardless, Plaintiffs' new theory is no less speculative than their old one. It assumes that Plaintiffs heard the alleged and unidentified statements, that Plaintiffs decided not to reduce their use of fossil fuels based on those statements, and that Plaintiffs' additional fossil fuel usage caused the increased greenhouse gas emissions that caused the incremental increase in global climate change that, in turn, caused or intensified the 2017 storms. This theory thus fails for the same reasons as their prior causal theory. *See supra* II.C.2.

### D. Plaintiffs Failed to Plead Their Puerto Rico Law Claims With Particularity.

Plaintiffs' Puerto law claims also fail because they are not pleaded with particularity. As Defendants argued, Rule 9(b) applies to all of Plaintiffs' claims because "the central allegations . . . 'effectively charge fraud.'" *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 49 (1st Cir. 2020); *see* Dkt. 235 at 10, 52. Plaintiffs were therefore obliged to "state with particularity the circumstances constituting" the fraud, Fed. R. Civ. P. 9(b), including "the time, place and content of the alleged [actions] perpetuating that fraud." *Caro-Bonet v. Lotus Mgmt., LLC*, 195 F. Supp. 3d 428, 433 (D.P.R. 2016). The Magistrate Judge acknowledged Defendants' arguments, but declined "to address them as [he] recommend[ed] dismissal of the causes of action for not being cognizable claims." Dkt. 315 at 85 n.32.[24] Elsewhere, however, the Magistrate Judge recognized that Plaintiffs' allegations "fall[] short" of "the specificity required of Rule 9(b)." Dkt. 315 at 54. The Court should apply that reasoning to Plaintiffs' Puerto Rico law claims and dismiss them for failing to comply with Rule 9(b)'s heightened pleading standard.[25]

---

[24] Several Defendants made similar arguments in their separate objections. *See, e.g.*, Dkts. 320–21, 324–25, 328–32.

[25] As shown in Defendants' Objections, Plaintiffs also failed to plead their other claims with particularity. *See* Dkt.

### III. Plaintiffs Lack *Parens Patriae* Standing.

Defendants argued in their initial briefing that Plaintiffs cannot sue *parens patriae* for injuries sustained by their residents. Dkts. 235 at 37–38, 297 at 45–46. The Magistrate Judge agreed, finding that Plaintiffs "have no *parens patriae* standing." Dkt. 315 at 67–68. However, the Magistrate Judge found that Plaintiffs are only "suing to vindicate their own proprietary rights," so he did not dismiss any claims on this basis. Dkt. 315 at 68; *see id.* at 78, 90. Yet, Plaintiffs seem to object—at least in part—asserting that they have *parens patriae* standing while (incongruously) maintaining they "never asserted a *parens patriae* claim." Dkt. 323 at 23. Plaintiffs also assert "they structured their claims under Rule 23 . . . seeking damages and injunctive relief on behalf of their class, which includes their residents as a subclass." *Id.* (citing Dkt. 205 ¶¶ 620–22).

To the extent Plaintiffs are advancing any of their claims in a *parens patriae* capacity, they lack standing to do so. Plaintiffs may not pursue any RICO claims as *parens patriae* because the RICO statute does not permit *parens patriae* actions. *See, e.g.*, *Dillon v. Combs*, 895 F.2d 1175, 1177 (7th Cir. 1990) ("RICO allows suits by the federal government, § 1964(b), but otherwise only by persons injured in their 'business or property', § 1964(c), a phrase that does not include sovereign or derivative interests.").[26] Respecting the antitrust claim, the Clayton Act permits *parens patriae* actions by State attorneys general, but not municipalities. *See* 15 U.S.C. § 15c (providing that an "attorney general of a State may bring a civil action" under the Clayton Act).

As to the claims under Puerto Rico law, municipalities can bring lawsuits on behalf of their residents only when a statute or law specifically authorizes such suits. But Plaintiffs have

---

326 at 6.

[26] *See also People of State of N.Y. by Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987) ("Where the complaint only seeks to recover money damages for injuries suffered by individuals, the award of money damages will not compensate the state for any harm done to its quasi-sovereign interests. Thus, the state as *parens patriae* lacks standing to prosecute such a suit."); *State of Texas v. Enter. Companies, Inc.*, No. 85-5519, 1986 WL 31561, at *1 (S.D. Tex. Jan. 7, 1986) ("Congress did not intend for RICO's admittedly broad standing requirements to be so broad as to encompass derivative actions.").

identified no such statute. *See* Dkts. 235 at 37–38; 297 at 45–46. Indeed, none of the statutes Plaintiffs reference authorizes municipalities to file suits seeking damages on behalf of their residents. *See, e.g.*, P.R. Laws Ann. tit. 21, § 7012 ("Municipal autonomy is hereby recognized in the exercise of legal, economic, and administrative powers concerning matters related to the general welfare of their inhabitants."); P.R. Laws Ann. tit. 21, § 7013(bb) ("Municipalities shall have any other inherent power necessary for the protection of health, safety, and welfare within their territorial jurisdiction."); P.R. Laws Ann. tit. 21, § 7013 (p) (municipalities have the power "[t]o exercise both legislative and executive authority in all matters of a municipal nature that promote the community's welfare . . . and protect the health and safety of individuals. . . .").[27]

Finally, Plaintiffs argue that, under Rule 23, they can obtain relief "on behalf of a class, which includes their residents as a subclass." Dkt. 323 at 22. But the only class or subclass Plaintiffs attempted to allege in the Amended Complaint was "All Municipalities within Puerto Rico." Dkt. 205 ¶¶ 620–22. Plaintiffs simply did not allege that Puerto Rico citizens are putative class members or subclass members.

Accordingly, the Court should reject Plaintiffs' objection and hold (1) that Plaintiffs may not sue as *parens patriae*—whether under Rule 23 or otherwise—to recover for injuries sustained by their residents, and (2) any claims for damages on behalf of Plaintiffs' citizens are dismissed.

## IV. Jurisdictional Discovery Is Not Warranted.

Both Defendants and Plaintiffs object to the Magistrate Judge's recommendation to permit jurisdictional discovery. Dkt. 315 at 10–32. As Defendants explained in their objections and

---

[27] The provisions cited by Plaintiffs lack an official translation, and Plaintiffs have not provided a certified translation in violation of Local Rule 5(c). For the convenience of the Magistrate Judge, *Defendants* ultimately filed a certified translation of Section 7013, *see* Dkt. 297-7, but neither party has filed a certified translation of Section 7012. The Court should thus disregard Plaintiffs' arguments based on these laws. "It is well settled in the First Circuit that parties who wish to rely on materials which are not in English must provide certified English translations of those materials." *In re Rivera*, 627 B.R. 765, 775–76 (B.A.P. 1st Cir. 2021) (citing *Puerto Ricans for P.R. Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008)).

motions to dismiss briefing, Plaintiffs have not established that personal jurisdiction over any Defendant is proper and the Magistrate Judge's conclusion that Plaintiffs have established personal jurisdiction is erroneous. *See* Dkt. 326 at 42–47. Personal jurisdiction is absent here because (i) Plaintiffs' claims do not relate to Defendants' alleged Puerto Rico contacts, (ii) the exercise of jurisdiction would not be reasonable, and (iii) RICO's nationwide jurisdiction provision does not apply. *Id.* at 32–36.

The Magistrate Judge also said that "limited discovery on the issue of jurisdiction is proper because a more developed record would assist the Court in making its jurisdictional finding." Dkt. 315 at 18. Plaintiffs object to the Magistrate Judge's recommendation of jurisdictional discovery, asserting the "allegations are sufficient to survive the 12(b)(6) [sic] stage." Dkt. 323 at 2–3.

Defendants disagree that Plaintiffs' allegations are sufficient. *See* Dkt. 326 at 32–36.[28] But Defendants agree with Plaintiffs that jurisdictional discovery is not needed, and is inappropriate, to resolve the Joint Rule 12(b)(2) Motion, albeit for different reasons. First, that motion can be decided on the face of the Amended Complaint because even if accepted as true, the jurisdictional allegations are insufficient. Jurisdictional discovery is also improper because Plaintiffs did not (and still do not) request it. *See* Dkt. 281; Dkt. 323 at 2–4. Indeed, Plaintiffs did not even attempt to identify evidence that jurisdictional discovery purportedly would uncover that would support personal jurisdiction, much less show that such evidence is "expected to be exclusively within the defendants' knowledge." *N. Bridge Assocs., Inc. v. Boldt*, 274 F.3d 38, 43 (1st Cir. 2001); *see also Negrón-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 27 (1st Cir. 2007) (noting "it is . . . incumbent upon the plaintiff" to show why jurisdictional discovery is proper). Accordingly, Plaintiffs are not entitled to jurisdictional discovery.[29]

---

[28] Certain Defendants raised additional arguments and objections against jurisdiction as to them.

[29] Certain Defendants made additional arguments and objections as to why jurisdictional discovery was improper as

Plaintiffs also object to deferring the jurisdictional analysis under RICO's nationwide jurisdiction provision. Dkt. 323 at 3–4. The RICO claims are inadequately pleaded for the reasons stated in Defendants' Objections and above, so Section 1965(b) is inapplicable.[30]

## V. The Court Should Reject Plaintiffs' Conditional Request For Leave to Amend.

In their Objections, Plaintiffs also make a "conditional request for leave to amend the complaint." Dkt. 323 at 24. The Court should reject this request because an objection to a report and recommendation is not the proper avenue to request leave to amend, and because no amendment would address the deficiencies in their claims.

Plaintiffs have already amended their complaint in response to Defendants' initial motions to dismiss; yet they failed to cure the myriad defects in their original Complaint. Accordingly, any further amendment would be futile. Indeed, Plaintiffs have not "preview[ed] what additional facts . . . might be included in a [further] amended complaint" that would address the deficiencies. *Aponte-Torres*, 445 F.3d at 58. The failure to provide such information alone justifies denying the request. *Id.* Finally, any amendment would be futile for the reasons set forth in Defendants' Objection and herein. *See Rife v. One W. Bank, F.S.B.*, 873 F.3d 17, 21 (1st Cir. 2017).[31]

## CONCLUSION

The Court should reject Plaintiffs' objections to the Report and Recommendation and dismiss the Amended Complaint with prejudice.

---

to them.

[30] And even if it were otherwise applicable, Plaintiffs have not properly alleged personal jurisdiction over any Defendant. See Dkt. 326 at 36. Furthermore, Section 1965 also does not authorize international service of process, making it inapplicable to Shell, BP, BHP, and Rio Tinto. *See* Dkt. 234 at 21–22.

[31] For example, Plaintiffs could not "in good faith attempt to amend their Complaint once again . . . to add additional 'discovery rule' allegations to toll the statute of limitations." Dkt. 297 at 6, n.4. *See also* Dkts. 239, 299, 325.

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date the foregoing joint motion was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys and participants of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 11th day of April, 2025.

By: */s/ Roberto C. Quiñones-Rivera*
Roberto C. Quiñones-Rivera
USDC-PR Bar No. 211512
Eduardo A. Zayas-Marxuach
USDC-PR Bar No. 216112
Myrgia M. Palacios-Cabrera
USDC-PR Bar No. 230807
MCCONNELL VALDES LLC
P.O. Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: (787) 250-2631
Facsimile: (787) 474-9201
Email: rcq@mcvpr.com

Theodore J. Boutrous, Jr. (*pro hac vice*)
William E. Thomson (*pro hac vice*)
Joshua D. Dick (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Email: tboutrous@gibsondunn.com
Email: wthomson@gibsondunn.com
Email: jdick@gibsondunn.com

Thomas G. Hungar (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone: (202) 887-3784
Email: thungar@gibsondunn.com

Neal S. Manne (*pro hac vice* forthcoming)
Erica Harris (*pro hac vice* forthcoming)
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: nmanne@susmangodfrey.com
Email: eharris@susmangodfrey.com

*Attorneys for Defendant CHEVRON CORPORATION*


By: *s/ Néstor M. Méndez Gómez*
Néstor M. Méndez Gómez
USDC-PR Bar No. 118409
María D. Trelles Hernández
USDC-PR Bar No. 225106
PIETRANTONI MENDEZ & ALVAREZ LLC
Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, Puerto Rico 00918
Telephone: (787) 274-1212
Facsimile: (787) 274-1470
Email: nmendez@pmalaw.com
Email: mtrelles@pmalaw.com

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Yahonnes Cleary (*pro hac vice*)
Caitlin E. Grusauskas (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: twells@paulweiss.com
Email: dtoal@paulweiss.com
Email: ycleary@paulweiss.com
Email: cgrusauskas@paulweiss.com

*Attorneys for Defendant EXXON MOBIL
CORPORATION*

By: s/*Kenneth C. Suria*
Kenneth C. Suria
USDC-PR Bar No. 213302
ESTRELLA, LLC
P.O. Box 9023596
San Juan, Puerto Rico 00902-3596
Telephone: (787) 977-5050
Facsimile: (787) 977-5090
Email: kcsuria@estrellallc.com

Tracie J. Renfroe (*pro hac vice*)
KING & SPALDING LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290
Email: trenfroe@kslaw.com

Oliver Thoma (*pro hac vice*)
WEST, WEBB, ALLBRITTON & GENTRY, P.C.
1515 Emerald Plaza
College Station, TX 77845
Telephone: (979) 694-7000
Facsimile: (979) 694-8000
Email: oliver.thoma@westwebblaw.com

*Attorneys for Defendant MOTIVA ENTERPRISES LLC*

By: s/ *David Indiano*
David Indiano
USDC-PR Bar No. 200601
Jeffrey M. Williams
USDC-PR Bar No. 202104
INDIANO & WILLIAMS, P.S.C.
207 del Parque Street, 3rd Floor
San Juan, Puerto Rico 00912

Duke K. McCall, III (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington D.C. 20004

*Attorneys for Defendant OCCIDENTAL PETROLEUM CORPORATION*

- 41 -

By: *s/Carlos A. Rodriguez Vidal*
Carlos A. Rodriguez Vidal
USDC-PR Bar No. 201213
GOLDMAN ANTONETTI & CORDOVA, LLC
American International Plaza
250 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Telephone: (787) 759-4117
Facsimile: (787) 767-9177
Email: crodriguez-vidal@gaclaw.com

Victor L. Hou (*pro hac vice*)
Boaz S. Morag (*pro hac vice*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Email: vhou@cgsh.com
Email: bmorag@cgsh.com

*Attorneys for Defendant BHP GROUP LIMITED*

By: *s/ Roberto A. Cámara-Fuertes*
Roberto A. Cámara-Fuertes
USDC-PR Bar No. 219002
Jaime A. Torrens-Dávila
USDC-PR Bar No. 223810
Mónica Ramos Benítez
USDC-PR Bar No. 308405
FERRAIUOLI LLC
P.O. Box 195168
San Juan, Puerto Rico 00919
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
Email: jtorrens@ferraiuoli.com
Email: mramos@ferraiuoli.com

David Y. Livshiz (*pro hac vice*)
Noelle L. Williams (*pro hac vice*)
Jennifer E. King (*pro hac vice*)
FRESHFIELDS US LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007

Telephone: (212) 277-4000
Facsimile: (212) 277-4001
Email: david.livshiz@freshfields.com
Email: noelle.williams@freshfields.com
Email: jennifer.king@freshfields.com

Jennifer Loeb (*pro hac vice*)
FRESHFIELDS US LLP
700 13th Street, NW, 10th Floor
Washington, D.C. 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
Email: jennifer.loeb@freshfields.com

*Attorneys for Defendant RIO TINTO PLC*

By: *s/ Eric Pérez-Ochoa*
Eric Pérez-Ochoa
USDC-PR Bar No. 206314
Luis A. Oliver Fraticelli
USDC-PR Bar No. 209204
ADSUAR
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Telephone: (787) 756-9000
Facsimile: (787) 756-9010
Email: epo@amgprlaw.com
Email: loliver@amgprlaw.com

*Attorneys for Defendant BP P.L.C.*

By: *s/Carlos A. Valldejuly-Sastre*
Carlos A. Valldejuly-Sastre
USDC No. 209505
José J. Colón García
USDC No. 308010
O'NEILL & BORGES LLC
250 Muñoz Rivera Avenue, Suite 800
San Juan, Puerto Rico 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: carlos.valldejuly@oneillborges.com
Email: jose.colon@oneillborges.com

David C. Frederick (*pro hac vice*)
James M. Webster, III (*pro hac vice*)
Minsuk Han (*pro hac vice*)
Daniel S. Severson (*pro hac vice*)
Grace W. Knofczynski (*pro hac vice*)
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999
Email: dfrederick@kellogghansen.com
Email: jwebster@kellogghansen.com
Email: mhan@kellogghansen.com
Email: dseverson@kellogghansen.com
Email: gknofczynski@kellogghansen.com

*Attorneys for Defendant SHELL PLC*
*(f/k/a ROYAL DUTCH SHELL PLC)*


By: _s/Ricardo F. Casellas Sánchez_
Ricardo F. Casellas Sánchez
USDC-PR No. 203114
Heriberto J. Burgos-Pérez
USDC-PR No. 204809
CASELLAS ALCOVER & BURGOS, P.S.C.
2 Tabonuco Street, Suite 400
San Patricio, Puerto Rico 00968
Telephone: (787) 756-1400
Facsimile: (787) 756-1401
Email: rcasellas@cabprlaw.com
Email: hburgos@cabprlaw.com

Matthew T. Martens (*pro hac vice*)
Ericka Aiken (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: matthew.martens@wilmerhale.com
Email: ericka.aiken@wilmerhale.com


Hallie B. Levin (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP

- 44 -

7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: hallie.levin@wilmerhale.com

Robert Kingsley Smith (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
Email: robert.smith@wilmerhale.com

*Attorneys for Defendant ConocoPhillips*

By: */s/ Ramon Dapena*
Ramón Dapena
Bar No. 125005
Iván Lladó
Bar No. 302002
MORELL CARTAGENA & DAPENA
Ponce de León Ave. 273 Plaza 273, Suite 700
San Juan PR 00908 Puerto Rico
Telephone: 787-723-1233
Facsimile: 787-723-8763
Email: ramon.dapena@mbcdlaw.com
Email: ivan.llado@mbcdlaw.com

Jeremiah J. Anderson (*pro hac vice*)
MCGUIREWOODS LLP
845 Texas Avenue, 24th Floor
Houston, TX 77002-2906
Telephone: (713) 571-9191
Email: jjanderson@mcguirewoods.com

Brian D. Schmalzbach (*pro hac vice*)
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000
Email: bschmalzbach@mcguirewoods.com

*Attorneys for Defendant American Petroleum Institute*

- 45 -