**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MUNICIPALITY OF BAYAMON et al., *Plaintiffs,* v. EXXON MOBIL CORP. et al., *Defendants.* | Case No. 3:22-cv-01550-SCC |

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO COURT'S ORDER REGARDING *FULD V. PALESTINE LIBERATION ORGANIZATION***

i

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

PROCEDURAL POSTURE ........................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I.    The Supreme Court Has Clarified That the Fifth Amendment Applies a Broader Standard for Personal Jurisdiction Than the Fourteenth Amendment. ............................... 2

II.    The Statutory Parallels Between the Anti-Terrorism Act (ATA) and the Racketeer Influenced and Corrupt Organizations Act (RICO) Warrant Application of the Fifth Amendment Standard for Personal Jurisdiction in this Case. ............................................ 5

        a.    A Central Feature of Both Statutes Is Private Enforcement. ................................. 5

        b.    Both Statutes Confer Nationwide Service of Process. ........................................... 6

        c.    Both Statutes Have Extraterritorial Reach. ............................................................ 7

        d.    Both Statutes Provide Due Process Safeguards. .................................................... 8

        e.    The Statutes' Legislative Histories Reflect Similar Policy Judgments. ................. 8

III.    Applying Fifth Amendment Due Process, as articulated in *Fuld*, Favors a Determination of Personal Jurisdiction Over Defendants in this Case. .............................. 9

CONCLUSION ........................................................................................................................... 12

# TABLE OF AUTHORITY

**Cases**

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 115 (1987) .................................................................................................................................. 10

*Balzac v. Porto Rico,* 258 U.S. 298, 312-13 (1922) ....................................................... 3

*Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 668-69 n.5 (1974) .......................... 3

*Commonwealth of Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 62-76 (2016) ................................ 3

*Davis v. United States*, 597 F.2d 1231, 1236 (9th Cir. 1979) ........................................................ 7

*Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 599 n.30 (1976) ........................................................................................................................ 3

*Fuld v. Palestine Liberation Organization*, 2025 WL 1716140 (2025) ............................... passim

*PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71–72 (2d Cir. 1998) .............. 7

*Reves v. Ernst & Young*, 507 U.S. 170, 183–85 (1993) ................................................................. 9

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 329 (2016) ........................................ 7

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 493 (1985) ........................................................... 6, 9

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992) ..................................................................................................................... 4

*United States v. Black*, 773 F.2d 807, 809 (7th Cir. 1985) ........................................................ 7, 8

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) .................................... 2, 4

**Statutes**

15 U.S.C. § 1 et seq. ....................................................................................................................... 2

15 U.S.C. § 15 ................................................................................................................................ 5

18 U.S.C. § 1961(1) ....................................................................................................................... 7

18 U.S.C. § 1961(3) ....................................................................................................................... 2

18 U.S.C. § 1961(5) ....................................................................................................................... 8

18 U.S.C. § 1962 ............................................................................................................... 7, 8

18 U.S.C. § 1964(a)-(c) ......................................................................................................... 6

18 U.S.C. § 1964(c) .............................................................................................................. 5

18 U.S.C. § 2331 ................................................................................................................... 8

18 U.S.C. § 2333(a) ..................................................................................................... 5, 6, 7

18 U.S.C. § 2334(a) .............................................................................................................. 7

18 U.S.C. §§ 1961–1968 ...................................................................................................... 5

18 U.S.C. §§ 2331–2339D ................................................................................................... 5

U.S. Const. amend. XIV, § 1 .............................................................................................. 3

U.S. Const. Art. III ............................................................................................................... 3

U.S. Const. art. IV, § 3, cl. 2 ............................................................................................... 3

**Rules**

Fed. Rule Civ. Proc. 4(k)(1)(C) ......................................................................................... 10

**INTRODUCTION**

In response to the Court's thoughtful directive for supplemental briefing, Plaintiffs respectfully submit that the Supreme Court's recent decision in *Fuld v. Palestine Liberation Organization*, 2025 WL 1716140 (2025), provides important guidance on the applicable constitutional standard for personal jurisdiction in this federal statutory action. Plaintiffs are grateful for the opportunity to address the implications of *Fuld*, which clarify the proper framework for evaluating jurisdiction over both domestic and foreign defendants. As in *Fuld*, this case is a federal court case involving a federal statutory cause of action authorizing jurisdiction. Thus, under *Fuld*, personal jurisdiction is a Fifth Amendment issue, and the Fifth Amendment's personal jurisdiction standard is more flexible than the Fourteenth Amendment's "minimum contacts" test. Under this clarified Fifth Amendment framework, and mindful of this Court's ongoing evaluation of the jurisdictional record, Plaintiffs respectfully submit that the allegations in the Amended Complaint—particularly as to the foreign Defendants—satisfy the applicable standard and warrant denial of the motions to dismiss on jurisdictional grounds.

**PROCEDURAL POSTURE**

The Amended Complaint in this matter was filed in November 2023. ECF 205. Motions to Dismiss were filed in response in January 2024, and briefing continued through September 2024. U.S. Magistrate Judge Hector L. Ramos-Vega issued his Report and Recommendation ("R&R") on the dismissal motions on February 20, 2025. ECF 315. Objections, responses, and replies have been briefed for the R&R as of May 2, 2025. ECF 358. On June 20, 2025, the United States Supreme Court issued its opinion in *Fuld*. The same day, the Court astutely ordered the parties to brief the impact of *Fuld* on the pending dismissal motions. ECF 390.

## ARGUMENT

The Supreme Court's landmark decision in *Fuld* clarified that the constitutional due process standard for personal jurisdiction under the Fifth Amendment in federal statutory cases is less restrictive than the familiar "minimum contacts" standard under the Fourteenth Amendment. Here, as in *Fuld*, Plaintiffs' federal court claims arise under federal statutes—the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961(3) and the Sherman Act, 15 U.S.C. § 1 et seq.—therefore, the Fifth Amendment personal jurisdiction standard applies. Applying that standard articulated in *Fuld* leads to the conclusion that personal jurisdiction over all Defendants, including all foreign Defendants, exists here.

### I. The Supreme Court Has Clarified That the Fifth Amendment Applies a Broader Standard for Personal Jurisdiction Than the Fourteenth Amendment.

In *Fuld*, the Supreme Court recognized that "modern personal jurisdiction cases [] have grappled only with the limitations imposed by the *Fourteenth* Amendment on *state* courts", and "have expressly reserved 'the question whether the *Fifth* Amendment imposes the same restrictions on the exercise of personal jurisdiction by a *federal* court.'" *Fuld*, 2025 WL 1716140, at * 6 (2025) (emphasis in original) (internal citations omitted). Addressing that question, the Supreme Court reasoned that federal courts operating under the Fifth Amendment are not constrained by the state sovereignty concerns underpinning the Fourteenth Amendment's Due Process Clause. *Id.* at * 7. The Court explained that the "Fourteenth Amendment's due process limitations are driven by two principles: (1) treating defendants fairly and (2) protecting interstate federalism, the latter of which ensures 'that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

The Court further explained that the interstate federalism concerns underlying the Fourteenth Amendment's personal jurisdiction standard do not apply in the Fifth Amendment context. Specifically, the Constitution empowers the Federal Government (and therefore federal courts) with both nationwide and extraterritorial authority, unlike states. *Id.* at * 8. Thus, "the Fifth Amendment does not impose the same jurisdictional limitations as the Fourteenth." *Id.* at * 9. Rather, the Fifth Amendment "necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Id.*

The *Fuld* Fifth Amendment personal jurisdiction standard applies here. This case originated in federal court and Plaintiffs have alleged federal statutory causes of action against domestic and foreign Defendants. In addition, the lawsuit addresses issues of national and transnational significance, and the Federal Government is uniquely concerned with affairs of its territories like Puerto Rico.[1]

---

[1] Puerto Rico is not considered a "state" for constitutional purposes, and the plain text of the Fourteenth Amendment's Due Process Clause applies only to states. U.S. Const. amend. XIV, § 1; *See Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 599 n.30 (1976); *see also Commonwealth of Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 62-76 (2016) ("the oldest roots of Puerto Rico's power to prosecute lie in federal soil.. . . [t]he island's Constitution, significant though it is, does not break the chain."). Puerto Rico's authority derives from Congress—under the Territory Clause—and not all provisions of the U.S. Constitution automatically apply. U.S. Const. art. IV, § 3, cl. 2. Further, the United States District Court for Puerto Rico is not a typical United States Federal court established under U.S. Const. Art. III but was instead created by a congressional act furthering its rules and regulations in a territory belonging to the United States federal government. The Supreme Court has recognized that constitutional provisions limiting state authority do not automatically extend to federal territories; instead, in cases involving federal questions, the relevant constitutional question ought to be governed by the Fifth Amendment's Due Process Clause. *See also Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 668-69 n.5 (1974) (indicia of history of Supreme Court not determining which due process Amendment applied for Puerto Rico). The Insular Cases and subsequent Supreme Court rulings affirm that, while fundamental constitutional rights—including due process—are fully applicable in Puerto Rico, the text and structure of the Fourteenth Amendment do not necessarily extend its restrictions to territories. *See Balzac v. Porto Rico,* 258 U.S. 298, 312-13 (1922); *Examining Bd.,* 426 U.S. at 599 n.30. The First Circuit has also recognized that in federal question cases with extraterritorial dynamics, personal jurisdiction is governed

The Supreme Court's holding in *Fuld* forecloses the central premise of Defendants' jurisdictional arguments: that the Court must find "minimum contacts" with Puerto Rico in accordance with the Fourteenth Amendment. *See, e.g.*, Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction, ECF 234, at 21 (arguing that "Plaintiffs have not established personal jurisdiction with respect to *any* Defendant based on its alleged minimum contacts with Puerto Rico"). As the Supreme Court explained, "[t]hose standards—and in particular, the requirement that a defendant have minimum contacts with the forum State—functionally 'ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Fuld*, at * 8 (quoting *World-Wide Volkswagen*, 444 U.S. 292). That reasoning and that standard do not apply in this federal action asserting federal claims, which requires application of the Fifth Amendment. Accordingly, Defendants' arguments are now obsolete.

By contrast, after *Fuld*, Plaintiffs' arguments have even more force. As noted, *Fuld* reasoned that "[t]he Constitution confers upon the Federal Government—and it alone—both nationwide and extraterritorial authority." *Id.* Similarly, Plaintiffs have consistently argued that personal jurisdiction is proper under RICO § 1965(b) because that federal statute confers nationwide service of process. *See* Plaintiffs' Omnibus Opposition to Defendants' Motions to

---

by the Fifth Amendment. *See*, *e.g.*, *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992) ("When a district court's subject matter jurisdiction is founded upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed . . . by the Due Process Clause of the Fifth Amendment. . . . in a federal question case, a federal court's power to assert personal jurisdiction is geographically expanded.") (citation modified). Thus, this case's connection to Puerto Rico demanded application of a Fifth Amendment personal jurisdiction standard even before *Fuld*, though *Fuld* clarified how that standard differs from the Fourteenth Amendment standard.

4

Dismiss for Lack of Jurisdiction, ECF 281, at 8 (arguing that "Defendants are, first and foremost, subject to this Court's jurisdiction through Section 1965 of RICO").

II. **The Statutory Parallels Between the Anti-Terrorism Act (ATA) and the Racketeer Influenced and Corrupt Organizations Act (RICO) Warrant Application of the Fifth Amendment Standard for Personal Jurisdiction in this Case.**

The Supreme Court's reasoning in *Fuld* applies with equal force here because of the parallels between the federal statutory claim considered in *Fuld* (the ATA) and the federal statutory claim at issue here (RICO).[2] *Fuld* reasoned that when Congress legislates to address issues of national and transnational significance—such as terrorism or organized crime—federal statutes may permissibly confer jurisdiction over foreign defendants, as long as the statute provides for such reach in a manner consistent with due process. 2025 WL 1716140, at *12. Like the ATA at issue in *Fuld,* RICO exemplifies Congress's deliberate choice to provide remedies for complex and globally diffuse harms—organized crime and international terrorism—that routinely elude traditional state law boundaries. *Compare* 18 U.S.C. §§ 1961–1968 *with* 18 U.S.C. §§ 2331–2339D. RICO's private cause of action, 18 U.S.C. § 1964(c), like the ATA's civil action for victims of terrorism, 18 U.S.C. § 2333(a), empowers private plaintiffs to protect vital national interests, ensuring that actors inflicting injury upon U.S. interests may be held accountable regardless of geography.

a. **A Central Feature of Both Statutes Is Private Enforcement.**

Congress designed both RICO and the ATA to work, in critical part, through private enforcement. When enacting RICO, Congress recognized that federal and state resources alone

---

[2] This comparison likewise applies to the Clayton Act's private right of action, which similarly reflects Congress's intent to empower private enforcement of federal antitrust laws in response to conduct with wide-reaching economic harm. *See* 15 U.S.C. § 15. For brevity's sake, this memo will focus on RICO.

5

were insufficient to counter the pervasive, innovative, and often clandestine threat posed by organized crime. The RICO framework thus intentionally "deputizes" private actors as "private attorneys general," explicitly authorizing them to seek civil relief—treble damages, attorneys' fees, and equitable remedies—against racketeers whose activities impact interstate or foreign commerce. *See* 18 U.S.C. § 1964(a)-(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 493 (1985). This structure extends the reach of public law by harnessing the vigilance, expertise, and motivation of those most directly harmed: businesses, municipalities, and individuals.

The ATA reflects the same approach. In the face of sophisticated, borderless terror networks and their enablers, Congress determined that even federal prosecution would be insufficient to secure justice or meaningful deterrence. The ATA accordingly creates a private civil right of action for American victims of terrorism, granting them not only the prospect of compensatory and treble damages but also the ability to pursue those who fund, facilitate, or profit from terrorism, wherever they may be found. *See* 18 U.S.C. § 2333(a). The Supreme Court in *Fuld* expressly recognized that this private enforcement mechanism forms an integral part of Congress's strategy to deter terrorism, redress injuries, and extend the deterrent reach of American law to foreign actors who might otherwise escape accountability. 2025 WL 1716140, at *10. The Court reaffirmed that private enforcement under such federal statutes is both legitimate and essential, especially where the challenge is global in scope and government action alone cannot fully protect U.S. interests or individual rights. *Id.*

b. **Both Statutes Confer Nationwide Service of Process.**

Congress memorialized its intent for both statutes to reach defendants without regard to their connection with any particular state by providing for nationwide service of process. Specifically, both RICO and the ATA permit service on defendants in any federal judicial district,

6

reflecting Congress's decision that defendants should be held accountable based on their contacts with the United States rather than any particular state. *See* 18 U.S.C. §§ 1962, 1965(b), (d); 18 U.S.C. §§ 2333(a), 2334(a). This nationwide approach is crucial for defeating strategic fragmentation often employed by criminal or terrorist enterprises, as courts have recognized in the RICO context. *See PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71–72 (2d Cir. 1998); *Davis v. United States*, 597 F.2d 1231, 1236 (9th Cir. 1979).

Thus, limiting jurisdiction by requiring minimum connection to a particular state would directly contradict Congress's decision to provide for a nationwide reach. The Supreme Court explained in *Fuld* that courts should honor these nationwide service provisions when federal statutes are designed to address harms of significant national interest and cross-border impact. 2025 WL 171640, at *10-*11.

### c. Both Statutes Have Extraterritorial Reach.

Similarly, Congress's decision to give both RICO and the ATA extraterritorial reach underscore that the reasoning in *Fuld* applies with equal force here. In *Fuld*, the Court reaffirmed congressional authority under the ATA to legislate beyond domestic borders when U.S. interests or citizens are endangered. *Id.* at *11. The ATA was drafted to ensure redress for acts of terrorism committed against Americans anywhere in the world, specifically enabling civil actions against foreign sponsors and facilitators of such acts. *See* 18 U.S.C. § 2333(a); *id.* § 2334(a).

Like the ATA, RICO's statutory text expressly extends to conduct affecting both interstate and foreign commerce, signaling Congress's intent to target international criminal enterprises with significant domestic impact. *See* 18 U.S.C. §§ 1961(1), 1962. As held in *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 329 (2016), Congress intended RICO to apply extraterritorially to specified predicate acts with substantial domestic effects. *See also United*

*States v. Black*, 773 F.2d 807, 809 (7th Cir. 1985). In both contexts, courts have recognized that foreign defendants who intentionally direct harmful conduct toward the United States, or participate in conspiracies with a substantial American nexus, have fair notice that they may be held accountable in U.S. courts.

### d. Both Statutes Provide Due Process Safeguards.

*Fuld* underscored the constitutional significance of statutory notice and adequate warning to prospective defendants of their potential exposure to federal jurisdiction. 2025 WL 1716140, at *12. RICO and the ATA both achieve this clarity through comprehensive definitions, procedural safeguards, and intentional statutory thresholds. For instance, the ATA limits liability to severe forms of terrorism as delineated by statute (18 U.S.C. § 2331), and RICO likewise mandates a demonstrable "pattern of racketeering activity"—comprising at least two predicate acts within ten years (18 U.S.C. § 1961(5)). Both statutes likewise apply to defendants who are, by definition, part of sophisticated organizations, which allays due process concerns about litigation presenting unfair or unmanageable burdens for the defendants. 2025 WL 1716140, at *12. The specificity inherent in these requirements, in conjunction with procedural safeguards and opportunities for judicial review, guarantees that jurisdiction is exercised fairly when the defendant's conduct possesses a meaningful and foreseeable connection to U.S. interests. *Id.* at *12-*13 (ATA).

### e. The Statutes' Legislative Histories Reflect Similar Policy Judgments.

The ATA's legislative history, as highlighted by the Supreme Court in *Fuld*, documents Congress's understanding that the diffuse and adaptive nature of terrorism requires comprehensive remedies and access to federal courts for private victims. 2025 WL 1716140, at *10. Congress concluded that only a federal system that facilitates both public and private enforcement— unimpeded by state or international boundaries—could adequately address the new realities of

8

terrorism and organized crime and "ensure[], as part of a broader foreign policy agenda, that Americans injured or killed by acts of terror have an adequate forum in which to vindicate their right to ATA compensation."

The legislative history of RICO is similar. Congressional records on RICO highlight the statute's role in empowering both governmental and private litigants to dismantle criminal enterprises that threaten the economic and civic integrity of the United States. The Senate and House reports accompanying the enactment of RICO detail the inadequacies of prior legal frameworks and affirm Congress's determination to provide new civil and criminal tools—most notably, private causes of action with treble damages and broad discovery powers—to restore confidence in the marketplace and deter future criminal infiltration. *Sedima*, 473 U.S. at 492–93; *see also Reves v. Ernst & Young*, 507 U.S. 170, 183–85 (1993).

The numerous statutory parallels warrant application of the Fifth Amendment standard for personal jurisdiction in this case.

### III. Applying Fifth Amendment Due Process, as articulated in *Fuld*, Favors a Determination of Personal Jurisdiction Over Defendants in this Case.

In *Fuld*, the Supreme Court expressly declined to import the Fourteenth Amendment's minimum contacts requirement into the Fifth Amendment analysis. *Fuld*, at *9 ("Because the State and Federal Governments occupy categorically different sovereign spheres, we decline to adopt the minimum contacts framework for the Fifth Amendment."). The Supreme Court held that the "Fifth Amendment necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Id.* at * 9. Where, as here, Congress has authorized nationwide service of process under a particular statute—as it has under RICO § 1965(b)—this more flexible Fifth Amendment standard governs. *Id.* at *6 (noting that the "difference between the Fifth and Fourteenth Amendments is therefore implicated in only a subset

9

of federal cases, such as those in which personal jurisdiction is—as in the PSJVTA—'authorized by a federal statute.'" (citing Fed. Rule Civ. Proc. 4(k)(1)(C)).

While the Supreme Court held that the Due Process Clause of the Fifth Amendment does not incorporate the Fourteenth Amendment minimum contacts standard, the Court declined to address whether the Fifth Amendment's standard requires a case-by-case inquiry into the reasonableness of the assertion of jurisdiction. *Id.* at *12 ("[T]he prospect remains that the Fifth Amendment might entail a similar 'inquiry into the reasonableness of the assertion of jurisdiction in the particular case.'" (quoting *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 115 (1987)).[3] The Court reasoned that even if such an *Asahi*-type analysis were necessary, it would be satisfied on the facts in *Fuld*. *Id.*

The *Asahi* factors include: (1) the burden on the defendant, (2) the interests of the forum, and (3) the plaintiff's interest in obtaining relief. Each strongly supports jurisdiction in this case:

1. The burden on Defendants is minimal. These are sophisticated, multinational corporations with long-standing and substantial operations in the United States. They have marketed, sold, and profited from fossil fuel products across U.S. jurisdictions for decades, and routinely defend themselves in U.S. courts. Being haled into a federal forum in a U.S. territory is neither unfair nor unexpected.

---

[3] In Plaintiffs' view, post-*Fuld*, one of two tests now governs the Fifth Amendment due process personal jurisdiction analysis: (1) the "National Minimum Contacts Plus Reasonableness" test, which considers whether a defendant has minimum contacts with the U.S. and if the exercise of jurisdiction is reasonable based on the *Asahi* factors; or (2) the "Reasonableness-Only" test, in which a determination of reasonableness alone suffices in federal-question cases where Congress permits nationwide service. Even under the stricter National Minimum Contacts Plus Reasonableness test, should the Court interpret *Fuld* that way, Plaintiffs meet both prongs, as the Defendants' actions significantly affected the U.S., supporting that jurisdiction is reasonable.

2. The forum's interest is substantial. As detailed above, the United States has a sovereign interest in ensuring accountability for conduct that causes widespread, cross-border harm to its municipalities and citizens. The injuries at issue—rising sea levels, devastating hurricanes, infrastructural degradation, and public health consequences—are national in scope and stem from coordinated, nationwide enterprise conduct that Congress specifically authorized RICO and related statutes to address.

3. Plaintiffs' interest in obtaining relief is urgent and compelling. Puerto Rico's municipalities are among the most climate-vulnerable jurisdictions in the country. Their communities have already endured the compounded harms of catastrophic storms, economic disruption, and infrastructure collapse, all exacerbated by fossil fuel-driven climate change. These municipalities have a vital and legitimate interest in securing redress through the very statutory framework Congress designed for precisely such complex, multijurisdictional misconduct.

Therefore, just as the Supreme Court held in *Fuld* that the PSJVTA satisfied each element of the reasonableness test —"tick[ing] all three boxes"—so too does this climate change litigation. *Id.*

In light of the *Fuld* decision and this Court's careful attention to the jurisdictional record, Plaintiffs respectfully submit that they have met their burden under the applicable Fifth Amendment standard. Plaintiffs have alleged sufficient contacts between each Defendant—foreign and domestic—and the United States. In particular, foreign Defendants BP, Shell, BHP, and Rio Tinto are subject to personal jurisdiction through public trading on U.S. exchanges, engagement in climate-related disinformation via domestic trade associations, and the sale of fossil fuels throughout U.S. markets, including Puerto Rico. Their participation in the American Petroleum Institute, the Global Climate Coalition, and their extensive fossil fuel activities within the United

States tie them directly to the climate-related injuries suffered by the Plaintiffs. This Court has acknowledged that only Defendant Rio Tinto has squarely argued insufficient national contacts, while the remaining foreign Defendants—Shell, BP, and BHP—have not meaningfully disputed contacts with the United States. *See* Order Granting in Part and Denying in Part Defendants' Motion for Extension of Time to File Response/Reply, ECF 396 ("Only Rio Tinto has argued insufficient contacts with the United States. Even if the issue is deemed preserved as to others, the only other foreign Defendants are BHP, BP, and Shell."). The record here—detailing domestic operations, fossil fuel marketing, API participation, securities filings, and direct injuries to Puerto Rico—demonstrates sufficient contacts to establish personal jurisdiction. The allegations and statutory framework fully support the exercise of jurisdiction at this stage, particularly given the significant national and transnational interests at stake. Plaintiffs are, of course, prepared to address any further factual or legal inquiries the Court may have.

## **CONCLUSION**

For the foregoing reasons, and in respectful response to the Court's inquiry following the Supreme Court's decision in *Fuld*, Plaintiffs submit that the existing allegations meet the applicable standard for personal jurisdiction over all Defendants. Plaintiffs appreciate the Court's careful consideration of these complex issues and respectfully request that the motions to dismiss for lack of personal jurisdiction be denied.

By: */s/Roy L. Mason*
Roy L. Mason
USDC-PR Bar No. 308164
SMOUSE & MASON LLC
223 Duke of Gloucester Street
Annapolis, Maryland 21401
Telephone: (410) 269-6620
Facsimile: (410) 269-1235

rlm@smouseandmason.com

Luis Valiente Almeida-Olivieri
USDC-PR Bar No. 308307
MILBERG COLEMAN BRYSON PHILLIPS
GROSMAN LLC
1311 Ponce de Leon Ave, Suite 700
San Juan, Puerto Rico 00907
Telephone: (866) 252-0878
lalmeida@milberg.com

*Attorney for Plaintiffs*